Case No. 23-55431

In the United States Court of Appeals
for the Ninth Circuit

———————————————

B & L PRODUCTIONS, INC., et al.,
*Plaintiffs-Appellants,*

v.

GAVIN NEWSOM,
in his official capacity as Governor of the State of California and in his personal
capacity, et al.,
*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:21-cv-01718-AJB-DDL

———————————————

**APPELLANTS' OPENING BRIEF**

———————————————

| | |
|---|---|
| C.D. Michel | Donald Kilmer |
| Anna M. Barvir | Law Offices of Donald Kilmer, APC |
| Tiffany D. Cheuvront | 14085 Silver Ridge Rd. |
| MICHEL & ASSOCIATES, P.C. | Caldwell, Idaho 83607 |
| 180 E. Ocean Blvd., Suite 200 | (408) 264-8489 |
| Long Beach, CA 90802 | don@dklawoffice.com |
| (562) 216-4444 | |
| cmichel@michellawyers.com | |

*Attorneys for Plaintiffs-Appellants*

August 11, 2023

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, counsel for Plaintiffs-Appellants make these disclosures:

### B&L PRODUCTIONS, INC., DBA CROSSROADS OF THE WEST

B&L Productions, Inc., is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### CAPTAIN JON'S GREEN CAN LOCKERS, LLC

Captain Jon's Green Can Lockers, LLC, is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### L.A.X. FIRING RANGE, INC., DBA LAX AMMO

L.A.X. Firing Range, Inc., is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC.

California Rifle & Pistol Association, Inc. ("CRPA"), is a California nonprofit organization. CRPA is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### SOUTH BAY ROD AND GUN CLUB, INC.

South Bay Rod and Gun Club, Inc. ("South Bay"), is a California nonprofit organization. South Bay is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

i

## SECOND AMENDMENT FOUNDATION

The Second Amendment Foundation ("SAF") is a nonprofit organization. SAF is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Date: August 11, 2023        **MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants B&L Productions, Inc., dba Crossroads of the West; Barry Bardack; Ronald J. Diaz, Sr.; John Dupree; Christopher Irick; Robert Solis; Lawrence Michael Walsh; Captain Jon's Lockers, LLC; L.A.X. Firing Range, Inc., dba LAX Ammo; California Rifle & Pistol Association, Inc.; South Bay Rod and Gun Club, Inc.*

Date: August 11, 2023        **LAW OFFICES OF DONALD KILMER, APC.**

s/ Donald Kilmer
Donald Kilmer
*Attorney for Plaintiff-Appellant Second Amendment Foundation*

ii

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ................................................................. i

Table of Contents ..................................................................................... iii

Table of Authorities ................................................................................... v

Jurisdictional Statement ............................................................................ 1

Statement Regarding Addendum .............................................................. 1

Statement of the Issues Presented ........................................................... 1

Statement of the Case ............................................................................... 2

I.    Factual Background ......................................................................... 2

    A.    Regulation of Gun Shows in California .................................. 2

    B.    The Gun Show Experience .................................................... 5

    C.    The Del Mar Fairgrounds and the Crossroads Gun Show ......... 6

II.   Procedural History ........................................................................... 7

III.  The Decision on Appeal .................................................................. 9

IV.   Related Case ................................................................................. 10

Summary of Argument ............................................................................ 12

Argument ................................................................................................. 15

I.    Standard of Review ....................................................................... 15

II.   The District Court Erred When It Held That Appellants Did Not Plead a Viable Second Amendment Claim .......................................... 16

    A.    The Plain Text of the Second Amendment Protects the Right to Engage in Lawful Commerce in Arms; The District Court Was Wrong to Require Appellants Allege More ................................. 17

B. The Government Cannot Prove That AB 893 Is Consistent With a Historical Tradition of Firearm Regulation; The District Was Wrong to Relieve the Government of Its Burden to Do So ...................................... 21

III. The District Court Erred When It Held That Appellants Did Not Plead a Viable First Amendment Claim ........................................................... 22

A. AB 893 Restricts Protected Expression ........................................ 23

B. The Fairgrounds Is a Public Forum ............................................. 28

C. AB 893 Is Content Based and Viewpoint Discriminatory ...................... 28

D. AB 893 Cannot Survive Any Form of Heightened Scrutiny .................. 31

IV. The District Court Erred When It Held That Appellants Did Not Plead a Viable Equal Protection Claim ............................................................ 37

V. If This Court Reverses the Dismissal of Appellants' Federal Claims, It Should Also Revive their State-law Claims ........................................................ 38

Conclusion ..................................................................................... 38

iv

# TABLE OF AUTHORITIES

**Page(s)**

*Andrews v. State,*
  50 Tenn. 165 (1871) ...............................................................18, 20, 36

*Ark. Writers' Project v. Ragland,*
  481 U.S. 221 (1987) ...................................................................... 29

*Ass'n of Firearms Retailers v. City of Chicago,*
  961 F. Supp. 2d 928 (N.D. Ill. 2014) ..................................... 19

*B&L Productions, Inc. v. 22nd Dist. Agric. Ass'n,*
  394 F. Supp. 3d 1226 (S.D. Cal. 2019) ................................... 7

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) ........................................................................ 31

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................... 19

*Cal. Med. Ass'n v. FEC,*
  453 U.S. 182 (1981) ...................................................................... 31

*Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n,*
  447 U.S. 557 (1980) ...................................................................... 32

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
  __U.S.__, 142 S. Ct. 1464 (2022) ......................................... 29

*Cleburne v. Cleburne Living Ctr., Inc.,*
  472 U.S. 432 (1985) ...................................................................... 23

*Cooper v. Aaron,*
  358 U.S. 1 (1958) .......................................................................... 26

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
  473 U.S. 788 (1985) ...............................................................22, 23

v

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .................................................................. 14, 16, 18, 36

*Doe v. United States,*
    419 F.3d 1058 (9th Cir. 2005) ........................................................ 27, 32

*Duncan v. Becerra,*
    970 F.3d 1133 (9th Cir. 2020) ............................................................... 18

*Edwards v. City of Coeur D'Alene,*
    262 F.3d 856 (9th Cir. 2001) .................................................................. 36

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ............................................................. 19, 20

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ............................................................................... 36

*Grosjean v. Am. Press Co.,*
    297 U.S. 233 (1936) ............................................................................... 37

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ............................................................................... 32

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) ............................................................................... 29

*Hernandez v. Garland,*
    47 F.4th 908 (9th Cir. 2022) ................................................................. 20

*Hunt v. City of Los Angeles,*
    601 F. Supp. 2d 1158 (C.D. Cal. 2009) ................................................ 26

*Hustler Mag. v. Falwell,*
    485 U.S. 46 (1988) ................................................................................. 22

*Jackson v. City & Cnty. of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) ................................................................. 18

*Konigsberg v. State Bar of Cal.,*
    366 U.S. 36 (1961) ................................................................................. 17

*Kuba v. 1-A Agric. Ass'n*,
    387 F.3d 850 (9th Cir. 2004).................................................................. 32

*Lorillard Tobacco v. Reilly*,
    533 U.S. 525 (2001)............................................................................ 32

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)..................................................................... 14, 16

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003)............................................................... 20

*Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983)............................................................................ 37

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    15 F.4th 885 (9th Cir. 2021) ............................................................... 16

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    __ U.S. __, 142 S. Ct. 2111 (2022)..................................................... 8

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449 (1959)............................................................................ 22

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012)....................................................... 14, 15

*Nordyke v. Santa Clara Cnty.*
    110 F.3d 707 (9th Cir. 1997).......................................................*passim*

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
    460 U.S. 37 (1983).............................................................................. 28

*Police Dep't of Chic. v. Mosley*,
    408 U.S. 92 (1972).............................................................................. 28

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003)............................................................... 16

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)............................................................................ 31

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ...................................................................... 28, 29, 31

*Romer v. Evans,*
    517 U.S. 620 (1996) ................................................................................. 37

*Se. Promos., Ltd. v. Conrad,*
    420 U.S. 546 (1975) ................................................................................. 31

*Sorrell v. IMS Health, Inc.,*
    564 U.S. 552 (2011) ................................................................................. 31

*Teixeira v. Cnty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) ........................................ 10, 16, 18, 19, 20

*Texas v. Johnson,*
    491 U.S. 397 (1989) ................................................................................. 25

*United States v. Alvarez,*
    567 U.S. 709 (2012) ................................................................................. 25

**Statutes**

18 U.S.C. § 922 .............................................................................................. 3

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. § 1331 ............................................................................................ 1

28 U.S.C. § 1343 ............................................................................................ 1

28 U.S.C. § 1367 .......................................................................................... 38

42 U.S.C. § 1983 ............................................................................................ 1

Cal. Food & Agric. Code § 4158 ................................................................. 4

Cal. Penal Code § 27200 ........................................................................... 2, 4

Cal. Penal Code §§ 27200-27415 .................................................................. 2

Cal. Penal Code § 27205 ............................................................................... 2

Cal. Penal Code § 27310 ..................................................................... 3

**Rules**

Fed. R. App. P. 3 ............................................................................. 1

Fed. R. App. P. 4 ............................................................................. 1

Fed. R. Civ. P. 8 ............................................................................ 16

Fed. R. Civ. P. 12 ............................................................ 15, 16, 32, 35, 36

**Other Authorities**

First Amended Complaint,
   *B&L Prods. v. 22nd Dist. Agric. Ass'n*, No. 22-cv-1518
   (C.D. Cal. Nov. 14, 2022) (ECF No. 19) .......................................... 11

Order for Additional Supplemental Briefing Re: Plaintiffs' Motion for Preliminary
   Injunction, *B&L Prods.*, 22-cv-1518 (C.D. Cal. Feb. 1, 2023) (ECF No. 28) .. 12

Plaintiffs' Motion for Preliminary Injunction,
   *B&L Prods. v. 22nd Dist. Agric. Ass'n*, No. 22-cv-1518
   (C.D. Cal. No. 16, 2022) (ECF No. 21). .......................................... 11

Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Preliminary
   Injunction, *B&L Prods. v. 22nd Dist. Agric. Ass'n*, No. 22-cv-1518
   (C.D. Cal. Jan. 27, 2023) (ECF No. 27). .......................................... 11

State Defendants' Supplemental Brief in Opposition to Motion for Preliminary
   Injunction, *B&L Prods. v. 22nd Dist. Agric. Ass'n*, No. 22-cv-1518
   (C.D. Cal. Jan. 27, 2023) (ECF No. 26). .......................................... 11

## JURISDICTIONAL STATEMENT

Because this suit arises under the Constitution and laws of the United States, the district court had original jurisdiction under 28 U.S.C. § 1331. 2-ER-64. Because this is a 42 U.S.C. § 1983 action, brought to redress the deprivation of constitutional rights under the color of law, the lower court also had jurisdiction under 28 U.S.C. § 1343(a)(3). 2-ER-64-65.

After granting Defendants-Appellees' motion to dismiss the first amended complaint, the district court granted entered judgment for Defendants-Appellees' on April 11, 2023. 1-ER-2. Appellants filed a timely notice of appeal on May 9, 2023, 2-ER-33-37, according to Federal Rules of Appellate Procedure 3 and 4 and Ninth Circuit Rules 3-1–3-3.

Under 28 U.S.C. § 1291, this Court has jurisdiction over this appeal of the final judgment of the Southern District of California.

## STATEMENT REGARDING ADDENDUM

An addendum reproducing relevant constitutional and statutory provisions is bound with this brief.

## STATEMENT OF THE ISSUES PRESENTED

1.      The plain text of the Second Amendment protects a right to engage in commerce related to the right to keep and bear arms. Under *Bruen*, the government must prove that a ban on such commerce on public property that is open to all other lawful commerce is part of an enduring historical tradition. Did the district court wrongly dismiss Appellants' Second Amendment claim without conducting any historical analysis?

1

2.      The First Amendment limits the government's power to restrict speech based on its content or viewpoint—especially in public forums. By restricting all firearm and ammunition sales at the state-owned Fairgrounds, California effectively bans gun shows on the property and all speech that takes place at those events. Appellants allege the state's intent was to squelch pro-gun speech. Did the lower court err when it held that Appellants did not state viable First Amendment claims?

3.      Laws restricting speech based on its viewpoint and those steeped in animus violate the Equal Protection Clause. Appellants alleged that California's ban on gun shows is both viewpoint discriminatory and motivated by animus for pro-gun speech. Do the allegations in Appellants' complaint state a claim that California's gun show ban violates the right to equal protection?

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

### A.    Regulation of Gun Shows in California

California has one of the most rigorous regulatory regimes for commerce in firearms and ammunition in the United States. That is, perhaps, most true for the sale of such products at gun shows, where laws regulating commerce in firearms are in many ways at their strictest. *See, e.g.*, Cal. Penal Code §§ 27200-27415 (which includes the Gun Show Enforcement and Security Act of 2000). For example, California law requires that event promoters provide law enforcement with a complete list of all firearm retailer vendors. Cal. Penal Code §§ 27205, 27220. The same law mandates minimum insurance coverage, *id.* § 27200, and even dictates what written warnings

must be posted throughout the venue, *id.* § 27240(a). In short, California gun show laws cover all manner of conduct at these events. *See* Addendum (for a more complete list of the myriad state laws regulating gun shows).

These gun-show-specific regulations are on top of California's myriad laws governing the lawful sale of firearms and ammunition at permanent retail locations in the state—laws that apply with equal force to transactions initiated at gun shows. Cal. Penal Code § 27310. To be clear, no law that applies to the lawful sale of firearms or ammunition at brick-and-mortar gun stores is excused at gun shows. Firearm purchasers at gun shows are subject to the same background checks, *id.* § 28215, the same 10-day waiting period, *id.* § 26815(a), the same proof of residency requirement, 18 U.S.C. § 922(a)(3), (b)(3), *the same everything*.

Importantly, no firearm transfer may lawfully take place at any gun show absent narrow exceptions applicable only to law enforcement. Licensed dealers may begin the commercial process onsite (i.e., engage in the speech associated with an offer-acceptance-consideration), but to complete the transaction, purchasers must pick up their firearm offsite after all prerequisites for the sale have been met.[1] In short, there is no "gun show loophole" in California.

Even with this comprehensive regulatory regime in place, on October 11, 2019, Governor Gavin Newsom signed Assembly Bill 893 ("AB 893"), amending the

---

[1] Cal. Penal Code § 27310 (requiring all firearm transfers at gun shows to comply with state and federal law); *id.* § 26805 (prohibiting the sale and transfer of a firearm by a licensed dealer at any location other than the dealer's licensed premises but allowing dealer to prepare documents at a gun show); *id.* § 27545 (requiring all transactions to be processed through a licensed dealer).

3

California Food & Agricultural Code to add section 4158,[2] restricting commerce in arms (and the speech attendant to it) on all property constituting the Del Mar Fairgrounds ("the Fairgrounds"). 2-ER-100-101. AB 893 forbids anyone to "contract for, authorize, or allow the sale of any firearm or ammunition on the property or in the buildings that comprise the… [Fairgrounds]." 2-ER-95, 252. The law took effect on January 1, 2021. 2-ER-253.

The legislative history of AB 893 makes clear that it was intended to end gun shows at the Fairgrounds by banning the buying and selling of firearms, ammunition, and firearm parts on the state-owned property of the Fairgrounds. 2-ER-161-63, 166-177, 250-53; *see also* 2-ER-258 (legislative bill analysis claiming that "this bill would effectively terminate the possibility for future gun shows at the" Fairgrounds). Banning gun shows has long been the goal of anti-gun politicians and lobbyists who disingenuously claim they believe it is wrong for the state to benefit from the sale of firearms. 2-ER-162. Essentially, even though AB 893 does not expressly state that the law "bans" gun shows, that is what it does. Indeed, Appellant Crossroads has been unable to schedule or host a gun show at the Fairgrounds since the law took effect. 2-ER-174-175.[3]

---

[2] For ease of reference, Appellants refer to both AB 893 and section 4158 as "AB 893."

[3] California has not amended or repealed its "Gun Show Enforcement and Security Act of 2000," Cal. Penal Code §§ 27200, *et seq.*, which was specifically intended to make gun shows at least as, if not safer than, firearm transactions at brick-and-mortar stores. This, of course, means that gun shows are still technically lawful in California—*but only if* they take place on private property.

**B.    The Gun Show Experience**

Gun show events are like modern bazaars—conventions of people who meet in a public forum set aside by the government for all manner of speech and lawful commerce. 2-ER-156. Gun shows include the exchange of products, ideas, knowledge, services, education, entertainment, and recreation. 2-ER-156-57. At gun shows, like-minded people come together to explore lawful uses of firearms, including self-defense, hunting, target shooting, safety training, gunsmithing, and appreciation of firearms. 2-ER-156-58. Organizations share information, speakers give lectures, trainers hold classes, and patrons discuss gun rights. 2-ER-156. Candidates for office even attend to discuss politics, government, and law with their constituents. 2-ER-156. Gun shows blend the First and Second Amendment into a unique gathering saturated with constitutional significance.

In short, gun shows are a celebration of America's "gun culture," an essential outgrowth of the rights that flow from the Second Amendment. 2-ER-156-58. Participating in that culture is one of the primary reasons people attend gun shows. 2-ER-158. Without the anchor of commerce in firearms and related products at these shows, however, patronage will dwindle, and the events will disappear. 2-ER-158. Many (maybe most) of the people who attend gun shows are there to engage in commerce with experienced firearm retailers that they often cannot access elsewhere. 2-ER-158. Thus, vendors that sell firearms and related products are the backbone of the gun show business model. If licensed retailers cannot lawfully sell their products at these events, there is little financial incentive for them to attend. 2-ER-158.

5

### C.    The Del Mar Fairgrounds and the Crossroads Gun Show

The state of California owns the Fairgrounds. 2-ER-158, 200. California vests authority to manage the Fairgrounds with Appellee DAA. 2-ER-158, 200. Appellant Karen Ross, the Secretary of the Department of Food & Agriculture, directly oversees the operation of the DAA. 2-ER-159. To that end, the Department maintains policies for operating all DAAs in California, including the use of the Fairgrounds by the public to host small and large-scale events, including conventions, expos, concerts, festivals, and trade shows. 2-ER-159. The Fairground's size and location make it a unique facility—with no other comparable venue in the area. 2-ER-159. Many public groups thus use the Fairgrounds to host large, expressive events, including concerts, festivals, and trade shows. 2-ER-159-60. Appellee DAA actively promotes such use by the public. 2-ER-159-60.

Appellant B&L Productions, Inc. ("Crossroads") has operated popular, safe, legal, and family-friendly gun show events in California for over 30 years. 2-ER-135, 137. It has long produced events at the Fairgrounds where like-minded people, including the individual and vendor appellants, gather to engage in lawful speech and commerce necessary for the exercise of the Second Amendment, as well as other forms of political, educational, and commercial speech. 2-ER-135-44, 156-58. Gun show vendors are often the same licensed vendors that have brick-and-mortar stores in the community, operate legally over the internet, and are registered with the state as lawful businesses. 2-ER-140, 142, 155. They sell legal products and enjoy attending gun shows so they can interact with customers in an open and robust marketplace. 2-ER-140-42, 155-56.

## II.  PROCEDURAL HISTORY

Because the law effectively bans gun shows at the Fairgrounds, Appellant Crossroads, a gun show promoter, along with several individuals, organizations, and gun show vendors, sued in the Southern District of California. 3-ER-510. They challenged the law as a violation of the First Amendment rights to free speech, association, and assembly, as well as the right to equal protection under the law. 3-ER-510-511, 550-60. They also brought three supplemental state-law claims against the DAA, as well as Governor Newsom, Attorney General Bonta, and Secretary Ross, in their individual capacities. 3-ER-511, 561-64.

Plaintiffs-Appellants also filed a Notice of Related Case reminding the court of its recent decision in *B&L Productions, Inc. v. 22nd District Agricultural Ass'n ("B&L I")*, 394 F. Supp. 3d 1226 (S.D. Cal. 2019). Pls.' Ntc. Rel. Cases (Oct. 4, 2021) (ECF No. 2). In *B&L I*, the district court enjoined the DAA's moratorium on gun shows at the Fairgrounds, holding that the plaintiffs were likely to succeed on the merits of their First Amendment and equal protection claims. 394 F. Supp. 3d at 1250.[4] Defendants-Appellees did not respond to the notice of related cases. But the district court did not exercise its discretion to formally relate the cases—even though both cases involved attempts to ban gun shows at the Fairgrounds and even though both cases raised nearly identical constitutional questions about free speech and equal protection.

In January 2022, the Defendants-Appellees moved to dismiss all claims against

---

[4] In response to the preliminary injunction ruling, the DAA ceded, and the parties settled. The DAA agreed to lift the moratorium and paid damages to Crossroads for profits lost during the period that it unlawfully banned gun shows at the Fairgrounds. Parties' Joint Notice of Settlement and Motion for Dismissal, *B&L I*, No. 19-cv-00134 (Apr. 30, 2020) (ECF No. 44).

all defendants, raising various immunities and arguing that Plaintiffs-Appellants had failed to state viable constitutional claims. State Defs.' Mot. Dismiss (Jan. 24, 2022) (ECF No. 17-1); Cnty. Defs.' Mot. Dismiss (Jan. 24, 2022) (ECF No. 20-1).[5] The parties fully briefed the matter, and the court took the motion under submission without oral argument on March 25, 2022.

On August 18, 2022, the district court granted Defendants-Appellees' first motion to dismiss—dismissing some claims with prejudice and granting leave to amend others. 1-ER-15. Hoping to cure the perceived deficiencies of the claims that were dismissed without prejudice, Plaintiffs-Appellants filed their First Amended Complaint on August 31, 2022. Because the Supreme Court had just issued its landmark Second Amendment decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022), earlier that summer, Plaintiffs-Appellants also added a related claim under the Second Amendment. 2-ER-133–3-ER509.

Again, Defendants-Appellees moved to dismiss, arguing that the amended complaint still failed to state any viable constitutional claim. After briefing was complete, Plaintiffs-Appellants notified the court that the Central District had ordered the submission of supplemental briefing and evidence on a nearly identical Second

---

[5] Defendants San Diego District Attorney Summer Stephan and County Counsel Lonnie Eldridge ("County Defendants") joined the arguments of Defendants Newsom, Bonta, Ross, and DAA ("State Defendants"). The County Defendants wrote separately, however, to argue for the dismissal of Defendant Eldridge because San Diego County Counsel does not have the authority to enforce AB 893. Cnty. Defs.' Mot. Dismiss (Jan. 24, 2022) (ECF 20-1). Plaintiffs-Appellants did not oppose the dismissal of Defendant Eldridge, and the court dismissed him from suit. Pls.' Jt. Opp'n to State & Cnty. Mots. Dismiss (Feb. 24, 2022) (ECF No. 28); 1-ER-11-12.

Amendment claim. 2-ER-42-57. But again, the court below dismissed the complaint without oral argument. 1-ER-3.

Having allowed Plaintiffs-Appellants to amend their First Amendment and equal protection claims after the first motion to dismiss was granted, the district court dismissed those claims without further leave to amend. 1-ER-9, 13. Because the Second Amendment claim was not at issue in the first motion to dismiss, however, the court gave them a chance to amend that claim. 1-ER-11. Plaintiffs-Appellants opted not to amend because there were no factual allegations that they could add to their already well-plead facts that would address the concerns raised in the court's order of dismissal. 2-ER-38-39.

The district court thus entered judgment for Defendants-Appellees on April 11, 2023. 1-ER-2. Plaintiffs-Appellants appealed on May 9, 2023. 2-ER-33-37.

## III. THE DECISION ON APPEAL

In rejecting Plaintiffs-Appellants' First Amendment claims, the district court relied on *Nordyke* to explain that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." 1-ER-8 (quoting *Nordyke v. Santa Clara Cnty.* ("*Nordyke 1997*"), 110 F.3d 707, 710 (9th Cir. 1997)). Because, in the court's view, AB 893 restricts only the exchange of money for firearms, ammunition, or firearm parts at the Fairgrounds, the court held that there was no First Amendment violation. 1-ER-8. The court also summarily dismissed Plaintiffs-Appellants' allegations that banning the commercial sale of firearms, ammunition, and firearm parts at the Fairgrounds effectively bans gun shows at the venue altogether. 1-ER-8.

As to the Second Amendment claim, the district court ruled that because Plaintiffs-Appellants' ability to acquire or purchase firearms was not entirely eliminated, they had no valid claim. 1-ER-10-11. The district court's summary of *Bruen* did not include the Supreme Court's repeated warnings against lower courts engaging in interest balancing, so it is unclear if the district court considered that before insisting that a complete destruction of the right to acquire firearms was necessary to state a valid Second Amendment claim. *See* 1-ER-9-10. It was clear, however, that the district court relied largely on *Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017), a case that preceded *Bruen* and engaged in the now-abrogated interest-balancing approach to rule that "gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained," *id.* at 680.

Finally, as to the equal protection claim, the district court ruled that Plaintiffs-Appellants "failed to allege any facts showing that impermissible animus and viewpoint discrimination prompted the enactment of AB 893." 1-ER-12. Further, in the district court's view, they "did not allege membership in a protected class or contend that Defendants' conduct burdened any fundamental right other than their right to free speech." 1-ER-12. Having found no First Amendment violation, the court bootstrapped a dismissal of the equal protection claim. 1-ER-12-13.

## IV.   RELATED CASE

While this case was being litigated in the district court, California adopted Senate Bill 264, a similar law that bars sales of firearms, ammunition, and firearm parts on any property or in any building that makes up the Orange County Fair & Events Center. Complaint ¶ 5, *B&L Prods., Inc., v. Newsom*, No. 22-cv-1518 (C.D. Cal. Aug.

10

12, 2022) (ECF No.1). Soon after that, the legislature adopted Senate Bill 915, a law that expands the ban *to all state property*. First Amended Complaint ¶ 5, *B&L Prods.*, No. 22-cv-1518 (C.D. Cal. Nov. 14, 2022) (ECF No. 19).

Appellant Crossroads, along with several individuals, organizations, and gun show vendors, sued in the Central District of California, alleging that both SB 264 and SB 915 violate the First Amendment, Second Amendment, and Equal Protection Clause. *Id.* This second lawsuit has virtually identical facts to the appeal before this Court, but unlike this appeal, it includes a challenge to the statewide ban.

Pending in the Central District matter is the plaintiffs' motion for a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction, *B&L Prods.*, No. 22-cv-1518 (C.D. Cal. No. 16, 2022) (ECF No. 21). After the motion was fully briefed, at the request of the state, the Honorable Judge John W. Holcomb ordered the parties to submit supplemental briefing on the plaintiffs' Second Amendment claim. Order for Supplemental Briefing Re: Plaintiffs' Motion for Preliminary Injunction, *B&L Prods.*, No. 22-cv-1518 (C.D. Cal. Jan. 6, 2023) (ECF No. 25). Under the court's order, the parties filed simultaneous briefs on January 27, 2023. State Defendants' Supplemental Brief in Opposition to Motion for Preliminary Injunction, *B&L Prods.*, No. 22-cv-1518 (C.D. Cal. Jan. 27, 2023) (ECF No. 26); Plaintiffs' Court-Ordered Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Injunction, *B&L Prods.*, No. 22-cv-1518 (C.D. Cal. Jan. 27, 2023) (ECF No. 27).

After reviewing the parties' submissions, Judge Holcomb issued a second order for additional briefing on the Second Amendment claim—this time requiring the state defendants to file an initial brief by February 24, 2023, then for the plaintiffs to file a

response by March 10, 2023, and finally for the defendants to reply by March 24, 2023. Order for Additional Supplemental Briefing Re: Plaintiffs' Motion for Preliminary Injunction, *B&L Prods.*, 22-cv-1518 (C.D. Cal. Feb. 1, 2023) (ECF No. 28). After this second round of supplemental briefing, a full hearing on the motion was held, and the court took the matter under submission. As of the time of filing this brief, that motion is still pending.

All this suggests that Judge Holcomb has, at minimum, found legally sufficient grounds to adjudicate the plaintiffs' factual allegations—rather than summarily denying the motion for preliminary injunction. That proceeding is still pending, and it may yet be reviewed by this Court under the appropriate standard of review with a more well-developed body of evidence. But with essentially the same facts pleaded in both cases, it is notable that two different district court judges in the same circuit seem to have reached opposite conclusions about the legal sufficiency of Appellants' factual allegations—at least with respect to the Second Amendment.

## SUMMARY OF ARGUMENT

A gun show is a public gathering where people assemble and engage in lawful expressive activity. Anyone can attend, though minors must come with an adult. Thousands of these shows take place in towns throughout the United States, in American Legion halls, public auditoriums, fairground exposition halls, and vacant commercial buildings. At these events, licensed gun dealers—who must comply with all state and federal gun laws—display and sell firearm-related products. They are the anchor and main attraction of gun shows. Other vendors sell historical pieces, rare coins, military memorabilia, jewelry, home décor, camping equipment, fudge, jerky,

and books. Still other vendors market services like gunsmithing, self-defense courses, and guided hunting trips. Second Amendment commerce may be the main attraction, but patrons are also there to engage in speech about firearms, the preservation of their rights, and to enjoy the fellowship of like-minded people.

California objects to these traditional and long-standing commercial and cultural events—in which the Second Amendment plays a central role—taking place on public property. To that end, California has recently enacted several laws banning any event on state-owned properties if firearms, ammunition, or "firearm precursor parts" are to be sold. The stated purpose and actual effect of these laws is to ban gun shows on state-owned property.

But the government cannot establish that its ban is necessary to stop a known safety problem. There is no evidence that California's gun shows—already *more* heavily regulated than other avenues for firearm sales—pose some unique threat to public safety. California has identified no other compelling interest that might justify its ban. Nor has it identified an enduring American tradition of restricting the sales of legal arms on public property. Instead, the legislative history reveals the legislators' bare desire to make a symbolic value statement about guns and gun shows and to get California out of the business of profiting from such events. In short, California's animus for Appellants, their commerce in lawful products, and the cultural aspects of these events is the not-so-hidden motivation behind California's action.

We have been here before. Gun show litigation has been kicking around the Ninth Circuit for nearly 30 years. In 1995, Santa Clara County tried to ban gun shows at its fairgrounds by using a lease provision to ban the sale—but not the possession—

of firearms at that facility. In response, the Ninth Circuit held that a ban on the "sale" of firearms at a public fairground was overbroad because it abridged commercial speech associated with the sale of lawful products. *Nordyke 1997*, 110 F.3d at 713.

In 1999, Alameda County switched pretexts by banning the possession of guns—but not gun sales—at gun shows. Then after more than a decade of litigation, the county reversed its interpretation of its own ordinance to allow the possession of "properly secured" guns as commercial products at gun shows. *Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012). All of this occurred around the time that the Supreme Court was handing down its first authoritative analyses of the Second Amendment, affirming its place in our constitutional constellation as a fundamental right deserving of the same demanding judicial oversight as the rest of the Bill of Rights. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

Still, California lawmakers resumed their crusade against gun shows in 2018, when the DAA, at the urging of Governor Newsom, imposed a moratorium on gun shows at the Del Mar Fairgrounds. That gun show ban was handily rejected by the Southern District on First Amendment and equal protection grounds. *B&L I*, 394 F. Supp. 3d at 1249. A few short years later, the Supreme Court in *Bruen*, 142 S. Ct at 2156, confirmed that "the right to keep and bear arms" includes the right to possess them in public for lawful purposes. *Bruen* also made it clear that the government cannot ban the possession of firearms in public unless such a restriction is firmly rooted in an enduring historical tradition of similar laws. *Id.* at 2134-35. Since firearms are still lawful (constitutionally protected) products, the commercial speech associated

with their sale cannot be banned either. *Nordyke 1997*, 110 F.3d 707. So the analysis of Appellants' claims can begin and end with what is already settled law in this Circuit.

In short, because AB 893 forbids anyone to "contract for, authorize, or allow the *sale* of any firearm or ammunition" at the Fairgrounds—a restriction applicable only to commercial speech about such products—AB 893 is virtually identical to the county's unconstitutional restriction in *Nordyke 1997* (sales ban). And because *Bruen* affirms the result (if not the reasoning) of *Nordyke v. King* (possession ban), the government has no constitutionally valid justification for banning these activities at otherwise lawful gun shows.

This has not prevented California from concocting frivolous legislation intended to ban gun shows at venues that are open to the public for all other forms of lawful commerce and peaceful assembly. The government even admitted below that Appellants' complaint makes the plain language claim that a ban on gun sales at gun shows is, in fact, an indirect ban on gun shows themselves. If Appellants can prove only this fact, it supports their claims that AB 893 violates their rights under the First and Second Amendments, and the Equal Protection Clause.

The district court's dismissal of the First Amended Complaint was an error that must be reviewed de novo. This Court should reverse.

## ARGUMENT

## I.  STANDARD OF REVIEW

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of

Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, plaintiffs need provide only "a short and plain statement" showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2). At this stage, courts must construe the complaint "in the light most favorable to the plaintiffs, taking all allegations as true, and drawing all reasonable inferences from the complaint in [their] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

A district court's decision to grant or deny a motion to dismiss under Rule 12(b)(6) for failure to state a claim is reviewed de novo. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (reviewing de novo an order granting a motion to dismiss for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6)).

## II. THE DISTRICT COURT ERRED WHEN IT HELD THAT APPELLANTS DID NOT PLEAD A VIABLE SECOND AMENDMENT CLAIM

The Second Amendment protects an individual, fundamental right to keep and bear arms that state and local governments are bound to respect. *Heller*, 554 U.S. 570; *McDonald*, 561 U.S. 742. While the appropriate framework for analyzing restrictions on commerce in arms might not have been settled when this Court decided *Teixeira v. County of Alameda* (upholding a zoning ordinance that barred a new gun store from opening because the law did not "meaningfully restrict[]" the ability to acquire firearms, 873 F.3d at 678), there is no longer any room for debate. In *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court was crystal clear that courts may not subject Second Amendment claims to multi-step, interest-balancing tests like intermediate scrutiny. 142 S. Ct. at 2117-18.

Instead, the correct analysis begins and ends with an analysis of the Second Amendment's text and history. *Id.* at 2126-27. When faced with a Second Amendment challenge, courts must first ask if the "Amendment's plain text covers an individual's conduct." *Id.* at 2126. If it does, "the Constitution presumptively protects that conduct," and the government must affirmatively prove that the challenged law is "consistent with this Nation's historical tradition of firearm regulation." *Id.* Only if the government can meet that heavy burden "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126, 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Under this test, AB 893 is plainly unconstitutional. The district court, however, relied on the now-defunct analysis this Court employed in *Teixeira*, and it ignored its duty to consider whether AB 893 resembles any historical tradition of firearm restriction in this country. 1-ER-9-11. The district court thus erred when it dismissed Appellants' Second Amendment claim.

### A. The Plain Text of the Second Amendment Protects the Right to Engage in Lawful Commerce in Arms; The District Court Was Wrong to Require Appellants to Allege More

Under *Bruen*, the threshold question is whether "the Second Amendment's plain text covers [the] conduct" the law restricts. *Id.* at 2131. The answer here is obviously "yes." Appellants are law-abiding citizens seeking to buy and sell lawful firearms, ammunition, and related products at gun shows at the Fairgrounds—as they have done (safely and legally) for over three decades. The individual plaintiffs attend gun shows to buy firearms, ammunition, and related products. 2-ER-135, 138-40. The vendor appellants participate in gun shows to sell them. 2-ER-135, 141. And the

17

promoter appellant produces gun shows so that vendors and attendees may come together to engage in these lawful commercial transactions. 2-ER-135, 137-38. The operative complaint alleges these fundamental facts and, to survive a motion to dismiss, they need allege nothing more. Because Appellants' conduct comes within the "plain text" of the Second Amendment, the government bears the burden of proving that AB 893 reflects this Nation's history and tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2126. Contrary to the district court's holding, 1-ER-11, it is *not* Appellants' burden to prove they cannot buy or sell firearms elsewhere.

First, any argument that the purchase of firearms, ammunition, or firearm parts does not implicate the Second Amendment's plain text is not only unfaithful to *Bruen* but also offends well-established authority in the Ninth Circuit and beyond. Without question, acquiring arms is a predicate activity necessary to keeping and bearing them. That is why this Court has repeatedly held that the Second Amendment extends to the right to acquire the arms, ammunition, and accessories necessary for exercising Second Amendment rights. *See Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) (magazines over 10 rounds); *Teixeira*, 873 F.3d at 677-78 (discussing authorities acknowledging the right to acquire arms); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014) (hollow-point ammunition). This Court's authorities mirror *Heller*'s favorable citation to *Andrews v. State*, 50 Tenn. 165, 178 (1871), which similarly recognized that the "right of keep[ing] arms … necessarily involves the right to purchase and use them in such a way as is usual.…"

Even the district court recognized—as it must—that:

As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)); *see Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("[T]he right to keep and bear arms for self-defense under the Second Amendment ... must also include the right to acquire a firearm, although that acquisition right is far from absolute ....").

1-ER-10-11.

It is thus beyond dispute that AB 893 implicates the "plain text" of the Second Amendment—the individual right of "ordinary, law-abiding, adult citizens" to keep and bear arms. *Bruen*, 142 S. Ct. at 2129. Even so, the district court held that Appellants failed to allege "enough facts to state a claim to relief that is plausible on its face," 1-ER-11 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), because they had not made "a claim that AB 893 impedes [them] from acquiring or purchasing firearms or ammunition altogether, *amounting to a prohibition of that right*," 1-ER-11 (emphasis added). Under the Supreme Court's holding in *Bruen*, and contrary to the Ninth Circuit's holding in *Teixeira*, that is manifestly not Appellants' burden. The *Teixeira* test—balancing the burden of exercising a right in a different place against the government's proffered interest—was itself abrogated by *Bruen*. The district court's attempt to resuscitate it on this point is reversible error.

In *Teixeira*, this Court upheld a county zoning ordinance that effectively barred a gun store from opening in the county. 873 F.3d at 674-76, 690. The Court reasoned that (1) there is no "freestanding right" "to sell a firearm unconnected to the rights of citizens to 'keep and bear' arms," 873 F.3d at 686-87, and (2) the plaintiffs had not shown that the law "meaningfully restricted" the ability to acquire firearms, *id.* at 687.

But a balancing test, pitting a narrowly drawn "freestanding right" against judicially concocted "meaningful restrictions" without metric or measure is exactly the kind of standardless adjudication of Second Amendment rights that the *Bruen* Court took pains to condemn. *Id.* at 2127. In fact, *Bruen* explicitly rejected the two-step approach employed by this Court in *Teixeira*.

This Court should acknowledge that development and expressly overrule whatever remains of *Teixeira* to prevent its misapplication in future cases.[6] The only correct holding in that case was that the right to keep and bear arms "necessarily involves the right to purchase them." *Id.* at 678 (citing *Andrews*, 50 Tenn. at 178). The vestigial holding of *Teixeira* employed by the district court here—that exercising a fundamental right can be arbitrarily banned in one place if can be exercised in another—was wrong when it was decided. *See Ezell v. City of Chicago ("Ezell II")*, 846 F.3d 888 (7th Cir. 2017). *Bruen*'s rejection of rights-diluting balancing of interests and burdens makes that even more clear. The *Teixeira* dissent (and the original three-judge panel's decision in *Teixeira v. Cnty. of Alameda*, 822 F.3d 1047 (9th Cir. 2016)) now provide the analysis that best aligns with the Supreme Court's Second Amendment precedents. *See Teixeira*, 873 F.3d at 691-99 (Tallman & Bea, JJ., dissenting).

---

[6] The fact that *Teixeira* was decided en banc should not dissuade a three-judge panel from reconsidering its precedential value given the complete overhaul of Second Amendment jurisprudence announced in *Bruen*. "[T]he issues decided by the higher court need *not be identical* in order to be controlling. Rather, the [Supreme Court] must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (emphasis added), overruled in part on other grounds by *Hernandez v. Garland*, 47 F.4th 908 (9th Cir. 2022). *Teixeira* is clearly "irreconcilable" with *Bruen*'s flat rejection of its analytical underpinning.

In short, *Teixiera*'s application to this case is a phantom, even if some remnant of that case is still good law. It should be overruled, or at least its application to the facts alleged here reversed. Appellants have alleged that they have bought or sold firearms, ammunition, or firearm parts at gun shows at the Fairgrounds in the past and, but for the enforcement of AB 893, would do so again. 2-ER-135, 137-144. They also specifically allege that this conduct is a lawful exercise of their Second Amendment rights. They need provide no justification for exercising their fundamental rights; the burden is on the government to justify its infringement of those rights.

### B. The Government Cannot Prove That AB 893 Is Consistent With a Historical Tradition of Firearm Regulation; The District Was Wrong to Relieve the Government of Its Burden to Do So

Because the Second Amendment presumptively protects Appellants' right to acquire firearms, ammunition, and firearm parts, "the government must justify [AB 893] by demonstrating that [it is] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. To do so, it must "identify a well-established and representative historical analogue" to the regulation it seeks to defend. *Id.* at 2133. In other words, if the case were allowed to proceed, the government must prove that (1) AB 893 shares common features with historically analogous regulations from the Founding Era; (2) those analogous regulations were prevalent, not historical outliers; and (3) the modern regulation and the historical analogues are "relevantly similar"—that is, similar in both "how" they operated and "why" they were adopted. *Id.*

21

The government did not even try to meet this lofty burden in its motion to dismiss; likely because it cannot. Truly, it is hard to imagine how the government could show that AB 893 fits analogously among historical laws regulating the right to acquire common legal arms. Appellants know of no law dating back to the Founding that barred two people from simply uttering the words necessary to buy, sell, or trade firearms just because they are standing on public property. Appellants maintain that there is no "relevantly similar" historical tradition of prohibiting the acquisition of protected arms at public venues.

Regardless, the district court should have put the government to its burden under *Bruen*. It was reversible error for the district court to abandon its duty to do so.

## III.   THE DISTRICT COURT ERRED WHEN IT HELD THAT APPELLANTS DID NOT PLEAD A VIABLE FIRST AMENDMENT CLAIM

The First Amendment protects the right to free speech, religion, assembly, and the right to petition the government for redress of grievances. U.S. Const. amend. I. It embodies a national commitment to "robust political debate." *Hustler Mag. v. Falwell*, 485 U.S. 46, 51 (1988). "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as the [Supreme] Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1959). For that reason, modern First Amendment jurisprudence often merges the analysis for free speech with the rights of assembly and association.

When the government denies access to a public forum, courts apply First Amendment principles to the speech intended to take place at that forum. *Cornelius v.*

22

*NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). This requires courts to "identify the nature of the forum [in which one seeks to engage in expressive activity], because the extent to which the [g]overnment may limit access depends on whether the forum is public or nonpublic." *Id.* Courts must then "assess[es] whether the [government's] justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.*

Applying this analysis, AB 893 is unconstitutional. Yes, firearm sales take place at gun shows, but gun show promoters, vendors, and patrons also engage in all manner of protected expression related to the lawful use of firearms. 2-ER-135-44, 156-58. California's ban on commerce in arms at the Fairgrounds is a pretext to ban gun shows and constitutes content- and viewpoint-based censorship of the speech that takes place at such events. The government's animus for gun shows and for those who participate in the "gun culture" closes the loop and seals the fate of AB 893. *See Cleburne v. Cleburne Living Ctr., Inc.*, 472 U.S. 432 (1985).

## A. AB 893 Restricts Protected Expression

Gun shows bring people together to engage in all manner of protected speech. Attendees congregate to explore the lawful uses of firearms, including self-defense, hunting, target shooting, safety training, gunsmithing, and appreciation of firearms. Second Amendment groups share information, speakers give lectures, trainers hold classes, and participants engage others, including candidates for public office, in discussions about gun rights. 2-ER-156-58. All the while, retailers offer firearms, ammunition, and related products for sale. 2-ER-140-42, 158.

But this Court need not take Appellants' claim that gun shows are deeply expressive at face value. California's relentless pursuit to ban them is itself an inference that they are imbued with symbolic value by the state itself. Couple this with the public statements made by some defendants and other state actors, and the gun show's symbolic value evolves from inference to admission. *See, e.g.*, 2-ER-163, 168, 170-71, 174.

While AB 893 purports to ban only the sale of firearms, ammunition, and firearm parts, Appellants repeatedly alleged that the law's effect is to ban gun shows from the Fairgrounds altogether. 2-ER-172-177. And they alleged—with exhibits tending to show—that California intended this very result. 2-ER-172-174, 202, 204, 251-52, 256-58; 3-ER-380-82, 415-16. Having defended the DAA's direct ban on gun shows, the Attorney General knows that it was held to likely violate the First Amendment. *B&L I*, 394 F. Supp. 3d 1226. So California seeks to indirectly ban gun shows with a scheme to knock out the commercial cornerstone of gun shows, knowing that this would destroy the pro-Second Amendment cultural experience these events are known for.

The Assembly Public Safety Committee's analysis of AB 893, for instance, expressly admitted that the "bill would effectively terminate the possibility for future gun shows at the" Fairgrounds. 2-ER-173, 258. The Assembly Appropriations Committee similarly acknowledged that AB 893:

> [W]ould add a section to the Food and Agricultural Code that prohibits the sale of firearms and ammunitions at the Del Mar Fairgrounds. …*Therefore, this bill would effectively terminate the possibility for future gun shows at the Del Mar Fairgrounds.* On three prior occasions, former Governors Brown and Schwarzenegger vetoed

similar legislation to ban gun shows at the Cow Palace in San
Francisco.

2-ER-173 (emphasis added). What's more, DAA staff have refused to work with
Appellant Crossroads in good faith to schedule events in 2021 and beyond. 2-ER-174-
75. Gun shows have not taken place at the Fairgrounds since AB 893 took effect,
extinguishing not only the otherwise lawful sale of firearms, ammunition, and firearm
parts but also the varied political and educational speech that takes place at such
events. 2-ER-174-76.

In short, gun shows held in the public commons themselves convey a message,
and the intended audience understands that message. *Texas v. Johnson*, 491 U.S. 397
(1989). That message—in the face of California's droning assertions in AB 893 (and
just about everywhere else) that guns are bad—is that guns really are good. They
facilitate the exercise of a fundamental right to self-defense under the Second
Amendment. Just like books, religious symbols, and fellowship with like-minded
Americans, gun shows are entitled to the First Amendment protections that book
fairs, concerts, and revival meetings enjoy at state-owned venues open to the public.

The First Amendment protects the intended expression at Appellants' gun
shows because that expression is not obscene, defamatory, or fraudulent. No
Appellant has advocated imminent lawless action or solicited others to commit
crimes. There are no fighting words or true threats. None of the communications or
expressive activities at gun shows are among those unprotected classes of speech. *See
United States v. Alvarez*, 567 U.S. 709, 717 (2012).

To the contrary, gun shows promote lawful speech that ranges from purely
political to commercial—and it all pertains to the exercise and preservation of the

right to keep and bear arms. When "the sale of merchandise [is] inextricably intertwined with a religious, political, ideological, or philosophical message, [it] is fully protected by the First Amendment." *Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158, 1176 (C.D. Cal. 2009), *aff'd in part*, 638 F.3d 703 (9th Cir. 2011). This is the very business model of gun shows. Through AB 893, California targets Appellants' lawful business model to exclude their protected pro-gun speech from the Fairgrounds. This violates the First Amendment. Even evasive schemes that violate rights indirectly *still* violate rights. *See Cooper v. Aaron*, 358 U.S. 1, 16-17 (1958) ("[C]onstitutional rights … can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes.")

Yet, the district court rejected Appellants' First Amendment claims, holding that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." 1-ER-8 (quoting *Nordyke 1997*, 110 F.3d at 710). Because, the court held, AB 893 restricts only the exchange of money for firearms, ammunition, and firearm parts at the Fairgrounds, there is no First Amendment violation. 1-ER-8-9. The court also summarily dismissed Appellants' claims that banning the sale of arms at the Fairgrounds effectively bans gun shows (and the speech at such events) altogether. 1-ER-7-9. The district court erred thrice over.

It first erred by invoking dicta from *Nordyke 1997* for the proposition that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." 110 F.3d at 710. That cherry-picked quote was, of course, not the holding of *Nordyke 1997*. The *Nordyke* Court held that the *speech* associated with such a lawful commercial transaction actually *is* protected. *Id.* at 710. Try as they might,

neither the district court nor the state can strip a "sale" of the speech that takes place as part of any commercial transaction. Any attempt to do so is artifice; it is something that could only make sense in the pages of a legal brief unconnected to the reality of engaging in an in-person transaction.

Second, the district court's attempted syllogism is not based on the facts alleged. Paragraph 58 of the complaint is particularly on point:

> Except in narrow exceptions applicable only to law enforcement, *actual firearm transfers are already prohibited from taking place at any gun show in California*. The firearm sale can be started through an on-site licensed "transfer dealer," but it cannot be completed on site. Instead, purchasers must pick up their purchase at a licensed firearm retailer at a different licensed location—but only after a 10-day waiting period and background check. There is no "Gun Show Loophole" at gun shows operated in accordance with California Law.

2-ER-154 (emphasis added) (footnote omitted). By conflating sales with transfer—a distinction that California law goes out of its way to make—the district court assumes facts that are contradicted by the well-plead allegations of the complaint.

Compounding the first two errors, the district court flatly rejected Appellants' allegation that AB 893's very purpose was to ban gun shows, not just sales. It also apparently ignored the fact that Appellee DAA has refused to work with Crossroads to schedule and host events at the Fairgrounds, silencing the pro-gun message of gun show attendees altogether. 1-ER-8. On a motion to dismiss, this is reversible error. District courts are required to construe all allegations in the complaint in the light most favorable to the plaintiffs. *Doe*, 419 F.3d at 1062.

### B.      The Fairgrounds Is a Public Forum

The operative complaint alleges that the Fairgrounds is state-owned property maintained for public use. 2-ER-158-59. Its mission is "[t]o manage and promote a world-class, multi-use, *public assembly facility* with an emphasis on agriculture, education, entertainment, and recreation ... *for the benefit of all*." 2-ER-160 (emphasis added). The Fairgrounds thus plays host to "events and activities produced by third-party promoters, which range from concerts and festivals, trade shows and consumer expos, equestrian competitions and animal shows, sporting events, fundraisers and personal celebrations." 2-ER-160. And Appellee DAA actively promotes this public use of the property. 2-ER-159-60.

Having been "opened [by the government] for use by the public as a place for expressive activity," it is, at minimum, a "designated public forum." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also B&L I*, 394 F. Supp. 3d at 1246 (expressly holding that the Del Mar Fairgrounds is a public forum). In such forums, content-based speech prohibitions must survive strict scrutiny, meaning that they must be "necessary [and narrowly drawn] to serve a compelling state interest." *Perry*, 460 U.S. at 45-46.

### C.      AB 893 Is Content-based and Viewpoint-discriminatory

"[A]bove all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 95-96 (1972) (collecting cases). Government restrictions that selectively ban speech based on its "particular subject matter" or "its function or purpose" are "content-based regulations." *Reed v. Town of*

*Gilbert*, 576 U.S. 155, 163 (2015). Relatedly, "the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination'" known as viewpoint discrimination. *Id.* at 168. Content- and viewpoint-based speech restrictions are presumed invalid and subject to the highest judicial scrutiny. *Id.* Indeed, a finding that a government restriction on speech that is content- or viewpoint-based is often determinative. *See, e.g.*, *Ark. Writers' Project v. Ragland*, 481 U.S. 221, 231-32 (1987).

The Supreme Court recently revisited *Reed* (without overruling it) in *City of Austin v. Reagan National Advertising of Austin, LLC*, __U.S.__, 142 S. Ct. 1464 (2022). In a 5-4 opinion, the *Reagan* Court clarified that *Reed* does not stand for the broad holding that "*any* classification that considers function or purpose is *always* content based." *Id.* at 1474 (emphasis added). But it did not disturb the rule that the government may "not discriminate based on topic, subject matter, or viewpoint." *Id.* (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)) (double emphasis added). Even restrictions that appear to be content-neutral on their face can "present 'the potential for becoming a means of suppressing a particular point of view.'" *Id.* Driving this point home, the Supreme Court noted that its determination that "the City's ordinance is facially content neutral does not end the First Amendment inquiry. If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *Id.* at 1475-76 (citing *Reed*, 576 U.S. at 164).

Though AB 893 purports to ban only the sales of firearms, ammunition, and firearm parts (and the speech necessary to engage in that commercial activity), the

law's censorship is plainly content-based and viewpoint-discriminatory. AB 893 targets gun shows and the protected conduct that takes place at such events for banishment, while leaving virtually all other manner of expressive conduct untouched. California is plainly treating gun shows differently from other events, like auto shows, home shows, and beer and wine shows, allowing them to continue unabated. This strongly suggests that AB 893 is about animus for "gun culture" and not a genuine concern for public safety. Ultimately, California's allowance of virtually all legal events *except* gun shows is a corner it cannot walk itself out from.

Worse yet, the operative complaint repeatedly alleges that it was animus for gun shows and gun culture that drove the legislature to adopt AB 893. For instance, the complaint recalls Governor Newsom's 2018 letter of support for Appellee DAA's ill-fated gun show moratorium. 2-ER-171. Newsom wrote: "Permitting the sale of firearms and ammunition on state-owned property *only perpetuates America's gun culture* at a time when 73% of Californians support gun reform measures and 73% of California [sic] cite concern about the threat of mass shootings in our schools." 2-ER-171 (emphasis added). Assemblymember Gloria, AB 893's author, lamented that "California should not be profiting or benefitting from the sale of firearms" because it is *fundamentally wrong*. 2-ER-168, 256. And the city of Del Mar "unanimously" supported AB 893 because it apparently believes "the promotion and glorification of guns at the gun show are not consistent with our community values.'" 2-ER-170-71.[7]

_____

[7] The legislative history of SB 264 and SB 915, the two nearly identical gun show bans at issue in the pending Central District litigation, reflect similar sentiments. The bills' author, Senator Dave Min, testified before the Senate Public Safety Committee that SB 264 is "symbolic" and makes a statement that California does not endorse "our taxpayer venues being used to sell more guns in our communities." Sen.

In short, like the gun show moratorium at issue in *B&L I*, AB 893 goes "'beyond mere content discrimination, to actual viewpoint discrimination'" "because the speech at gun shows is likely to be predominantly, if not exclusively, favorable to guns and gun rights, '[i]n its practical operation.'" *B&L I*, 394 F. Supp. 3d at 1246 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992)). And when, as here, "the government targets not [just the] subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829. Normally, this conclusion is all but dispositive. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 571 (2011).[8]

## D.    AB 893 Cannot Survive Any Form of Heightened Scrutiny

Because AB 893 is a content-based restriction (and prior restraint) on protected speech in a public forum, it can stand *only* if it satisfies the most exacting standard of review. Under strict scrutiny, the government must prove that its restriction is narrowly tailored to further a compelling interest. *Reed*, 576 U.S. at 156. But even if the Court were to hold that AB 893 bans *only* commercial speech, the result is the same.[9] Commercial speech receives First Amendment protection if it is not misleading

---

Pub. Safety Committee Hrg., Mar. 16, 2021, at 4:12:59, available at https://tinyurl.com/senmin-3-16-21 (last accessed Aug. 10, 2023).

[8] Similarly, when a government refuses to allow some groups to use a designated public forum based on disapproval of the message, courts often consider the government action a "prior restraint" on free speech. *Se. Promos., Ltd. v. Conrad*, 420 U.S. 546 (1975). "Prior restraints" naturally abridge the freedom of speech and are thus "particularly suspect." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Only in the face of an acute government interest, and only when the limitation is no broader than necessary to achieve that interest, should the court uphold a prior restraint. *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 203 (1981).

[9] This assumes, of course, that the commercial speech doctrine will remain good law. As Justice Thomas has written, "there is no 'philosophical or historical basis

and concerns a lawful activity. *Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-64 (1980). Burdens on such speech are constitutional *only* if they directly advance a substantial government interest and are not broader than necessary to serve that interest. *Id.* at 564. AB 893 is *far* broader than necessary. It directly bans sales of all firearms, ammunition, and firearm parts—and the commercial speech necessarily associated with such sales—on public property instead of simply enforcing the many laws that regulate the sales of such products without restricting speech at all. This defies common sense and circuit precedent. *See, e.g.*, *Nordyke 1997*, 110 F.3d 707.

First, the government has no legally sufficient interest in restricting gun shows and the expressive conduct and association that takes place at them. A "compelling government interest" is an *actual interest* in addressing an *actual problem*. *See Grutter v. Bollinger*, 539 U.S. 306, 331-36 (2003). The government has claimed that AB 893 addresses public safety. But the government's interest must be authentic and sincerely invoked. "[M]erely invoking interests ... is insufficient. The government must also show that the proposed communicative activity endangers those interests." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 859 (9th Cir. 2004) (citation omitted). And because this is a review of a Rule 12 motion, this Court must accept as true the factual allegations of Appellants' complaint. *Doe*, 419 F.3d at 1062. The government's mere recital of

---

for asserting that "commercial" speech is of "lower value" than "noncommercial" speech.' Indeed," he continued, "I doubt whether it is even possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard Tobacco v. Reilly*, 533 U.S. 525, 574-575 (2001) (J. Thomas, concurring). Justice Thomas' comments on the commercial speech doctrine notwithstanding, when a law purports to restrict only commercial speech, but "discriminates[s] based on topic, subject matter, or viewpoint" in a public forum, strict scrutiny must still be applied. *Reagan*, 142 S. Ct. at 1474.

classic "substantial" interests does not outweigh Appellants' allegations and evidence of pretext for its real and improper interest—California's disdain for "gun culture" and those who participate in it at gun shows. That much is clear from the allegations of Appellants' complaint.

Even before California enacted AB 893, when activists set their sights on enacting a moratorium on gun shows at the Fairgrounds, Appellee DAA appointed a committee to "investigate" gun show events at the Fairgrounds. 2-ER-162. Appellee DAA communicated with other agencies to determine whether gun shows complied with state and federal law, and if the events pose any real danger to the community. 2-ER-162. The Fairground's Public Safety Director reported then that Crossroads' gun show "is in complete compliance with all the local, State and Federal laws that govern gun shows and that there have not been any violations of the law." 2-ER-163-64, 506. Ultimately, the DAA's lengthy process "resulted in no finding that allowing the (already heavily regulated) gun show events to continue at the [Fairgrounds] posed a definite or unique risk to public safety." 2-ER-164.

Yet AB 893 claims, without support, that "[g]un shows bring grave danger to a community" and that "dangerous incidents" have taken place at gun shows at the Fairgrounds, including "an official vendor accused of trafficking illegal firearms, sales of firearms to individuals registered in the Department of Justice Bureau of Firearms Armed Prohibited Persons System, and illegal importation of large-capacity magazines." 2-ER-167, 252. But AB 893 makes no effort to show that these incidents are any more likely to occur at gun shows in California, which are regulated at least as heavily as retailers operating out of brick-and-mortar stores.

AB 893 also claims that "between the years 2013 and 2017, the San Diego County Sheriff recorded 14 crimes" at gun shows at the Fairgrounds. 2-ER-167, 252. But even if California had proof of these crimes, AB 893 makes no attempt to compare this to the number of crimes recorded at other similarly sized events at the Fairgrounds during that period. 2-ER-167, 252. Nor does it distinguish between the type of crimes this bill purports to target (e.g., illegal transfers, straw purchases, sales of illegal firearms or accessories) and run-of-the-mill crimes likely to occur whenever thousands of people descend on one venue for a trade show or fair (e.g., petty thefts, parking or traffic violations, public drunkenness, simple assault). 2-ER-167, 252.

Instead, AB 893's legislative history reveals only general concerns about gun violence occurring all over the country and the legislators' beliefs that California should not profit from sales of firearms and ammunition. 2-ER-167, 255-59. For instance, a bill analysis cited a decade-old study from the Violence Prevention Research Program, identifying gun shows as a source of illegally trafficked firearms. 2-ER-167-68, 256-57. But neither that study nor AB 893's legislative history links any illegally trafficked firearm or gun used in crime to gun shows at the Fairgrounds (or any gun show in California). This is unsurprising because, as the study itself finds, "[m]uch of the concern about gun shows as a source of crime guns focuses on private party gun sales, since no background checks are conducted and no records are kept." 2-ER-168, 284. Such concerns are irrelevant in California where all private party transfers—*even those initiated at gun shows*—must be processed by a licensed firearm dealer and are subject to background checks and registration under state law. 2-ER-168-69.

The same VPRP study tries to implicate licensed retailers operating at gun shows as sources of crime guns in America, claiming that "30% of dealers with gun show sales, but 22% of all dealers, had previously had a crime gun traced to them." 2-ER-169, 285. But it expressly recognizes that "in California, where both gun shows themselves and gun commerce generally are regulated, *sales at gun shows are not a risk factor among licensed retailers for disproportionate sales of crime guns*." 2-ER-169, 285 (double emphasis added). Appellants could (and did) go on for pages establishing that the government's "evidence" that AB 893 serves some public safety interest is mere window dressing.

As discussed above, the government's "actual interest" was a politically motivated, animus-driven one. *See supra* Part III.C. This is perhaps best evidenced by Newsom's 2018 letter encouraging the DAA to ban gun shows. 2-ER-162-63. Or by Assemblymember Gloria's lament that it is "wrong" to profit from gun sales. 2-ER-168. Or by Del Mar's claim that gun shows are not "consistent with our community values." 2-ER-170-71. The allegations of the complaint are clear: California's "actual interest" was simply in banning gun shows—and the expressive activities that take place at them. This is not a legitimate public interest, let alone a compelling or significant one. If the government wants to contest those facts, the forum for doing so is a trial or summary judgment motion. Under Rule 12(b)(6), the district court erred by summarily rejecting Appellant's allegations of animus offhand.

That said, even if the government could show that AB 893 serves some public safety interest, it cannot prove that the law is sufficiently tailored to that end. To meet its burden, the government must target the exact wrong it seeks to remedy, and no

more. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."). In analyzing public safety regulations designed to mitigate concrete public safety concerns, *a ban is necessarily overbroad. See Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 863-66 (9th Cir. 2001). The ban at issue is especially egregious because Appellants have operated safe and legal gun shows as the Fairgrounds (and throughout California) for decades. 2-ER-163-64, 503-07 (Fairgrounds Chief of Security report finding that Crossroads' gun shows comply with all local, state, and federal laws). The events are largely incident-free, and there is no evidence that they create a unique risk to public safety. 2-ER-163-64, 503-07.

In any event, complete prohibition is disproportionate and unnecessarily restrictive of the First Amendment activities that take place at gun shows. Especially because such activities are the predicate for exercising fundamental civil rights. *See Heller*, 554 U.S. 770 (striking down handgun ban); *Bruen*, 142 S. Ct. 2111 (establishing historical standard of review and striking down ban on public carry of firearms for self-defense); *see also Andrews v. State*, 50 Tenn. at 178 (cited in *Heller*, 554 U.S. at 614, and consistent with *Bruen*, for the historical recognition that the "right [to] keep arms … necessarily involves the right to purchase and use them in such a way as is usual").

Because the government cannot meet its burden under the First Amendment under any level of scrutiny—and more importantly because the district court did not compel California to meet that burden on a Rule 12 motion to dismiss—Appellants' First Amendment challenge to AB 893 should have been allowed to proceed to

summary judgment or trial. The district court committed reversible error by truncating that process.

## IV. THE DISTRICT COURT ERRED WHEN IT HELD THAT APPELLANTS DID NOT PLEAD A VIABLE EQUAL PROTECTION CLAIM

Finally, because AB 893 singles out Appellants based on the content of their speech and the viewpoints they espouse, it violates not only their rights to free speech, assembly, and association, it *also* violates their rights under the Equal Protection Clause. U.S. Const. amend. XIV. The Supreme Court, long ago, recognized that *both* the Equal Protection Clause *and* the First Amendment forbid the government from granting "the use of a forum to people whose views it finds acceptable, but deny[ing] use to those wishing to express less favored or more controversial views." *Mosley*, 408 U.S. at 96. If unequal treatment occurs in the context of exercising a fundamental right, or if the government is motivated by animus toward a disfavored group, courts should apply heighted scrutiny. *See generally*, *Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936); *Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983); *Romer v. Evans*, 517 U.S. 620 (1996).

The operative complaint contains ample, legally sufficient allegations of California's animus toward Appellants and their activities. The district court's shallow analysis of Appellants' equal protection claim, related to exclusion from a public forum, fails to accord appropriate weight to those allegations. The gun show cultural experience is set forth at paragraphs 64 through 77. 2-ER-156-58. The public nature of the forum, Appellants' current exclusion from that venue, and previous attempts to exclude them, continues from paragraph 78 to paragraph 118. 2-ER-158-66. And the

animus directed at Crossroads' gun shows and its participants is alleged in paragraphs 119 through 143, which also reference multiple exhibits that are attached to the complaint and incorporated by reference. 2-ER-166-71.

The district court might not have been persuaded by the reams of evidence that Appellants proffered in support of their animus allegations, but on a motion to dismiss, the district court does not get to make that call by simply labelling the allegations "conclusory." 1-ER-12. Doing so was reversible error. Evidence of those allegations should either be tested by the court on summary judgment or by a jury after the record has been fully developed.

## V. IF THIS COURT REVERSES THE DISMISSAL OF APPELLANTS' FEDERAL CLAIMS, IT SHOULD ALSO REVIVE THEIR STATE-LAW CLAIMS

The district court's dismissal of Appellants' supplemental state-law claims hinges on the loss of federal jurisdiction because the court rejected each of Appellants' federal constitutional claims. 1-ER-13-14. If the Court allows even one federal claim to proceed, the federal court has supplemental jurisdiction to hear the state-law claims under 28 U.S.C. § 1367, and this Court should reinstate them.

## CONCLUSION

As has been shown, Appellants adequately plead their claims that AB 893 violates their rights to free speech, association, and assembly, to keep and bear arms, and to equal protection under the law. The district court erred when it granted the State and County Appellees' motions to dismiss and entered judgment in Appellees' favor. The Court should reverse and remand for further proceedings.

Dated: August 11, 2023              Respectfully submitted,

                                    MICHEL & ASSOCIATES, P.C.

                                    s/ Anna M. Barvir
                                    _____
                                     Anna M. Barvir
                                    *Attorneys for Plaintiffs-Appellants B&L*
                                    *Productions, Inc., dba Crossroads of the West;*
                                    *Barry Bardack; Ronald J. Diaz, Sr.; John Dupree;*
                                    *Christopher Irick; Robert Solis; Lawrence Michael*
                                    *Walsh; Captain Jon's Lockers, LLC; L.A.X.*
                                    *Firing Range, Inc., dba LAX Ammo; California*
                                    *Rifle & Pistol Association, Inc.; South Bay Rod*
                                    *and Gun Club, Inc.*

Date: August 11, 2023               LAW OFFICES OF DONALD KILMER, APC.

                                    s/ Donald Kilmer
                                    _____
                                    Donald Kilmer
                                    *Attorney for Plaintiff-Appellant Second*
                                    *Amendment Foundation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 23-55431

The undersigned attorney or self-represented party states the following:

(•) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Anna M. Barvir        **Date** | Aug 11, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**      *New 12/01/2018*

# CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, an electronic PDF of APPELLANTS'

OPENING BRIEF was uploaded to the Court's CM/ECF system, which will

automatically generate and send by electronic mail a Notice of Docket Activity to all

registered attorneys participating in the case. Such notice constitutes service on those

registered attorneys.


Dated: August 11, 2023                    Respectfully submitted,

                                          MICHEL & ASSOCIATES, P.C.

                                          s/ Anna M. Barvir
                                          Anna M. Barvir
                                          *Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-55431

I am the attorney or self-represented party.

**This brief contains** 10,113 **words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Anna M. Barvir **Date** 08/11/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

# ADDENDUM

# ADDENDUM

# TABLE OF CONTENTS

Cal Pen Code § 26805................................................................................3

Cal Pen Code § 27200................................................................................5

Cal Pen Code § 27205................................................................................7

Cal Pen Code § 27210................................................................................9

Cal Pen Code § 27215................................................................................11

Cal Pen Code § 27220................................................................................12

Cal Pen Code § 27225................................................................................14

Cal Pen Code § 27230................................................................................16

Cal Pen Code § 27235................................................................................17

Cal Pen Code § 27240................................................................................19

Cal Pen Code § 27245................................................................................21

Cal Pen Code § 27305................................................................................23

Cal Pen Code § 27310................................................................................24

Cal Pen Code § 27315................................................................................26

Cal Pen Code § 27320................................................................................27

Cal Pen Code § 27325................................................................................28

Cal Pen Code § 27335................................................................................29

Cal Pen Code § 27340................................................................................30

Cal Pen Code § 27345................................................................................32

Cal Pen Code § 27350................................................................................33

Cal Pen Code § 27400................................................................................34

Cal Pen Code § 27405................................................................................35

Cal Pen Code § 27410................................................................................36

Cal Pen Code § 27415................................................................................37

Cal Pen Code § 27545................................................................38

Cal Pen Code § 30347................................................................40

Cal Pen Code § 30348................................................................41

Cal Pen Code § 30350................................................................42

Cal Pen Code § 30352................................................................43

Cal Pen Code § 30360................................................................46

Constitution of the United States ..............................................47

Constitution of the United States ..............................................48

Constitution of the United States ..............................................49

# Cal Pen Code § 26805

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 2 Issuance, Forfeiture, and Conditions of License to Sell, Lease, or Transfer Firearms at Retail (Arts. 1 — 6)**
- **Article 2 Grounds for Forfeiture of License (§§ 26800 — 26915)**

## § 26805. Business of licensee conducted only in buildings designated on license; Gun show or event or specified events; Delivery

**(a)** Except as provided in subdivisions (b) and (c), the business of a licensee shall be conducted only in the buildings designated in the license.

**(b)**

**(1)** A person licensed pursuant to Sections 26700 and 26705 may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at any gun show or event, as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, or its successor, if the gun show or event is not conducted from any motorized or towed vehicle. A person conducting business pursuant to this subdivision shall be entitled to conduct business as authorized herein at any gun show or event in the state, without regard to the jurisdiction within this state that issued the license pursuant to Sections 26700 and 26705, provided the person complies with all applicable laws, including, but not limited to, the waiting period specified in subdivision (a) of Section 26815, and all applicable local laws, regulations, and fees, if any.

**(2)** A person conducting business pursuant to this subdivision shall publicly display the person's license issued pursuant to Sections 26700 and 26705, or a facsimile thereof, at any gun show or event, as specified in this subdivision.

**(c)**

**(1)** A person licensed pursuant to Sections 26700 and 26705 may engage in the sale and transfer of firearms other than handguns, at events specified in Sections 27900 and 27905, subject to the prohibitions and restrictions contained in those sections.

**(2)** A person licensed pursuant to Sections 26700 and 26705 may also accept delivery of firearms other than handguns, outside the building designated in the license, provided the firearm is being donated for the purpose of sale or transfer at an auction, raffle, or similar event specified in Section 27900.

**(d)** The firearm may be delivered to the purchaser, transferee, or person being loaned the firearm at one of the following places:

**(1)** The building designated in the license.

**(2)** The places specified in subdivision (b) or (c).

**(3)** The place of residence of, the fixed place of business of, or on private property owned or lawfully possessed by, the purchaser, transferee, or person being loaned the firearm.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 7 (AB 809), effective January 1, 2012; Stats 2019 ch 738 § 16 (SB 376), effective January 1, 2020.

# Cal Pen Code § 27200

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27200. Requirement of certificate of eligibility to organize gun show

**(a)** No person shall produce, promote, sponsor, operate, or otherwise organize a gun show or event,
as specified in subdivision (b) of Section 26805, unless that person possesses a valid certificate of
eligibility from the Department of Justice.
**(b)** Unless the department's records indicate that the applicant is a person prohibited from possessing
firearms, a certificate of eligibility shall be issued by the Department of Justice to an applicant
provided the applicant does all of the following:
**(1)** Certifies that the applicant is familiar with the provisions of this article and Article 2 (commencing
with Section 27300).
**(2)** Ensures that liability insurance is in effect for the duration of an event or show in an amount of not
less than one million dollars ($1,000,000).
**(3)** Provides an annual list of the gun shows or events that the applicant plans to promote, produce,
sponsor, operate, or otherwise organize during the year for which the certificate of eligibility is issued,
including the date, time, and location of the gun shows or events.
**(c)** If during that year the information required by paragraph (3) of subdivision (b) changes, or
additional gun shows or events will be promoted, produced, sponsored, operated, or otherwise
organized by the applicant, the producer shall notify the Department of Justice no later than 30 days
prior to the gun show or event.
**(d)** The Department of Justice shall adopt regulations to administer the certificate of eligibility program
under this section.
**(e)** The Department of Justice shall recover the full costs of administering the certificate of eligibility
program by fees assessed applicants who apply for certificates. A licensed gun show producer shall be
assessed an annual fee of eighty-five dollars ($85) by the department.
**(f)** It is the intent of the Legislature that the certificate of eligibility program established pursuant to
this section be incorporated into the certificate of eligibility program established pursuant to Section
26710 to the maximum extent practicable.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27200 continues the first sentence of former Section 12071.1(a) without substantive change.
Subdivision (b) continues the second sentence of former Section 12071.1(a) without substantive change.
Subdivision (c) continues former Section 12071.1(b) without substantive change.
Subdivisions (d) and (e) continue former Section 12071.1(d) without substantive change.
Subdivision (f) continues former Section 12071.1(q) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Sections 16520 ("firearm"), 16800 ("licensed gun show producer").

A6

# Cal Pen Code § 27205

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## §  27205. List of entities renting or intending to rent space at gun show or event

**(a)** Before commencement of a gun show or event, the producer thereof shall, upon written request from a law enforcement agency with jurisdiction over the facility, make available to that agency, within 48 hours or a later time specified by the agency, a complete and accurate list of all persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms, or processing the sale or transfer of ammunition.

**(b)** The producer shall thereafter, upon written request, for every day the gun show or event operates, within 24 hours or a later time specified by the requesting law enforcement agency, make available to that agency an accurate, complete, and current list of the persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms, or processing the sale or transfer of ammunition.

**(c)** Subdivisions (a) and (b) apply to any person, entity, or organization, regardless of whether that person, entity, or organization participates in the entire gun show or event, or only a portion thereof.

**(d)** The information that may be requested by the law enforcement agency with jurisdiction over the facility, and that shall be provided by the producer upon request, includes, but is not limited to, the following information relative to a vendor who offers for sale any firearms manufactured after December 31, 1898, or any ammunition:

**(1)** The vendor's complete name.

**(2)** A driver's license or identification card number.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 1 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added ", or processing the sale or transfer of ammunition" in (a) and (b); and in the introductory language of (d), substituted "includes," for "may include,", added "any" and added ", or any ammunition".

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27205 continues the first paragraph of former Section 12071.1(f) without substantive change.
Subdivision (b) continues the second paragraph of former Section 12071.1(f) without substantive change.
Subdivision (c) continues the third paragraph of former Section 12071.1(f) without substantive change.
Subdivision (d) continues former Section 12071.1(g) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Section 16520 ("firearm").

A8

# Cal Pen Code § 27210

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27210. Event and security plan and schedule

**(a)** The producer and facility's manager of a gun show or event shall prepare an annual event and security plan and schedule that shall include, at a minimum, the following information for each show or event:

**(1)** The type of show or event, including, but not limited to, antique or general firearms and ammunition.

**(2)** The estimated number of vendors offering firearms or ammunition for sale or display.

**(3)** The estimated number of attendees.

**(4)** The number of entrances and exits at the gun show or event site.

**(5)** The location, dates, and times of the show or event.

**(6)** The contact person and telephone number for both the producer and the facility.

**(7)** The number of sworn peace officers employed by the producer or the facility's manager who will be present at the show or event.

**(8)** The number of nonsworn security personnel employed by the producer or the facility's manager who will be present at the show or event.

**(b)** The annual event and security plan shall be submitted by either the producer or the facility's manager to the Department of Justice and the law enforcement agency with jurisdiction over the facility.

**(c)** If significant changes have been made since the annual plan was submitted, the producer shall, not later than 15 days before commencement of the gun show or event, submit to the department, the law enforcement agency with jurisdiction over the facility site, and the facility's manager, a revised event and security plan, including a revised list of vendors that the producer knows, or reasonably should know, will be renting tables, space, or otherwise participating in the gun show or event.

**(d)** The event and security plan shall be approved by the facility's manager before the event or show, after consultation with the law enforcement agency with jurisdiction over the facility.

**(e)** A gun show or event shall not commence unless the requirements of subdivisions (b), (c), and (d) are met.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2014 ch 103 § 9 (AB 1798), effective January 1, 2015; Stats 2015 ch 303 § 415 (AB 731), effective January 1, 2016; Stats 2019 ch 736 §

2 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

• ⬇ **Amendments:**
⬆**Amendments:**
**2014 Amendment:**

Substituted (1) "facility's manager" for "facility manager" in the introductory clause of subd (a); and (2) "facility's manager" for "facilities manager" in subd (a)(7).

**2015 Amendment:**

(1) Added the comma after "show or event" in subd (a)(1); and (2) amended subd (e) by (a) substituting "A" for "No"; and (b) adding "not".

**2019 Amendment (ch 736):**

Added "and ammunition" in (a)(1); and added "or ammunition" in (a)(2).

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27210 continues former Section 12071.1(h) without substantive change.
Subdivision (b) continues the first sentence of former Section 12071.1(i) without substantive change.
Subdivision (c) continues the second sentence of former Section 12071.1(i) without substantive change.
Subdivision (d) continues the third sentence of former Section 12071.1(i) without substantive change.
Subdivision (e) continues the fourth sentence of former Section 12071.1(i) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Section 16520 ("firearm").
**2014—**
Section 27210 is amended to standardize the references to the facility's manager for the site of the gun show or event.

# Cal Pen Code § 27215

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27215. Notification to vendors

The producer of a gun show or event shall be responsible for informing prospective gun show vendors of the requirements of this article and of Article 2 (commencing with Section 27300) that apply to vendors.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27215 continues former Section 12071.1(j) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).

# Cal Pen Code § 27220

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27220. Submission of prospective vendor and designated firearms transfer agent lists

**(a)** Within seven calendar days of the commencement of a gun show or event, but not later than noon on Friday for a show or event held on a weekend, the producer shall submit a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers or ammunition vendors to the Department of Justice for the purpose of determining whether these prospective vendors and designated firearms transfer agents possess valid licenses and are thus eligible to participate as licensed dealers or ammunition vendors at the show or event.
**(b)** The department shall examine its records and if it determines that a dealer's or vendor's license is not valid, it shall notify the show or event producer of that fact before the show or event commences.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 3 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added "or ammunition vendors" twice in (a); and added "or vendor's" in (b).

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27220 continues the first sentence of former Section 12071.1(k) without substantive change. Subdivision (b) continues the second sentence of former Section 12071.1(k) without substantive change.

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27245 (punishment).

See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

# Cal Pen Code § 27225

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27225. Failure to cooperate by vendor

If a licensed firearms dealer or ammunition vendor fails to cooperate with a producer of a gun show or event, or fails to comply with the applicable requirements of this article or Article 2 (commencing with Section 27300), that person shall not be allowed to participate in that show or event.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 4 (AB 1669), effective January 1, 2020.

A14

# Cal Pen Code § 27230

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27230. Failure to cooperate by producer

If a producer fails to comply with Section 27215 or 27220, the gun show or event shall not commence until those requirements are met.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27230 continues former Section 12071.1(m) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).

# Cal Pen Code § 27235

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27235. Written contracts required

Every producer of a gun show or event shall have a written contract with each gun show vendor selling firearms or ammunition at the show or event.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 5 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added "or ammunition".

Commentary

**Law Revision Commission Comments:**
**2010—**

Section 27235 continues former Section 12071.1(n) without substantive change.

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27245 (punishment).

See Section 16520 ("firearm").

# Cal Pen Code § 27240

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27240. Posting of signs required

**(a)** The producer of a gun show or event shall require that signs be posted in a readily visible location at each public entrance to the show containing, but not limited to, the following notices:

**(1)** This gun show follows all federal, state, and local firearms, ammunition, and weapons laws, without exception.

**(2)** Any firearm carried onto the premises by any member of the public will be checked, cleared of any ammunition, and secured in a manner that prevents it from being operated, and an identification tag or sticker will be attached to the firearm before the person is allowed admittance to the show.

**(3)** No member of the public under the age of 18 years shall be admitted to the show unless accompanied by a parent, grandparent, or legal guardian.

**(4)** All firearms transfers between private parties at the show shall be conducted through a licensed dealer in accordance with applicable state and federal laws.

**(5)** Persons possessing firearms of ammunition at this facility shall have in their immediate possession government-issued photo identification, and display it upon request to any security officer or any peace officer, as defined in Section 830.

**(6)** All ammunition transfers between private parties at the show shall be conducted through a licensed dealer or ammunition vendor in accordance with applicable state and federal laws.

**(b)** The show producer shall post, in a readily visible location at each entrance to the parking lot at the show, signage that states: "The transfer of firearms or ammunition on the parking lot of this facility is a crime."

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 6 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added ", ammunition," in (a)(1); in (a)(5), added "of ammunition" and substituted "shall" for "may"; added (a)(6); and added "or ammunition" in (b).

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27240 continues former Section 12071.1(o) without substantive change.
Subdivision (b) continues former Section 12071.1(p) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

# Cal Pen Code § 27245

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27245. Willful failure to comply; Penalty

**(a)** A willful failure by a gun show producer to comply with any of the requirements of this article, except for the posting of required signs, shall be a misdemeanor punishable by a fine not to exceed two thousand dollars ($2,000), and shall render the producer ineligible for a gun show producer license for one year from the date of the conviction.

**(b)** A willful failure of a gun show producer to post signs as required by this article shall be a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000) for the first offense and not to exceed two thousand dollars ($2,000) for the second or subsequent offense, and with respect to the second or subsequent offense, shall render the producer ineligible for a gun show producer license for one year from the date of the conviction.

**(c)** Multiple violations charged pursuant to subdivision (a) arising from more than one gun show or event shall be grounds for suspension of a producer's certificate of eligibility pending adjudication of the violations.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27245 continues former Section 12071.1(e)(1) without substantive change.
Subdivision (b) continues former Section 12071.1(e)(2) without substantive change.
Subdivision (c) continues former Section 12071.1(e)(3) without substantive change.
A violation of the predecessor of this article (former Section 12071.1) counts as a prior offense in determining the appropriate punishment under this section. See Section 16015 (determining existence of prior conviction).

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

# Cal Pen Code § 27305

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27305. Written certification by vendors

All gun show or event vendors shall certify in writing to the producer that they:

**(a)** Will not display, possess, or offer for sale any firearms, ammunition, knives, or weapons for which possession or sale is prohibited.

**(b)** Acknowledge that they are responsible for knowing and complying with all applicable federal, state, and local laws dealing with the possession and transfer of firearms or ammunition.

**(c)** Will not engage in activities that incite or encourage hate crimes.

**(d)** Will process all transfers of firearms through licensed firearms dealers as required by state law.

**(e)** Will process all sales or transfers of ammunition through licensed firearms dealers or ammunition vendors as required by state law.

**(f)** Will verify that all firearms in their possession at the show or event will be unloaded, and that the firearms will be secured in a manner that prevents them from being operated except for brief periods when the mechanical condition of a firearm is being demonstrated to a prospective buyer.

**(g)** Have complied with the requirements of Section 27320.

**(h)** Will not display or possess black powder, or offer it for sale.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 7 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27310

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27310. Firearm and ammunition transfer or sale requirements

**(a)** All firearms and ammunition transfers or sales at a gun show or event shall be conducted in accordance with applicable state and federal laws.
**(b)** Commencing July 1, 2022, the Department of Justice may inspect any firearm dealers, ammunition vendors, or manufacturers participating in a gun show or event in order to ensure compliance with subdivision (a). The department may adopt regulations to administer the application and enforcement provisions of this chapter.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 8 (AB 1669), effective January 1, 2020; Stats 2020 ch 273 § 1 (AB 2061), effective January 1, 2021.

▼Annotations

Notes

- ⬇**Amendments:**

⬆**Amendments:**
**2019 Amendment (ch 736):**

Substituted "and ammunition transfers or sales" for "transfers".

**2020 Amendment (ch 273):**

Added designation (a) and inserted "conducted" following "shall be"; and added (b).

---

Commentary

---

**Law Revision Commission Comments:**
**2010—**
Section 27310 continues former Section 12071.4(c) without substantive change.

For exceptions to provisions in this article and Article 1 (commencing with Section 27200), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27350 (punishment).

See Section 16520 ("firearm").

# Cal Pen Code § 27315

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27315. Sales of ammunition

Sales of ammunition at a gun show or event shall comply with all applicable laws, including Sections 30347, 30348, 30350, 30352, and 30360.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 9 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27320

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27320. Information required from vendor

**(a)** Before commencement of a gun show or event, each vendor who will offer for sale any firearms manufactured after December 31, 1898, or any ammunition, shall provide to the producer all of the following information relative to the vendor, the vendor's employees, and other persons, compensated or not, who will be working or otherwise providing services to the public at the vendor's display space:

**(1)** The person's complete name.

**(2)** The person's driver's license or state-issued identification card number.

**(3)** The person's date of birth.

**(4)** The person's certificate of eligibility number pursuant to Section 26915 or 30347 of the Penal Code.

**(b)** The producer shall keep the information at the onsite headquarters of the show or event for the duration of the show or event, and at the producer's regular place of business for two weeks after the conclusion of the show or event. The producer shall make the information available upon request to any sworn peace officer for purposes of the officer's official law enforcement duties.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 10 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27325

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27325. Name tag required

At any gun show or event, each vendor and each employee of a vendor shall wear a name tag indicating first and last name.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

A28

# Cal Pen Code § 27335

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27335. Minors prohibited unless accompanied by parent or guardian

No member of the public who is under the age of 18 years shall be admitted to, or be permitted to remain at, a gun show or event unless accompanied by a parent or legal guardian. Any member of the public who is under the age of 18 years shall be accompanied by that person's parent, grandparent, or legal guardian while at the show or event.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Cal Pen Code § 27340

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27340. Persons bringing firearms or ammunition to gun show or event

**(a)** Persons other than show or event security personnel, sworn peace officers, or vendors, who bring any firearm or any ammunition that is separate from a firearm onto the gun show or event premises shall sign in ink the tag or sticker that is attached to the firearm prior to being allowed admittance to the show or event, as provided for in subdivision (b) and (c).

**(b)** All firearms carried onto the premises of a gun show or event by members of the public shall be checked, cleared of any ammunition, secured in a manner that prevents them from being operated, and an identification tag or sticker shall be attached to the firearm, prior to the person being allowed admittance to the show. The identification tag or sticker shall state that all firearms transfers between private parties at the show or event shall be conducted through a licensed dealer in accordance with applicable state and federal laws. The person possessing the firearm shall complete the following information on the tag before it is attached to the firearm:

**(1)** The gun owner's signature.

**(2)** The gun owner's printed name.

**(3)** The identification number from the gun owner's government-issued photo identification.

**(c)** Any ammunition carried onto the premises of a gun show or event by members of the public shall be checked and secured in a manner that prevents the ammunition from being discharged. An identification tag or sticker shall be attached to the ammunition prior to the person being allowed admittance to the show. The identification tag or sticker shall state that all ammunition transfers between private parties at the show or event shall be conducted through a licensed dealer or ammunition vendor in accordance with applicable state and federal laws. The person possessing the ammunition shall complete the following information on the tag before it is attached to the ammunition:

**(1)** The ammunition owner's signature.

**(2)** The ammunition owner's printed name.

**(3)** The identification number from the ammunition owner's government-issued photo identification.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 11 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27345

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27345. Persons possessing firearms or ammunition carrying identification

Any person who possesses a firearm or ammunition at a gun show or event shall have government-issued photo identification in immediate possession, and shall display it upon request to any security officer or peace officer.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 12 (AB 1669), effective January 1, 2020.

A32

# Cal Pen Code § 27350

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27350. Violations of article

**(a)** Unless otherwise specified, a first violation of this article is an infraction.

**(b)** Any second or subsequent violation of this article is a misdemeanor.

**(c)** Any person who commits an act the person knows to be a violation of this article is guilty of a misdemeanor for a first offense.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

A33

# Cal Pen Code § 27400

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27400. Exceptions for transfers to authorized law enforcement representative

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

**(b)** Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

**(c)** Within 10 days of the date a handgun, and commencing January 1, 2014, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 23 (AB 809), effective January 1, 2012.

# Cal Pen Code § 27405

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27405. Exceptions for loans of firearms in specified circumstances

Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the loan of a firearm if all of the following conditions are satisfied:

**(a)** The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

**(b)** The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

**(c)** The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Cal Pen Code § 27410

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27410. Exceptions for transfer of firearms from law enforcement agency to peace officer

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

**(b)** Within 10 days of the date that a handgun, and commencing January 1, 2014, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted in AFS. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 24 (AB 809), effective January 1, 2012.

# Cal Pen Code § 27415

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27415. Exceptions for transfers of firearms from law enforcement agency to retiring peace officer

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

**(b)** Within 10 days of the date that a handgun, and commencing January 1, 2014, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted in AFS. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 25 (AB 809), effective January 1, 2012.

# Cal Pen Code § 27545

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 4 Crimes Relating to Sale, Lease, or Transfer of Firearms (Arts. 1 — 7)**
- **Article 1 Crimes Relating to Sale, Lease, or Transfer of Firearms (§§ 27500 — 27590)**

## § 27545. Transaction where neither party holds a dealer's license

Where neither party to the transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27545 continues former Section 12072(d) without substantive change.
For exceptions to this provision, see Article 2 (commencing with Section 27600) and Article 6 (commencing with Section 27850). See also Section 28000 (circumstances that may be reported to Department of Justice in prescribed format).
For the consequences of violating this section, see Section 27590 (punishment for violation of article).
See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

## Notes to Decisions

**1. Generally**

To prove a violation of former Pen C § 12072(d), the People need not prove a defendant knew or should have known that the other party to the firearms transaction was unlicensed. Thus, in a prosecution of defendant for unlawfully transferring a firearm under former Pen C § 12072(d), the prosecution was not required to prove that defendant, who was not a licensed dealer, knew that the person who purchased a firearm from him was also unlicensed. People v. Vaughn (Cal. App. 1st Dist. Oct. 3, 2014), 230 Cal. App. 4th 322, 178 Cal. Rptr. 3d 595, 2014 Cal. App. LEXIS 892.

# Cal Pen Code § 30347

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30347. Ammunition vendor's agents and employees; Certificate of eligibility from Department of Justice; Limitation on scope of employment for specified persons

**(a)** An ammunition vendor shall require any agent or employee who handles, sells, delivers, or has under his or her custody or control any ammunition, to obtain and provide to the vendor a certificate of eligibility from the Department of Justice issued pursuant to Section 26710. On the application for the certificate, the agent or employee shall provide the name and address of the ammunition vendor with whom the person is employed, or the name and California firearms dealer number of the ammunition vendor if applicable.

**(b)** The department shall notify the ammunition vendor in the event that the agent or employee who has a certificate of eligibility is or becomes prohibited from possessing ammunition under subdivision (a) of Section 30305 or federal law.

**(c)** An ammunition vendor shall not permit any agent or employee who the vendor knows or reasonably should know is a person described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title or Section 8100 or 8103 of the Welfare and Institutions Code to handle, sell, deliver, or have under his or her custody or control, any ammunition in the course and scope of employment.

# Cal Pen Code § 30348

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30348. Sale of ammunition by licensed vendor; Licensed premises requirement; Gun shows and events

**(a)** Except as provided in subdivision (b), the sale of ammunition by a licensed vendor shall be conducted at the location specified in the license.

**(b)** A vendor may sell ammunition at a gun show or event if the gun show or event is not conducted from any motorized or towed vehicle.

**(c)** For purposes of this section, "gun show or event" means a function sponsored by any national, state, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.

**(d)** Sales of ammunition at a gun show or event shall comply with all applicable laws including Sections 30347, 30350, 30352, and 30360.

## History

Adopted by voters, Prop. 63 § 8.11, effective November 9, 2016.

# Cal Pen Code § 30350

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30350. Transfer of ammunition without assistance of vendor or employee

An ammunition vendor shall not sell or otherwise transfer ownership of, offer for sale or otherwise offer to transfer ownership of, or display for sale or display for transfer of ownership of any ammunition in a manner that allows that ammunition to be accessible to a purchaser or transferee without the assistance of the vendor or an employee of the vendor.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amendment approved by voters, Prop. 63 § 8.12, effective November 9, 2016.

A42

# Cal Pen Code § 30352

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30352. Information necessary for transfer of ammunition

**(a)** Commencing July 1, 2019, an ammunition vendor shall not sell or otherwise transfer ownership of any ammunition without, at the time of delivery, legibly recording the following information on a form to be prescribed by the Department of Justice:

**(1)** The date of the sale or other transfer.

**(2)** The purchaser's or transferee's driver's license or other identification number and the state in which it was issued.

**(3)** The brand, type, and amount of ammunition sold or otherwise transferred.

**(4)** The purchaser's or transferee's full name and signature.

**(5)** The name of the salesperson who processed the sale or other transaction.

**(6)** The purchaser's or transferee's full residential address and telephone number.

**(7)** The purchaser's or transferee's date of birth.

**(b)**

**(1)** Commencing July 1, 2019, an ammunition vendor shall electronically submit to the department the information required by subdivision (a) for all sales and transfers of ownership of ammunition. The department shall retain this information in a database to be known as the Ammunition Purchase Records File. Except as provided in paragraph (2), this information shall remain confidential and may be used by the department and those entities specified in, and pursuant to, subdivision (b) or (c) of Section 11105, through the California Law Enforcement Telecommunications System, only for law enforcement purposes. The ammunition vendor shall not use, sell, disclose, or share the information for any other purpose other than the submission required by this subdivision without the express written consent of the purchaser or transferee.

**(2)** The information collected by the department as provided in paragraph (1) shall be available to researchers affiliated with the California Firearm Violence Research Center at UC Davis following approval by the institution's governing institutional review board, when required. At the department's discretion, and subject to Section 14240, the data may be provided to any other nonprofit bona fide research institution accredited by the United States Department of Education or the Council for Higher

A43

Education Accreditation for the study of the prevention of violence, following approval by the institution's governing institutional review board or human subjects committee, when required, for academic and policy research purposes. Material identifying individuals shall only be provided for research or statistical activities and shall not be transferred, revealed, or used for purposes other than research or statistical activities, and reports or publications derived therefrom shall not identify specific individuals. Reasonable costs to the department associated with the department's processing of that data may be billed to the researcher. If a request for data or letter of support for research using the data is denied, the department shall provide a written statement of the specific reasons for the denial.

**(c)** Commencing on July 1, 2019, only those persons listed in this subdivision, or those persons or entities listed in subdivision (e), shall be authorized to purchase ammunition. Prior to delivering any ammunition, an ammunition vendor shall require bona fide evidence of identity to verify that the person who is receiving delivery of the ammunition is a person or entity listed in subdivision (e) or one of the following:

**(1)** A person authorized to purchase ammunition pursuant to Section 30370.

**(2)** A person who was approved by the department to receive a firearm from the ammunition vendor, pursuant to Section 28220, if that vendor is a licensed firearms dealer, and the ammunition is delivered to the person in the same transaction as the firearm.

**(d)** Commencing July 1, 2019, the ammunition vendor shall verify with the department, in a manner prescribed by the department, that the person is authorized to purchase ammunition. If the person is not listed as an authorized ammunition purchaser, the vendor shall deny the sale or transfer.

**(e)** Subdivisions (a) and (d) shall not apply to sales or other transfers of ownership of ammunition by ammunition vendors to any of the following, if properly identified:

**(1)** An ammunition vendor.

**(2)** A person who is on the centralized list of exempted federal firearms licensees maintained by the department pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of Title 4 of Part 6.

**(3)** A person who purchases or receives ammunition at a target facility holding a business or other regulatory license, provided that the ammunition is at all times kept within the facility's premises.

**(4)** A gunsmith.

**(5)** A wholesaler.

**(6)** A manufacturer or importer of firearms or ammunition licensed pursuant to Chapter 44 (commencing with Section 921) of Part I of Title 18 of the United States Code, and the regulations issued pursuant thereto.

**(7)** An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale or other transfer of ownership is for exclusive use by that government agency, and, prior to the sale, delivery, or transfer of the handgun ammunition, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser, transferee, or person otherwise acquiring ownership is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that individual is employed.

**(8)**

**(A)** A properly identified sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or properly identified sworn federal law enforcement officer, who is authorized to carry a firearm in the course and scope of the officer's duties.

**(B)**

**(i)** Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a full-time paid peace officer who is authorized to carry a firearm in the course and scope of the officer's duties.

**(ii)** The certification shall be delivered to the vendor at the time of purchase or transfer and the purchaser or transferee shall provide bona fide evidence of identity to verify that the purchaser transferee is the person authorized in the certification.

**(iii)** The vendor shall keep the certification with the record of sale and submit the certification to the department.

**(f)** The department is authorized to adopt regulations to implement the provisions of this section.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amendment approved by voters, Prop. 63 § 8.13, effective November 9, 2016; Amended Stats 2016 ch 55 § 12, effective January 1, 2017; Stats 2021 ch 253 § 11 (AB 173), effective September 23, 2021.

# Cal Pen Code § 30360

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30360. False entries in records

Commencing February 1, 2011, a vendor shall not knowingly make a false entry in, fail to make a required entry in, fail to obtain the required thumbprint, or otherwise fail to maintain in the required manner, records prepared in accordance with Section 30352. If the right thumbprint is not available, then the vendor shall have the purchaser or transferee use the left thumb, or any available finger, and shall so indicate on the form.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Constitution of the United States

**First Amendment**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

# Constitution of the United States

**Second Amendment**

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

# Constitution of the United States

## Fourteenth Amendment

Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3

No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section 4

The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing

A49

insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5

The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.