No. 23-55431

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

B&L PRODUCTIONS, D/B/A CROSSROADS OF THE WEST, ET AL.,
*Plaintiffs-Appellants*,

v.

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA AND IN HIS PERSONAL CAPACITY, ET AL.,
*Defendants-Appellees*.

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:21-cv-01718-AJB-DDL
The Honorable Anthony J. Battaglia, Judge

# STATE APPELLEES' ANSWERING BRIEF

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General

CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6356
Fax: (916) 731-2119
Email: Charles.Sarosy@doj.ca.gov
*Attorneys for State Defendants-Appellees*

October 11, 2023

# TABLE OF CONTENTS

**Page**

Introduction ..... 1
Jurisdictional Statement ..... 3
Issues Presented ..... 3
Statement Regarding Circuit Rule 28-2.7 Addendum ..... 4
Statement of the Case ..... 5
I. Gun Shows at the Del Mar Fairgrounds ..... 5
A. The 22nd District Agricultural Association and the Fairgrounds ..... 5
B. Prior Lawsuit About Gun Shows at the Del Mar Fairgrounds ..... 6
C. AB 893 Was Enacted to Prohibit the Sale of Firearms and Ammunition at the Del Mar Fairgrounds ..... 7
II. Procedural History ..... 8
A. Plaintiffs Challenged AB 893 Primarily on First Amendment Grounds ..... 8
B. The District Court Dismissed Plaintiffs' Complaint on Various Immunity Grounds and on the Merits of the Claims ..... 10
C. Plaintiffs Filed an Amended Complaint, Adding a Second Amendment Claim ..... 11
D. The District Court Dismissed Plaintiffs' Amended Complaint, and Plaintiffs Declined to Amend Their Second Amendment Claim ..... 12
Summary of Argument ..... 13
Standard of Review ..... 16
Argument ..... 16
I. The District Court Correctly Dismissed Plaintiffs' Second Amendment Claim ..... 16
A. The Text-and-History Standard for Analyzing Second Amendment Claims Under *Bruen* ..... 17

**TABLE OF CONTENTS**
**(continued)**

**Page**

B. Plaintiffs Failed to Establish that the Second Amendment's Plain Text Covers the Sale and Purchase of Firearms on State Property ....19

1. Plaintiffs Bear the Burden of Establishing That the Second Amendment's Plain Text Covers Their Proposed Conduct ....20

2. The Second Amendment Does Not Cover the Proposed Conduct of Firearm Sales and Purchases on State Property ....21

3. The District Court Properly Relied on This Court's Prior En Banc Decision in *Teixeira* ....24

C. AB 893 Is a Presumptively Lawful Qualification on the Commercial Sale of Firearms ....27

D. Prohibiting the Sale of Firearms and Ammunition on State Property Is Consistent with Several Historical Traditions of Regulation ....29

1. AB 893 Falls Within the Government's Well-Established Authority to Regulate Conduct on Its Own Property ....31

2. AB 893 Falls Within the Government's Well-Established Authority to Regulate Firearms Commerce to Promote Public Safety ....33

3. AB 893 Falls Within the Government's Well-Established Authority to Regulate Firearms in Sensitive Places ....37

II. The District Court Correctly Dismissed Plaintiffs' First Amendment Claims ....40

A. AB 893 Does Not Regulate Speech or Expressive Conduct ....40

B. In Any Event, AB 893 Passes Multiple Levels of Scrutiny ....46

1. AB 893 Satisfies Rational Basis Review ....46

2. AB 893 Does Not Ban Protected Commercial Speech ....47

**TABLE OF CONTENTS**
**(continued)**

**Page**

3. If AB 893 Were Viewed as Regulating Non-Commercial Speech, Then It Would Be Within a Limited Public Forum and Satisfy the Deferential Reasonableness Standard ....49

4. AB 893 Is Content-Neutral and Satisfies Intermediate Scrutiny ....52

C. Plaintiffs Abandon Their Prior Restraint and Associational Rights Claims that, in Any Event, Fail ....55

III. The District Court Correctly Dismissed Plaintiffs' Equal Protection Claim ....55

IV. The District Court Should Determine Whether to Exert Supplemental Jurisdiction Over the State-Law Claims if Any of the Federal Claims Survive ....57

Conclusion ....57

Statement of Related Cases ....59

Certificate of Compliance ....60

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 25, 26

*B&L Productions, Inc., et al. v. Gavin Newsom, et al.*
C.D. Cal., No. 8:22-cv-01518-JWH-JDE .......... 30

*Bd. of Trs. of State Univ. of N.Y. v. Fox*
492 U.S. 469 (1989) .......... 45

*Bell Atlantic Corporation v. Twombly*
550 U.S. 544 (2007) .......... 25, 26

*Bonidy v. U.S. Postal Serv.*
790 F.3d 1121 (10th Cir. 2015) .......... 31, 32

*Boyer v. City of Los Angeles*
2012 WL 13013037 (C.D. Cal. Aug. 23, 2012) .......... 48

*Close v. Sotheby's, Inc.*
894 F.3d 1061 (9th Cir. 2018) .......... 26

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*
556 U.S. 635 639 (2009) .......... 57

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
447 U.S. 557 (1980) .......... 47, 48, 49

*City of Dallas v. Stanglin*
490 U.S. 19 (1989) .......... 55

*Clark v. Cmty. for Creative Non-Violence*
468 U.S. 288 (1984) .......... 40

*Cruz v. Int'l Collection Corp.*
673 F.3d 991 (9th Cir. 2012) .......... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010) ....................16

*Def. Distributed v. Bonta*
2022 WL 15524977 (C.D. Cal. Oct. 21, 2022) ....................20

*District of Columbia v. Heller*
554 U.S. 570 (2008).................... *passim*

*Dobbs v. Jackson Women's Health Org.*
142 S. Ct. 2228 (2022)....................53

*Fla. Bar v. Went For It, Inc.*
515 U.S. 618 (1995)....................53

*FW/PBS, Inc. v. City of Dallas*
493 U.S. 215 (1990)....................55

*GeorgiaCarry.Org, Inc. v. Georgia*
687 F.3d 1244 (11th Cir. 2012) ....................31

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*
212 F. Supp. 3d 1348 (N.D. Ga. 2016)....................32

*Hartford v. Ferguson*
2023 WL 3836230 (W.D. Wash. June 6, 2023) ....................27

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*
452 U.S. 640 (1981)....................51

*Hunt v. City of Los Angeles*
638 F.3d 703 (9th Cir. 2011) ....................45

*Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*
764 F.3d 1044 (9th Cir. 2014) ....................51

*Jones v. Allison*
9 F.4th 1136 (9th Cir. 2021) ....................10, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Junior Sports Magazines, Inc. v. Bonta*
80 F. 4th 1109 (9th Cir. 2023) ....................................................................48

*McDonald v. City of Chicago*
561 U.S. 742 (2010)....................................................................................19, 28

*Mobilize the Message, LLC v. Bonta*
50 F.4th 928 (9th Cir. 2022) ........................................................................43

*NAACP v. City of Richmond*
743 F.2d 1346 (9th Cir. 1984) ......................................................................51

*Nat'l Ass'n for Gun Rights*, *Inc. v. City of San Jose*
2023 WL 4552284 (N.D. Cal. July 13, 2023) ..............................................20

*New York State Rifle & Pistol Association, Inc. v. Bruen*
142 S. Ct. 2111 (2022)...................................................................*passim*

*Nordyke v. King*
319 F.3d 1185 (9th Cir. 2003) ....................................................*passim*

*Nordyke v. King*
644 F.3d 776 (9th Cir. 2011) ......................................................*passim*

*Nordyke v. King*
681 F.3d 1041 (9th Cir. 2012) ......................................................................51, 56

*Nordyke v. Santa Clara Cnty.*
110 F.3d 707 (9th Cir. 1997) ......................................................*passim*

*Oakland Tactical Supply, LLC v. Howell Twp.*
No. 18-cv-13443, 2023 WL 2074298 (E.D. Mich. Feb. 17, 2023) ....................23

*Or. Firearms Fed'n, Inc. v. Kotek*
2023 WL 4541027 (D. Or. July 14, 2023)....................................................20

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
460 U.S. 37 (1983)........................................................................................50

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Retail Digit. Network, LLC v. Prieto*
861 F.3d 839 (9th Cir. 2017) (en banc) ....................................................46, 48

*Roley v. Google LLC*
40 F.4th 903 (9th Cir. 2022) .......................................................................55

*Romero-Ochoa v. Holder*
712 F.3d 1328 (9th Cir. 2013) .....................................................................47

*Rumsfeld v. Forum for Acad. & Inst'l Rts., Inc.*
547 U.S. 47 (2006).......................................................................................53

*Silvester v. Harris*
843 F.3d 816 (9th Cir. 2016) .......................................................................28

*Sorrell v. IMS Health Inc.*
564 U.S. 552 (2011).....................................................................................43

*Tedards v. Ducey*
951 F.3d 1041 (9th Cir. 2020) .....................................................................16

*Teixeira v. Cnty. of Alameda*
822 F.3d 1047 (9th Cir. 2016) .....................................................................56

*Teixeira v. Cnty. of Alameda*
873 F.3d 670 (9th Cir. 2017) (en banc) ...................................................*passim*

*Texas v. Johnson*
491 U.S. 397 (1989).....................................................................................40

*Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*
520 U.S. 180 (1997).....................................................................................53

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*
453 U.S. 114 (1981).....................................................................................50

*Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*
35 F.4th 695 (9th Cir. 2022) .......................................................................57

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Alaniz*
69 F.4th 1124 (9th Cir. 2023) ....................19, 30

*United States v. Class*
930 F.3d 460 (D.C. Cir. 2019)....................32

*United States v. Flores*
2023 WL 361868 (S.D. Tex. Jan. 23, 2023)....................27

*United States v. Holton*
639 F. Supp. 3d 704 (N.D. Tex. 2022) ....................30, 34, 35

*United States v. Kittson*
2023 WL 5015812 (D. Or. Aug. 7, 2023) ....................27

*United States v. O'Brien*
391 U.S. 367 (1968)....................44, 53

*United States v. Reyna*
2022 WL 17714376 (N.D. Ind. Dec. 15, 2022)....................21, 23

*United States v. Serrano*
2023 WL 2297447 (S.D. Cal. Jan. 17, 2023) ....................34, 35

*United States v. Tilotta*
2022 WL 3924282 (S.D. Cal. Aug. 30, 2022)....................21, 27

*Wright v. Incline Vill. Gen. Improvement Dist.*
665 F.3d 1128 (9th Cir. 2011) ....................49, 50, 51

**STATUTES**

28 U.S.C.
§ 1291....................3
§ 1331....................3
§ 1343....................3
§ 1367(a), (c)....................57
§ 1367(c) ....................57

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

§ 1983 ....9, 10, 11, 57

Cal. Bus. & Prof. Code § 19620 ....5

Cal. Food & Agric. Code
§ 9 ....8
§ 3873 ....5
§ 3951 ....5
§ 3953 ....5
§ 3954 ....5
§ 3956 ....5
§ 3965 ....5
§ 3965.1 ....6
§ 4051 ....6
§ 4158 ....4, 7, 8, 40, 52

1 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 174–75, Act LVI (1823) ....35

2 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 403 (1823). ....34

W.H. Browne, *Proc. & Acts of Gen. Assemb. of Md., Jan. 1637/8–Sept. 1664*, at 273–74, § 5 (1883). ....33

1652 N.Y. Laws 128, Ordinance of Dir. & Council of New Netherland. ....35

1 J. Trumbull, *Public Records of the Colony of Conn., May 1665*, at 138–39, 145–46 (1850) ....34

*63 Proc. & Acts of the Gen. Assemb., June 15-July 3, 1773*, at 338, § 5 ....33

1776 R.I. Pub. Laws, at 25 ....35

1776–77 N.J. Laws, at 6–7, ch. 6 ....35

1794 Pa. Laws, at 764–69, ch. 337 ....35

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

1804 Mass. Acts., at 111, ch. 81 ....35

1808 Mass. Acts, at 444, ch. 52 ....35

1820 N.H. Laws, at 274, ch. 25 ....35

1821 Me. Laws, at 99, ch. 25, § 5 ....36

1821 Me. Laws, at 546, ch. 162 ....35

1825 N.H. Laws, at 74, ch. 61, § 5 ....36

J. Bayon, *Gen. Digest of Ordinances & Resolutions of Corp. of New Orleans*, at 371, Article 1 (1831) ....38

1836 Conn. Acts, at 105, § 20 ....36

1845 Iowa Laws, at 119, § 12 ....36

1852 N.M. Laws, at 67, § 3 ....38

*Ordinances & Joint Resolutions of City of S.F.*, at 220, Ordinance No. 498, § 13 (1854) ....37

1857 R.I. Revised Statutes, at 204–05, ch. 80, § 2 ....36

W.H. Bridges, *Digest of Charters & Ordinances of City of Memphis*, at 147–48, Art. VI., § 1 (1863) ....37

1870 Ga. Laws, at 421, No. 485 ....33, 39

H.J. Leovy, *Laws & Gen. Ordinances of City of New Orleans*, at 257, § 636 (1870) ....37

J.H. Shankland, *Pub. Statutes of Tennessee Since 1858*, at 108, ch. 22, § 2 (1871) ....38

M.F. Tuley, *Laws and Ordinances Governing City of Chi.*, at 88–89, ch. 31, § 6 (1873) ....39

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

R.H. Clark, Code of State of Ga., at 818, § 4528 (1873)....................................33, 39

G.W. Paschal, *Digest of the Laws of Tex.*, at 1322, Article 6511 (1875).....................................................................................................39

J.A. Hockaday, *Revised Statutes of State of Mo.*, at 224, ch. 24, § 1274 (1879).............................................................................................33, 39

1889 Ariz. Sess. Laws, at 17, Act No. 13, § 3 ..............................................39

W.T. Little, *Statutes of Oklahoma 1890*, at 496, ch. 25, § 7 (1891)........................39

1891 N.H. Laws, at 332, ch. 117, § 7 .........................................................36

1 M. Ash, *N.Y.C. Consolidation Act*, Ordinances of N.Y.C., § 455 (1891).....................................................................................................36

**CONSTITUTIONAL PROVISIONS**

First Amendment..............................................................................*passim*

Second Amendment .........................................................................*passim*

Eleventh Amendment.............................................................................10

Fourteenth Amendment ..........................................................................38

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................16

Federal Rule of Civil Procedure 15 ............................................................12

**COURT RULES**

Ninth Circuit Rule 28-2...........................................................................59

**OTHER AUTHORITIES**

Assembly Bill 311, 2021–2022 Reg. Sess. (Cal. 2023)....................................4, 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Armed and Prohibited Persons System Report 2022* ....................................... 54

*Armed and Prohibited Persons System Report 2021* ....................................... 54

*City of Boston Dep't of Parks Twelfth Ann. Report of Bd. of Comm'rs for 1886*, at 86, § 3 (1887) ........................................................................ 39

*Minutes of Proceedings of Bd. of Comm'rs of Central Park, N.Y. for Year Ending April 30, 1858*, at 166 ....................................................... 39

1 William Blackstone, *Commentaries on the Laws of England* (1765) ................ 31

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443 (2009) ........................................... 32

John Locke, *Two Treatises on Government* (1821) ............................................ 31

Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective*, 9 Geo. J.L. & Pub. Pol'y 323 (2011) ..................................... 38

Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55 (2017) ............................ 35

William J. Novak, *The People's Welfare, Law and Regulation in Nineteenth Century America* 87 (1996) .................................................. 33

## INTRODUCTION

California Assembly Bill 893 (AB 893) prohibits the sale of firearms and ammunition at any event at the Del Mar Fairgrounds in San Diego County. The scope of AB 893 stops there, despite Plaintiffs' repeated assertions otherwise. AB 893 does not impede the sales of firearms and ammunition at brick-and-mortar firearms dealers, nor does it impede sales at other locations where Plaintiffs acknowledge gun shows can occur, such as auditoriums, American Legion halls, and vacant commercial buildings. Appellants' Opening Brief (OB) 12.

AB 893 also does not directly, or indirectly, prohibit gun shows at the Del Mar Fairgrounds (the Fairgrounds). Indeed, AB 893 allows all conduct other than sales of firearms and ammunition to continue at the Fairgrounds. This includes expressive activity (such as "speech about firearms" and "the fellowship of like-minded people"); the marketing of firearm-related services (such as "gunsmithing, self-defense courses, and guided hunting trips"); and the sales of other non-firearm products that *over 60 percent* of gun show vendors sell exclusively (such as "historical pieces, rare coins, military memorabilia, jewelry, home décor, camping equipment, fudge, jerky, and books"). OB 12–13.

Notwithstanding AB 893's limited scope, Plaintiffs challenged its constitutionality on First Amendment, equal protection, and Second Amendment grounds. The district court properly dismissed these claims after Plaintiffs twice

failed to sufficiently plead their First Amendment and equal protection claims, and after Plaintiffs declined a second opportunity to sufficiently plead their Second Amendment claim. Across all these claims, Plaintiffs' allegations were not based on a cognizable legal theory or were too conclusory to survive a motion to dismiss. No matter the theory Plaintiffs assert to challenge AB 893, the law passes constitutional muster.

As the district court twice correctly recognized, "AB 893 covers no more than the simple exchange of money for a gun or ammunition." 1-ER-8; 1-ER-27. Because this Court has long held that the sale of firearms and ammunition itself is not speech, Plaintiffs failed to establish that AB 893 regulates speech at all. AB 893's alleged impact on the profitability of gun shows does not convert it to a speech restriction. And Plaintiffs' repeated assertions that AB 893 regulates commercial speech (OB 14–15, 32) are belied by AB 893's plain language, which "does not prohibit *offers* for sale." 1-ER-8 (italics in original). As the district court observed, Plaintiffs cannot rely on conclusory statements to show that the First Amendment is triggered by a limited prohibition on sales of firearms and ammunition on state property. 1-ER-8. The equal protection claim, which is premised on this deficient First Amendment claim, similarly fails as it relies on conclusory statements to assert that impermissible animus motivated AB 893's passage.

Without a First Amendment leg to stand on, Plaintiffs try—as they did before the district court—shifting the focus of this appeal to their Second Amendment claim based on the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). But the district court correctly rejected the claim under *Bruen*'s framework for analyzing such claims. 1-ER-10–11. The Second Amendment's plain text does not encompass a right to sell and purchase firearms on state property. While Plaintiffs' failure to allege proposed conduct covered by the Second Amendment is dispositive, and no historical inquiry by the district court was required, AB 893 is consistent with multiple traditions of firearm regulations in this country.

This Court should affirm the judgment.

## JURISDICTIONAL STATEMENT

The Attorney General agrees that the district court had subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343, and that this Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court correctly dismissed Plaintiffs' Second Amendment claim, which relied on conclusory and incorrect contentions of law

that Plaintiffs have a constitutional right to sell and purchase firearms and ammunition on state property.

2. Whether the district court correctly dismissed Plaintiffs' First Amendment claims, which relied on conclusory contentions of law that contradict this Court's precedents holding that the exchange of money to purchase a firearm does not constitute speech.

3. Whether the district court correctly dismissed Plaintiffs' equal protection claims, which relied on conclusory allegations of animus and lacked any allegation of membership in a protected class.

**STATEMENT REGARDING CIRCUIT RULE 28-2.7 ADDENDUM**

The former and current versions of California Food and Agricultural Code section 4158,[1] as well as the historical laws cited *infra* in Argument Section I.D, are set forth in the Addendum to this brief. Otherwise, the applicable statutes and authorities are included in the Opening Brief's addendum.

[1] The former version of the statute was the version added by AB 893. It was in effect from January 1, 2021 through December 31, 2022, until it was amended by Assembly Bill 311 (AB 311), which additionally prohibited the sale of firearm precursor parts and revised some of the definitions of terms used in the statute. A.B. 311, 2021–2022 Reg. Sess. (Cal. 2023).

# STATEMENT OF THE CASE

## I. GUN SHOWS AT THE DEL MAR FAIRGROUNDS

### A. The 22nd District Agricultural Association and the Fairgrounds

California's District Agricultural Associations are state institutions formed for the purpose of "[h]olding fairs, expositions and exhibitions for the purpose of exhibiting all of the industries and industrial enterprises, resources and products of every kind or nature of the state with a view toward improving, exploiting, encouraging, and stimulating them." Cal. Food & Agric. Code § 3951(a); *id*. § 3953. The Associations, which act through their Boards of Directors, "may do any and all things necessary to carry out the powers and the objects and purposes" for which the Associations were formed. *Id.* §§ 3954, 3956. The 22nd District Agricultural Association (District) covers San Diego County. *Id.* § 3873.

The California Department of Food and Agriculture (CDFA) is a state agency that provides "oversight of activities carried out by each California fair," including, for example, "[c]reating a framework for administration of the network of California fairs allowing for maximum autonomy and local decisionmaking authority." Cal. Bus. & Prof. Code § 19620. With the approval of the CDFA, the District's Board of Directors may "[m]anage the affairs of the [District]." Cal. Food & Agric. Code § 3965(b). However, the District's Board may, without prior approval from the CDFA, "arrange for and conduct, or cause to be conducted, or by contract permit to be conducted, any activity by any individual, institution,

corporation, or association upon its property at a time as it may be deemed advisable." *Id*. § 3965.1(a). Any such contract must accord with the District's written policies and procedures for contracting as well as all applicable state laws governing contracts. *Id*. § 4051(a)(1). Through the Board of Directors, the District contracts with third-party event organizers to conduct events at the Fairgrounds, such as concerts, festivals, gun shows, trade shows, and sporting events. 2-ER-160.

### B. Prior Lawsuit About Gun Shows at the Del Mar Fairgrounds

In 2018, a committee appointed by the District recommended that the District not consider contracts with gun show promoters beyond December 31, 2018, until the District implemented a more thorough policy related to the conduct of gun shows. 2-ER-162–63. The District accordingly "voted to impose a one-year moratorium (for the year 2019) on gun show events at the Fairgrounds while they study potential safety concerns." 2-ER-165. The moratorium was on gun shows in their entirety, not merely the sales of firearms and ammunition at any Fairgrounds event. 2-ER-165.

B&L Productions (B&L), along with some other Plaintiffs here, subsequently sued and obtained a preliminary injunction from a district court against the District's moratorium. 2-ER-165; 2-ER-208–25. The parties reached a settlement agreement (April 2020 Agreement), under which the District would allow B&L to

reserve dates for gun shows at the Fairgrounds, but the District "maintain[ed] authority to evaluate, consider, propose, and implement changes to its policies, consistent with state and federal law, regarding the operation of all events at the Fairgrounds, including gun show events." 2-ER-234.

### C. AB 893 Was Enacted to Prohibit the Sale of Firearms and Ammunition at the Del Mar Fairgrounds

The April 2020 Agreement acknowledged that AB 893 was signed into law on October 11, 2019, and noted that "[n]o action carried out in accordance with this Agreement is intended to modify or violate the provisions of A.B. 893."[2] 2-ER-233; 2-ER-236. AB 893 added section 4158 to the Food and Agricultural Code, which provided: "an officer, employee, operator, lessee, or licensee of the 22nd District Agricultural Association . . . shall not contract for, authorize, or allow the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds in the County of San Diego."[3] 2-ER-252; former Cal. Food & Agric. Code § 4158(a). Only firearm and ammunition *sales* are prohibited, not gun shows generally. This prohibition became operative on

[2] AB 893 was introduced in the Legislature in February 2019, four months before the District was enjoined from enforcing the moratorium. 2-ER-166; 2-ER-208.

[3] As explained *supra*, at footnote 1, AB 311 amended Food and Agricultural Code section 4158, effective January 1, 2023. A.B. 311, 2021–2022 Reg. Sess. (Cal. 2023). Plaintiffs did not raise a separate challenge to AB 311 in the district court, nor do they do so here.

January 1, 2021 and "does not apply to a gun buyback event held by a law enforcement agency." 2-ER-252–53. A violation of section 4158 is a misdemeanor. Cal. Food & Agric. Code § 9.

AB 893 listed seven legislative findings. 2-ER-251–52. These findings state that the District had leased the Fairgrounds "to entities that sponsor marketplaces popularly known as 'gun shows,' at which firearms and ammunition and other items are sold to the public approximately five times a year." 2-ER-251. The findings further explain that "[g]un shows bring grave danger to a community," noting incidents at gun shows where firearms were sold to prohibited persons and large-capacity magazines were illegally imported, and that 14 crimes had been recorded at B&L gun shows held at the Fairgrounds from 2013 to 2017. 2-ER-252.

## II. Procedural History

### A. Plaintiffs Challenged AB 893 Primarily on First Amendment Grounds

In October 2021, Plaintiffs sued the State Defendants,[4] the San Diego County Counsel, and the San Diego District Attorney, alleging that AB 893 was unconstitutional. 3-ER-510–68. Plaintiffs include a gun show event promoter, four regular gun show attendees, four regular gun show vendors, and three

[4] The State Defendants include: Governor Gavin Newsom; CDFA Secretary Karen Ross; Attorney General Rob Bonta; and the District.

nonprofit organizations. 3-ER-514–21. The Complaint raised six claims under 42 U.S.C. § 1983 against all Defendants for violations of the First Amendment—free speech, prior restraint, assembly—and the Equal Protection Clause. 3-ER-550–60. The Complaint also alleged three state-law tort claims against the State Defendants, alleging that the adoption of AB 893 disrupted B&L's economic relationship with the District and its relationship with its vendors. 3-ER-561–64.

The Complaint acknowledged that more than 60 percent of the vendors at B&L gun shows do not sell firearms or ammunition; rather, they sell "accessories, collectibles, home goods, lifestyle products, food, and other refreshments." 3-ER-530–31. Although AB 893 prohibits none of these activities, the Complaint nevertheless alleged that AB 893 will render the B&L gun shows "unprofitable and economically infeasible" because firearm and ammunition sales is "one of the main reasons people attend" B&L gun shows and "the events will no longer be able to draw many of its vendors and attendees" without such sales. 3-ER-530–31; 3-ER-544.

The Complaint described gun shows as a "celebration of America's 'gun culture,'" and an event that "include[s] the exchange of products and ideas, knowledge, services education, entertainment, and recreation related to the lawful uses of firearms." 3-ER-529–30. While AB 893 prohibits none of these activities, the Complaint alleged the law has the "same practical effect" as the District's

previous one-year moratorium on gun shows because the prohibition on sales removes an "essential function" of gun shows. 3-ER-544–45.

### B. The District Court Dismissed Plaintiffs' Complaint on Various Immunity Grounds and on the Merits of the Claims

The district court dismissed the Complaint in its entirety. 1-ER-15–30. At the outset, the district court dismissed with prejudice the six § 1983 claims against Governor Newsom under absolute legislative immunity, and dismissed with prejudice all federal and state claims against Governor Newsom and Secretary Ross in their official capacities under Eleventh Amendment sovereign immunity. 1-ER-19–23. The district court also held that Governor Newsom, Secretary Ross, and Attorney General Bonta were "entitled to qualified immunity from Plaintiffs' claims for monetary damages." 1-ER-23–24.[5]

Turning to the merits of the First Amendment claims, the district court concluded that "AB 893 is not properly subject to First Amendment analysis." 1-ER-26–27. The district court noted that "AB 893 covers no more than the simple exchange of money for a gun or ammunition," and there was "no authority for the[] proposition that barring sales infringes speech." 1-ER- 27. This Court has long

---

[5] Plaintiffs failed to challenge any of these immunity holdings in their Opening Brief and thus forfeited any challenge to them. *Jones v. Allison*, 9 F.4th 1136, 1139, n.6 (9th Cir. 2021) ("Plaintiffs have forfeited this claim by failing to challenge its dismissal on appeal."); *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

held that the opposite is true because "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." 1-ER-27 (quoting *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997) (*Nordyke 1997*), and citing *Nordyke v. King*, 319 F.3d 1185, 1191 (9th Cir. 2003) (*Nordyke 2003*)).

Finding no merit in the First Amendment claims, the district court also dismissed the equal protection claim because Plaintiffs did not allege membership in a protected class or allege an infringement of rights beyond the First Amendment. 1-ER-27–28. Having dismissed the federal claims, the district court concluded that it could not exercise supplemental subject matter jurisdiction over the state-law claims. 1-ER-28–29. The district court permitted Plaintiffs to amend their Complaint. 1-ER-25–30.

### C. Plaintiffs Filed an Amended Complaint, Adding a Second Amendment Claim

The Plaintiffs' First Amended Complaint (FAC) again asserted First Amendment and equal protection claims—this time against only Attorney General Bonta in his official capacity, the District, and the San Diego County District Attorney—and state-law tort claims—still against all four State Defendants. 2-ER-178–94. In addition to reiterating their previously rejected First Amendment theory, Plaintiffs additionally alleged that AB 893 directly prohibits speech because "any real-world 'sale' [of firearms or ammunition] necessarily involves speech." 2-ER-171. Plaintiffs also added a § 1983 claim under the Second

Amendment, asserting that they had a right to sell and purchase firearms and ammunition on state property.  2-ER-188–89.

### D. The District Court Dismissed Plaintiffs' Amended Complaint, and Plaintiffs Declined to Amend Their Second Amendment Claim

The district court dismissed the FAC in its entirety.  1-ER-3–14.  On the merits, the district court dismissed the First Amendment and equal protection claims with prejudice.  1-ER-7–9; 1-ER-11–13.  The district court again rejected Plaintiffs' First Amendment theory that "barring sales infringes speech."  1-ER-8.  The court noted that conclusory statements were insufficient at the pleadings stage, and that the FAC lacked "any facts that show how AB 893 'intentionally and effectively' leads to the banning of gun shows altogether."  1-ER-8.  The court also rejected Plaintiffs' theory that AB 893 directly restricts commercial speech, reasoning that "AB 893 does not prohibit offers for sale," and "[a]t most," "restricts the exchanging of money for guns or ammunition."  1-ER-8.  Based on its First Amendment analysis, the court concluded that the equal protection claim, which lacked any allegations of membership in a protected class and relied on conclusory statements that impermissible animus led to AB 893's enactment, similarly failed.  1-ER-12.

The district court turned to the Second Amendment claim, holding that Plaintiffs exceeded the scope of the court's leave to amend and "violated Federal

Rule of Civil Procedure 15 in asserting a new, independent claim in their FAC." 1-ER-9. Nevertheless, the court addressed the merits of the claim "in the spirit of judicial economy." 1-ER-9. Applying the *Bruen* framework, the district court concluded that the Second Amendment's plain text did not cover the "sale of firearms and ammunition at a gun show" on state property. 1-ER-10–11. The court also noted the claim, like the other dismissed claims, relied only on conclusory statements. 1-ER-11. Having dismissed the federal claims, the court again concluded that it could not exercise supplemental subject matter jurisdiction over the state-law claims.[6] 1-ER-14. Plaintiffs declined the district court's invitation to amend its Second Amendment and state-law claims. 2-ER-39.

## SUMMARY OF ARGUMENT

Plaintiffs bear the burden to demonstrate that the First Amendment and Second Amendment are triggered by AB 893's limited prohibition of firearm and ammunition sales on state property. The district court correctly concluded that they failed to meet that burden.

This Court has already rejected—based on the Second Amendment's text and history—the assertion that there is an independent right to sell firearms, let alone a

[6] The district court also dismissed with prejudice the individual-capacity claims against Governor Newsom, Attorney General Bonta, and Secretary Ross (1-ER-7), which Plaintiffs did not challenge in their Opening Brief and thus forfeited any challenge to the dismissal. *Jones*, 9 F.4th at 1139, n.6.

right to sell firearms on state property. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) (en banc). Such precedent remains sound, and applies with equal force here, because this Court, like the Supreme Court in *Bruen*, applied "a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127; *Teixeira*, 873 F.3d at 683. Nor have Plaintiffs alleged any facts demonstrating that the sales they wish to conduct at the Fairgrounds' temporary marketplace cannot be completed at any other location, even after the district court allowed them leave to do so. Even if they had, the Second Amendment does not guarantee the right to sell or purchase firearms on state property. The district court thus correctly concluded that AB 893—which "'impos[es] conditions and qualifications on the commercial sale of arms'"—is among those "'presumptively lawful regulatory measures'" identified by the Supreme Court. 1-ER-10–11.

Because the district court resolved the Second Amendment claim at *Bruen*'s plain text inquiry, it did not consider whether AB 893 is supported by adequate historical precursors. Even if this Court were to engage in a historical analysis, numerous historical analogues identified here demonstrate that AB 893 is consistent with the traditions of governments setting limits on the use of its property, the regulation of firearms commerce to promote public safety, and the regulation of firearms in sensitive places such as public spaces.

Turning to the First Amendment claim, AB 893's prohibition on the sale of firearms and ammunition is not a speech regulation, whether it be commercial or non-commercial speech. Sales are not speech, and AB 893 does not prohibit offers for sale. Plaintiffs correctly note that the analysis "can begin and end with what is already settled law" in this Court, but *Nordyke 1997* undercuts, rather than supports, their claim. OB 15. Over two decades ago, this Court held that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." *Nordyke 1997*, 110 F.3d at 710; *see also Nordyke 2003*, 319 F.3d at 1191. Although the Court there also held that an offer to sell firearms is commercial speech (*Nordyke 1997*, 110 F.3d at 710), AB 893 prohibits *only sales and not offers*. Even if AB 893 were to be viewed as regulating speech, it would pass constitutional muster no matter the analytical test applied. AB 893 is a straightforward and tailored response to the illegal firearm and ammunition transactions that still occur at gun shows despite the various regulations governing such events.

Plaintiffs' subsidiary claims also do not warrant reviving. The equal protection claim fails to allege a suspect class or anything beyond conclusory assertions of animus by the State Defendants. And because the district court correctly dismissed the federal claims, the state-law claims were also properly dismissed. The district court gave Plaintiffs ample opportunity to sufficiently

plead their claims, but they fell short under this Court's precedents, and judgment should be affirmed.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), as well as all constitutional rulings. *Tedards v. Ducey*, 951 F.3d 1041, 1048 (9th Cir. 2020); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' SECOND AMENDMENT CLAIM

As set forth in *Bruen*, the threshold question for any Second Amendment challenge is whether the plain text of the Second Amendment covers the regulated conduct at issue. If the answer is no, then the regulation does not violate the Second Amendment. That is the case here. AB 893 prohibits only the sale of firearms and ammunition on state property. And Plaintiffs have identified no authority suggesting that the Second Amendment guarantees a right to sell firearms, let alone a right to sell on state property. Nor could they, as this Court previously held that the text and history of the Second Amendment demonstrate it does not "confer[] an independent right to sell or trade weapons." *Teixeira*, 873 F.3d at 683. Seeking to evade *Teixeira*, Plaintiffs mischaracterize it as having

applied means-end scrutiny and thus essentially overruled by *Bruen*. OB 19–21.
But *Teixeria*'s holding was based solely on a "full textual and historical review" of
the Second Amendment. 873 F.3d at 683. This approach, as described in *Bruen*, is
"broadly consistent" with *District of Columbia v. Heller*, 554 U.S. 570 (2008),
which demanded "a test rooted in the Second Amendment's text, as informed by
history." *Bruen*, 142 S. Ct. at 2127. Plaintiffs cannot sidestep their burden in the
plain text inquiry. But even if they had carried this burden, AB 893 is
constitutional because it falls within the presumptively lawful category of "laws
imposing conditions and qualifications on the commercial sale of arms" *id.* at 2162
(Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626), and is also
"consistent with the Nation's historical tradition of firearm regulation." *Bruen*,
142 S. Ct. at 2130.

### A. The Text-and-History Standard for Analyzing Second Amendment Claims Under *Bruen*

In *Bruen*, the Supreme Court announced a new standard for considering
Second Amendment claims, one "centered on constitutional text and history."
*Bruen*, 142 S. Ct. at 2128–29. Under this text-and-history approach, courts must
first determine whether "the Second Amendment's plain text covers an
individual's conduct." *Id.* at 2129–30. If so, "the Constitution presumptively
protects that conduct," and "[t]he government must then justify its regulation by
demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation." *Id.* at 2130. To satisfy this burden, a government must identify a "well-established and representative historical *analogue*"—not a "historical *twin*" or "dead ringer"—to the challenged law that is "relevantly similar" according to "two metrics": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Thus, the historical comparator must have "impose[d] a comparable burden on the right of armed self-defense" that is also "comparably justified." *Id.*

The Court was careful to note that *Bruen* did not purport to overturn or call into question any aspect of the Court's decision in *Heller*. To the contrary, the Court described the analytical approach articulated in *Bruen* as the same "test . . . set forth in *Heller*." *Bruen*, 142 S. Ct. at 2131; *see also id.* at 2134 ("Having made the constitutional standard endorsed in *Heller* more explicit, we now apply that standard [here]."). Consistent with this approach, the Court reaffirmed that the Second Amendment is not a "regulatory straightjacket." *Id.* at 2133. The Court also reiterated that the Second Amendment right "is not unlimited" and is not a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). Indeed, *Bruen* "decide[d] nothing about . . . the requirements that must be met to buy a gun." *Id.* at 2157 (Alito, J., concurring). Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore the "limits of the

Court's decision," explaining that the Second Amendment "allows a 'variety' of gun regulations," and reiterating *Heller*'s pronouncement that one of the presumptively lawful category of laws includes those "imposing conditions and qualifications on the commercial sale of arms." *Id.* at 2161–62 (Kavanaugh, J., concurring). The Court thus reaffirmed that the Second Amendment permits governments to enact a "variety" of regulations for combating the "problem of handgun violence in this country" (*Heller*, 554 U.S. at 636), and "by no means eliminates" state and local governments' "ability to devise solutions to social problems that suit local needs and values." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010).

### B. Plaintiffs Failed to Establish that the Second Amendment's Plain Text Covers the Sale and Purchase of Firearms on State Property

Under *Bruen*'s text-and-history approach, the plain text analysis is a "threshold inquiry" that entails "determining whether the challenger is part of 'the people' whom the Second Amendment protects, whether the weapon at issue is 'in common use' today for self-defense, and whether the 'proposed course of conduct' falls within the Second Amendment." *United States v. Alaniz,* 69 F.4th 1124, 1128 (9th Cir. 2023) (internal quotation marks omitted). Under this analysis, Plaintiffs have not shown that the proposed conduct of selling and purchasing firearms on

state property falls within "the Second Amendment's plain text." *Bruen*, 142 S. Ct. at 2129–30.

### 1. Plaintiffs Bear the Burden of Establishing That the Second Amendment's Plain Text Covers Their Proposed Conduct

*Bruen* directs courts to first assess "whether the plain text of the Second Amendment protects [the individual's] proposed course of conduct," 142 S. Ct. at 2134—*i.e.*, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms" for lawful purposes, U.S. Const. amend. II. *See Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, 2023 WL 4552284, at *5 (N.D. Cal. July 13, 2023) ("*Bruen* conducted a textual analysis of the words 'bear' and 'keep' to determine whether the conduct of publicly carrying a firearm fell within the language of the Second Amendment."), *appeal docketed*, No. 23-16091 (9th Cir. Aug. 14, 2023).

It is a plaintiff's burden to demonstrate that the plain text covers the proposed course of conduct, and courts that have applied the *Bruen* framework have held plaintiffs to that burden. *See Bruen*, 142 S. Ct. at 2134; *see, e.g.*, *Nat'l Ass'n for Gun Rights*, 2023 WL 4552284, at *5; *Or. Firearms Fed'n, Inc. v. Kotek*, 2023 WL 4541027, at *5, n.4 (D. Or. July 14, 2023), *appeal docketed*, No. 23-35478 (9th Cir. July 17, 2023); *Def. Distributed v. Bonta*, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022), *adopted at* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022). In conducting that textual analysis, "the regulated conduct must be defined

specifically enough that it can meaningfully compare to the Second Amendment's plain text." *United States v. Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022). That ensures that the Second Amendment does not become a "regulatory straightjacket," *Bruen*, 142 S. Ct. at 2133, and gives effect to the Supreme Court's repeated recognition that the Second Amendment is subject to reasonable limits. *Id.* at 2128; *id.* at 2157 (Alito, J., concurring); *id.* at 2161–62 (Kavanaugh, J., concurring).

**2. The Second Amendment Does Not Cover the Proposed Conduct of Firearm Sales and Purchases on State Property**

Plaintiffs failed to establish that the Second Amendment's plain text covers their properly defined proposed course of conduct, which is the sale and purchase of firearms and ammunition on state property. They do not attempt to explain how the meanings of "keep" and "bear" as used in the Second Amendment—which mean to "have" and "carry" weapons for the purpose of "confrontation," (*Heller*, 554 U.S. at 583–84)—include the sale and purchase of weapons on state property. *See United States v. Tilotta*, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022) ("'Have and carry' is not synonymous with 'sell or transfer.'").

Instead, Plaintiffs lean on this Court's prior holding that the Second Amendment includes an ancillary right to acquire firearms. OB 18 (citing *Teixeira*, 873 F.3d at 677–78). But as this Court did "not define the precise scope

of any such acquisition right," *Teixeira* does not help Plaintiffs meet their plain text burden. *Id.* at 678. Indeed, *Teixeira* undercuts Plaintiffs' argument because this Court made clear that "the Second Amendment does not elevate convenience and preference over all other considerations" (*id.* at 680), and does not "guarantee[] a certain type of retail experience." *Id.* at 680, n.13.

Plaintiffs also inconsistently describe their proposed course of conduct. They initially describe it as the sale of firearms and ammunition "at gun shows at the Fairgrounds." OB 17. Yet, when claiming to invoke the plain text analysis, Plaintiffs shift their description of the conduct to the more general "purchase of firearms." OB 18. While they assert that it would be "unfaithful to *Bruen*" to argue that the purchase of firearms is not covered by the Second Amendment's plain text (OB 18), it is Plaintiffs' overgeneralization of their proposed conduct that is inconsistent with *Bruen*. The course of conduct in *Bruen*—"carrying handguns publicly for self-defense," 142 S. Ct. at 2134—was not defined at a high level of generality without regard for the challenged regulation.

Generally describing the proposed conduct as the sale of firearms and ammunition would ignore what AB 893 actually prohibits—the sale of firearms and ammunition *at the Fairgrounds*. The challenged regulation naturally informs the scope of the proposed conduct; otherwise, the Supreme Court's use of the qualifier "proposed" before "course of conduct" when describing the plain text

analysis would be meaningless. *See Bruen*, 142 S. Ct. at 2134; *see also Oakland Tactical Supply, LLC v. Howell Twp.*, No. 18-cv-13443, 2023 WL 2074298, at *3, n.4 (E.D. Mich. Feb. 17, 2023), *appeal docketed*, No. 23-1179 (6th Cir. Mar. 1, 2023) ("The proposed conduct could not be simply 'training with firearms' because the zoning ordinance does not prohibit 'training with firearms.'").

Defining the proposed conduct as simply the sale of firearms would also mean that any regulation having any effect on firearm purchases could be presumptively protected by the Second Amendment's plain text. For example, under Plaintiffs' approach, generally applicable zoning laws prohibiting retail sales in residential neighborhoods (including those of firearms) could satisfy the plain text inquiry and then be subject to historical scrutiny; so, too, would a standard sales tax that impacts an individual's ability to purchase a handgun; or a law that requires all retailers to retain records of commercial sales. *See Oakland Tactical Supply*, 2023 WL 2074298, at *3 (defining the proposed conduct simply as "training with firearms" would lead to the "absurd result" that in future constitutional challenges "any proposed conduct touching on any type of firearms training would be presumptively protected by the plain text of the Second Amendment"). That is not the plain text inquiry that *Bruen* envisioned. *Reyna*, 2022 WL 17714376, at *4 ("To do otherwise would be to compare the regulated conduct to the Second Amendment's bare and oversimplified text—keeping and

bearing arms, without the original public meaning emphasized in *Heller* and [*Bruen*].”). For purposes of the *Bruen* analysis, the proposed conduct at issue here can be defined only as the sale and purchase of firearms and ammunition on state property.

### 3. The District Court Properly Relied on This Court’s Prior En Banc Decision in *Teixeira*

Plaintiffs dismiss out of hand the parts of *Teixeira* undercutting their claim as having been “abrogated by *Bruen*.” OB 19. But *Teixeira* did not engage in the type of means-end scrutiny that *Bruen* rejected, as Plaintiffs suggest. OB 19–20. Rather, *Teixeira*’s reasoning was “fully consistent with *Heller*” (873 F.3d at 687), and *Bruen* left *Heller* undisturbed. *Bruen*, 142 S. Ct. at 2126 (describing the new analytical framework for Second Amendment claims as “[i]n keeping with *Heller*”).

*Teixeira* concerned a county zoning ordinance that imposed certain restrictions on where a gun store could be located relative to other types of properties (e.g., schools, residential zones). *Teixeira*, 873 F.3d at 673–74. When a business partnership was denied a permit to open a gun store in a location that failed to comply with the ordinance, the partnership claimed that the ordinance infringed its Second Amendment right to sell firearms and the rights of its potential customers to buy firearms. *Id.* at 673, 676. This Court conducted a “full textual and historical review” of the Second Amendment to conclude there is no

"independent right to sell or trade weapons." *Id.* at 683. Beginning with the Second Amendment's text, the Court concluded that "[n]othing in the specific language of the Amendment suggests that sellers fall within the scope of its protection." *Id.* at 683. Founding-era "Second Amendment analogues in state constitutions" also "nowhere suggest[ed] in their text that the constitutional protection extends to those who would engage in firearms commerce." *Id.* The Court's historical analysis "confirm[ed] that the right to sell firearms was not within" the historical understanding of the Second Amendment's scope. *Id.* As *Bruen* noted, this type of analysis "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. *Teixeira*'s analysis thus forecloses any Second Amendment claim based on a supposed right to sell firearms and ammunition, particularly on state property.

While *Teixeira* acknowledged that the Second Amendment implies some "ability to acquire arms," the Court found it unnecessary to decide the precise scope of "any such acquisition right." 873 F.3d at 677–78. There, the plaintiffs had failed to plausibly allege that the challenged ordinance impeded their ability to acquire firearms because the conclusory allegations fell short of the pleading requirements the Supreme Court set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007) and in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Teixeira*, 873 F.3d at 678–81. As *Bruen* did not disturb *Twombly* or *Iqbal*, the same is true here. The very nature of gun shows is that they are a temporary marketplace during specified dates, and those at the Fairgrounds occur infrequently, about five times per year. 2-ER-160; 2-ER-251. While Plaintiffs allege that gun shows at the Fairgrounds are a "convenient forum" to buy firearms (2-ER-135), a gun show is not akin to a brick-and-mortar gun store with a permanent location at which Plaintiffs—all of whom appear, by their own allegations, to already possess firearms and ammunition (2-ER-137–44)—can presumably purchase firearms and ammunition on any day of the year. Plaintiffs' conclusory allegations thus do not support any inference that they cannot freely acquire firearms and ammunition at locations outside of the Fairgrounds.[7]

In summary, because *Teixeira* was consistent with *Heller*, *Twombly*, and *Iqbal*, none of which were overruled by *Bruen*, the district court correctly relied on *Teixeira* to dismiss Plaintiffs' Second Amendment claim. 1-ER-10–11. This Court can apply *Teixeira* "without running afoul" of *Bruen* because there must be more than "some tension"—to the extent there is any at all—between *Teixeira* and *Bruen*. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018). Plaintiffs

[7] By declining the district court's invitation to amend their allegations (2-ER-39), Plaintiffs waived their right to further amend the complaint (*Teixeira*, 873 F.3d at 680, n.15), and essentially conceded that AB 893 does not restrict their ability to purchase firearms and ammunition outside of the Fairgrounds.

cannot show there is *any* tension between these decisions, and thus fail to show that *Teixeira* is "clearly irreconcilable" with *Bruen*. OB 20, n.6 (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *see also United States v. Kittson*, 2023 WL 5015812, at *2 (D. Or. Aug. 7, 2023) (holding that a pre-*Bruen* Ninth Circuit decision, which relied on *Heller* to hold that machineguns were not protected arms under the Second Amendment, was not clearly irreconcilable with *Bruen* and thus was binding).[8]

### C. AB 893 Is a Presumptively Lawful Qualification on the Commercial Sale of Firearms

The district court also correctly concluded that AB 893 falls within the presumptively lawful category of "laws imposing conditions and qualifications on the commercial sale of arms." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626); 1-ER-10–11. The Supreme Court has now expressed in its three most recent Second Amendment opinions, including in *Bruen* itself, that its decisions "should [not] be taken to cast doubt" on the presumptive lawfulness of these conditions and qualifications. *See Heller*, 554

[8] The continued viability of *Teixeira* is additionally evident from post-*Bruen* district court decisions that have relied on its holdings. *See, e.g.*, *Hartford v. Ferguson*, 2023 WL 3836230, at *6 (W.D. Wash. June 6, 2023); *United States v. Flores*, 2023 WL 361868, at *4 (S.D. Tex. Jan. 23, 2023); *Tilotta*, 2022 WL 3924282, at *5.

U.S. at 626–27; *McDonald*, 561 U.S. at 787; *Bruen*, 142 S. Ct. at 2162

(Kavanaugh, J., concurring).

The Second Amendment thus allows States to impose "conditions and

qualifications on the commercial sale of arms." *Bruen*, 142 S. Ct. at 2162

(Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626). AB 893's

prohibition on the sale of firearms and ammunition at the Fairgrounds is akin to a

time, place, and manner restriction that merely restricts sales on a state property.

In no way does AB 893 restrict firearm and ammunition sales at locations outside

of the Fairgrounds, and Plaintiffs do not allege that such items cannot be sold in

ample alternative locations. AB 893 is thus similar to other public safety measures

that this Court has placed in the category of presumptively lawful conditions and

qualifications. *See Teixeira*, 873 F.3d at 690 (Owens, J., concurring) (county

zoning ordinance that prohibited firearm retailers near residences, schools,

daycares, and liquor stores fell within this presumptively lawful category);

*Silvester v. Harris*, 843 F.3d 816, 830–31 (9th Cir. 2016) (Thomas, J., concurring)

(same, as to a ten-day waiting period for recurrent firearm purchasers that allowed

a cooling-off period to impede impulsive uses of a firearm against oneself or

others). Plaintiffs did not at all address how AB 893 falls squarely within the

category of "conditions and qualifications on the commercial sale of arms."

### D. Prohibiting the Sale of Firearms and Ammunition on State Property Is Consistent with Several Historical Traditions of Regulation

Consistent with *Bruen*, the district court did not require the State Defendants to show AB 893 "is consistent with the Nation's historical tradition of firearm regulation" because the court correctly concluded that the Second Amendment's plain text did not cover Plaintiffs' proposed conduct.[9] *Bruen*, 142 S. Ct. at 2129–30 (the historical burden shifts to the government only "[w]hen the Second Amendment's plain text covers an individual's conduct"). The district court accordingly did not err by declining to engage in the historical analysis, contrary to Plaintiffs' contention. OB 22. But if the historical analysis were to become relevant here, the State Defendants can demonstrate that AB 893 is consistent with at least three historical traditions, including: (1) the government's well-established authority to set limits on the use of its property when it is acting as a proprietor; (2) the regulation of firearms and ammunition commerce to promote public safety; and (3) the regulation of firearms in sensitive places, including in public spaces and at

[9] The State Defendants requested an opportunity to compile the relevant historical record to supplement the historical evidence examined in *Teixeira* in the event the district court reached a different conclusion in the plain text analysis. D.Ct. Dkt. 42-1 at 18, n.6. While State Defendants provide a historical analysis here, if this Court were to conclude that Plaintiffs met their burden at the plain text inquiry stage, then State Defendants request that this Court remand to allow the district court to conduct the historical inquiry in the first instance.

large gatherings. *See Alaniz*, 69 F.4th at 1129, n.1 (this Court can consider historical analogues under *Bruen* for the first time on appeal).

The historical analogues discussed below, like AB 893, are representative of these well-worn American traditions. AB 893 is comparable with these historical analogues, and in most instances, significantly less restrictive than historical restrictions that prohibited the sale of weapons across geographic regions or jurisdictions (and not just on state property), or that prohibited not only the sale but the carrying of weapons on public property or at large gatherings. The historical analogues and AB 893 are also comparably justified because they address similar goals, "(1) controlling and tracing the sale of firearms and (2) ensuring dangerous individuals did not obtain firearms," albeit in some instances by different means. *United States v. Holton*, 639 F. Supp. 3d 704, 711–12 (N.D. Tex. 2022); *see also* 2-ER-252 (AB 893's legislative findings noting incidences at the Fairgrounds of illegal firearms trafficking, the sale of firearms to prohibited persons, and the sale of illegal magazines). 2-ER-252.[10]

[10] The text of the historical analogues cited here are included in the Addendum, and are arranged in the order of their appearance in this brief. Additional discussion of these analogues can be found in the supplemental briefing opposing the preliminary injunction motion in *B&L Productions, Inc., et al. v. Gavin Newsom, et al.*, C.D. Cal., No. 8:22-cv-01518-JWH-JDE, at Docket Nos. 26, 31, 34.

**1. AB 893 Falls Within the Government's Well-Established Authority to Regulate Conduct on Its Own Property**

The right of landowners to control and exercise domain over their own property is a well-established American legal principle deeply rooted in English tradition. *See, e.g.*, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1265 (11th Cir. 2012) ("'[Property] being by him removed from the common state nature hath placed it in, it hath by this labour something annexed to it, that excludes the common right of other men.'") (quoting John Locke, *Two Treatises on Government*, 209–10 (1821)); *id.* at 1262 ("'There is nothing which so generally strikes the imagination, and engages the affections of mankind, as the right of property.'") (quoting 1 William Blackstone, *Commentaries on the Laws of England*, 140 (1765)). The Founding Fathers adopted these tenets and, "through the Constitution and the Bill of Rights, sought to *protect* the fundamental right of private property, not to eviscerate it." *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1265 (italics in original). Because the Second Amendment cannot be understood to "destroy one cornerstone of liberty—the right to enjoy one's private property," the Second Amendment, "whatever its full scope, certainly must be limited by the equally fundamental right of a private property owner to exercise exclusive dominion and control over its land." *Id.*

This right of a property owner to control conduct on its own land applies to the government when it operates as a proprietor. *Bonidy v. U.S. Postal Serv.*, 790

F.3d 1121, 1126 (10th Cir. 2015) ("[T]he fact that the government is acting in a proprietary capacity, analogous to that of a person managing a private business, is often relevant to constitutional analysis."); *United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019); *see also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense*, 56 UCLA L. Rev. 1443, 1474 (2009) ("[T]here is both precedent and reason for allowing the government acting as proprietor extra power to restrict the exercise of many constitutional rights on its property."). For example, in *Bonidy*, the court held that it was constitutional to prohibit the carrying of firearms in a postal parking lot because the government "often has more flexibility to regulate when it is acting as a proprietor (such as when it manages a post office) than when it is acting as a sovereign (such as when it regulates private activity unconnected to a government service)." 790 F.3d at 1126. In *Class*, another federal circuit court held that it was permissible to prohibit firearms in the government-owned parking lot on United States Capitol Grounds because "the government—like private property owners—has the power to regulate conduct on its property." 930 F.3d at 464; *see also GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 212 F. Supp. 3d 1348, 1363 (N.D. Ga. 2016) (upholding prohibition of firearms on U.S. Army Corps of Engineers property, which included public recreation areas).

Historical analogues dating back to the seventeenth century exemplify this tradition of regulating firearms on government-owned property. For example, Maryland prohibited bringing any weapon into its state legislature in 1650 and 1773. W.H. Browne, *Proc. & Acts of Gen. Assemb. of Md., Jan. 1637/8–Sept. 1664*, at 273–74, § 5 (1883); *63 Proc. & Acts of the Gen. Assemb., June 15-July 3, 1773*, at 338, § 5. In the 1870s, Georgia prohibited the carrying of weapons to any court, election ground, place of public worship, or other public gathering spaces. 1870 Ga. Laws, at 421, No. 485; Code of the State of Ga., at 818, § 4528. And in 1879, Missouri prohibited carrying concealed weapons into schools, court rooms, or "any other public assemblage of persons met for any lawful purpose." *Revised Statutes of State of Mo. 1879*, at 224, § 1274. These laws demonstrate that, consistent with centuries of English and American legal tradition, it is permissible to place certain conditions on the use of state property—including the prohibition of firearm and ammunition sales—when the State allows private parties to host events on its land.

### 2. AB 893 Falls Within the Government's Well-Established Authority to Regulate Firearms Commerce to Promote Public Safety

Various levels of government have long preserved the peace and welfare of the community by exercising sovereign power to regulate the commercial sale of products. William J. Novak, *The People's Welfare, Law and Regulation in*

*Nineteenth Century America* 87 (1996) ("[E]arly Americans understood the economy as simply another part of their well-regulated society, intertwined with public safety, morals, health, and welfare and subject to the same kinds of legal controls."). Firearms and ammunition were no exception. As this Court previously recognized, "colonial governments substantially controlled the firearms trade" by "provid[ing] and stor[ing] guns, controll[ing] the conditions of trade, and financially support[ing] private firearms manufacturers." *Teixeira*, 873 F.3d at 685.

Several states enacted regulations restricting "where and to whom individuals could sell guns" (*Holton*, 639 F. Supp. 3d at 711) that were "designed to combat illegal arms and ammunition trafficking and to ensure that individuals considered dangerous did not obtain firearms." *United States v. Serrano*, 2023 WL 2297447, at *13 (S.D. Cal. Jan. 17, 2023). Some examples include a seventeenth century Connecticut law that "banned the sale of firearms by its residents outside the colony,"[11] and a seventeenth century Virginia law that allowed for the sale of firearms and ammunition to only "his majesties loyal[] subjects inhabiting this

[11] 1 J. Trumbull, *Public Records of the Colony of Conn., May 1665*, at 138–39, 145–46 (1850).

colony."[12] *Teixeira*, 873 F.3d at 685, 685 n.18. There was also a "1652 New York law [that] outlawed illegal trading of guns, gun powder, and lead by private individuals."[13] *Serrano*, 2023 WL 2297447, at *13 (quoting Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55, 76 (2017)). And a "1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'"[14] *Holton*, 639 F. Supp. 3d at 711 (quoting Spitzer, at 76).

States also enacted regulations to protect the public from defective or poorly manufactured firearms or gunpowder, which were adopted by six states in the late 1700s and early 1800s. The firearm inspection laws required that a government official test the firing distance and barrel integrity of any firearm sold to the public. Br. of Defs.-Appellees, *Granata v. Campbell*, No. 22-1478 (1st Cir. Jan. 30, 2023), 2023 WL 1794480, at *39–40 (citing 1804 Mass. Acts., at 111, ch. 81; 1821 Me. Laws, at 546, ch. 162). The ammunition inspection laws generally required government officials to inspect gunpowder to ensure it met certain quality standards. *Id.* at *42 (citing 1808 Mass. Acts, at 444, ch. 52; 1776 R.I. Pub. Laws,

---

[12] 2 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 403 (1823).

[13] 1652 N.Y. Laws 128, Ordinance of Dir. & Council of New Netherland.

[14] 1 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 174–75, Act LVI (1823).

at 25; 1776–77 N.J. Laws, at 6–7, ch. 6; 1820 N.H. Laws, at 274, ch. 25; 1794 Pa. Laws, at 764–69, ch. 337).

There were also multiple restrictions on the sale and storage of gunpowder. One example was a New Hampshire law enacted in 1825—and renewed in 1891—that penalized the sale or offer for sale "by retail any gunpowder in any highway, or in any street, lane, or alley, or on any wharf, or on parade or common." 1825 N.H. Laws, at 74, ch. 61, § 5; 1891 N.H. Laws, at 332, ch. 117, § 7. An 1821 Maine law allowed government officials to search for gunpowder in any building. 1821 Me. Laws, at 99, ch. 25, § 5. New York City enacted strict laws regulating the sale of gunpowder within the corporate limits of the city, and prohibited the sale of gunpowder in any building that was used in part as a "dwelling." 1 M. Ash, *N.Y.C. Consolidation Act*, Ordinances of N.Y.C., § 455 (1891). Other local governments were given general authority by state law to regulate the sale and storage of gunpowder. *See e.g.*, 1845 Iowa Laws, at 119, § 12; 1836 Conn. Acts, at 105, § 20.

These consumer protection laws extended to shooting galleries as such galleries proliferated in the mid-1800s. These regulations required licensure to open a shooting gallery or limited the location of such galleries. For example, an 1857 Rhode Island law barred any pistol or rifle gallery in the "compact part of the town of Newport." 1857 R.I. Revised Statutes, at 204–05, ch. 80, § 2. An 1863

ordinance in Memphis, Tennessee prohibited pistol shooting galleries "in the first story of any building in [the] city" and required a license before opening such a gallery. W.H. Bridges, *Digest of Charters & Ordinances of City of Memphis*, at 147–48, Art. VI., § 1 (1863). Other nineteenth century ordinances in San Francisco and New Orleans required a license or residential consent before opening a shooting gallery. *Ordinances & Joint Resolutions of City of S.F.*, at 220, Ordinance No. 498, § 13 (1854); H.J. Leovy, *Laws & Gen. Ordinances of City of New Orleans*, at 257, § 636 (1870).

AB 893 fits squarely within this well-established tradition of regulating firearms commerce to promote public safety. Like these early American laws, which restricted where and which firearms and gunpowder could be sold, and where shooting galleries could be located, AB 893 regulates firearms-related commercial activity on state property to promote public safety—and in doing so is not more burdensome than its predecessors.

#### 3. AB 893 Falls Within the Government's Well-Established Authority to Regulate Firearms in Sensitive Places

The Supreme Court has "assume[d] it settled" that certain areas are "'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2133; *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on . . . laws forbidding the carrying of firearms in sensitive places

such as schools and government buildings.”). This was so even though the historical record before the Supreme Court in *Bruen* “yield[ed] relatively few 18th- and 19th-century ‘sensitive places’ where weapons were altogether prohibited—e.g., legislative assemblies, polling places, and courthouses,” because the Court was “aware of no disputes regarding the lawfulness of such prohibitions.” 142 S. Ct. at 2133. The Supreme Court also acknowledged that there may be “*new* and analogous sensitive places [that] are constitutionally permissible.” *Id.* (italics in original).

Throughout the nineteenth century, laws and regulations were adopted to prohibit armed assemblies. *See* Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective*, 9 Geo. J.L. & Pub. Pol’y 323, 326–27, 374–90 (2011) (“[T]he Founding Fathers did not equate a random assemblage of armed people as comprising a ‘well-regulated militia,’ and instead viewed this assemblage as a dangerous mob.”). For example, New Orleans and New Mexico prohibited the carrying of weapons into ballrooms. J. Bayon, *Gen. Digest of Ordinances & Resolutions of Corp. of New Orleans*, at 371, Art. 1 (1831); 1852 N.M. Laws, at 67, § 3.

This trend continued after the ratification of the Fourteenth Amendment. Tennessee in 1869 prohibited the carrying of dangerous weapons into “any

election . . . fair, race course, or other public assembly of the people." J.H. Shankland, *Pub. Statutes of Tennessee Since 1858*, at 108, ch. 22, § 2 (1871). In 1870, Texas prohibited the carrying of dangerous weapons into, among other places, a ballroom, circus, public exhibition, or assembly of people for amusement or educational purposes. G.W. Paschal, *Digest of the Laws of Tex.*, at 1322, Art. 6511 (1875). Arizona and Oklahoma did the same. 1889 Ariz. Sess. Laws, at 17, Act No. 13, § 3; W.T. Little, *Statutes of Oklahoma 1890*, at 496, ch. 25, § 7 (1891). Georgia and Missouri also prohibited the carrying of weapons at large gatherings. *See, e.g.*, R.H. Clark, Code of State of Ga., at 818, § 4528 (1873); J.A. Hockaday, *Revised Statutes of State of Mo.*, at 224, ch. 24, § 1274 (1879). Several cities prohibited the carrying of firearms in public parks, including New York City, Chicago, and Boston. *Minutes of Proceedings of Bd. of Comm'rs of Central Park, N.Y. for Year Ending April 30, 1858*, at 166; M.F. Tuley, *Laws and Ordinances Governing City of Chi.*, at 88–89, ch. 31, § 6 (1873); *City of Boston Dep't of Parks Twelfth Ann. Report of Bd. of Comm'rs for 1886*, at 86, § 3 (1887).

This multitude of sensitive places laws are no less restrictive than AB 893's prohibition on the *sale*—as opposed to the carrying—of firearms and ammunition on state property. AB 893 also shares a similar purpose to the analogues identified—protecting the public welfare in locations where a large group of people gather—and thus is comparably justified.

## II. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' FIRST AMENDMENT CLAIMS

Plaintiffs twice conceded before the district court that AB 893 does not expressly prohibit gun shows. D.Ct. Dkt. 44 at 6, 9; D.Ct. Dkt. 28 at 4, 20. Nor does AB 893 prohibit the expressive conduct that occurs at gun shows. AB 893 instead is limited to prohibiting the sales of firearms and ammunition. The district court thus properly rejected Plaintiffs' unsubstantiated theories that AB 893 indirectly prohibits gun shows or offers for sale. 1-ER-7–9; 1-ER-26–27.

### A. AB 893 Does Not Regulate Speech or Expressive Conduct

The First Amendment is not implicated if the challenged statute does not regulate speech or expressive conduct, which is conduct undertaken with an "'intent to convey a particularized message'" when the "'likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted). It is the Plaintiffs' burden "to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). As the district court concluded, Plaintiffs cannot meet their burden here. 1-ER-7–9; 1-ER-26–27.

AB 893 solely prohibits "the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds." 2-ER-252 (former Cal. Food & Agric. Code § 4158(a)). This Court has long held that "the act of exchanging money for a gun is not 'speech' within the meaning of the First

Amendment." *Nordyke 1997*, 110 F.3d at 710 (evaluating a First Amendment challenge to a contract provision between a county fairgrounds and a fairgrounds management company that prohibited the sale and offering for sale of firearms at the fairgrounds). Plaintiffs respond that the district court erroneously relied on this conclusion because it was "dicta" and "not the holding of *Nordyke 1997*." OB 26. That unsubstantiated assertion is belied by this Court's subsequent description of the conclusion as a holding of this Court: "We have previously *held* that the act of exchanging money for a gun is not 'speech' for the purposes of the First Amendment." *Nordyke 2003*, 319 F.3d at 1191 (italics added); *see also id.* ("Pursuant to *Nordyke* [*1997*], the sale itself is not commercial speech."). Plaintiffs cannot simply ignore this holding from *Nordyke 1997*, and the district court correctly relied on it when dismissing the claim. 1-ER-8; 1-ER-27.

Plaintiffs also fail in their effort to equate AB 893 with the District's prior "moratorium," which prohibited gun shows outright. OB 24; 2-ER-165. As Plaintiffs twice conceded before the district court, AB 893 does not expressly prohibit gun shows. D.Ct. Dkt. 44 at 6, 9; D.Ct. Dkt. 28 at 4, 20. Knowing that AB 893's plain language undermines their claim, Plaintiffs fall back on the position that AB 893 has the "practical effect" of prohibiting gun shows at the Fairgrounds because firearm and ammunition sales are an "essential function" of gun shows, which would become "unprofitable and economically infeasible"

without such sales.  2-ER-158; 2-ER-172–73.  But such allegations are inconsistent with Plaintiffs' other allegations that more than *60 percent* of vendors at B&L gun shows *do not sell firearms or ammunition at all*, and that there are other "important reason[s] people attend" gun shows, including to "[p]articipat[e] in 'gun culture'" and "to learn about the technology and use of various firearms and ammunition." 2-ER-158.

Such inconsistency reveals the faulty premise in Plaintiffs' theory; namely, that it is the "financial incentive[s]" of gun show vendors that sell firearms and ammunition (OB 5), not AB 893 itself, that could prevent gun shows at the Fairgrounds.  AB 893 is not a speech restriction simply because it might impact the profitability of gun shows.  Put another way, as the district court recognized (1-ER-8; 1-ER-27), a restriction on non-speech conduct (the sale of firearms and ammunition) does not become a restriction on speech just because it might impact the profitability of separate and unrestricted expressive conduct (the alleged "gun culture" at gun shows).  *See Nordyke 2003*, 319 F.3d at 1191 (a law could be unconstitutional when it "interfere[s] with speech itself, not [through] the hindering of actions (e.g., sales) that are not speech").  If third parties make their own independent business decisions not to sell accessories or provide firearms education at a site where firearms sales are prohibited, it is those parties' intervening decisions—not AB 893—that cause Plaintiffs' alleged injuries.  *See*

*Sorrell v. IMS Health Inc*., 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."); *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935–37 (9th Cir. 2022) (holding that a worker classification statute did not infringe First Amendment rights, even if it classified doorknockers and signature gatherers as employees and thereby indirectly impacted the employer's speech due to increased costs and loss of such workers), *cert. denied* 143 S. Ct. 2639 (2023). Plaintiffs' First Amendment right to speak about and support a "gun culture" does not entitle them to be exempt from other, non-speech restrictions—whether it be fire-code restrictions on maximum capacity, or business taxes, or a prohibition on firearm sales—that might ultimately prevent their event from being profitable. *See Nordyke 2003*, 319 F.3d at 1191 (an ordinance that prohibited the possession of firearms on county property did not violate the First Amendment even when the ban impaired the sale of firearms).[15]

---

[15] In addition to this erroneous profitability argument, Plaintiffs attribute an ulterior motive to AB 893, highlighting one statement in a legislative bill analysis that AB 893 "would effectively terminate the possibility for future gun shows at the Del Mar Fairgrounds." OB 24, quoting 2-ER-258. Putting aside the fact that the analysis defines a "gun show" as a "trade show for firearms" involving firearm sales, and does not specify whether AB 893 would eliminate gun shows without firearm sales (2-ER-256), this Court has made clear that what matters is "the interests the state declared," not the "legislative history or stated motives of any legislator." *Nordyke v. King*, 644 F.3d 776, 792 (9th Cir. 2011) ("*Nordyke 2011*");

Plaintiffs again overstate the reach of AB 893 when they contend that it "directly bans . . . the commercial speech necessarily associated" with firearm and ammunition sales. OB 32; *see also* OB 14–15. They alleged, "[o]n information and belief," that AB 893 prohibits "offers to sell or buy." 2-ER-171–72. Yet Plaintiffs point to no language in AB 893 demonstrating that it prohibits offers for sale. The district court correctly noted as much. 1-ER-8 ("AB 893 does not prohibit *offers* for sale.") (italics in original). AB 893 is not, as Plaintiffs mistakenly assert (OB 14–15, 32), like the contract provision at issue in *Nordyke 1997*, which explicitly prohibited "offering for sale . . . firearms or ammunition." 110 F.3d at 710. This Court accordingly held in that case that an offer to sell firearms constituted commercial speech, and that the contract provision did not pass constitutional muster under the applicable analytical framework. *Id.* at 710–13. But AB 893 prohibits only "the act of exchanging money for a gun," which as this Court held in the same case, is not speech. *Id.* at 710.

The sale of a firearm is also not inextricably intertwined with speech, as Plaintiffs contend. OB 26. Under the inextricably intertwined theory, when

---

*see also United States v. O'Brien,* 391 U.S. 367, 384 (1968). Notably, AB 893's stated legislative findings did not mention an intent to end all gun shows at the Fairgrounds and even highlighted how the Fairgrounds would consider the "feasibility of conducting gun shows for only educational and safety training purposes." 2-ER-252.

commercial speech is inextricably intertwined with non-commercial speech, the entirety of the speech is entitled to non-commercial speech protections. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Hunt v. City of Los Angeles*, 638 F.3d 703, 715-716 (9th Cir. 2011). But, as stated previously, the sale of a firearm or ammunition is not even commercial speech; it is not speech at all. *Nordyke 1997*, 110 F.3d at 710. Also, "a gun itself is not speech," nor is the possession of a gun generally. *Nordyke 2003*, 319 F.3d at 1189. There is thus no commercial speech with which the non-commercial speech may intertwine.

This intertwined theory also does not apply when "the two components of speech can be easily separated." *Hunt*, 638 F.3d at 715. Courts have repeatedly rejected the argument that the *sale* of a regulated item is inextricably intertwined with *speech pertaining to* that item. *Id.* at 716–17 (the plaintiffs' sale of shea butter and incense was not inextricably intertwined with the spiritual messages they incorporated into their sales pitches); *see also Fox*, 492 U.S. at 474 (prohibiting the sale of housewares in a college dorm did not "prevent[] the speaker from conveying, or the audience from hearing" non-commercial speech about home economics). It is also not "impossible" (*id.*) under AB 893 for Plaintiffs to express their views about "gun culture" (2-ER-156) without firearm sales also occurring at gun shows. AB 893 does not prohibit offers for sale,

discussions about product availability, or conversations about product suitability for specified uses; its only requirement is that sales be consummated elsewhere.

AB 893 prohibits only non-speech conduct—the sale of firearms and ammunition. Plaintiffs fail, on multiple grounds, to show that AB 893 regulates speech. The district court correctly held Plaintiffs to their burden and dismissed the First Amendment claims.

### B. In Any Event, AB 893 Passes Multiple Levels of Scrutiny

At the outset, because AB 893 does not regulate speech, it is subject to and easily satisfies rational basis review. If this Court were to view AB 893 as a speech regulation, then AB 893 also satisfies the other possibly applicable review standards, including: (1) the test for commercial speech regulations; (2) the reasonableness standard for a limited public forum; and (3) intermediate scrutiny.

#### 1. AB 893 Satisfies Rational Basis Review

Because AB 893 does not regulate speech, it is subject to rational basis review, which it satisfies. *See Retail Digit. Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017) (en banc). AB 893's legislative findings describe multiple public safety concerns related to the sale of firearms and ammunition at gun shows held at the Fairgrounds and elsewhere, including the trafficking of illegal firearms by a vendor, sales of firearms to prohibited persons, the illegal importation of large-capacity magazines, and the occurrence of 14 recorded crimes between 2013

and 2017 at B&L gun shows at the Fairgrounds. 2-ER-251–52. The Legislature could reasonably conclude that because the sale of firearms and ammunition at gun shows contributed to these public safety issues, prohibiting such transactions would enhance safety for gun show attendees and for the surrounding communities of the Fairgrounds. Preventing and mitigating gun violence arising from "those who acquire guns illegally and use them to commit crimes" is a "substantial interest." *Nordyke 1997*, 110 F.3d at 713. These are "plausible reasons" for the passage of AB 893, and thus, the "'inquiry is at an end.'" *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (citation omitted).

**2. AB 893 Does Not Ban Protected Commercial Speech**

If this Court were to conclude that AB 893 regulates commercial speech, then it would additionally satisfy the test for regulations of commercial speech established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). Commercial speech is "expression related solely to the economic interests of the speaker and its audience," and is accorded less protection than non-commercial speech. *Id.* at 561–63. Plaintiffs cite *Nordyke 1997* for the principle that "[a]n offer to sell firearms or ammunition" is commercial speech. OB 32, citing 110 F.3d at 710. But unlike AB 893, *Nordyke 1997* concerned a contract provision that explicitly prohibited the "offering for sale" of firearms. *Id.* at 708–09. Moreover, it was "critical" in that case that no law

prohibited the sale of firearms at the county fairgrounds, and thus the offer to sell firearms there concerned a lawful activity. *Id.* at 710–11. Here, AB 893 prohibits the sale of firearms and ammunition at the Fairgrounds, thus an offer to make such sales, assuming that it does not concern a lawful activity, is not protected commercial speech. *See id.*

In any event, AB 893 would satisfy the *Central Hudson* test, which is the standard that applies to regulations of commercial speech. *See Prieto*, 861 F.3d at 846, 846 n.7.[16] First, there is a "substantial government interest in protecting the people from those who acquire guns illegally and use them to commit crimes resulting in injury or death of their victims." *Nordyke 1997*, 110 F.3d at 713. Second, AB 893 "directly advances" this government interest (*Cent. Hudson*, 447 U.S. at 566) because illegal transactions and other crimes have indeed occurred at gun shows despite existing state laws concerning gun shows. 2-ER-151–55; 2-ER-251–52. Third, AB 893's exemption for gun buyback events reasonably fits with its public safety interest because such events can help reduce gun violence. *Cf. Boyer v. City of Los Angeles*, 2012 WL 13013037, at *5 (C.D. Cal. Aug. 23, 2012)

[16] Plaintiffs surmise that the commercial speech doctrine might not "remain good law." OB 31, n.9. That assertion belies this Court's application of the *Central Hudson* test in its en banc opinion in *Prieto*, 861 F.3d at 846, and in its recent panel opinion in *Junior Sports Magazines, Inc. v. Bonta*, 80 F. 4th 1109, 1116 (9th Cir. 2023).

(in a Los Angeles gun buyback program, people voluntarily surrendered firearms to law enforcement in exchange for a gift card). AB 893 is thus the sort of "[s]ubstantial, effective, and carefully drafted legislative act[]" that this Court predicted would satisfy the *Central Hudson* test. *Nordyke 1997*, 110 F.3d at 713.

#### 3. If AB 893 Were Viewed as Regulating Non-Commercial Speech, Then It Would Be Within a Limited Public Forum and Satisfy the Deferential Reasonableness Standard

If this Court were to conclude that AB 893 restricted non-commercial speech, it would nevertheless satisfy the deferential standard for speech regulations in a limited public forum. "The government may limit the use of properties under its control to the uses to which the properties are lawfully dedicated." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011). But the extent of such restrictions "depends on the nature of the relevant forum." *Id.* Government property can fall into four possible categories of fora: "(1) a traditional public forum, (2) a designated public forum, (3) a limited public forum, or (4) a nonpublic forum." *Id.* (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679, n.11 (2010)).

The Fairgrounds is a limited public forum, which is one that is "'limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Wright*, 665 F.3d at 1134 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 470). Contrary to Plaintiffs' allegation, being a "state-owned property maintained

and opened for use by the public" (2-ER-159) does not change this conclusion. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."); *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981) ("The state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.") (internal quotation marks omitted).[17] Use of the Fairgrounds for third-party events, such as B&L gun shows, can be done only "through contracting for available space at the Fairgrounds." 2-ER-159–61; *Wright*, 665 F.3d at 1132, 1135–38 (beaches in an improvement district were, at most, a limited public forum because access to the beaches required showing identification to a security guard at a kiosk or gate). The various events hosted at the Fairgrounds (2-ER-159–60) demonstrate the Fairgrounds "exists to provide a means for a great number of exhibitors temporarily to present their products or views, be they commercial, religious, or political, to a large number of

[17] Plaintiffs wrongly assert it was previously held that the Fairgrounds is a public forum. OB 28. In addressing the District's prior moratorium on gun shows, the district court in that case did not rule on this issue because the conclusion was the same "[r]egardless of the type of forum." 2-ER-220.

people in an efficient fashion." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 643 655 (1981) (holding that a state fair held on state property was a limited public forum); *see also NAACP v. City of Richmond*, 743 F.2d 1346, 1355 n.8 (9th Cir. 1984) (describing *Heffron* as noting "the distinction between public streets and the more limited public forum of a fairground").

Because the Fairgrounds is a limited public forum, AB 893 need only be "reasonable and viewpoint-neutral." *Wright*, 665 F.3d at 1134. AB 893 satisfies this deferential inquiry because mitigating gun violence by preventing illegal firearm and ammunition transactions is consistent with the public safety interest for a state property that is "a major event venue for large gatherings of people." 2-ER-159; *see Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 764 F.3d 1044, 1049 (9th Cir. 2014) (the reasonableness inquiry is deferential and is satisfied when the restriction is consistent with the government's interest in preserving the property for its lawfully dedicated use); *Nordyke 2011*, 644 F.3d at 792 (the reduction of gun violence on county property was a plausible purpose for an ordinance banning the possession of firearms or ammunition on county property).[18] AB 893 is also viewpoint neutral because it applies to any event on

[18] Although this Court granted rehearing en banc of the *Nordyke 2011* panel decision, the en banc court "affirm[ed] the district court's ruling on the First Amendment for the reasons given by the three-judge panel." *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (*Nordyke 2012*).

the Fairgrounds, not just to gun shows. Cal. Food & Agric. § 4158. The only exception to AB 893 is for a "gun buyback event held by a law enforcement agency" (*id.* § 4158(c)), which is consistent with AB 893's public safety purpose.

#### 4. AB 893 Is Content-Neutral and Satisfies Intermediate Scrutiny

In addition to satisfying the reasonableness standard for limited public forums, AB 893 is content-neutral and satisfies the applicable intermediate scrutiny standard. Plaintiffs allege that AB 893 effectively ends gun shows at the Fairgrounds, thereby destroying a vital "gun culture" platform. 2-ER-156–58. A law is content-based, and thus triggers strict scrutiny, only if it "hits speech because it aimed at it." *Nordyke 2011*, 644 F.3d at 792. Here, AB 893 applies to *all events* at the Fairgrounds, not just to gun shows; firearms and ammunition sales may not be sold at *any* event of *any* type at the Fairgrounds, except for gun buyback events. Cal. Food & Agric. § 4158(a). And as in *Nordyke 2011*, AB 893's plain language "suggests that gun violence, not gun culture, motivated its passage"—which is why AB 893 targets sales of firearms and ammunition exclusively, not expressive activities or other conduct. 644 F.3d at 792. If gun shows cannot be held at the Fairgrounds because they would be unprofitable (2-ER-158), that is a decision made by gun show promoters and vendors, and not one mandated by AB 893.

Plaintiffs cite statements made by Governor Newsom when he was lieutenant governor, AB 893's author, and the authors of legislative committee bill analyses (OB 24, 30), but courts and litigants should "analyze[] the statute in terms of the interests the state declared, not the personal likes or dislikes of the law's backers." *Nordyke 2011*, 644 F.3d at 792. The Supreme Court "has long disfavored arguments based on alleged legislative motives." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255 (2022). After all, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 384 (1968).

AB 893 would survive intermediate scrutiny because it furthers an important or substantial government interest "'that would be achieved less effectively absent the regulation.'" *Rumsfeld v. Forum for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 67 (2006) (citation omitted). When applying intermediate scrutiny, courts accord "substantial deference" to a legislature's predictive judgments because of a legislature's abilities to evaluate data concerning legislative questions and to make judgments about the interaction of industries with complex regulatory schemes. *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 520 U.S. 180, 195–96 (1997). Indeed, "history, consensus, and 'simple common sense'" can suffice. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (citation omitted).

As previously discussed, AB 893 serves the substantial interest of preventing and mitigating gun violence. *Nordyke 1997*, 110 F.3d at 713. Plaintiffs contend that AB 893 "must target the exact wrong it seeks to remedy" by identifying a public safety concern specific to B&L gun shows held at the Fairgrounds. OB 35–36. But such a nexus is not required. Even though AB 893 identifies the occurrence of 14 recorded crimes at B&L gun shows (2-ER-252), AB 893 need only generally further its public safety interest. *Nordyke 2011*, 644 F.3d at 793 ("[E]ven for an as-applied challenge, the government need not show that the litigant himself actually contributes to the problem that motivated the law he challenges."). Moreover, AB 893's prohibition is no more restrictive than necessary because it "is a straightforward response" to the danger of illegal transactions occurring at the Fairgrounds. *Id.* at 794. California's existing regulations of gun shows (2-ER-151–56) are not a sufficient alternative because, as AB 893's legislative record shows, illegal transactions still occur at gun shows.[19]

---

[19] Indeed, the two most recent reports about the California Department of Justice's Armed and Prohibited Persons System confirm that illicit sales of firearms, ammunition, and firearm-related products *have* occurred at gun shows in recent years. *See* California Department of Justice, *Armed and Prohibited Persons System Report 2022*, at 55–56, https://oag.ca.gov/system/files/media/2022-apps-report.pdf (a firearms dealer unlawfully sold two assault weapons at an August 2022 gun show, and a convicted felon purchased an upper receiver for a rifle at an October 2022 gun show); California Department of Justice, *Armed and Prohibited Persons System Report 2021*, at 53, https://oag.ca.gov/system/files/media/2021-

### C. Plaintiffs Abandon Their Prior Restraint and Associational Rights Claims that, in Any Event, Fail

As they did in the district court, Plaintiffs essentially abandon their association and prior restraint claims by failing to address them separately from their free speech claims. OB 22, 31 n.8. This Court should therefore decline to address the claims. *Roley v. Google LLC*, 40 F.4th 903, 911 (9th Cir. 2022). In any event, both claims fail. There is no "generalized right of 'social association'" for those "willing to pay the admission fee" to attend a gun show. *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). The prior restraint claim additionally fails because AB 893 does not give the District "unfettered discretion to determine what constitutes a 'sale' under the law and is thereby prohibited at the Fairgrounds." 2-ER-185–86; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). Rather, Plaintiffs' allegations suggest it is the Penal Code that determines what is a sale under the law. 2-ER-154.

## III. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' EQUAL PROTECTION CLAIM

The district court properly dismissed the equal protection claim, which is "predicated on their First Amendment claims." 1-ER-11. Plaintiffs failed to "allege membership in a protected class" (1-ER-12) because gun-show promoters

---

apps-report.pdf (a convicted felon purchased "an AR15 upper receiver, a complete pistol ghost gun kit, and a gun magazine" at a September 2021 gun show).

and participants are not considered a suspect class. *Nordyke 2012*, 681 F.3d at 1043 n.2. Plaintiffs also cannot rely on a "class-of-one" theory. *See Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1053 (9th Cir. 2016) (rejecting a class-of-one claim by firearm vendors because "gun stores are materially different from other retail businesses").[20]

The district court also correctly rejected Plaintiffs' animus theory, which is premised on "conclusory statements" (1-ER-12), as opposed to Plaintiffs' supposed "reams of evidence." OB 38. The operative complaint uses the word "animus" only once in a conclusory fashion as to Governor Newsom (2-ER-171), who is immune from the claim on grounds not challenged here by Plaintiffs (*supra* p. 10), and there are no allegations showing animus by Secretary Ross, Attorney General Bonta, or the District and how any supposed animus led to AB 893's enactment.[21] Plaintiffs' equal protection claim thus fails.

---

[20] Although this Court granted rehearing en banc of the *Teixeira* panel decision, the en banc court affirmed the district court's rejection of the equal protection claim "for the reasons given in the panel opinion." *Teixeira*, 873 F.3d at 676 n.7.

[21] Secretary Ross is also immune to the equal protection claim for reasons not challenged by Plaintiffs here. *See supra* p. 10. Plaintiffs conceded that Attorney General Bonta "took office in April 2021, after AB 893 was adopted." D.Ct. Dkt. 44 at 21. And there are no allegations the District was involved in the passage of AB 893.

## IV. THE DISTRICT COURT SHOULD DETERMINE WHETHER TO EXERT SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS IF ANY OF THE FEDERAL CLAIMS SURVIVE

If this Court were to revive any of the § 1983 claims, then the district court should be allowed to decide in the first instance whether to "decline to exercise supplemental jurisdiction" over the state-law claims for a reason other than its prior basis, which was that it had "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); 1-ER-13–14. Plaintiffs overlook the discretionary nature of supplemental jurisdiction when they contend that this Court should simply "reinstate" these claims. OB 38; *see* 28 U.S.C. § 1367(a), (c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 639 (2009); *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 701 (9th Cir. 2022). And the exercise of discretion is particularly appropriate here, given Plaintiffs' concession before the district court that the state-law claims could proceed against only one of the four State Defendants, the District. D.Ct. Dkt. 44 at 21.

## CONCLUSION

The judgment should be affirmed.

Dated: October 11, 2023

Respectfully submitted,

*s/ Charles J. Sarosy*

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General
CHARLES J. SAROSY
Deputy Attorney General

*Attorneys for State Defendants-Appellees*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 23-55431

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/ Charles J. Sarosy **Date** Oct 11, 2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-55431

I am the attorney or self-represented party.

**This brief contains** 13,629 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ________.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Charles J. Sarosy **Date** Oct. 11, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

Case Name: **B&L Productions, et al. v. Gavin Newsom, et al. [Appeal]** No. **23-55431**

I hereby certify that on October 11, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE APPELLEES' ANSWERING BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 11, 2023, at Los Angeles, California.

| Gail Agcaoili | [signature] |
|---|---|
| Declarant | Signature |

SA2023302632

No. 23-55431

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

B&L PRODUCTIONS, D/B/A CROSSROADS OF THE WEST, ET AL.,
*Plaintiffs-Appellants*,

V.

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA AND IN HIS PERSONAL CAPACITY, ET AL.,
*Defendants-Appellees*.

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:21-cv-01718-AJB-DDL
The Honorable Anthony J. Battaglia, Judge

**CIRCUIT RULE 28-2.7 ADDENDUM
TO STATE APPELLEES' ANSWERING BRIEF**

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General

CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6356
Fax: (916) 731-2119
Email: Charles.Sarosy@doj.ca.gov
*Attorneys for State Defendants-Appellees*

October 11, 2023

## CIRCUIT RULE 28-2.7 ADDENDUM TABLE OF CONTENTS

| **Cal. Food & Agric. Code** | **Addendum Page Number** |
|---|---|
| Cal. Food & Agric. Code § 4158 | 004 |
| Former Cal. Food & Agric. Code § 4158 | 005 |
| **Historical Law** | **Addendum Page Number** |
| W.H. Browne, *Proc. & Acts of Gen. Assemb. of Md., Jan. 1637/8–Sept. 1664*, at 273–74, § 5 (1883) | 006 |
| *63 Proc. & Acts of the Gen. Assemb., June 15-July 3, 1773*, at 338, § 5 | 009 |
| 1870 Ga. Laws, at 421, No. 485 | 010 |
| Code of the State of Ga., at 818, § 4528 | 013 |
| *Revised Statutes of State of Mo. 1879*, at 224, § 1274 | 016 |
| 1 J. Trumbull, *Public Records of the Colony of Conn., May 1665*, at 138–39, 145–46 (1850) | 019 |
| 2 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 403 (1823) | 024 |
| 1652 N.Y. Laws 128, Ordinance of Dir. & Council of New Netherland | 026 |
| 1 W.W. Hening, *Laws of Va. from First Sess. of Legis. in 1619*, at 174–75, Act LVI (1823) | 027 |
| 1804 Mass. Acts., at 111, ch. 81 | 030 |
| 1821 Me. Laws, at 546, ch. 162 | 035 |
| 1808 Mass. Acts, at 444, ch. 52 | 037 |

| | |
|---|---|
| 1776 R.I. Pub. Laws, at 25 | 040 |
| 1776–77 N.J. Laws, at 6–7, ch. 6 | 042 |
| 1820 N.H. Laws, at 274, ch. 25 | 045 |
| 1794 Pa. Laws, at 764–69, ch. 337 | 049 |
| 1825 N.H. Laws, at 74, ch. 61, § 5 | 056 |
| 1891 N.H. Laws, at 332, ch. 117, § 7 | 059 |
| 1821 Me. Laws, at 99, ch. 25, § 5 | 062 |
| 1 M. Ash, *N.Y.C. Consolidation Act*, Ordinances of N.Y.C., § 455 (1891) | 066 |
| 1845 Iowa Laws, at 119, § 12 | 068 |
| 1836 Conn. Acts, at 105, § 20 | 070 |
| 1857 R.I. Revised Statutes, at 204–05, ch. 80, § 2 | 074 |
| W.H. Bridges, *Digest of Charters & Ordinances of City of Memphis*, at 147–48, Art. VI., § 1 (1863) | 078 |
| *Ordinances & Joint Resolutions of City of S.F.*, at 220, Ordinance No. 498, § 13 (1854) | 082 |
| H.J. Leovy, *Laws & Gen. Ordinances of City of New Orleans*, at 257, § 636 (1870) | 090 |
| J. Bayon, *Gen. Digest of Ordinances & Resolutions of Corp. of New Orleans*, at 371, Art. 1 (1831) | 092 |
| 1852 N.M. Laws, at 67, § 3 | 095 |
| J.H. Shankland, *Pub. Statutes of Tennessee Since 1858*, at 108, ch. 22, § 2 (1871) | 099 |
| G.W. Paschal, *Digest of the Laws of Tex.*, at 1322, Art. 6511 (1875) | 102 |

| | |
|---|---|
| 1889 Ariz. Sess. Laws, at 17, Act No. 13, § 3 | 105 |
| W.T. Little, *Statutes of Oklahoma 1890*, at 496, ch. 25, § 7 (1891) | 109 |
| R.H. Clark, Code of State of Ga., at 818, § 4528 (1873) | 115 |
| J.A. Hockaday, *Revised Statutes of State of Mo*, at 224, ch. 24, § 1274 (1879) | 121 |
| *Minutes of Proceedings of Bd. of Comm'rs of Central Park, N.Y. for Year Ending April 30, 1858*, at 166 | 126 |
| M.F. Tuley, *Laws and Ordinances Governing City of Chi.*, at 88–89, ch. 31, § 6 (1873) | 132 |
| *City of Boston Dep't of Parks Twelfth Ann. Report of Bd. of Comm'rs for 1886*, at 86, § 3 (1887) | 137 |

West's Annotated California Codes
Food and Agricultural Code (Formerly Agricultural Code) (Refs & Annos)
Division 3. Expositions and Fairs (Refs & Annos)
Part 3. District Agricultural Associations (Refs & Annos)
Chapter 6. Provisions Regarding Particular Associations (Refs & Annos)
Article 3. 22nd District Agricultural Association (Refs & Annos)

West's Ann.Cal.Food & Agric.Code § 4158

§ 4158. Del Mar Fairgrounds; sale of firearms and ammunition prohibited

Effective: January 1, 2023
Currentness

(a) Notwithstanding any other law, an officer, employee, operator, lessee, or licensee of the 22nd District Agricultural Association, as defined in Section 3873, shall not contract for, authorize, or allow the sale of any firearm, ammunition, or firearm precursor part on the property or in the buildings that comprise the Del Mar Fairgrounds in the County of San Diego, the City of Del Mar, the City of San Diego, or any successor or additional property owned, leased, or otherwise occupied or operated by the district.

(b) For purposes of this section, the following terms have the following meanings:

(1) "Ammunition" means the term as defined in subdivisions (a) and (b) of Section 16150 of the Penal Code.

(2) "Firearm" means the term as defined in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3) "Firearm precursor part" means the term as defined in Section 16531 of the Penal Code.

(c) This section does not apply to a gun buyback event held by a law enforcement agency.

**Credits**
(Added by Stats.2019, c. 731 (A.B.893), § 2, eff. Jan. 1, 2020, operative Jan. 1, 2021. Amended by Stats.2022, c. 139 (A.B.311), § 1, eff. Jan. 1, 2023.)

Notes of Decisions (2)

West's Ann. Cal. Food & Agric. Code § 4158, CA FOOD & AG § 4158
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 295 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
Food and Agricultural Code (Formerly Agricultural Code) (Refs & Annos)
Division 3. Expositions and Fairs (Refs & Annos)
Part 3. District Agricultural Associations (Refs & Annos)
Chapter 6. Provisions Regarding Particular Associations (Refs & Annos)
Article 3. 22nd District Agricultural Association (Refs & Annos)

This section has been updated. Click here for the updated version.

West's Ann.Cal.Food & Agric.Code § 4158

§ 4158. Del Mar Fairgrounds; sale of firearms and ammunition prohibited

Effective: January 1, 2021 to December 31, 2022

(a) Notwithstanding any other law, an officer, employee, operator, lessee, or licensee of the 22nd District Agricultural Association, as defined in Section 3873, shall not contract for, authorize, or allow the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds in the County of San Diego, the City of Del Mar, the City of San Diego, or any successor or additional property owned, leased, or otherwise occupied or operated by the district.

(b) For purposes of this section:

(1) The definition of "firearm" means the term as included in Section 12001 of the Penal Code.

(2) The term "ammunition" includes assembled ammunition for use in a firearm and components of ammunition, including smokeless and black powder, and any projectile capable of being fired from a firearm with deadly consequence.

(c) This section does not apply to a gun buyback event held by a law enforcement agency.

(d) This section shall become operative on January 1, 2021.

**Credits**

(Added by Stats.2019, c. 731 (A.B.893), § 2, eff. Jan. 1, 2020, operative Jan. 1, 2021.)

West's Ann. Cal. Food & Agric. Code § 4158, CA FOOD & AG § 4158
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 295 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# ARCHIVES OF MARYLAND

---

## PROCEEDINGS AND ACTS

OF THE

## GENERAL ASSEMBLY OF MARYLAND

*JANUARY* 1637/8—*SEPTEMBER* 1664

v. 1

PUBLISHED BY AUTHORITY OF THE STATE, UNDER THE DIRECTION
OF THE MARYLAND HISTORICAL SOCIETY

WILLIAM HAND BROWNE

*Editor*

Maryland (Colony). General Assembly

BALTIMORE
MARYLAND HISTORICAL SOCIETY
1883

Generated on 2023-10-04 18:57 GMT / https://hdl.handle.net/2027/rul.39030030054540
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google



Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 82 of 214

Liber A

or any one or more of the Counsell for the Vpper howse. And mr. John Hatch mr. Walter Beane mr. John Medley, mr. Willm. Brough, mr. Robt. Robins, mr. ffrancis Poesey, mr. Phillip Land, mr. ffrancis Brooks, mr. Tho: Mathews, mr. Tho: Sherman, mr. George Manners Burgesses for St. Maries County Capt. Robert Vaughan Comder. & Burgesse for the Ile of Kent County. mr. George Puddington & mr. James Coxe Burgesses for the part of the province, now Called Providence, or any fiue or more of them, for the Lower howse, together with the Clarke of tht. howse for the time being, who shall from time to time assemble themselues at the time and place to bee by the Gour. (or whomsoevr. of the Counsell hee shall by hand writing under his hand depute for tht. purpose) from time to time appoynted during this prnt Assembly, Shall haue the full power of, & bee two howses of Assembly to all intents and purposes. And all Bills that shall bee passed by the sd. Two howses or the maior part of both of them, & Enacted or Ordered by the Gour. shall bee Lawes of the province after publicon thereof, under the hand of the Gour., & the Great Seale of the sd province as fully to all effects in Law as if they were aduised & assented unto by all the ffreemen of the province personally

St. Marys Kent Providence als. Anarrundell

Willm Stone

Orders made & agreed vppon by the Assembly for the better ordering of Both Howses.

1 That noe member of eyther howse shall vse reuyling speeches or name any of the members of eyther howse by his owne name but by the terme or denominaon of the Gentleman tht. spoke last or the like

2 That none of eyther howse shall speake aboue once, att one reading to any Bill wthout licence of the Gour. or Speaker respectively. And if 2 persons rise vp together the Gour or Speaker respectively, shall appoynt who shall speake first, & no one shall interrupt another, or speake till the other haue ended.

3 That none shall deliuer his opinion or speake to any Bill sitting, but shall stand up bare headed, directing his speech to the Gour. or Speaker respectively.

4 That Every Bill proposed to the howse, shall bee read three severall dayes, before it be voted to Ingrosmt. unlesse upon urgent occasion, or in matters of lesser consequence, it bee otherwise thought fitt by both howses.

5 That none shall come into eyther of the houses whillst they are sett, with any gun or weapon uppon perill of such fine or censure as the howses shall thinke fitt

Generated on 2023-10-04 18:54 GMT / https://hdl.handle.net/2027/rul.39030030054540
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 83 of 214

Liber A 6 Any of the 14 Burgesses (bownd to attend the Assembly) that shall bee absent from their howse att the hower & place appoynted (the Gour & Secretary or any one of the Counsell being then assembled) is censured or adiudged to pay for euery such default 50l of Tob: & cask, unles iust excuse for such absence be made appeare

p. 364 7 All Tobbackos wch shall accrew bee adiudged to the payd or raysed for, or by reason of any misdemeanor, absence, or censure of any of the Burgesses during this Assembly, The Gour is pleased (& the Assembly doth thereunto consent) shall bee disposed of towards the releife of the Poore of the Province
Willm Stone.

mr Tho: Mathews, mr John Hatch & mr Walter Beane fyned by the howse in 50l Tob. apeece for not appearing.

The Burgesses desyre in the first place to debate & aduise concerning the 16 Lawes tht his Lp might bee certifyed of their proceedings therein this yeare, in some conuenient time. And the Gour conceiuing that the consultaōn of the Lower howse touching the 16 Lawes would requyre long time, adiorned the Vpper howse till wednesday next att 11 of the clock

The Lower howse adiorned by the Speaker 'till 9 a'clock next munday morning

Monday 8° Aprilis 1650

All assembled, none absent. mr Mathews, mr Hatch, & mr Beane are remitted their fine for tht it was proued not to bee uoluntary or willfull neglect in them, but iustly occasioned through fowle weather

was read his Lps Declaraōn sent in hither this yeare.

mr John Hatch & mr Beane sworne, as in the Burges oath mr Tho: Mathews refused to make oath, who had time to consider 'till afternoone. The howse adiorned till 1 clock.

Munday afternoone.

mr Thomas Mathews Burgesse of St Inigos hundd being demanded to make oath as the other Burgesses.

Replyed That he thought That oath could not bee taken by him, for tht according to his Lps instructions sent hither That All Poeple belieuing in Jesus Christ, should haue the free exercise of their Religion. And accordingly hee ought to bee guided in matters of conscience by his spirituall councell. And if soe bee, hee understood not, & could not bee satisfyed in

Generated on 2023-10-04 18:56 GMT / https://hdl.handle.net/2027/rul.39030030054540
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 84 of 214

L. H. J. Liber No. 54 June 16

5.th That no Person come into the House of Assembly, while the same is sitting, with Sword or other Weapon, upon Penalty of such ffine as shall be imposed on them by the Speaker, at the Discretion of the House

6.th That if any Member, bound to attend this Assembly, shall be absent at the Hours and Place appointed, after the Speaker and Twelve of the Members are met, according to the Order for Sitting, shall be fined according to the Discretion of the Speaker, not exceeding five Shillings for any Offence, unless upon such Excuse as the Speaker shall admit of

7.th All Misdemeanours which shall happen in the House shall be censured or fined in the House

8.th That no Bill shall be read, a second Time during this Session, till all the Members in Town shall be called in, except on some Excuse to be admitted by the Speaker.

9.th That if any Member of this House do depart, without Leave from the Hon.ble Speaker and the House, such Member shall forfeit all his preceding Allowances, due to him for his Attendance that Session

The following Resolves Viz.t

Resolved by the House, That the Members, who shall be appointed as Members of the Committee of Aggrievances, have likewise the Character of a Committee for Courts of Justice; and that that Character, and the Duty of such Committee, be annexed to the said Committee of Aggrievances as a standing Part of their Duty: And that it be an Instruction to the said Committee of Courts of Justice, that they observe the Nature of all the Commissions to the several Courts of Judicature within this Province, and that they especially observe any Alterations that may at any Time happen, by accidental Omission or otherwise therein; and particularly relating to such Words therein, as require the several Judges and Justices to hear, try and determine, according to the Laws, Statutes, Ordinances, and reasonable Customs of *England* and of this Province, or to such other Words as have Relation thereto; and that they shall immediately make Report to the House of any Alteration that shall at any Time happen in such Commission; and likewise, to have Regard, as near as may be, to observe wherein they differ from the fforms of the several Sorts of Commissions to the Judges and Justices in *England;* and also, to enquire and report, whether it appears that the several Magistrates in this Province have been duly qualified agreeable to Law

p. 306 Resolved also, That this Province is not under the Circumstances of a conquered Country, that if it were the present Christian Inhabitants thereof, would be in the Circumstances, not of the Conquered but of the Conqueror; it being a Colony of the *English* Nation, en-

 

DATE DOWNLOADED: Wed Sep 27 00:44:50 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1870 421 .

ALWD 7th ed.
, , 1870 421 .

Chicago 17th ed.
"," Georgia - Session of 1870 : 421-422

AGLC 4th ed.
'' Georgia - Session of 1870 421

OSCOLA 4th ed.
'' 1870 421 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# TITLE XVI.

## PENAL CODE—AMENDMENTS TO.

SECTIONS.
1. Carrying deadly weapons to certain places prohibited.
2. Violation—misdemeanor—penalty.
3. Chain-gang punishment prohibited.
4. Punishment in lieu of chain-gang.

SECTIONS.
5. Section 415 of the Code changed—*nolle prosequi.*
6. All indictments, etc., submitted to a jury.

(No. 285.)

*An Act to preserve the peace and harmony of the people of this State, and for other purposes.*

Carrying deadly weapons to certain places prohibited.

SECTION 1. *Be it enacted, etc.*, That, from and immediately after the passage of this act, no person in said State of Georgia be permitted or allowed to carry about his or her person any dirk, bowie-knife, pistol or revolver, or any kind of deadly weapon, to any court of justice, or any election ground or precinct, or any place of public worship, or any other public gathering in this State, except militia muster-grounds.

Exception.

Violation a misdemeanor—penalty

SEC. 2. *Be it further enacted*, That if any person or persons shall violate any portion of the above recited section of this act, he, she or they shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the court.

SEC. 3. All laws and parts of laws militating against this act are hereby repealed.

Approved October 18, 1870.

(No. 286.)

*An Act to alter and amend section 4245 of Irwin's Revised Code, by striking out of said section the words "to work in a chain-gang on the public works," and for other purposes.*

Chain-gang punishment prohibited.

SECTION 1. *Be it enacted, etc.*, That the words "to work in a chain-gang on the public works," which occur in fourth and fifth lines of section 4245 of Irwin's Code, be, and the same are hereby,

stricken from said section, and chain-gangs shall no longer exist, or be tolerated in the State of Georgia, for persons convicted of misdemeanors.

Punishment in lieu of chain-gang.

SEC. 2. *Be it further enacted,* That said section be further amended, by substituting for the words herein stricken out, the words "to work on the city or town streets, or county roads, not longer than six months; but in no case shall such prisoners be chained or otherwise confined in a gang, but shall be guarded."

SEC. 3. *Be it further enacted,* That all laws and parts of laws in conflict with this act be, and they are hereby, repealed.

Approved October 27, 1870.

---

(No. 287.)

*An Act to repeal section four hundred and fifteen* (415) *of Irwin's Revised Code, in relation to entering nolle prosequis, and to prescribe the mode of settlement in criminal cases.*

Section 415 of Code, as to *nolle prosequi*, repealed.

SECTION 1. *Be it enacted, etc.,* That section four hundred and fifteen (415) of Irwin's Revised Code of Georgia, which said section authorizes Solicitors-General in this State to enter a *nolle prosequi* on indictments, be, and the same is hereby repealed, and no *nolle prosequi* shall be allowed, except it be in open court, for some fatal defect in the bill of indictment, to be judged of by the court, in which case the presiding Judge shall order another bill of indictment to be forthwith submitted to the grand jury.

Judge shall order second bill.

All indictments submitted to jury.

SEC. 2. *And be it further enacted by the authority aforesaid,* That all cases of indictments, or special presentments, shall be submitted to and passed upon by the jury, under the direction of the presiding Judge, unless there is a settlement thereof between the prosecutor and defendant, which settlement shall be good and valid only by the approval and order of the court on examination into the merits of the case.

Settlement—when good.

SEC. 3. *And be it further enacted, etc.,* That all laws and parts of laws conflicting with this act be, and the same are hereby, repealed.

Approved October 28, 1870.

HEINONLINE

DATE DOWNLOADED: Wed Sep 27 00:51:40 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
R.H.; Cobb T.R.R.; Irwin Clark, D. Code of the State of Georgia (2).

ALWD 7th ed.
Clark, R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia (2).

APA 7th ed.
Clark, R. (2). Code of the State of Georgia. Macon, Ga, J.W. Burke.

Chicago 17th ed.
Clark R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia. Macon, Ga, J.W. Burke.

McGill Guide 9th ed.
R.H.; Cobb T.R.R.; Irwin Clark, D., Code of the State of Georgia (Macon, Ga: J.W. Burke., 2)

AGLC 4th ed.
R.H.; Cobb T.R.R.; Irwin Clark, D., Code of the State of Georgia (J.W. Burke., 2

MLA 9th ed.
Clark, R.H., et al. Code of the State of Georgia. Macon, Ga, J.W. Burke. HeinOnline.

OSCOLA 4th ed.
Clark, R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia. Macon, Ga, J.W. Burke.             Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# PART IV.

## PENAL LAWS.

# TITLE I.

## PENAL CODE.

DIVISION 1.—*Persons Capable of Committing Crimes.*
DIVISION 2.—*Principals and Accessories.*
DIVISION 3.—*Crimes against the State and People.*
DIVISION 4.—*Crimes against the person.*
DIVISION 5.—*Crimes against the Habitation.*
DIVISION 6.—*Crimes Relative to Property.*
DIVISION 7.—*Forging, Counterfeiting, and Unlawful Currency.*
DIVISION 8.—*Crimes Against Public Justice.*
DIVISION 9.—*Against Public Peace and Tranquillity.*
DIVISION 10.—*Against Public Morality, Health, Police, etc.*
DIVISION 11.—*Cheats and Swindles.*
DIVISION 12.—*Fraudulent or Malicious Mischief.*
DIVISION 13.—*Indictments and Proceedings to Execution.*
DIVISION 14.—*Contempts, etc., and Attempts to Commit Crimes.*
DIVISION 15.—*Proceedings in Preliminary Courts.*

## FIRST DIVISION.

### PERSONS CAPABLE OF COMMITTING CRIMES.

SECTION.
4292. Crime—definition.
4293. Intention.
4294. Infants of fourteen years—capable.
4295. Under ten—incapable.
4296. Lunatics.
4297. Idiots.
4298. Aiders and abettors instead.
4299. If insanity is pleaded.
4300. Married women.
4301. Drunkenness—when excuse.
4302. Misfortune or accident.
4303. Persons under fear.
4304. Felony—what is.

§4292. (4227.) *Definition of Crime.* A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence.

§4293. (4228.) *Intention.* Intention will be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 90 of 214

§4528. *Deadly weapons not to be carried to public places.* [No person in this State is permitted or allowed to carry about his or her person, any dirk, bowie knife, pistol or revolver, or any kind of deadly weapon, to any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State, except militia muster grounds; and if any person or persons shall violate any portion of this section, he, she or they shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the Court.] (a.)

(a) Acts of 1870, p. 421.

§4529. (4455.) *Other offenses against public peace.* All other offenses against the public peace, not provided for in this Code, shall be prosecuted and indicted as heretofore, and the punishment in every such case, shall be [as prescribed in section 4310 of this Code.] (a.)

(a) Acts of 1865-'66, p. 233.

## TENTH DIVISION.

### OFFENSES AGAINST THE PUBLIC MORALITY, HEALTH, POLICE, ETC.

SECTION.
4530. Bigamy.
4531. Punishment on married person.
4532. On unmarried person.
4533. Incest.
4534. Adultery.
4535. Lewdness.
4536. Lewd houses.
4537. Disorderly houses.
4538. Gaming houses.
4539. Gaming in liquor shops.
4540. Gaming tables.
4541. Gambling.
4542. Gaming with minors.
4543. Minors not to play billiards.
4544. Gaming with clerks and bank officers.
4545. Players—witnesses.
4546. Judge's charge.
4547. Suspected houses.
4548. Sale of lottery tickets forbidden.
4549. Tickets in gift enterprises.
4550. Unwholesome provisions.
4551. Unwholesome bread, etc.
4552. Unlawful sale of kerosene.
4453. Test of kerosene.
4554. Other illegal oils.
4555. Sale of naptha.
4556. Sale of uninspected oils.
4557. Kerosene defined.
4558. Spreading small pox.

SECTION.
4559. Violating quarantine.
4560. Vagrants.
4561. Common rogues.
4562. Nuisances.
4563. Disinterring bodies.
4564. Bastardy.
4565. Retailing without license.
4566. Illegal marrying.
4567. Marrying white and colored.
4568. Illegal voting.
4569. Buying or selling votes.
4570. Sale of liquor on election days.
4571. Minors voting.
4572. Adultery with negroes.
4573. Whipping wife.
4574. Interferring with religious worship.
4575. Retailing near church.
4576. Vending near camp grounds.
4577. Police at places of worship.
4578. Running freight trains on Sunday.
4579. Violating Sabbath.
4580. Hunting on Sunday.
4581. Illegal bathing.
4582. Fines from Sabbath-breakers.
4583. Bonds in case of vagrancy.
4584. Attorney or Solicitor—duty in such case.
4585. Water and light on railroads.
4586. Equal accommodation of races.

4530. (4456.) *Polygamy and bigamy.* Polygamy, or bigamy, shall consist in knowingly having a plurality of husbands or wives at the same time.

Indictment for bigamy must set forth what—admissions of defendant as to marriage: 11 Ga., 53. Definition of bigamy: 20 Ga., 703. Principal in first and second degree: 34 Ga., 275. Bigamy under §1667: 40 Ga., 244. "Legitimate:" 20 Ga., 702; 34 Ga., 407.

4531. (4457.) *Punishment—if before marriage.* If any person or persons within this State, being married, do or shall at any time hereafter marry any person or persons, the lawful husband or wife being alive, and knowing that such lawful husband or wife is living, such person or persons so offending shall, on conviction, be punished by confinement at labor in the penitentiary, for any time not less than two years nor longer than four years, and the second marriage shall be void; but five years' absence of the husband or wife, and no information of the fate of such husband or wife, shall be sufficient cause of acquittal of the person indicted;

HEINONLINE

DATE DOWNLOADED: Wed Sep 27 01:08:27 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
John A.; et al. Hockaday, Compilers %26 Annotators. Revised Statutes of the State of
Missouri 1879 (1879).

ALWD 7th ed.
Hockaday, John A.; et al., Compilers & Annotators. Revised Statutes of the State of
Missouri 1879 (1879).

APA 7th ed.
Hockaday, J. (1879). Revised Statutes of the State of Missouri 1879. Jefferson City,
Carter & Regan, State printers and binders.

Chicago 17th ed.
Hockaday John A.; et al., Compilers %26 Annotators. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.

McGill Guide 9th ed.
John A.; et al. Hockaday, Compilers %26 Annotators, Revised Statutes of the State of
Missouri 1879 (Jefferson City: Carter & Regan, State printers and binders., 1879)

AGLC 4th ed.
John A.; et al. Hockaday, Compilers %26 Annotators, Revised Statutes of the State of
Missouri 1879 (Carter & Regan, State printers and binders., 1879

MLA 9th ed.
Hockaday, John A., and Compilers & Annotators et al. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.
HeinOnline.

OSCOLA 4th ed.
Hockaday, John A.; et al., Compilers & Annotators. Revised Statutes of the State of
Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.
Please note: citations are provided as a general guideline. Users should consult
their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   https://heinonline.org/HOL/License
-- The search text of this PDF is generated from  uncorrected OCR text.

# CHAPTER 24.

## OF CRIMES AND CRIMINAL PROCEDURE.

ARTICLE I—Offenses against the government and the supremacy of the law.
II—Offenses against the lives and persons of individuals.
III—Offenses against public and private property.
IV—Offenses affecting records, currency, instruments or securities.
V—Offenses affecting the administration of justice.
VI—Offenses by persons in office or affecting public trusts and rights.
VII—Offenses against public order and public peace.
VIII—Offenses against public morals and decency or the public police, and miscellaneous offenses.
IX—Miscellaneous provisions and matters of practice.
X—Local jurisdiction of public offenses.
XI—Limitations of criminal actions and prosecutions.
XII—Surety to keep the peace.
XIII—Arrest and preliminary examination.
XIV—Jurisdiction and mode of procedure.
XV—Of grand juries and their proceedings.
XVI—Indictments and process thereon.
XVII—Proceedings before trial.
XVIII—Trials and incidental proceedings.
XIX—Verdict and judgment and proceedings thereon.
XX—New trial and arrest of judgment.
XXI—Appeals and writs of error.
XXII—Miscellaneous proceedings.
XXIII—Procedure before justices in misdemeanors.
XXIV—Relief of insolvents confined on criminal process.
XXV—Costs in criminal cases.

## ARTICLE I.

### OFFENSES AGAINST THE GOVERNMENT AND THE SUPREMACY OF THE LAW.

SECTION
1227. Treason, punishment of.
1228. Misprision of treason, how punished.
1229. Giving aid to enemies of state—punishment.
1230. Combinations to overturn state government.
1231. Levying war against people of state.

SEC. 1227. *Treason, punishment of.*—Every person who shall commit treason against the state, by levying war against the same, or by adhering to the enemies thereof, by giving them aid and comfort, shall, upon conviction, suffer death, or be sentenced to imprisonment in the penitentiary for a period of not less than ten years. (G. S. 776, § 1.)

SEC. 1228. *Misprision of treason, how punished.*—Every person who shall have knowledge that any other person has committed, or is about to commit, treason against this state, and who shall conceal the same, shall be deemed guilty of misprision of treason, and, on conviction, shall be punished by imprisonment in the penitentiary for a period not exceeding seven years, or by imprisonment in the county jail not less than four months, and by fine not less than one thousand dollars. (G. S. 776, § 2.)

SEC. 1229. *Giving aid to enemies of state—punishment.*—Any person who, while this state shall be engaged in war, in cases authorized by the constitution of the United States, shall attempt or endeavor to join, or give aid or comfort to, the enemies of the state, or shall counsel, advise, persuade or induce any other person to join, give aid or comfort to them, in this state or elsewhere, shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding ten years, or by fine not less than one thousand nor exceeding five thousand dollars. (G. S. 777, § 3.)

SEC. 1271. *Abandonment of children.*—If any father or mother of any child under the age of six years, or any other person to whom such child shall have been confided, shall expose such child in a street, field or other place, with intent wholly to abandon it, he or she shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months. (G. S. 781, § 39.)

SEC. 1272. *Mistreatment of apprentices.*—If any master or mistress of an apprentice or other person having the legal care and control of any infant, shall, without lawful excuse, refuse or neglect to provide for such apprentice or infant, necessary food, clothing or lodging, or shall unlawfully and purposely assault such apprentice or infant, whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. (New section.)

SEC. 1273. *Abandonment of wife or child.*—If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of twelve years born in lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty, nor more than one thousand dollars, or by both such fine and imprisonment. No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children, than would be necessary to prove such fact or facts in a civil action. (Laws 1867, p. 112, amended—*m.*)

SEC. 1274. *Carrying deadly weapons, etc.*—If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct, on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall, directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment. (Laws 1874, p. 43; laws 1875, p. 50, and laws 1877, p. 240, amended.)

SEC. 1275. *Above section not to apply to certain officers.*—The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or make arrests, nor to persons moving or traveling peaceably through this state, and it shall a good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home or property. (New section.)

SEC. 1276. *Fire arms not to be discharged near court house.*—Hereafter it shall be unlawful for any person in this state, except he be a sheriff or other officer in the discharge of official duty, to discharge or fire off any

(*m*) Wife held to be a competent witness to prove fact of abandonment. 43 Mo. 429. The fact that the defendant has brought suit for divorce is no defense. 52 Mo. 172.

Connecticut
F
97
.C7
v. 1
1636/1665

THE

# PUBLIC RECORDS

OF THE

# COLONY OF CONNECTICUT,

PRIOR TO THE UNION WITH NEW HAVEN COLONY,

MAY, 1665;

TRANSCRIBED AND PUBLISHED, (IN ACCORDANCE WITH A RESOLUTION OF THE GENERAL ASSEMBLY,) UNDER THE SUPERVISION OF THE SECRETARY OF STATE,

WITH OCCASIONAL NOTES, AND AN APPENDIX;

By J. HAMMOND TRUMBULL,
COR. SEC. CONN. HIST. SOCIETY; COR. MEMB. N. YORK HIST. SOCIETY, ETC.

HARTFORD:
BROWN & PARSONS.
1850.

DOES NOT CIRCULATE

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 95 of 214

[*Deputyes :*] Mr. Steele, Mr. Talcoate, Mr. Westwood Andrew Bacon, Mr. Phelps, Mr. Gaylard, Mr. Hull, Dauid Wilton, Mr. Trotte, James Boosy, Sa: Smith, Nath: Dickenson, Jehue Burre, Anthony Wilson, Tho: Fayerchild.

The Court desieres that the Comissio^rs should be moued that noe Am̃unition should be traded w^th any that liue out of the Jurisdictions in combinatiō, whereby yt might supply the Indeans, and that some consideration be taken to restrayne Roade Iland frō trading w^th thē in such kynd.

Whereas Tho: Thornton of Wyndsor, by haueing his men suddenly taken offe their cauleing, may susteyne great losse, the Court hath freed him frō Trayneing, and desier the Magistrats to take his condition into serious consideration, that he might not be put to extraordinary hassard by imploying his men in publique searuice, and the Capten hath liberty to free his workemen frō one da'yes trayneing, p^ruided they supply yt in the Artillery. *This not voted.*

Whereas, there is liberty giuen to the Magistrats to mittegat or increase dam̃ages giuen in by the verdict of Jury, It is now Ordered, that what alteration shall att any tyme be made in that kynd, yt shalbe in open Courte before pl. & def^t, or affedauit made that they haue bine som̃oned to appeare.

Fayerfiēld eccepte against a Jury of sixe, but subiect to that p^rte of the Order that 8 of 12 may giue in a verdicte.

It is Ordered, that if any p^rson w^thin these libertyes haue bine or shalbe fyned or whippen for any scandalous offence, he shall not be admitted after such tyme to haue any voate in Towne or Com̃on welth, nor to searue on the Jury, vntill the Court shall manifest their satisfaction.

Whosoeuer shall be com̃itted for delinquency shall pay two shillings sixe pence to the keep^r of the pryson

To moue the Com̃issio^rs to make some p^ruission ag^t incorigiblenes.

Mr. Ludlowe is desiered to take some paynes in drawing forth a body of Lawes for the gouernment of this Com̃on welth, & p^rsent thē to the next Generall Court, and if he can prouide a man for his occations while he is imployed in the said searuice, he shalbe paid at the Country chardge.

Its desiered by the Court, that the Magistrats would take course that all male p^rsons aboue 16 yeares of age should take the Oath of Fidellity: and that three Magistrats may giue the said Oath & make Freemen, (vppon certificatt of good behauior, as is p^ruided by former Order. This to stand vntill the next Courte.

Whereas Tho: Steynton by his long absence is disabled to attend the Court according to his place, It is now Ordered, his sallery shall cease, and Jonathen Gylbert is chosen to supply the place for this yeare, and the Court will attend him w^th resonable satisfactiō.

[151] The Gou^r and Deputy are desiered to be Cofīissio^rs to joyne w^th the Vnited Collonyes for the meeteing in Septēber next & for this yeare.

It is Ordered, that a Rate be graunted of 50*l*. for the carrieing on the worke of the Forte, in case there should bee need thereof, to be paid by the Townes of the Riuer.

It is Ordered, that there be two p^rticuler Courts held the next p^rceding day before the two standing Generall Courts, that both the assistance of Mr. Ludlowe may be had, and such actions as fall out betwixt any vppon the Riuer and the Townes by the sea side be more comfortably attended.

John Maynard and Williā Westly are freed frō watching.

To the penall Order conserneing the selling of lead, powder etc. to any out of the Jurisdiction is added, That it is lefte to the judgement of the Courte, that where any offence is comitted against the said Order or Orders, ether to aggrauat or lessen the penulty according as the nature of the offence shall require.

Its recomended to the seuerall Townes seasonably to attend the colection for the Colledg, and send it thither in conuenient tyme.

Mr. Hopkins and Mr. Whiting discouering to the Court the wrong rec^d frō some Indeans in stealeing of theire goods and burneing their howse, it was conceaued that any lawfull course may be taken for the recouery of their losse, according as amongste the Englishe.

The Court being put in mynd of the Indeans that liue in, are rec^d, and liue among the Englishe in these Townes, it was referred to Mr. Deputy and Capten Mason to take consideratiō of

In the action of John Moody pl. against James Whatly defendt, the Jury find for the deft, coste of Court.

Kircū & Carrington are to pay 30*s.* to the administrators of Vere, for their bargaine of Corne.

Three of the Jury betwixt James Whatly pl. agt R. Fellowes dt, thinke on witnesse cannot cast the cause wthout some circūstances fall in neare to equalize a witnesse, and they apprhend the circūstances on the other side rather the stronger: 1. The prty of whō he bought the horse said he knew not of the lamenes: 2. the price giuen might intimat soundness; 3. seuerall that rodde on the horse and that wrought him, did not discouer any lamenes. John White, Tho: Olcoke, Will' Phelps.

The other 3 conceaue the witnesse giuen into the former Court hold out the defent might know the lamenes of the horse; 2. one witnesse testifieing frō his mouth, that he said he was lame.

---

[157] OCTOBER THE 30th, 1646.

Ed: Hopkins Esq, Gor.
Jo: Heynes Esqr, Dep.
Mr. Webster, Mr. Welles, Mr. Whiting, Capten Mason, Mr. Woolcott.
[*Deputyes:*] Mr. Phelps, Mr. Stoughton, Mr. Clarke, Mr. Porter, Mr. Steele, Mr. Talcoat, Mr. Westwood, Mr. Cullicke, Mr. Trotte, James Boosy, Nath: Dickenson, Jo: Demon.

The deputyes are to take into consideration the fenceing uppon the Easte side of the great Riuer, by whō & where they shall see cause.

The Order of the Comissioners concerneing the restreynt of of selling powder, shotte, amunition etc. to any out of the Jurisdiction, wthout the lycence of two Magistrats, or one Magistrat and 2 deputyes, is confirmed.*

* This order of the Commissioners was confirmatory of that made in 1644, (see p. 113, *ante*) which had been approved by the General Courts of all the United Colonies except Plymouth. The present order prohibited, under a heavy penalty, the sale of arms or ammunition to any person out of the confederate jurisdictions, " without lycense under the hands of two.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 98 of 214

The Order conserneing the p^r^ceeding against Indeans is confirmed.†

There is alowed for the searuing of executions 2*s.* 6*d.* if vnder 40*s.* and 5*s.* if aboue.

Whosoeuer drawes wyne after the publisheing this Order, shall pay to the Country after the p^r^portiō of 40*s.* a Butt for what shalbe drawen.

Mr. Phelps is appoynted to joyne w^th^ the Cōmittee for the planting Matabezeke.

---

[158] JA: 28^th^, 1646.

Ed. Hopkins Esq^r^, Go^r^.

Mr. Webster, Mr. Whiting, Capten Mason, Mr. Welles, Mr. Woolcott.

[*Deputyes:*] Mr. Steele, Mr. Talcoate, Mr. Cullicke, Mr. Westwood, Mr. Trott, James Boosy, Nath: Dickenson, Jo: Demon, Mr. Phelps, Mr. Stouton, Mr. Clarke, Mr. Porter.

The Order concerneing paying 5*s.* a pownd for takeing Tobacco not growing w^th^in this Jurisdictiō, is repealed.

Richard Lord for transgressing the Order against selleing lead out of this Jurisdictiō, is fyned seauen pownd.

---

magistrates of the jurisdiction, or at least under the hands of one magistrate and two deputyes, intressed in the publique affaires, & that all & eu'ry such lycense shall from time to tyme be kept in a booke or memoriall in writing, that all the parcells or particulers, w^th^ the quantities soe lycensed, the p^r^sons to whom, the grounds for w^ch^, upon occasion may be considered by the Gen^r^all Courts, or Comissioners for the Colonyes." (Rec. of U. Colonies, Sept. 1646.)

† Providing, that in case of "wilfull & hostile practises against the English, together with the entertemeing, protecting or rescueing of offenders," "the Magistrates of any of the Jurisdictions might, at the charge of the plaintiffs, send some convenient strength of English, & according to the nature & vallewe of the offence & damage, seize & bring away any of that plantacon of Indians that shall entertaine, protect or rescue the offender, though it should be in another Jurisdiction, when, through distance of place, comission or direction cannot be had, after notice & due warning given them, as abettors or at least accessory to the iniury & damage done to the English; onely women & children to be sparingly seized vnlesse knowen to be some way guilty. And because it will be chargeable keeping Indians in prison, & if they should escape they would prove more insolent & dangerous after, it was thought fitt that upon such seysure, the delinquent or satisfaction should againe be demanded of the Sagamore or Plantacon of Indians guiltie or accessory as before; and if it be denyed, that then the magistrates of the Jurisdiction deliver up the Indians seized to the party or parties indamaged, either to serve or to be shipped out and exchanged for Negroes, as the cause will iustly beare." [Ibid.] This Order will be found incorporated with the code of 1650, in a subsequent part of this volume.

THE

# Statutes at Large;

BEING

## A COLLECTION

OF ALL THE

# LAWS OF VIRGINIA,

FROM THE

## FIRST SESSION OF THE LEGISLATURE,

IN THE YEAR 1619.

---

PUBLISHED PURSUANT TO AN ACT OF THE GENERAL ASSEMBLY OF VIRGINIA, PASSED ON THE FIFTH DAY OF FEBRUARY ONE THOUSAND EIGHT HUNDRED AND EIGHT.

---

VOLUME II.

---

BY WILLIAM WALLER HENING.

---

"The *Laws* of a country are necessarily connected with every thing belonging to the people of it, so that a thorough knowledge of *them*, and of their progress, would inform us of every thing that was most useful to be known about them; and one of the greatest imperfections of historians in general, is owing to their ignorance of law." *Priestley's Lect. on Hist. Vol. I. pa. 149.*

---

*NEW-YORK:*

PRINTED FOR THE EDITOR, BY R. & W. & G. BARTOW.

1823.

*IT is ordered* that all persons have hereby liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony, and that the Indians of the Easterne shore have like and equall liberty of trade or otherwayes with any other our ffriends and neighbouring Indians.

Arms and ammunition may be sold to any loyal subject. Free trade allowed to Indians of Eastern Shore.

---

*IT is ordered* that an accompt of the charge of the warr against the Susquehannah Indians be produced, examined, rated and reasonable charge allowed and borne by the publique.

Charges of war ag'st Susquehannah Indians, to be liquidated, and paid by the public.

---

*IT is ordered* that the provisions, armes, ammunition, horses, horse furniture and necessaryes for the Indian warre raised and sent forth by each respective county, by vertue of the acts of assembly made in June last for the first two months be borne and paid by each respective county, and alsoe those northerne souldiers under command of coll. Gyles Brent, who did only serve against the Indians, and did returne to their due allegiance and obedience when coll. Gyles Brent did lay downe his armes and had promise from the northerne gentlemen and magistrates for their pay, be paid by their respective counties.

Provisions, arms, &c. for the Indian war declared by Bacon, to be paid for by the counties; also the northern soldiers under colonel Giles Brent, when he laid down his arms

---

*IT is ordered* that all such as were sent burgesses from their severall countyes to the said assembly in June, and have since behaved themselves all along loyall to the king and obedient to his governour, and did not obleige themselves to the people to beare their owne charges, be payd their full sallary according to the severall former acts and orders of assembly in such cases.

Burgesses, at the session of June, 1676, who behaved with loyalty to the king, to be paid their expenses.

---

*IT is ordered* that for the future all county court clerkes are obleiged (at any tyme when demanded) to give a copy of the lyst of tythables in that county to any housekeeper that shall enquire the same, he paying for the ffees twenty pounds of tobacco; and also a

Cl'ks of county courts bound to furnish a list of tithables & county levy to any person desiring it, for a





" />

(https://firearmslaw.duke.edu)

Search this website

(https://law.duke.edu/)

# 1652 N.Y. Laws 128 Ordinance of the Director and Council of New Netherland Against Illegal Trade In Powder, Lead And Guns In New Netherland By Private Persons

Subject(s):

- Registration and Taxation (https://firearmslaw.duke.edu/subjects/registration-and-taxation/)

Jurisdiction(s):

- New York (https://firearmslaw.duke.edu/jurisdictions/new-york/)

Year(s):

1652

An act prohibited the Illegal Trade in Powder, Lead and Guns, however the exact text has been lost to history.

- (https://twitter.com/dukefirearmslaw)
- (https://www.youtube.com/playlist?list=PLPlIY2puNnqYUNnmXwbGnQFKMSaLSVDoq)

- Home (https://firearmslaw.duke.edu/)
- About (https://firearmslaw.duke.edu/about/)
- Blog (https://firearmslaw.duke.edu/secondthoughts/)
- Videos (https://firearmslaw.duke.edu/videos/)
- Events (https://firearmslaw.duke.edu/events/)
- Repository of Historical Gun Laws (https://firearmslaw.duke.edu/repository/)
- Teaching Resources (https://firearmslaw.duke.edu/teaching-resources/)
- Conferences (https://firearmslaw.duke.edu/conferences/)

Duke Center for Firearms Law | 210 Science Drive, Durham, NC 27708 | firearmslaw@law.duke.edu (mailto:firearmslaw@law.duke.edu)
Questions or comments about the Repository of Historical Gun Laws can be sent to gunlaws@law.duke.edu (mailto:gunlaws@law.duke.edu).

Copyright © 2023. All rights reserved. Website designed by Addicott Web (https://www.wordpress-web-designer-raleigh.com/).

THE

# Statutes at Large:

BEING

A COLLECTI[illegible]

OF AL[illegible]

# LAWS OF V[illegible]RGIN[illegible]A

FROM THE

FIRST SESSION OF THE L[illegible]GISLATURE,

IN THE YEAR 1619

---

PUBLISHED PURSUANT TO AN ACT OF THE GENERAL ASSEMBLY OF VIRGINIA, PASSED ON THE FIFTH DAY OF FEBRUARY ONE THOUSAND EIGHT HUNDRED AND EIGHT.

---

VOLUME I.

---

BY WILLIAM WALLER HENING.

---

"The *Laws* of a country are necessarily connected with every thing belonging to the people of it; so that a thorough knowledge of *them*, and of their progress, would inform us of every thing that was most useful to be known about them; and one of the greatest imperfections of historians in general, is owing to their ignorance of law." *Priestley's Lect. on Hist. Vol. I. pa.* 149.

*NEW-YORK:*

PRINTED FOR THE EDITOR, BY R. & W. & G. BARTOW.

1823.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 103 of 214

## ACT LI.

To go armed to church.

ALL men that are fittinge to beare armes, shall bringe their peices to the church uppon payne of every effence, yf the mayster allow not thereof to pay 2 lb. of tobacco, to be disposed by the church-wardens, who shall levy it by distresse, and the servants to be punished.

## ACT LII.

Obedience to superiors.

NOE person within this colony uppon rumour of supposed change and alteration shall presume to be disobedient to the present government, nor servants to their private officers, maysters and overseers, at their uttermost perills.

## ACT LIII.*

Adjoining plantations to assist, upon alarms.

THE ioyninge plantations, to assisst the fronteires or their neighbours, uppon alarmns, the default to be severelie censured, and false alarmns punished.

## ACT LIV.

No hides to be exported.

*IT is ordered*, That no cowe hides, oxe hides, bull hides, goate skynes, deer skynes, or other hides, or skynes whatsoever, be sent or carryed out of this colony uppon forfeiture of thrice the value, whereof the one halfe to the informer, and the other halfe to publique uses.

## ACT LV.

Terms of the quarterly courts at James City.

*IT is established and appoynted*, That the fowre quarter corts shall be held at James-Citty yearlie, as followeth, vizt. uppon the first day of September, the first day of December, the first of March, and the first day of June.

## ACT LVI.

Commanders to exercise their men at stated

*IT is ordered and appoynted*, That the comanders of all the severall plantations, doe upon holy days exercise the men under his comand, and that the coman-

* There is no act numbered LIII in the manuscript

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 104 of 214

ders yearlie doe likewise uppon the first day of December, take a muster of theire men, togeather with the women and children, and theire ages, countryes, and towns, where they were borne, with the shipps they came in, and the yeare of the Lord, as also of armes and munition, corne, cattle, hoggs, goates, barques, boates, gardens, and orchards, and yf they shall make default, to be censured by the Governor and Counsell.

periods—and also take a census of the inhabitants.

## ACT LVII.

*The third of March*, 1631.

*IT is agreed uppon by the Grand Assembly*, That Capt. *Samuel Mathewes*, when he hath finished, and perfected, the worke at the ffort at Poynt Comfort, shall give notice to the comissioners for that purpose, that they may viewe the worke.

Fort at Point Comfort.

## ACT LVIII.

*IT is further agreed*, That Capt. *Samuel Mathewes*, shall leave 6 sufficient men thereon for a guard, and that he shall receive satisfaction for them, of the country, until such tyme as it can be otherwise provided for.

Guard at Point Comfort.

## ACT LIX.

THAT the inhabitants about the corporation of James Citty, with the ayde of the Burgisses thereof, shall with all convenient speed that may be, remove the carriadges for the ordinance, into some dry place to preserve them for the decayinge of the weather, or otherwise.

Carriages for ordinance.

## ACT LX.

*IT is thought fitt*, That no boates be permitted to goe and trade to Canida, that be not of the burden of ten tunnes, and have a flush deake, or fitted with a gratinge and a trapaulinge.

Size and construction of boats to trade to Canada

# ACTS AND RESOLVES

OF

# MASSACHUSETTS.

1804-1805.

[PUBLISHED BY THE SECRETARY OF THE COMMONWEALTH, UNDER AUTHORITY OF CHAPTER 104, RESOLVES OF 1889.]

# ACTS

AND

# LAWS

OF THE

# COMMONWEALTH

OF

# MASSACHUSETTS.

---

BOSTON:

Printed by YOUNG & MINNS,

Printers to the Honorable the General Court of the Commonwealth.

MDCCCIV.

---

Reprinted by Wright & Potter Printing Company, State Printers.

1898.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 107 of 214

other Towns within this Commonwealth are required by law to choose in the Months of March or April annually; And the Officers so chosen shall be qualified as other Town Officers are. *Approved March 8, 1805.*

---

## 1804. — Chapter 81.

[January Session, ch. 35.]

AN ACT TO PROVIDE FOR THE PROOF OF FIRE ARMS MANUFACTURED WITHIN THIS COMMONWEALTH.

Preamble.

*Whereas no provision hath been made by law for the proof of Fire Arms manufactured in this Commonwealth by which it is apprehended that many may be introduced into use which are unsafe and thereby the lives of the Citizens be exposed, to prevent which*

Provers of fire-arms to be appointed.

SECT. 1ST. *Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same* That the Governor by and with the advice and consent of the Council be and he hereby is empowered to appoint in any part of this Commonwealth where the Manufacture of fire Arms is carried on, suitable persons to be provers of fire arms not exceeding two in any County who shall be sworn to the faithful discharge of their trust, whose duty it shall be to prove all Musket Barrels and Pistol barrels which being sufficiently ground bored and breeched shall be offered to him to be proved — who shall prove the Musket barrels twice in manner following vizt. first with a charge consisting of one eighteenth part of a pound of Powder, one ounce of which in a five & an half inch Howitz at an elevation of forty five degrees will carry a twenty four pound shot, eighty Yards — with a ball suited to the bore of the barrel — the second proof to be with a charge consisting of one twenty second part of the same powder with a ball suited to the bore of the barrel, and shall prove the pistol barrels once with a charge consisting of one twenty second part of a pound of Powder, one ounc of which in a five and half inch Howitz at an elevation of forty five degrees, will carry a twenty four pound shot seventy Yards, with a ball suited to the bore of the barrel — which said powder and ball it shall be the duty of the prover to provide — And if the said musket and pistol barrels shall stand the proof aforesaid and shall in no respect fail, then it shall be the duty of the said prover to

Method of proving.

Proof marks

stamp the same on the upper side and within one and an half inches of the breech of said barrels with a stamp consisting of the initial letters of the provers name & over those letters the letter P. also in the line of the said initial letters and further up said barrel the figures designating the Year of our Lord in which the proof is made and over the said figures the letter M. which said letters and figures shall be so deeply impressed on said barrel as that the same cannot be erased or disfiguered and shall be in the form following $\overset{P}{AB}\ \overset{M}{1805}$ and when any barrels shall burst or shall in any manner fail in the proving as aforesaid so that in the opinion of the prover they are unfit for use they shall not be stamped but the said prover shall suffer the owner to take them away — & any prover so proving musket or pistol barrels as aforesaid shall be entitled to recieve from the owner for each musket barrel thirty three Cents, and for each pistol barrel twenty five Cents, whether the same stand proof and are Stamped or not.

Fees.

Penalty for not having arms proved.

SEC. 2D. *And be it further enacted*, that if any person after the first day of June next shall manufacture within this Commonwealth any musket or pistol without having the barrels proved and stamped as aforesaid, except such as are or may be Manufactured in the Armory of the United States, or in fulfilment of some contract made and entered into or that may hereafter be made and entered into for the Manufacturing of fire arms for the United States, shall forfiet and pay for every such Musket or pistol the sum of ten dollars to be recovered in an action of Debt before any Court proper to try the same by any person who shall sue for and recover the same to his own use.

Penalty for selling or buying arms not proved.

SEC. 3D. *And be it further enacted* that if any person after the said first day of June next, shall sell and deliver or shall knowingly purchase any Musket or Pistol which shall have been manufactured within this Commonwealth after the said first day of June next, which shall not have the marks of proof above required the person so selling and the person so purchasing, shall each forfiet the sum of Ten Dollars, to be recovered by action of debt before any Court proper to try the same to the use of any person who shall sue for and recover the same.

Penalty for forging stamp.

SEC. 4TH. *And be it further enacted*, that if any person, shall falsely forge or alter the stamp of any prover

of Fire arms, so appointed as aforesaid impressed on any musket or Pistol Barrel pursuant to this Act, and be convicted thereof before the Supreme Judicial Court he shall be punished by fine not exceeding Fifty Dollars nor less than twenty dollars, according to the nature and agravation of the offence. *Approved March 8, 1805.*

---

## 1804. — Chapter 82.

[January Session, ch. 36.]

AN ACT TO INCORPORATE A NUMBER OF THE INHABITANTS IN THE TOWN OF LIMINGTON, IN THE COUNTY OF YORK, INTO A SEPERATE RELIGIOUS SOCIETY, BY THE NAME OF THE FIRST BAPTIST SOCIETY IN LIMINGTON.

Persons incorporated.

SEC. 1. *Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same,* That Ebenezer Clarke, James Marrs, Solomon Stone, William Chick, Barzillai Small, Nathaniel Clark, Paul Gray, James Sawyer, John Gray, Ebenezer Sawyer, Jeremiah Small, Lemuel Sawyer, Peter Chick, James Small, Daniel Rounds, Amos Chase, Robert Hooper, David Nason, Jonathan Nason, Daniel Small, Frethe Spencer, John Lord, John Sutton, Stephen Webber, George Stone, James Lord, John Andrews, John Finnix, Enoch Nason, Nathaniel Adams, Benjamin Norton, Edward Norton, John Greenlaw, Amos Thompson, Joseph Sawyer, William Sawyer, Ebenezer Walker, William Wentworth, Hurd Hubbard, James Heard, Joshua Durgon, Levi Cole, William Manning, George Finnix, Isaac Small, Ezekiel Small, Jacob Small, Josiah Chase, Thomas Spencer, Abraham Parker, Amos Chase Junior, Nathan Chick, and Jonathan Nason Junior, members of said Religious Society, with their polls and estates, be, and they are hereby incorporated by the name of the First Baptist Society in Limington, with all the priviledges and immunities which parishes or Religious Societies in this Commonwealth are by Law intitled to, *provided however*, that all such persons, shall be holden to pay their proportion of all Monies assessed in said town of Limington for Parochial purposes, previous to the passing of this Act.

Corporate name.

Method of joining the society.

SEC. 2D. *And be it further enacted*, that any person in said town of Limington who may at any time within one year from the passing of this Act, actually become a Member of, and unite in religious worship with the said

 

DATE DOWNLOADED: Mon Oct 2 00:09:03 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1821 50 .

ALWD 7th ed.
, , 1821 50 .

Chicago 17th ed.
"," Maine - Public Acts, Revision of 1821, Regular Session : 50-682

AGLC 4th ed.
'' Maine - Public Acts, Revision of 1821, Regular Session 50

OSCOLA 4th ed.
'' 1821 50 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

## CHAPTER CLXII.

An Act to provide for the proof of Fire Arms.

Governor to appoint provers of gun barrels.

SEC. 1. BE *it enacted by the Senate and House of Representatives, in Legislature assembled,* That the Governor, by and with the consent of the Council, be, and he hereby is empowered to appoint suitable persons, to be provers of the barrels of all new, or unused fire arms; and it shall be the duty of each person so appointed, to prove and try the strength of the barrels of all fire arms which shall be offered him for that purpose, in such manner as to satisfy himself of the strength of the same; and shall in a permanent manner, mark and number every barrel by him so proved, and make, and deliver to the person applying to have the same proved, a certificate for each barrel proved, and found good in the form following:

Barrels to be marked and certificate given.

I certify that on this day of A. D. 18 I proved for , a musket, pistol, or rifle barrel, (as the case may be,) and which is numbered and marked as in the margin, and that the same is good and strong.

A. B. Prover of fire arms.

Prover's fees.

SEC. 2. *Be it further enacted,* That each prover shall be entitled to receive from the person applying to have such barrel proved, twenty-five cents, in addition to the expense of the powder necessary for that purpose for each barrel so proved; whether the same shall stand the proof and be marked or not.

Penalty for selling guns or pistols, not proved and marked.

SEC. 3. *Be it further enacted,* That if any person shall sell or offer for sale within this State, any new, or unused musket, rifle or pistol barrel, without having the same first proved, marked and certified according to the provisions of this Act, he shall forfeit for each barrel so sold, the sum of ten dollars, to be recovered by an action of debt before any Court proper to try the same; to the use of any person who shall sue for and recover the same, or by indictment to the use of the State.

How recovered.

Penalty for altering marks or certificates.

SEC. 4. *Be it further enacted,* That if any person shall falsely alter the stamp or mark or the certificate of any prover of fire arms, appointed as aforesaid, and be convicted thereof before any Court proper to try the same, he shall forfeit and pay a fine of not more than one hundred dollars, nor less than twenty dollars, according to the nature and aggravation of the offence, for the use of the State.

[Approved March 10, 1821.]

——:o:——

## CHAPTER CLXIII.

An Act regulating the packing and selling of Paper within this State.

Paper made or offered for sale

SEC. 1. BE *it enacted by the Senate and House of Representatives, in Legislature assembled,* That all paper, excepting

tors, then the said proprietors, for the purpose of paying such delinquent's assessment, are hereby authorized and fully empowered, to direct their Collector, Clerk, or Treasurer from time to time, at publick vendue to sell and convey so much of such delinquent's land as near as may be to said causeway, as will be sufficient to defray the sum assessed on him, and all reasonable charges attending such sale; notice of such sale, and of the time and place being given, by publishing an advertisement thereof, in two of the newspapers printed in Boston, five weeks successively before the time of sale. And the proprietors may, by their Clerk, execute a deed of conveyance of the land thus sold, unto the purchaser; wherein shall be conveyed all the right and title which said delinquent proprietor formerly had in said land thus sold and conveyed. *Provided nevertheless*, that the person whose land shall be sold, shall have liberty to redeem the same, at any time within one year after such sale, by paying the sum his land was sold for, and charges, together with twelve per centum on the sum produced by such sale.

Land of delinquents to be sold for taxes.

Proviso.

SECT. 4. *Be it further enacted*, that the proprietors of said causeway, and of the land thereto adjacent, are hereby empowered to order and manage all affairs relative to the making and maintaining the said causeway, in such way and manner, as shall be concluded and agreed on, by the major part of those who are therein interested, present at any legal meeting; the votes to be collected and accounted according to the number of acres owned by the proprietors of said causeway.

[This act passed *Feb.* 27, 1809.]

---

## CHAP. LII.

An act providing for the appointment of Inspectors, and regulating the manufactory of Gun-Powder.

SECT. 1. BE *it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same*, That his Excellency the Governour, by and with the advice of Council, be, and he is hereby authorized to appoint an Inspector of gun-powder for every publick powder magazine, and at every manufactory of gun-powder in this Commonwealth, and at such other places, as may by him be thought necessary; and his Excellency the Governour, by and with the advice of Council, is

Governour to appoint inspectors.

is hereby further authorized and empowered to remove said Inspectors, or any of them at pleasure, and may by new appointments from time to time fill any vacancy, or vacancies which may happen.

SECT. 2. *Be it further enacted*, That from and after the first day of July next, all gun powder which shall be manufactured within this Commonwealth shall be composed of the following proportions, and quality of materials, that is, every one hundred parts of gun powder, shall be composed of fourteen parts of fresh burnt coal, made from wood which forms the least ashes, and which has been carefully and well prepared, and made into coal, after being stripped of its bark, ten parts of pure sulphur, and seventy six parts of purified nitre.

Materials.

SECT. 3. *Be it further enacted*, That it shall be the duty of each of said Inspectors, to inspect, examine and prove all gun-powder, which after the first day of July next, shall be deposited at any publick powder magazine, or manufactured in this Commonwealth, before the same shall be removed from the manufactory, or received into such publick powder magazine, and if upon such inspection and examination it shall appear to the Inspector, that such gun-powder is well manufactured, and composed of pure materials, and of the proper proportions of materals, and such gun-powder shall be of the proof herein after mentioned the Inspector shall mark each cask, containing gun-powder by him inspected, examined and proved as aforesaid, with the words Massachusetts Inspected Proof; and with his christian and sur-name, and shall also mark in figures upon each cask the quantity of powder contained therein, and the year in which the inspection is made.

Duty of inspectors.

SECT. 4. *Be it further enacted*, That no gun-powder within this Commonwealth, shall be considered to be of proof unless one ounce thereof placed in the chamber of a four and an half inch howitzer, with the howitzer elevated so as to form an angle of forty five degrees with the horizon, will, upon being fired, throw a twelve pound shot, seventy five yards at the least.

Powder to be proved.

SECT. 5. *Be it further enacted*, That whenever any of said Inspectors, shall discover any gun-powder, deposited at any publick powder magazine, or any other place within this Commonwealth, which is not well manufactured, or which is composed of impure materials, or of an improper proportion of materials, and which shall not be of the proof herein before mentioned, the inspector in such case shall mark each cask containing such impure ill manufactured or deficient

Casks of bad powder to be marked.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 114 of 214

deficient gun-powder, with the word "Condemned" on both heads of the cask, and with the same words on the side thereof, with the christian and sur-name of the inspector on one head of the cask.

SECT. 6. *Be it further enacted*, That if any person shall knowingly sell any condemned gun powder as, and for, good gun-powder, or shall fraudulently alter, or deface any mark, or marks, placed by any Inspector upon any cask or casks containing gun-powder, or shall fraudulently put any gun-powder, which shall not have been inspected, or which has been condemned, into any cask or casks, which shall have been marked by any Inspector, agreeably to the provisions contained in the third section of this act, every such person so offending shall forfeit and pay not less than two hundred, nor more than five hundred dollars, for each and every offence, to be recovered in an action of debt in any Court of competent jurisdiction; one half to the use of the Commonwealth, the other half to the use of him or them, who shall sue, and prosecute for the same.

Fines.

SECT. 7. *Be it further enacted*, That each Inspector who may be appointed by virtue of this act, shall before he acts as Inspector, be sworn to the faithful and impartial discharge of the duties of his office, and each inspector shall be allowed one cent for each pound of gun-powder by him examined, inspected, and proved, whether the same be by him approved or condemned, to be paid by the owner or owners of the gun-powder.

Inspector to be sworn.

SECT. 8. *Be it further enacted*, That if any manufacturer of gun-powder shall sell or dispose of, or shall cause or permit to be sold or disposed of, or shall export, or cause to be exported without the limits of this Commonwealth, any powder of his manufacture, before the same has been inspected, and marked agreeably to the provisions of this act, he shall forfeit and pay the sum of fifty cents for every pound of powder so sold, disposed of, or exported, to be recovered in the manner provided in the sixth section of this act.

SECT. 9. *Be it further enacted*, That if any person within this Commonwealth, after the first day of July next shall knowingly sell, expose, or offer for sale within this Commonwealth any gun-powder which is not well manufactured, or which is composed of impure materials, and which shall not be of the proof herein before required, shall forfeit and pay not less than five dollars, nor more than fifty dollars; for each and every offence, to be recovered in the manner provided in the sixth section of this act.

Fines.

[This act passed *March* 1, 1809.]

CHAP.

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 00:36:47 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1776 1 .

ALWD 7th ed.
, , 1776 1 .

Chicago 17th ed.
"," Rhode Island - October Regular Session : 1-37

AGLC 4th ed.
'' Rhode Island - October Regular Session 1

OSCOLA 4th ed.
'' 1776 1 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

ed by this Assembly, *It is Voted and Resolved*, That the Sum aforesaid be paid to the said *Cromel Child*, out of the General Treasury.

×××××××

AN ACT for the Inspection of GUNPOWDER, manufactured within this State.

Act regulating the Inspection of Gunpowder;

BE *it Enacted by this General Assembly, and, by the Authority thereof, it is Enacted*, That if any Person or Persons, within this State, shall vend or expose to Sale any Gunpowder, manufactured within the same, unless said Gunpowder be packed in a good dry Cask, marked with the two first Letters of the Manufacturer's Name, and hath been examined and approved by the Inspector of Gunpowder, for said State, and by him marked with the Letters *U. S. A.* and such other Marks as are necessary to distinguish the several Sorts of Gunpowder; the Person or Persons so offending, shall forfeit and pay six Pounds, lawful Money, for every Cask so exposed to Sale, to be recovered by Bill, Plaint or Information, upon Conviction before any Court of Record within this State; which Forfeiture shall one Moiety thereof be given to the Informer, and the other be paid into the General Treasury of this State: *And be it further Enacted by the Authority aforesaid*, That the said Inspector be paid, out of the General Treasury, nine Pence, lawful Money, for every Cask so marked and inspected by him.

××××××××

AN ACT for punishing Persons counterfeiting the Bills or Notes of either of the Continental Loan-Offices, within the *United States of America*.

Persons counterfeiting the Bills or Notes of either of the Continental Loan-Offices, to be punished with Death.

BE *it Enacted by this General Assembly, and, by the Authority thereof, it is Enacted*, That if any Person or Persons, within this State, shall counterfeit the Bills or Notes of either of the Continental Loan-Offices, within the *United States of America*, or utter or pass the same, Knowing them to be such, and be thereof duly convicted, shall suffer the Pains of Death.

IT



DATE DOWNLOADED: Mon Oct 2 00:46:16 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1776-1777 6 .

ALWD 7th ed.
, , 1776-1777 6 .

Chicago 17th ed.
"," New Jersey - General Assembly, 1st-4th Sitting : 6-7

AGLC 4th ed.
'' New Jersey - General Assembly, 1st-4th Sitting 6

OSCOLA 4th ed.
'' 1776-1777 6 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Juſtices to tender the Oaths of Abjuration and Allegiance to ſuſpected Perſons.

4. AND BE IT ENACTED *by the Authority aforeſaid*, That any two Juſtices of the Peace ſhall, and they hereby are empowered and directed to convene by Summons or Warrant any Perſon whatſoever, whom they ſhall ſuſpect to be dangerous or diſaffected to the preſent Government, and to tender and adminiſter to him the Oaths of Abjuration and Allegiance, ſet forth in an Act, entitled, *An Act for the Security of the Government of* New-Jerſey, paſſed the nineteenth of *September* One Thouſand Seven Hundred and Seventy-ſix. And if any Perſon, to whom the ſaid Oath ſhall be tendered, ſhall neglect or refuſe to take the ſame, the ſaid Juſtices ſhall bind him over with ſufficient Sureties, to appear at the next Court of General Quarter-Seſſions of the Peace, and to be in the mean-while of good Behaviour; and in Default of ſufficient Sureties, or on Refuſal to be bound, the ſaid Juſtices are hereby empowered and directed to commit ſuch Offender to cloſe Gaol, and certify the ſame, with the Cauſe of Commitment, under their Hands and Seals, to the next Court of General Quarter-Seſſions of the Peace, where, if ſuch Offender refuſe to take the ſaid Oaths, he ſhall continue bound to his good Behaviour, or be fined, or impriſoned, as the ſaid Court ſhall deem neceſſary.

*Paſſed at* Princeton, October 4, 1776.

## C H A P. VI.

### *An* A C T *for the Inſpection of Gun-Powder.*

Preamble.

WHEREAS the vending of damaged or bad Gun-Powder within this State, eſpecially in the Time of War, may be of the moſt dangerous Conſequence;

NoGun-Powder to be ſold without Inſpection, *&c.*

*Sect.* 1. BE IT THEREFORE ENACTED *by the Council and General Aſſembly of this State, and it is hereby Enacted by the Authority of the ſame*, That any Perſon who, from and after the Publication of this Act, ſhall offer any Gun-Powder for Sale, without being previouſly inſpected and marked as is herein after directed, ſhall forfeit, for every ſuch Offence, the Sum of *Five Shillings* a Pound for every Pound weight ſo offered for Sale, and ſo in Proportion for greater or leſſer Quantity; to be recovered in any Court where the ſame may be cognizable, and applied the one Half to the Perſon who ſhall proſecute therefor, and the other Half to be paid to the Treaſurer for the Uſe of the State.

Penalty.

Inſpectors;

2. That *Jacob Zabriſkie* of *Bergen* County, *Jonathan Sears* of *Eſſex*, *Samuel H. Sullivan* of *Middleſex*, *Kenneth Henkinſon* and *Jacob Cook* of *Monmouth*, *Abraham Staats* of *Somerſet*, *Samuel Day* and *Daniel Lindſly* of *Morris*, *William Perine* of *Suſſex*, *David Cowell* of *Hunterdon*, *Joſiah Foſter* and *John Leek* of *Burlington*, *Joſeph Hugg*, *John Somers* and *Thomas Clark* of *Glouceſter*, *Curtis Trenchard* of *Salem*, *Enos Seeley* of *Cumberland*, and *Joſeph Ludley* and *Abraham Bennet* of *Cape-May*, be, and they hereby are appointed Inſpectors of Gun-Powder; who are directed to paſs or mark no Gun-Powder but ſuch as is good as to its Quickneſs in Firing, Strength, Dryneſs, and other Qualities; and who, before they

their Duty,

they do any Thing in the Execution of their Office, fhall feverally take, before any Juftice of the Peace for the County in which they refide, the following Oath or Affirmation, *I* A B *will well and truly execute the Office of Infpector of Gun-Powder for this State, according to the beft of my Skill and Underftanding, and agreeable to the Directions of an Act, entitled,* An *Act* for the Infpection of Gun-Powder.

and Qualification.

3. That every Infpector fhall mark each Cafk of Gun-Powder, by him approved, with the Letters S N I, and fuch other Marks as are neceffary to diftinguifh the feveral Sorts of Gun-Powder.

Infpector to mark.

4. That every Maker of Gun-Powder fhall pack his Powder in dry well-feafoned Cafks, and mark every Cafk in which he fhall pack the fame with the initial Letters of his Name.

Maker to pack, *&c.*

5. That every Infpector who fhall neglect or refufe to do any of the Duties enjoined by this Act, fhall forfeit for each Offence the Sum of *Five Pounds*, to be recovered and applied in like Manner and Form as the Fines and Penalties herein before-mentioned.

Penalty.

6. That every Infpector fhall be allowed the one Eighth Part of a Dollar for every Hundred Weight of Gun-Powder he fhall examine, to be paid by the Owner of faid Powder; provided, that no Infpector fhall be obliged to ride more than ten Miles to infpect any Quantity of Gun-Powder lefs than one Thoufand Weight, without being allowed by the Owner thereof the Sum of *Three-pence* a Mile for going, and *Three-pence* a Mile for returning, over and above the Fees of Infpection allowed by this Act. PROVIDED ALSO, That Powder infpected by Order of the Continental Congrefs, or by any Perfon legally authorifed for that Purpofe, in any of the neighbouring States, fhall be fubject to Infpection by Virtue of this Act, any Thing herein to the contrary notwithftanding.

Infpector's Wages.

7. That in cafe of the Death, Removal, Difability or Refignation of any Infpector, the Court of General Quarter-Seffions of the County where the fame fhall happen, are hereby authorifed to appoint an Infpector to fupply fuch Vacancy, who fhall take the Oath or Affirmation, perform the Duty, and be fubject to the Forfeitures in and by this Act prefcribed.

Infpector dying, *&c.* who to appoint another.

*Paffed at* Princeton, October 4, 1776.

---

## C H A P. VII.

### *An* ACT *for eftablifhing a Court of Admiralty and Cuftom-Houfes within the State of* New-Jerfey.

*Sect.* I. BE IT ENACTED *by the Council and General Affembly of this State, and it is hereby Enacted by the Authority of the fame,* That it fhall and may be lawful for the Governor or Commander in Chief for the Time being, with the Confent of the Council, any

E three

 

DATE DOWNLOADED: Mon Oct 2 00:51:35 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1820 274 .

ALWD 7th ed.
, , 1820 274 .

Chicago 17th ed.
"," New Hampshire - June Session : 274-276

AGLC 4th ed.
'' New Hampshire - June Session 274

OSCOLA 4th ed.
'' 1820 274 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 121 of 214

A. D. 1820.

## CHAP. XXV.

Passed June 21, 1820.

AN ACT to provide for the appointment of Inspectors and regulating the manufactory of Gunpowder.

Inspectors of gunpowder to be appointed.

SEC. 1. BE *it enacted by the senate and house of representatives in general court convened*, That his excellency the governor by and with the advice of council, be, and he is hereby authorized to appoint an inspector of gunpowder for every public powder magazine, and at every manufactory of gunpowder in this state, and at such other places as may by him be thought necessary; and his excellency the governor by and with the advice of council is hereby further authorized and empowered to remove said inspectors or any of them at pleasure, and may by new appointments from time to time fill any vacancy or vacancies which may happen.

Proportion & quality of materials for the manufacture of gunpowder.

SEC. 2. *And be it further enacted*, That from and after the first day of July next, all gunpowder which shall be manufactured within this state, shall be composed of the following proportions and quality of materials, that is, every one hundred parts of gunpowder shall be composed of fourteen parts of fresh burnt coal, made from wood which forms the least ashes, and which has been carefully and well prepared and made into coal, after being stripped of its bark; ten parts of pure sulphur, and seventy-six parts of purified nitre.

Duty of inspectors.

SEC. 3. *And be it further enacted*, That it shall be the duty of each of said inspectors to inspect, examine and prove all gun powder which after the first day of July next shall be deposited at any publick powder magazine, or manufactory in this state, before the same shall be removed from the manufactory or received into such public powder magazine, and if upon inspection and examination it shall appear to the inspector that such gunpowder is well manufactured and composed of pure materials, and such gunpowder shall be of the proof hereinafter mentioned, the inspector shall mark each cask containing gunpowder by him inspected, examined, and proved as aforesaid, with the words "*New-Hampshire inspected proof*," and with his christian and surname, and shall also in figures mark upon each cask the quantity of powder contained therein, and the year in which the inspection is made.

SEC. 4. *And be it further enacted*, That no gunpowder within

Digitized from Best Copy Available

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 122 of 214

A. D.1820.

this state shall be considered to be of proof unless one ounce thereof, placed in the chamber of a four and an half inch howitzer, with the howitzer elevated so as to form an angle of forty-five degrees with the horizon, will, upon being fired, throw a twelve pound shot seventy-five yards at the least.

Proof of quality of gunpowder.

SEC. 5. *And be it further enacted*, That whenever any of said inspectors shall discover any gunpowder, deposited at any public powder magazine, or any other place within this state, which is not well manufactured, or which is composed of impure materials, or of any improper proportion of materials, and which shall not be of the proof herein before mentioned, the inspector in such case, shall mark each cask containing such impure, ill manufactured, or deficient gunpowder, with the word "*Condemned*," on both heads of the cask, and with the same words on the side thereof, with the christian and surname of the inspector on one head of the cask.

Inspectors to mark bad powder.

SEC. 6. *And be it further enacted*, That if any person shall knowingly sell any condemned gunpowder, or shall fraudulently alter or deface any mark or marks, placed by any inspector upon any cask or casks containing gunpowder, or shall fraudulently put any gunpowder, which shall not have been inspected, or which has been condemned, into any cask or casks, which shall have been marked by any inspector agreeably to the provisions contained in the third section of this act, every such person, so offending, shall forfeit and pay not less than two hundred nor more than five hundred dollars, for each and every offence, to be recovered in an action of debt, in any court of competent jurisdiction, one half thereof to the use of the state, the other to the use of him or them who shall sue and prosecute for the same.

Penalty for selling condemned powder.

SEC. 7. *And be it further enacted*, That each inspector who may be appointed by virtue of this act, shall, before he acts as inspector, be sworn to the faithful and impartial discharge of the duties of his office, and each inspector shall be allowed one cent for each pound of gunpowder, by him examined, inspected and proved, whether the same be by him approved or condemned, to be paid by the owner or owners of the gunpowder.

Inspector's fees and oath of office.

SEC. 8. *And be it further enacted*, That if any manufacturer of gunpowder shall sell or dispose of, or shall cause or per-

Penalty for selling uninspected powder.

Digitized from Best Copy Available

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 123 of 214

A. D. 1820.

mit to be sold or disposed of, or shall export or cause to be exported without the limits of this state, any powder of his manufacture, before the same has been inspected and marked agreeably to the provisions of this act, he shall forfeit and pay the sum of fifty cents for every pound of powder so sold, disposed of, or exported, to be recovered in the manner provided in the sixth section of this act.

Penalty for selling powder made of impure materials

SEC. 9. *And be it further enacted,* That if any person within this state, after the first day of January next, shall knowingly sell, expose, or offer for sale, within this state, any gunpowder which is not well manufactured, or which is composed of impure materials, and which shall not be of the proof herein before required, shall forfeit and pay not less than five dollars nor more than fifty dollars for each and every offence, to be recovered in the manner provided in the sixth section of this act.

Approved June 21, 1820.

## CHAP. XXVI.

Passed June 22, 1820.

RESOLVED, That the sum of four hundred dollars be and the same hereby is appropriated for the purpose of furnishing each artillery company in this state, organized according to law, with powder and port-fire, and for the ordinary repairs of field pieces, agreeably to the sixth section of a law of this state passed July 1, 1820.* And his excellency the governor is hereby authorized to draw on the treasury in favour of the adjutant general for the above sum, and the adjutant general is hereby directed to pay to the captain or commanding officer of the different companies of artillery or their orders, the sum of twelve dollars each.

Approved June 22, 1820.

## CHAP. XXVII.

Passed June 22, 1820.

RESOLVED, That the Selectmen, or a major part of them at the charge of the town, parish or place, to which they belong, shall transmit and return an Inventory of the polls and

* This act passed July 1, 1819.

Digitized from Best Copy Available

 

DATE DOWNLOADED: Mon Oct 2 09:34:55 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1794 764 .

ALWD 7th ed.
, , 1794 764 .

Chicago 17th ed.
"," Pennsylvania - 19th General Assembly, Regular Session : 764-769

AGLC 4th ed.
'' Pennsylvania - 19th General Assembly, Regular Session 764

OSCOLA 4th ed.
'' 1794 764 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

be paid by the Treasurer on the warrants of the Governor; and the accounts of all disbursements, services and expences, made and incurred in pursuance of this act, shall be exhibited and settled agreeably to the laws for settling other public accounts.

Repeal of two former acts respecting the town at Presqu' Isle.

SECT. XVI. *And be it further enacted by the authority aforesaid,* That the act, entituled "An Act for laying out a town at Presqu'-"Isle," passed the eighth day of April, one thousand seven hundred and ninety-three, and the supplement thereto, passed the eighteenth day of April, one thousand seven hundred and ninety-four, shall be, and the same are hereby, repealed. *(s)*

GEORGE LATIMER, *Speaker of the House of Representatives.*

ROBERT HARE, *Speaker of the Senate.*

*Approved, April the eighteenth,* 1795.

THOMAS MIFFLIN, *Governor of the commonwealth of Pennsylvania.*

---

## CHAPTER CCCXXXVII.

### *An* ACT *providing for the Inspection of Gun-powder.*

WHEREAS gun-powder imported from abroad, and manufactured within this state, hath frequently been found to vary much in its strength, and sometimes of inferior qualities, and its defects not discovered until brought into actual use: And whereas the modes heretofore used to prove the force thereof have been found uncertain and variable: And whereas Joseph Leacock, of the city of Philadelphia, hath invented an engine, called a pendulum powder proof, with a graduated arch and catch-pall, by which it is conceived that the force of gun-powder may be proved by experiment, and the article reduced to certain and uniform standards of strength, whereby the manufacture may be advanced towards ultimate perfection, and the purchaser and consumer protected against fraud and imposition:

Gun-powder manufactured in this state, how to be packed in casks.

SECTION I. *Be it therefore enacted by the* SENATE *and* HOUSE *of* REPRESENTATIVES *of the commonwealth of Pennsylvania, in General Assembly met, and it is hereby enacted by the authority of the same,* That, from and after the first day of October next, all gun-powder manufactured within this state, with intent

*(s)* For the acts referred to in this section, see *ant.* pages 346, 518; and for another act relating to the town at Presqu'-Isle, see *ant.* page 639.

tent to sell the same within the city or county of Philadelphia, shall be put in good and tight kegs or casks of twenty-five, fifty, or one hundred pounds neat weight, each made of well seasoned timber, bound together with at least twelve hoops, and having a hole bored in each head, of the diameter of one fourth part of an inch, well stopped with corks, and having the tare weight of each cask marked thereon, and that all such gun-powder, and all other gun-powder, wheresoever manufactured, imported into the port of Philadelphia, or brought into the city or county of Philadelphia for sale, shall be deposited, forthwith on such importation or bringing in by land or by water, in the public magazine in the said city, and delivered to the care of the keeper of the same, who shall give his receipt for the same, deliverable to the order of him or them who shall so deposit the same. (1)

All gun-powder manufactured, or imported, to be deposited in the magazine.

SECT. II. *And be it further enacted by the authority aforesaid,* That David Rittenhouse, Francis Gurney and Thomas Procter be, and they are hereby, appointed Commissioners, to procure at least two pendulum powder proofs, upon the construction invented by the said Joseph Leacock, as nearly uniform in the length of the radius and weight of pendulum, and in length of caliber and weight of the pistol, as they can procure the same, and therewith make experiments of the respective strength or force of the several species of gun-powder imported from abroad, and manufactured within this state, sufficient in number to ascertain the quality and force of three different degrees of strength in explosion, and marking the number of degrees on the graduated arch of the said engine, to which equal quantities by weight of the said three species of gun-powder, rammed with equal force into the pistol, shall elevate the said pendulum; and the powder, which shall be barely capable of raising the said pendulum to the lowest rate of elevation, shall be the standard for the state of Pennsylvania for gun-powder of the first or lowest proof; and the powder, which shall be capable of raising the said pendulum to the highest rate of elevation, shall be the standard of gun-powder for the state of Pennsylvania of the third or highest proof; and the middle or second proof standard of gun-powder shall be ascertained by the number of degrees on the said graduated arch, to which the same quantity by weight in equal moieties of the first and third proof powder shall be capable of raising the said pendulum; and the said standard being so fixed and ascertained, the said Commissioners shall make report thereof in writing, by indentures under their hands and seals, one part thereof, together with one of the said two pendulum powder proofs, and as accurate a draft and description thereof as can be made shall be returned to the Governor, to be filed and remain in the office of the Secretary of the commonwealth; one other part shall be returned to the Master of the Rolls, to be recorded in his office, and filed among the laws of the state; and the other part, together

Commissioners appointed to procure pendulum powder proofs.

Standard proofs of gun-powder

The Commissioners to report, and return accurate draft of the two pendulum powder proofs; where the same shall be deposited.

9 II

(1) See ant. pages 87, 171.

together with the other pendulum powder proofs, shall be delivered to the first Inspector of gun-powder to be appointed in pursuance of this act, and by him, and his successors in office, to his and their successors, as often as another officer shall be appointed.

How the pendulum in the keeping of the Inspector may be repaired, or a new one made.

SECT. III. *And be it further enacted by the authority aforesaid,* That so often as the said pendulum powder proofs in the possession of the Inspector shall, by natural wear, or by accident, be rendered unfit for use, or its accuracy doubted, the same shall be compared with the other remaining in the Secretary's office, and, if found necessary, a new one constructed, and made conformably thereto in measure and weight, for the use of the Inspector, at his own costs and charges.

A suitable building to be erected, for the use of the Inspector.

SECT. IV. *And be it further enacted by the authority aforesaid,* That the said Commissioners shall prepare and report a plan for the necessary buildings, and an estimate of the expence thereof, and the same being laid before and approved by the Governor, he shall cause to be erected and built, on the most proper part of the lot belonging to the public magazine aforesaid, a brick building, for the use of the Inspector, with two apartments, one for the purpose of keeping his engine apparatus and for making proofs, and the other for the purpose of keeping the samples of powder in safety, the expence of which building shall be paid and defrayed by warrants to be drawn by the Governor on the State Treasurer, which shall be allowed him, on settlement of his accounts, out of the fund for the support of government: *Provided,* That the whole amount of the expence thereof do not exceed the sum of five hundred dollars.

Limitation of the expence.

An Inspector of gun-powder to be appointed.

SECT. V. *And be it further enacted by the authority aforesaid,* That it shall and may be lawful for the Governor of this commonwealth, and he is hereby required, as soon as conveniently may be after the passing of this act, and as often afterwards as the office shall become vacant by death, resignation or otherwise, to appoint one suitable and skilful person to be Inspector of gun-powder in and for the city, port and county of Philadelphia, who, before he enters on the duties of his office, shall take and subscribe the oath or affimation required by law for the support of the constitutions of the United States and of this state; and moreover shall take and subscribe, before the Governor, an oath or affirmation, that he will well and faithfully perform all and singular the duties required by this act, according to the best of his knowledge, skill and ability, and without prejudice or partiality.

His qualification.

Duties of the Inspector.

SECT. VI. *And be it further enacted by the authority aforesaid,* That it shall be the duty of the Inspector of gun-powder so to be appointed, for the time being, to attend at the said public magazine, and his office so to be built, as often as shall be necessary,

ceffary, to infpect and examine all gun-powder there to be depofited, to draw famples from each cafk of powder which fhall be fo as aforefaid bored, and to open or otherwife get famples of cafks of powder not bored as aforefaid, and removing fuch famples to his office, there to prove the fame by the pendulum proof aforefaid, and note the ftandard quality of each cafk, to provide himfelf with cedar plugs ftamped on the outer end with the letters S. P. and the figures number one, number two, and number three, to defignate the firft, fecond and third proofs of ftandard gun-powder of the ftate of Pennfylvania, and another ftamped with the letters S. P. C. to defignate condemned gun-powder, and therewith carefully to plug up the holes opened or made for the purpofe with fuch marked plugs, as the proof quality of the powder in each cafk refpectively contained, and occafionally to weigh the faid cafks; and if upon weighing the fame fufpicion fhould arife that the cafks are falfe tared, or do not contain the quantity herein above mentioned for each cafk, to empty the fame, and weigh the cafk and powder feparately, to afcertain the deficiency, if any, in the neat weight, and to fill the fame to its due weight out of any other cafk belonging to the fame perfon, marking the weight taken on the ullage cafks, and keeping an exact account in his books thereof, and of the names of the owners, and the perfons bringing and depofiting the fame.

To infpect, examine and prove the gun-powder; to mark the ftandard quality; to mark condemned gun-powder; to weigh the gun-powder occafionally; and to fupply any deficiency from other cafks.

SECT. VII. *And be it further enacted by the authority aforefaid*, That every cafk of gun-powder infpected as aforefaid fhall be plugged up with a plug marked with the number next below the ftandard number of degrees to which the pendulum fhall not be elevated in the proof, and that every cafk of gun-powder infpected as aforefaid, which fhall not elevate the pendulum to the ftandard of the firft or loweft proof, fhall be condemned, and one pint of clean water for every twenty-five pounds of powder therein contained fhall be poured thereinto, and the hole plugged up with the plug marked S. P. C. before the fame fhall be delivered over to the owner to be refined and re-manufactured; and to prevent a failure in the infpection by the temporary indifpofition of the Infpector, it fhall and may be lawful for him to execute all the duties hereby required by a Deputy, to be appointed by him, and approved by the Governor, the Deputy firft taking and fubfcribing the like oaths or affirmations hereby required from the principal.

Rule for marking or condemning gun-powder.

The Infpector may appoint a Deputy.

SECT. VIII. *And be it further enacted by the authority aforefaid*, That the Keeper of the faid magazine fhall at all feafonable times in every juridical day in the year admit the faid Infpector, and his Deputy and Affiftants, into the faid magazine, to do and perform the feveral duties hereby required of him and them, and fhall not deliver any powder from the faid magazine until the fame fhall be infpected as aforefaid. SECT.

The Infpector &c. to be admitted into the magazine.

Powder not to be delivered, till infpected.

Penalty, if the Inspector or his Deputy are concerned in manufacturing or selling gun-powder

SECT. IX. *And be it further enacted by the authority aforesaid*, That no person appointed to the office of Inspector, or his Deputy, shall, during the time of holding or exercising the said office, be concerned directly or indirectly in manufacturing, buying or selling gun-powder in gross, or by retail, under penalty of forfeiting the sum of five hundred dollars for every such offence, to be recovered by any person who will sue for the same in any court having competent jurisdiction, one moiety for the use of this commonwealth, and the other to the use of him or them who shall sue for the same; and upon conviction thereof shall be removed from the said office, and wholly disqualified to take or hold any office of trust or profit under this commonwealth.

Penalty on not depositing gun-powder in the magazine, or selling the same without inspection.

SECT. X. *And be it further enacted by the authority aforesaid*, That if any person, from and after the said first day of October next, importing or bringing into the port or city, or county of Philadelphia, any quantity of gun-powder exceeding twenty-five pounds, with intent to sell the same, shall neglect to deposit the same for inspection in the magazine aforesaid, or shall sell the same before it be inspected and marked as aforesaid, or shall sell any gun-powder that shall be condemned as aforesaid as and for merchantable gun-powder, every person so offending shall forfeit all such gun-powder as aforesaid.

Fees of the Inspector.

SECT. XI. *And be it further enacted by the authority aforesaid*, That the Inspector shall be entitled to demand and receive of and from the owner and possessor of all gun-powder deposited in the said magazine, and by him or his Deputy examined, proved and plugged, as aforesaid, the following sums or rates, whether the same be approved or condemned, paid or secured, before the same shall be removed from the magazine, if the Inspector shall so require; for every cask of powder, manufactured in this state, or any of the United States, bored, and stopped with corks by the manufacturer, containing twenty-five pounds neat weight, seven cents; for every like cask containing fifty pounds, eight cents; for every like cask containing one hundred pounds, nine cents; and for every cask of foreign powder, or powder manufactured in the United States, not bored and stopped with corks as aforesaid, double the said price or rates; and for every cask which he shall find deficient one per cent. in weight, and shall fill up, fifty cents.

How disputes between the owner of gun-powder and the Inspector shall be decided.

SECT. XII. *And be it further enacted by the authority aforesaid*, That if any dispute should arise between the owner, possessor or consignee of any such powder and the Inspector, touching the proof or condemnation thereof, or of the goodness of the materials and manner in which the casks are made, upon application by the owner, possessor or consignee of such powder to one of the

the

the Magiſtrates of the city or county of Philadelphia, where the diſpute ſhall ariſe, the ſaid Magiſtrate ſhall iſſue his warrant to three indifferent judicious perſons to be triers thereof, one of them to be named by the ſaid owner, poſſeſſor or conſignee, one by the ſaid Inſpector, and the third by the ſaid Magiſtrate, directing the ſaid triers to view and examine the ſaid powder, and make report to him forthwith touching the condition thereof, and that if they ſhall find the ſaid powder not merchantable, that they certify to him the cauſe thereof, and the ſaid Magiſtrate ſhall thereupon give his judgment agreeably to the report of the ſaid triers, or any two of them; and in caſe the ſaid Magiſtrate ſhall on ſuch report adjudge the powder not to be merchantable, he ſhall award the owner, poſſeſſor or conſignee thereof, to pay all coſts; but in caſe the ſaid powder ſhall be found merchantable, the Inſpector ſhall be adjudged to pay all coſts which may have accrued, and ſhall thereupon cauſe the powder to be marked as of the ſtandard to be directed by the ſaid triers.

GEORGE LATIMER, *Speaker of the Houſe of Repreſentatives.*

ROBERT HARE, *Speaker of the Senate.*

*Approved, April the eighteenth,* 1795.
THOMAS MIFFLIN, *Governor of the commonwealth of Pennſylvania.*

---

## CHAPTER CCCXXXVIII.

*An* ACT *ſupplementary to the ſeveral Acts of Aſſembly for eſtabliſhing the Judicial Courts of this commonwealth, in conformity to the alterations and amendments in the conſtitution.* (*u*)

WHEREAS the times directed for holding the Supreme Court of this commonwealth are inconvenient: Therefore,

SECTION I. *Be it enacted by the* SENATE *and* HOUSE OF REPRESENTATIVES *of the commonwealth of Pennſylvania, in General Aſſembly met, and it is hereby enacted by the authority of the ſame,*

9 I

(*u*) For the ſeveral acts reſpecting the Judicial Department, ſee *ant.* pages 92, 402, 409; and the Index to the ſeveral Volumes of the preſent edition.




DATE DOWNLOADED: Mon Oct 2 09:39:34 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1825 73 .

ALWD 7th ed.
, , 1825 73 .

Chicago 17th ed.
"," New Hampshire - June Session : 73-74

AGLC 4th ed.
'' New Hampshire - June Session 73

OSCOLA 4th ed.
'' 1825 73 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 132 of 214

election," passed December 16, 1824, be and the same is hereby repealed. *Approved July 2, 1825.*

Repeal.

## CHAPTER LXI.

*AN ACT to regulate the keeping and selling, and the transporting of gun-powder.*

Passed July 2, 1825.

SECT. 1. BE *it enacted by the Senate and House of Representatives in General Court convened,* That there shall not at any time be kept in any ware-house, store, shop, or other building in the compact part of any town or village in this State, a greater quantity of gun-powder than three quarter cask or seventy-five pounds; and any person or persons so keeping a greater quantity, shall forfeit and pay for every day during which such greater quantity of gun-powder shall be kept as aforesaid, a sum not exceeding five dollars, nor less than one dollar, to be recovered by any person sueing for the same in an action of debt before any justice of the peace, or court proper to try the same, with costs of suit, one half for the use of the prosecutor and the other half for the use of the town in which such gunpowder is kept; or, if sued for by the firewards or selectmen of any town, then the whole of said forfeiture shall be kept for the use of said town, to be expended by said firewards or selectmen in purchasing materials necessary and proper for extinguishing fires. And the said firewards or selectmen are hereby authorized and empowered to seize any gunpowder kept as aforesaid in a greater quantity than one quarter cask, and cause the same to be condemned in any court proper to hear and try the same, the avails of which shall be expended for the purposes aforesaid.

What quantity may be kept.

Penalty for keeping more.

How recoverable.

To whose use.

How expended.

Firewards, &c. may seize powder.

SECT. 2. *And be it further enacted,* That every person keeping gunpowder to sell by retail in less quantity than seventy-five pounds, and who shall not at all times keep the same in a tin canister or canisters or other incombustible vessel or vessels, covered and secured from fire, or in casks which shall be enveloped in substantial and close leathern bags or sacks, shall forfeit and pay for each and every day, he, she or they shall so keep it, a sum not exceeding five dollars nor less than one dollar, to be sued for and recovered with costs of suit in the manner and for the uses and purposes aforesaid.

How powder shall be kept for retail.

Penalty for not so keeping.

How recoverable.

SECT. 3. *And be it further enacted,* That gunpowder shall not be transported or carried through the compact part of any town or village, in any cart, waggon or other open carriage, in a greater quantity than one hundred pounds at any one time, nor unless the casks containing the gunpowder so transported, if more than twenty-five

Manner of transporting.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 133 of 214

pounds be enveloped in substantial and close leathern bags or sacks; and any person or persons transporting gunpowder as aforesaid, in a greater quantity and without being enveloped as aforesaid, except the same be conveyed in a closely covered carriage, shall forfeit and pay a sum not more than fifty dollars nor less than ten dollars, to be sued for and recovered with costs of suit, in the manner and for the uses and purposes aforesaid.

Penalty for not so transporting.

SECT. 4. *And be it further enacted*, That no person shall at any time transport or carry from town to town or from place to place any gunpowder for the purpose of peddling, or selling it by retail, on penalty that the owner or owners, or person or persons selling it, or offering it for sale, shall forfeit and pay a sum not exceeding five dollars nor less than one dollar for each cask of gunpowder so transported or carried and sold or offered for sale, to be recovered with costs of suit and applied to the same uses and purposes as herein before directed.

Shall not be peddled.

Penalty against peddling.

SECT. 5. *And be it further enacted*, That if any person or persons shall sell or offer for sale by retail any gunpowder in any highway, or in any street, lane, or alley, or on any wharf, or on any parade or common, such person so offending shall forfeit and pay for each and every offence a sum not more than five dollars nor less than one dollar, to be recovered and applied as aforesaid.

Shall not be sold by retail in any street, &c.,

SECT. 6. *And be it further enacted*, That if any person or persons shall within this State, in the night time between sunsetting and sunrising, sell or offer to sell by retail, or deal out any gunpowder, such person so offending shall forfeit and pay for each and every such offence a sum not more than five dollars nor less than one dollar, to be recovered and applied as aforesaid.

nor in the night time.

SECT. 7. *And be it further enacted*, That all prosecutions for offences against this act shall be commenced within three months after the offence shall have been committed, and not afterwards.

Limitation of prosecutions.

*Approved July* 2, 1825.

---

## CHAPTER LXII.

Passed July 2, 1825.

*AN ACT to alter the names of sundry persons therein mentioned.*

WHEREAS certain persons have petitioned the legislature to alter their names, and their request appearing reasonable; Therefore,

BE *it enacted by the Senate and House of Representatives in General Court convened*, That Elis Leathers of Barnstead, shall hereafter be called and known by the

 

DATE DOWNLOADED: Mon Oct 2 09:38:38 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1891 331 .

ALWD 7th ed.
, , 1891 331 .

Chicago 17th ed.
"," New Hampshire - Public Statutes : 331-332

AGLC 4th ed.
'' New Hampshire - Public Statutes 331

OSCOLA 4th ed.
'' 1891 331 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 135 of 214

# CHAPTER 117.

## SAFE-KEEPING OF GUNPOWDER AND OTHER EXPLOSIVES.

SECTION
1. Firewards to make regulations.
2. To search for powder unlawfully kept.
3. Not over twenty-five pounds to be kept; penalty.
4. How kept for sale; penalty.
5. How transported through towns; penalty.
6. Carriage with powder not to stand in towns; penalty.

SECTION
7. Peddling gunpowder forbidden; penalty.
8. Gunpowder illegally kept, forfeited.
9. Gunpowder to be put in magazine.
10. Penalties, how recovered and applied.
11. Penalty for illegal use or carriage of explosive compounds.

SECTION 1. The board of firewards, if any, or the selectmen of any town, may establish rules and regulations from time to time relative to the times and places at which gunpowder may be brought to or carried from such town, by land or by water, and the time when and the manner in which it may be transported through the town.

Firewards to make regulations as to gunpowder. 1854, 1543: 1. G. S. 98: 1. G. L. 108: 1.

SECT. 2. Any two firewards, police officers, or selectmen may search any building in the compact part of the town, and any vessel lying in any port, in which they have cause to suspect that gunpowder in a greater quantity than twenty-five pounds is kept or stored, and, in case a greater quantity shall be found, shall seize the same as forfeited.

Firewards, etc., to search for powder unlawfully kept. R. S. 112: 1. C. S. 118: 1. G. S. 98: 2. G. L. 108: 2.

SECT. 3. Any person who shall keep or knowingly suffer any quantity of gunpowder greater than twenty-five pounds to be kept or stored in any such building or vessel, or shall aid or assist in keeping or storing the same, or shall know that the same is so stored or kept, and shall not forthwith inform one of the firewards, police officers, or selectmen thereof, shall forfeit a sum not more than five dollars for every day the same shall be so stored or kept.

Not over twenty-five pounds to be kept; penalty. R. S. 112: 2. C. S. 118: 2. G. S. 98: 3. 1878, 31: 1. G. L. 108: 3.

SECT. 4. Gunpowder kept for retail, in quantities less than twenty-five pounds, shall at all times be kept in a canister of tin or other metal, securely covered from fire, or if the same is kept in a cask or combustible vessel, the cask or vessel shall be enveloped in a close leathern bag. If any person shall keep gunpowder for retail in any other manner, he shall forfeit a sum not more than five dollars for every day the same shall be so kept.

How kept for sale; penalty. R. S. 112: 3. C. S. 118: 3. G. S. 98: 4. G. L. 108: 4.

SECT. 5. Gunpowder shall not be transported through the compact part of a town or village in a greater quantity than one hundred pounds, nor unless the casks containing the same are enveloped in close leathern bags, unless it shall be conveyed in a closely covered carriage. If any person shall transport any greater quantity of gunpowder, or in any other manner, he shall forfeit a sum not exceeding fifty dollars.

How transported through towns; penalty. R. S. 112: 4. C. S. 118: 4. G. S. 98: 5. G. L. 108: 5.

SECT. 6. No carriage upon which there shall be a greater quantity than twenty-five pounds of gunpowder shall be suffered to stand in any building, or near any dwelling-house, store, or other building, in the compact part of a town. Any person

Carriage with powder not to stand in towns; penalty. R. S. 112: 5. C. S. 118: 5.

G. S. 98: 6.
G. L. 108: 6.

who shall stop, place, or leave any such carriage as aforesaid shall forfeit a sum not exceeding fifty dollars.

Peddling gunpowder forbidden; penalty.
R. S. 112: 7.
C. S. 118: 7.
G. S. 98: 7.
G. L. 108: 7.

SECT. 7. If any person shall carry from town to town, or from place to place, any gunpowder for the purpose of peddling or selling it by retail in quantities less than twenty-five pounds, or shall sell, or offer to sell, by retail, any gunpowder in any highway or street, or on any wharf, parade, or common, or if any person shall sell or deal out any gunpowder in the night time, between sunset and sunrise, he shall forfeit for each offense a sum not more than five dollars.

Gunpowder, when forfeited.
R. S. 112: 1, 6.
C. S. 118: 1, 6.
G. S. 98: 8.
G. L. 108: 8.

SECT. 8. Any gunpowder offered for sale, kept, carried, or suffered to remain in any place contrary to the provisions of this chapter, shall be forfeited; and any fireward, police officer, or selectman may seize the same.

Gunpowder to be deposited in magazine.
R. S. 112: 9.
C. S. 118: 9.
G. S. 98: 9.
G. L. 108: 9.

SECT. 9. The master of any merchant ship or vessel, bringing into any port in this state gunpowder in a quantity greater than twenty-five pounds, shall deposit in the public magazine, if any is there provided, all gunpowder so brought by him, within forty-eight hours. If he shall neglect so to deposit the same, he shall forfeit the sum of one hundred and fifty dollars.

Penalties, how recovered and applied.
R. S. 112: 10.
C. S. 118: 10.
G. S. 98: 10.
G. L. 108: 10.

SECT. 10. Penalties and forfeitures of money incurred by any violation of this chapter shall be recovered by action of debt, to be brought by the firewards, police officers, or selectmen in the name of the town, and shall be expended in the purchase of such articles as may be used in the extinguishment of fires.

Penalty for illegal carriage and use of explosive compounds.
1885, 96: 1.

SECT. 11. No person shall transport, or have in his possession for the purpose of transporting, in any public conveyance, nor shall any person leave, deposit, or have in his possession in any dwelling-house, shop, or manufactory, dynamite, giant powder, nitro-glycerine, or any explosive compound of which nitro-glycerine forms a part. Any violation of the provisions of this section shall be punished by a fine of not more than five hundred dollars.




DATE DOWNLOADED: Mon Oct 2 09:43:34 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1821 50 .

ALWD 7th ed.
, , 1821 50 .

Chicago 17th ed.
"," Maine - Public Acts, Revision of 1821, Regular Session : 50-682

AGLC 4th ed.
'' Maine - Public Acts, Revision of 1821, Regular Session 50

OSCOLA 4th ed.
'' 1821 50 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 138 of 214

cial Court, to parties and witnesses, as are allowed in the regular Courts of law; and that the said two Justices, *quorum unus*, shall have the same fees, and be allowed the same sums for the trial aforesaid, as are allowed to Justices in the process of forcible entry and detainer.

[Approved March 8, 1821.]

——:00:——

## CHAPTER XXV.

An Act for the prevention of damage by Fire, and the safe keeping of Gun Powder.

Selectmen to make regulations as to the keeping of gun powder in certain towns.

SEC. 1. BE *it enacted by the Senate and House of Representatives, in Legislature assembled,* That the Selectmen of each town within this State, containing not less than fifteen hundred inhabitants, be, and they hereby are, authorized and empowered to make rules and regulations, from time to time, in conformity with which, all gun powder which is or may be within such town, shall be kept, had or possessed therein; and no person or persons shall have, keep or possess within such town, any gun powder, in any quantity, manner, form or mode, other than may be prescribed by the rules and regulations aforesaid.

Penalty for violating such regulations.

SEC. 2. *Be it further enacted,* That any person or persons who shall keep, have or possess any gun powder, within any town, contrary to the rules and regulations which shall be established by the Selectmen of such town, according to the provisions of this Act, shall forfeit and pay a fine of not less than twenty dollars, and not exceeding one hundred dollars, for each and every offence, to be recovered by action of debt in any Court proper to try the same.

Mode of recovery.

Powder kept contrary to regulations may be seized and libelled.

SEC. 3. *Be it further enacted,* That all gun powder which shall be had, kept or possessed, within any town, contrary to the rules and regulations which shall be established by the Selectmen of such town, according to the provisions of this Act, may be seized by any one or more of the Selectmen of such town, and shall within twenty days next after the seizure thereof, be libelled, by filing with any Justice of the Peace in such town, a libel, stating the time, place and cause of seizure, and the time and place when and where trial shall be had before said Justice, and a copy of said libel shall be served by the Sheriff, or his deputy, on the person or persons, in whose possession the said gun powder shall have been seized, by delivering a copy thereof to each such person, or leaving such copy at his or her usual place of abode, seven days at least, before the time which shall be specified in said libel, for the trial thereof, that such person may appear, and show cause why the gun powder, so seized or taken, should not be adjudged forfeit; and if any person shall appear to show cause why the same should not be adjudged forfeit, such ap-

Proceedings on such libel.

pearance shall be entered on record, by said Justice; and if the gun powder, seized as aforesaid, shall be adjudged forfeit, the person or persons, whose appearance shall have been recorded as aforesaid, shall pay all costs of prosecution, and execution shall issue therefor: *Provided however*, That the person or persons, whose appearance shall have been recorded, may appeal from the judgment rendered by said Justice of the Peace, to the next Court of Common Pleas to be holden for the County where such town is situated; and the party so appealing, before such appeal shall be allowed, shall recognize, with sufficient surety or sureties to the libellant, to prosecute his said appeal and to pay all such costs as may arise after said appeal; and no further proceedings shall be had upon the judgment appealed from; and in case the party appealing shall neglect to enter his appeal, the Court appealed to, may, upon complaint, proceed to affirm the judgment of the Justice, with additional costs.

Appeal from Justice's judgment,

after proceedings.

SEC. 4. *Be it further enacted*, That any person who shall suffer injury by the explosion of any gun powder, had or possessed, or being within any town, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, may have an action of the case in any Court proper to try the same, against the owner or owners of such gun powder, or against any other person or persons, who may have had the possession or custody of such gun powder, at the time of the explosion thereof, to recover reasonable damages for the injury sustained.

Persons damaged by explosion of powder illegally kept, may obtain redress.

SEC. 5. *Be it further enacted*, That it shall, and may be lawful for any one or more of the Selectmen of any town to enter any building, or other place, in such town, to search for gun powder, which they may have reason to suppose to be concealed or kept, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, first having obtained a search warrant therefor according to law.

Selectmen may enter buildings to search for powder.

SEC. 6. *Be it further enacted*, That when any stove, chimney or stove pipe, within any town containing not less than fifteen hundred inhabitants, shall be defective, or out of repair, or so constructed or placed, that any building, or other property shall be in danger of fire therefrom, the Selectmen of said town shall give notice, in writing, to the possessor or possessors of such stove, chimney or stove pipe, to remove or repair the same; and if such possessor shall for the term of six days after the giving of such notice, unnecessarily neglect to remove, or effectually repair such stove, chimney or stove pipe, such possessor shall, for each and every such neglect, forfeit and pay a fine of not less than ten dollars, nor more than fifty dollars, to be recovered by action of the case, in any Court proper to try the same.

Penalty for suffering stoves, chimnies or stove pipes to be defective, &c.

Action of case.

SEC. 7. *Be it further enacted*, That the fines, forfeitures

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 140 of 214

Appropriation of fines, &c.

and penalties, which shall arise under this Act, shall accrue, one moiety thereof to the use of the town within which the offence shall be committed, and the other moiety to the use of the person who shall prosecute or sue for the same.

Above regulations not to be in force till published by Selectmen, &c.

SEC. 8. *Be it further enacted*, That the rules and regulations, which shall be established in any town, according to the provisions of this Act, shall be of no force or effect, until such rules and regulations, together with this Act, shall have been published by the Selectmen of such town, three weeks successively, by printing in some newspaper printed within the County, or by posting up attested copies in three several public places in said town.

[Approved March 19, 1821.]

—:00:—

## CHAPTER XXVI.

An Act to prevent damage from firing Crackers, Squibs, Serpents and Rockets, within this State.

Crackers, squibs, &c. not to be fired without license.

BE *it enacted by the Senate and House of Representatives, in Legislature assembled*, That if any person shall offer for sale, set fire to, or throw any lighted cracker, squib, rocket or serpent within this State, without the license of the Selectmen of the several towns, respectively, first obtained therefor, he shall forfeit, for every such offence, the sum of five dollars; one moiety to the use of the poor of that town, in which the offence shall be committed, and the other moiety to the use of the prosecutor; to be recovered by action of debt, or by information before any Justice of the Peace of the County, in which the offence shall be committed, with the costs of suit.

Punishment.

[Approved Feb. 20, 1821.]

—:00:—

## CHAPTER XXVII.

An Act more effectually to secure Fire Engines from being injured.

Persons wantonly injuring fire engines,

BE *it enacted by the Senate and House of Representatives, in Legislature assembled*, That if any person shall wantonly or maliciously, spoil, break, injure, damage or render useless, any engine, or any of the apparatus thereto belonging, prepared by any town, society, person or persons, for the extinguishment of fire, and shall be convicted thereof, before the Supreme Judicial Court, he shall be punished by a fine not exceeding five hundred dollars, or by imprisonment, not exceeding two years, at the discretion of the Court; and be further ordered to recognize, with sufficient surety or sureties, for his good behaviour for such term as the Court shall order.

punished on conviction in S. J. Court.

[Approved March 2, 1821.]

10/4/23, 9:19 AM Mark Ash, The New York City Consolidation Act, as in Force in 1891: With Notes Indicating the Statutory Sources, References to J…
Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 141 of 214

" />

DUKE CENTER FOR FIREARMS LAW

(https://firearmslaw.duke.edu)

Duke Law

(https://law.duke.edu/)

Search this website

# Mark Ash, The New York City Consolidation Act, as in Force in 1891: With Notes Indicating the Statutory Sources, References to Judicial Decisions, and All Laws Relating to New York City, Passed Since January 1, 1882, Together with an Appendix of the Royal English Colonial Charters of New York City Page 209, Image 233 (Vol. 1, 1891) available at The Making of Modern Law: Primary Sources.

Subject(s):

- Manufacturing, Inspection and Sale of Gunpowder and Firearms (https://firearmslaw.duke.edu/subjects/manufacturing-inspection-and-sale-of-gunpowder-and-firearms/)

Addendum 066
https://firearmslaw.duke.edu/laws/mark-ash-the-new-york-city-consolidation-act-as-in-force-in-1891-with-notes-indicating-the-statutory-sources-refere… 1/2

## Jurisdiction(s):

- New York (https://firearmslaw.duke.edu/jurisdictions/new-york/)

## Year(s):

1890

Ordinances of the City of New York, § 455. No person shall manufacture, have, keep, sell, or give away any gunpowder, blasting powder, gun-cotton, niro-glycerine, dualin, or any explosive oils or compounds, within the corporate limits of the city of New York, except in the quantities limited, in the manner, and upon the conditions herein provided, and under such regulations as the board of fire commissioners shall prescribe : and said board shall make suitable provision for the storage and safe keeping of gunpowder and other dangerous and explosive compounds or articles enumerated under this title, beyond the interior line of low water-mark in the city and county of New York. The said board may issue licenses to persons desiring to sell gunpowder or any of the articles mentioned under this section at retail, at a particular place in said city to be named in said license (provided that the same shall not be in a building used in any part thereof as a dwelling unless specially authorized by said license), and persons so licensed may on their premises, if actually kept for sale, persons so licensed may have on their premises, if actually kept for sale, a quantity not exceeding at any one time, of nitro-glycerine, five pounds; of gun-cotton, five pounds of gunpowder, fourteen pounds; blasting powder, twenty-five pounds. . .

- (https://twitter.com/dukefirearmslaw)

- (https://www.youtube.com/playlist?list=PLPlIY2puNnqYUNnmXwbGnQFKMSaLSVDoq)

- Home (https://firearmslaw.duke.edu/)
- About (https://firearmslaw.duke.edu/about/)
- Blog (https://firearmslaw.duke.edu/secondthoughts/)
- Videos (https://firearmslaw.duke.edu/videos/)
- Events (https://firearmslaw.duke.edu/events/)
- Repository of Historical Gun Laws (https://firearmslaw.duke.edu/repository/)
- Teaching Resources (https://firearmslaw.duke.edu/teaching-resources/)
- Conferences (https://firearmslaw.duke.edu/conferences/)

Duke Center for Firearms Law | 210 Science Drive, Durham, NC 27708 | firearmslaw@law.duke.edu (mailto:firearmslaw@law.duke.edu)
Questions or comments about the Repository of Historical Gun Laws can be sent to gunlaws@law.duke.edu (mailto:gunlaws@law.duke.edu).

Copyright © 2023. All rights reserved. Website designed by Addicott Web (https://www.wordpress-web-designer-raleigh.com/).

 

DATE DOWNLOADED: Mon Oct 2 09:50:37 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1845 114 .

ALWD 7th ed.
, , 1845 114 .

Chicago 17th ed.
"," Iowa - 8th Session : 114-136

AGLC 4th ed.
'' Iowa - 8th Session 114

OSCOLA 4th ed.
'' 1845 114 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

sickness or temporary absence shall be discharged by the president *pro tem* who shall be obeyed and respected accordingly.

SEC. 12. That the said city council shall have power, and it is hereby made their duty to make and publish from time to time, all such ordinances as shall be necessary to secure said city and the inhabitants thereof, against injuries by fire, thieves, robbers, burglars and all other persons violating the public peace; for the suppression of riots and gambling, and indecent and disorderly conduct; for the punishment of all lewd and lacivious behavior in the streets and other public places in said city; they shall have power from time to time to make and publish all such laws and ordinances as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of said city, and the inhabitants thereof, to impose fines, forfeitures and penalties on all persons offending against the laws and ordinances of said city, and provide for the prosecution, recovery and collection thereof, and shall have power to regulate by ordinance the keeping and sale of gun-powder within the city.

SEC. 13. That the city council shall have power to establish and organize all fire companies and provide them with proper engines, and such other instruments as shall be necessary to extinguish fire and preserve the property of the inhabitants of said city from conflagration, and they shall have power to establish and constitute landing places, wharves, docks and basins in said city at or on any of the city property, and fix the rates of landing, wharfage and dockage of all steamboats, boats, rafts and other water crafts, and of all goods, wares, merchandize, produce and other articles that may be moored at, landed on, or taken from any landing, wharf, dock, or basin belonging to said city.

SEC. 14. That for the purpose of more effectually securing said city from the destructive ravages of fire, the said city council shall have power and authority on the application of three-fourths of the whole number of owners and proprietors of any square or fractional square in said city, to prohibit in the most effectual manner, the erection of any building or the addition to any building beforo erected more than ten feet high in any such square or fractional square, except the outer walls thereof shall be composed entirely of brick or stone and mortar, and to provide for the most prompt removal of any building or addition to any building which may be erected contrary to the true intent and meaning of this section.

SEC. 15. That the city council shall have power, and it is hereby made their duty to regulate by good and wholesome laws and ordinan-

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 09:55:44 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1836-1837 85 .

ALWD 7th ed.
, , 1836-1837 85 .

Chicago 17th ed.
"," Connecticut - 1936 May and December Sessions, 1937 May Session : 85-[ii]

AGLC 4th ed.
'' Connecticut - 1936 May and December Sessions, 1937 May Session 85

OSCOLA 4th ed.
'' 1836-1837 85 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 146 of 214

either of the aldermen of the city, provided they have been first sworn according to this act. And the person administering the oath, prescribed by this act, shall give a certificate thereof, to the person to whom he administered it, which certificate shall be recorded in the records of such city, before the person to whom it is given, shall be capable of executing the office to which he is chosen.

Certificate to be given and recorded.

Power to make by-laws.

SECT. 20. There shall be a court of common council of each city, to be composed of the mayor, aldermen, and common council, who, by a major vote, shall have power to make by-laws, relative to markets and commerce, within the limits of said cities; relative to persons summoned to attend as jurors at city courts, and neglecting to attend, or refusing to serve; relative to the streets and highways of said cities; relative to nuisances; relative to the wharves, channels, anchoring and mooring of vessels; relative to trees, planted for shade, ornament, convenience, or use, public or private, and to the fruit of such trees; relative to trespasses committed in gardens; relative to the sweeping of chimnies; relative to the forms of oaths to be taken by the treasurers of said cities, and the inspectors of produce brought to said cities for sale or exportation; relative to the manner of warning meetings of said cities, and the courts of common council, and the times and places of holding them; relative to the qualifications, in point of property, of the mayor and aldermen; relative to the bonds to be given, by the sheriffs of said cities, for a faithful discharge of their duty; relative to the penalties to be incurred by those, who, being chosen to any city office, shall, (not being excused by the city,) refuse to serve; relative to a city watch; relative to the burial of the dead; relative to public lights and lamps; relative to restraining horses, cattle, sheep, swine, and geese, from going at large within the limits of said cities; relative to the mode of taxation, as to taxes levied by said cities; relative to preserving said cities from exposure to fire; and to prevent the future erection of any building or buildings, in the most compact and populous parts of said cities, or the alteration, or appropriation of any buildings already erected, to be used for baker's shops, blacksmith's shops, hatter's shops, or tallow-chandler's shops, or any other buildings, for those or similar purposes, which in the opinion of the common council of said cities, respectively, shall more immediately expose said cities to injury, and destruction from fire. And the court of common council

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 147 of 214

of each city, shall have power to designate and assign the limits to their said cities, within which no person or persons shall be permitted in future to erect, use, or occupy any building or buildings of the kind, or for the use mentioned in this act, without license from the court of common council; and to make by-laws relative to licensing and regulating cartmen, or truckmen, butchers, petty grocers, or hucksters, and common victuallers, under such restrictions and limitations, as to them shall appear necessary; and relative to raising and collecting a revenue, by duties and indirect taxes, within said cities; relative to the assize of bread, crackers, and biscuits, and other manufactories of flour, made and sold within said cities; and for securing to the inhabitants of cities, and other persons, the exercise of their rights, in the use of the public squares, streets, and highways within said cities, free from obstruction and molestation; for designating the place or places for military parades in or near said cities; for laying out and regulating public squares and walks; for regulating military parades and rendezvous, within the limits of said cities; and the marching of military companies with music in the streets of said cities; for preventing and punishing trespasses on public buildings; for defining the powers and duties of the city watch, and carrying them into effect; and relative to preserving the health of the inhabitants of said cities; relative to prohibiting and regulating the bringing in, and conveying out, or storing of gun-powder in said cities; and to inflict penalties and forfeitures of goods and chattels, for the breach of such by-laws; which penalties and forfeitures, shall be to the use of said cities respectively, or to such person or persons, as the by-laws shall direct, to be recovered by the treasurers of said cities, for the use of the same, or by the persons to whom forfeited, in an action on such by-law, brought to the city court, in said city where the offence is committed; in which action no appeal shall be allowed. *Provided*, that no penalty shall exceed the sum of thirty-four dollars; and no forfeiture of goods and chattels, shall exceed the value of thirty-four dollars; *and provided*, that such penalties shall not exceed thirty-four dollars, for a quantity of gun-powder not exceeding twenty-five pounds, and for each and every further amount of twenty-five pounds, an additional penalty not exceeding fifteen dollars. And all penalties not exceeding seven dollars, may be sued for, before the mayor or aldermen of the city, in which the offence is committed; and the defendant shall have

To inflict penalties.

How recoverable.

Limitation of penalties and forfeitures.

liberty to appeal, when judgment is rendered against him, to the next city court, to be holden in and for said city, in the same manner as in other cases. *Provided*, that no by-laws shall be made repugnant to the laws of the state; and that all by-laws made by the court of common council, shall be approved by the cities, in legal meeting assembled, and shall be published at least three weeks successively, in some newspaper in, or nearest the cities where made, before the same shall be of any validity. And all the by-laws of said cities, shall, at any time, within six months after they are made, be liable to be repealed by the superior court, or supreme court of errors, in the county to which the city belongs, if, on hearing, they shall be judged to be unreasonable or unjust.

By-laws to be published.

May be repealed.

Mayor, &c. to lay out, alter, and exchange highways.

SECT. 21. The mayor, aldermen, and common council of each city, shall have power to lay out new highways, streets, and public walks for the use of the cities, or to alter those already laid out, and exchange highways for highways, or to sell highways for the purpose of purchasing other highways, taking the same measures, in all respects, as are directed by law, in case of highways to be laid out by the selectmen, for the use of their towns; and the party aggrieved, by the laying out of such streets or highways, may have the same remedy, by application to the county courts, as is by law provided, in case of highways laid out by selectmen.

Inspectors of produce.

SECT. 22. Each city shall have power to appoint inspectors of every kind of produce, of the United States, brought to such city for sale and exportation.

Grants and leases.

SECT. 23. All grants and leases of any real estate belonging to either of said cities, signed by the mayor, and sealed with the city seal, and approved by the city, in a legal meeting, and recorded in the town where the lands granted or leased lie, shall be effectual to convey such estate.

Vacancies in office, how supplied.

SECT. 24. Whenever the mayor of either of said cities, or any other officer eligible by the freemen, shall resign, or be removed, by death or otherwise, another shall be elected in his place, and (if the appointment be annual) shall continue in office for the same time as the person whom he succeeds would have done, had he not resigned, or been removed.

Mayor, &c. to be moderator of meetings; which may adjourn.

SECT. 25. The mayor of each city, or in his absence, the senior alderman present, at any meeting of the city, or any court of common council, shall, *ex officio*, be moderator thereof. A meeting of the city may be adjourned,

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:04:07 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State (1857).

ALWD 7th ed.
. Revised Statutes of the State of Rhode Isl& & Providence Plantations: To Which Are Prefixed, the Constitutions of the United States & of the State (1857).

APA 7th ed.
(1857). Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State. Providence, Sayles, Miller and Simons.

Chicago 17th ed.
Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State. Providence, Sayles, Miller and Simons.

McGill Guide 9th ed.
Revised Statutes of the State of Rhode Isl& & Providence Plantations: To Which Are Prefixed, the Constitutions of the United States & of the State (Providence: Sayles, Miller and Simons., 1857)

AGLC 4th ed.
Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State (Sayles, Miller and Simons., 1857

MLA 9th ed.
Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State. Providence, Sayles, Miller and Simons. HeinOnline.

OSCOLA 4th ed.
Revised Statutes of the State of Rhode Island and Providence Plantations: To Which Are Prefixed, the Constitutions of the United States and of the State. Providence, Sayles, Miller and Simons. Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

## CHAPTER 80.

### OF BOWLING-ALLEYS, BILLIARD TABLES AND SHOOTING GALLERIES.

SECTION
1. Bowling-alleys in compact parts of towns except Providence prohibited under penalty.
2. Pistol or rifle gallery in compact part of Newport prohibited; penalty.
3. Town council to define limits.
4. Penalty for neglect to comply with orders of town councils.
5. Owner of premises deemed keeper of bowling-alley or billiard table.
6. Regulations relating to bowling-alleys in Providence.
7. Town councils to collect tax for keeping bowling-alleys, &c.
8. Tax, of whom to be collected.
9. How collected and appropriated.

SECTION 1. Any person who shall keep any bowling-alley, in the compact part of any town, except the city of Providence, shall be fined two hundred dollars for the first offence, and five hundred dollars for the second offence.

SEC. 2. Any person who shall keep any pistol gallery, rifle gallery, or other building or inclosure where fire-arms are used for practising in firing with ball or shot, in the compact part of the city of Newport, shall be fined two hundred dollars for the first offence, and five hundred dollars for each subsequent offence.

SEC. 3. The town council of each town shall define the limits of the compact part of such town; which limits shall be taken and deemed to comprehend the compact part of such town within the meaning of this chapter.

SEC. 4. The keeper of any bowling-alley or billiard table who shall refuse or neglect to comply with any order or decree relating thereto which any town council shall be authorized to make, shall be fined fifty dollars.

SEC. 5. The owner or occupier of the premises on which any bowling-alley or billiard table is situated, shall be deemed and taken as the keeper of such bowling-alley or billiard table within the meaning of the provisions of this chapter.

SEC. 6. The board of aldermen of the city of Providence may regulate bowling-alleys in said city, and make orders as to the manner of building the same, and the hours during which they may be used; and in case of any such order being disobeyed, they may issue their warrant directed to the city sergeant or to any constable, commanding him to take up and destroy any bowling-alley which may be kept in violation of any such order; and it shall be the duty of any city sergeant or constable to whom any such warrant may be delivered, forthwith to execute the same.

SEC. 7. The town council of each town shall assess, levy and collect a tax, not exceeding two hundred dollars, nor less than twenty-five dollars, per annum, on any person who shall own or keep a billiard table for public use and profit in such town for each billiard table by him kept; and a tax not exceeding twenty-five

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 151 of 214

dollars, nor less than five dollars, per annum, on any person who shall own or keep a bowling-alley in such town except in the city of Providence, for each bowling-alley by him kept: and a tax not exceeding two hundred dollars per annum on any person who shall own or keep a bowling-alley in said city of Providence for each bowling-alley by him kept, and a tax not exceeding two hundred dollars per annum on any person who shall own or keep a pistol gallery, rifle gallery, or other building or inclosure referred to in the second section hereof.

SEC. 8. The town council may assess, levy and collect the tax aforesaid, for any billiard table or bowling-alley, on any person who shall own or occupy the house or building in which such billiard table or bowling-alley shall be kept.

SEC. 9. Such taxes shall be collected in the manner prescribed for the collection of town taxes, and appropriated, the one half thereof to the use of the town in which such tax shall be collected, and the other half to the use of the state.

---

## CHAPTER 81.

### OF FIRE-ARMS AND FIRE-WORKS.

SECTION
1. Firing of rifle, gun, &c., across road, street or lane prohibited.
2. Making bonfire in such places without permission.
3. Person discharging fire-arms on Sunday on land of another to be fined.
4. Penalty for the discharge of fire-arms within certain limits.

SECTION
5. Selling or using fire-works without license, prohibited.
6. Penalty for discharging fire-arms between sunset and sunrise.
7. Complaints, within what time to be made.

SECTION 1. If any person shall fire any rifle, gun, musket, blunderbuss or pistol, in or across any road, street, square or lane, he shall be fined not less than three dollars nor more than twenty dollars.

SEC. 2. If any person shall make a bonfire in any public street, road, square or lane, without special permission from the town council of the town in which the same shall be made, he shall be fined not exceeding ten dollars.

SEC. 3. If any person shall fire any rifle, musket, fowling-piece, pistol or other small arms, not being under military duty at the time, within the limits of any town in the state on the first day of the week, except upon land owned or occupied by him, or by permission of the owner or occupant of the land on and into which he may shoot, he shall be fined not exceeding ten dollars, or be imprisoned not exceeding ten days.

SEC. 4. If any person shall fire any rifle, musket, fowling-piece,

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 152 of 214

pistol or other small arms, not being at the time under military duty, on any other day of the week than Sunday, except upon land owned or occupied by him, or by permission of the owner or occupant of the land on or into which he may shoot, within the following limits, viz.: the city of Providence, excepting the public waters and the public rivers therein; such parts of the towns of Cranston and Johnston as are contained within the following limits, to wit: beginning on the Pawtuxet road, at the Providence line; thence running southerly on said Pawtuxet road until it comes to the cross road leading to the Cranston road; thence northerly and westerly with said cross road and Cranston road until it comes to the road which leads over Rockyhill to Johnston meeting-house; thence northerly with said last-mentioned road until it meets the Johnston road near Johnston meeting-house; thence easterly with said Johnston road until it comes to the line of Providence, to the place of beginning; or on land within one mile from the state house in the town of Bristol; and the whole town of North Providence; he shall be fined five dollars for the first offence, and ten dollars for every subsequent offence.

SEC. 5. If any person shall sell, offer for sale, enkindle or use, or suffer to be sold, offered for sale, enkindled or used by his wife, children or servants or other persons whomsoever, any rocket, cracker, squib or other fire-works of a combustible nature ordinarily used for exhibition or amusement, unless he shall previously obtain special license from the town council of the town, and for the purpose of exhibition on a suitable occasion, he shall be fined ten dollars for each offence.

SEC. 6. If any person shall fire any gun, rifle, musket or blunderbuss in any road, street, lane or tavern, or other public house, after sun-setting and before sun-rising, he shall be fined five dollars for the first offence, and seven dollars for every subsequent offence.

SEC. 7. No complaint for a violation of any of the provisions of this chapter shall be sustained unless the same shall be brought within thirty days after the commission of the offence, and all fines for such violations shall enure one half thereof to the complainant and the other half to the state.

---

## CHAPTER 82.

### OF DOGS.

SECTION
1. Town councils may make ordinances concerning dogs.
2. Town councils may impose a tax on the owners of dogs; and make laws to prevent damage to sheep and cattle.
3. Owners of dogs liable for damage done to sheep and cattle.

SECTION 1. The city councils of any cities, and the town councils of any towns may make such ordinances concerning dogs in

# DIGEST

OF THE

# CHARTERS AND ORDINANCES

OF THE

# CITY OF MEMPHIS,

TOGETHER WITH

# THE ACTS OF THE LEGISLATURE

RELATING TO THE CITY,

## WITH AN APPENDIX.

COMPILED AND REVISED BY ORDER OF THE BOARD OF MAYOR AND ALDERMEN

BY W. H. BRIDGES.

MEMPHIS, TENN:
PRINTED AT THE ARGUS BOOK AND JOB OFFICE.

1863.

Digitized by Google

§ 6. All license heretofore issued for carriages or other vehicles, shall specify whether the carriages or vehicles to be used are public or private, as herein-before defined, and the register of licenses issued shall be so kept as to show the same.

**Licenses to state whether public or private.**

§ 7. From and after the passage of this ordinance the owner and also the person found in charge of any carriage, hack, omnibus or other vehicle whatever, which may be found on the streets, alleys, at hotels or other public places in this city, doing or seeking for general or public employment in the carriage of baggage, passengers or freight, and not having in or on it in some conspicuous place, its regular license number showing it to be regularly licensed for public use, and also a copy of the rates of fare or charges prescribed or allowed by the ordinance of the city, shall be deemed guilty of a misdemeanor, and on conviction before the Recorder, shall be fined not less than five nor more than twenty dollars for each offence, to be collected and disposed of as other fines are; and if the carriage or vehicle so found engaged, have a license of a character called private by this ordinance, in addition to the fine the license shall be forfeited.

**Penalty.**

## ARTICLE VI.

### SHOOTING GALLERIES.

SECTION 1. That no person or persons shall set up or use any pistol gallery, or place for the discharging of pistols, guns or other firearms in the first story of any building in this city; nor shall any gallery be used in any manner involving risk or danger to any person in the city; nor shall any person setting up or using such pistol gallery be exempt from the ordinances and penalties now in force, for discharging or shooting any pistol, gun or firearms within the city limits, until such person or persons have applied and paid for license to set up and use such pistol gallery, according to the provisions of this ordinance.

**Galleries not to be established in first story.**

Digitized by Google

To give bond.

§ 2. That the person or persons applying for license to keep such pistol gallery, shall, at the time of obtaining such license, enter into bond with good security, to be approved of by the City Register, in the sum of three thousand dollars, payable as other city bonds, conditioned that no gambling of any kind be permitted in such pistol gallery, or in the room used for such pistol gallery, or any room adjacent thereto, under the control and connected with said pistol gallery, or its proprietors or keepers; and that all shooting or discharging of firearms shall be done only with perfect security against any harm to persons or property in the vicinity of such pistol gallery; such penalty to be recoverable for every violation of this section of this ordinance, and of the conditions of said bond.

Not to permit minors to shoot

§ 3. That the proprietors or persons keeping such pistol gallery shall not permit any minors to shoot in such gallery without the written consent of the lawful guardian of such minor, unless such guardian be personally present, and consenting to such shooting; nor shall the proprietors or keepers of such gallery permit any shooting in the same after eleven o'clock at night, or on Sunday, nor shall such shooting gallery be allowed to be kept open for shooting after eleven o'clock at night or on Sunday. Any violation of this ordinance is hereby declared a misdemeanor, and each offender, on conviction, shall be fined in any sum not less than five nor more than fifty dollars for any violation of this ordinance, recoverable as other fines.

Rate of license.

§ 4. Any person or persons shall, before putting up or using such pistol or shooting gallery, first apply for, and obtain license, as other licenses are obtained, and shall pay for such license the sum of one hundred dollars per annum for each and every pistol or shooting gallery establishment under the provisions of this ordinance.

Reserved power of Board.

§ 5. That the Board of Mayor and Aldermen retain the power and right to, at any time, repeal this ordinance, and revoke and recall any license to keep a pistol gallery,

Digitized by Google

by refunding a *pro rata* part of the amount paid for any license then outstanding.

## ARTICLE VII.

### BILLIARD SALOONS, ETC.

To give bond.

SECTION 1. The keepers and proprietors of all billiard tables, pool tables, ten pin alleys, bagatelle, or any table of like kind at the time of obtaining license therefor, shall enter into bond, with good security, in the sum of five hundred dollars, payable to the Mayor and Aldermen of said city, and to their successors in office, that they will not gamble themselves, or allow any other persons to gamble in the house or on the premises where such tables or devices, or alleys may be kept, or in any other house procured by him or them for the purpose, with the further condition that a recovery of the penalty of said bond may be had for every violation of its conditions and of this ordinance.

Not to allow youths under twenty-one to play.

§ 2. The proprietors of all such places of amusement, licensed as aforesaid, shall not allow any minor or youth under twenty-one years of age to play any game in said house, without the written consent of the parent or guardian, or unless the parent or guardian be present.

Penalty.

§ 3. For every violation of the first, second and third sections of this ordinance, the guilty party shall pay not less than ten, nor more than fifty dollars, as in other cases of misdemeanor; and it shall be the special duty of the police of the city to see that said houses are closed at eleven o'clock on each and every night, and that said houses are closed on Sunday, as other business houses; and if said houses are kept open and lighted up at night for the purpose of business, after eleven o'clock, as aforesaid, or if they are kept open on Sunday, the keeper thereof shall be fined as above specified.

## ARTICLE VIII.

### STEAMBOAT AGENTS, HOTEL PORTERS, ETC.

To obtain license.

SECTION 1. To entitle any person to advertise or hold himself out as a hotel porter, freight agent, or steamboat

Digitized by Google

S. W. Chittenden

# ORDINANCES

AND

# JOINT RESOLUTIONS

OF THE

# CITY OF SAN FRANCISCO;

TOGETHER WITH

A LIST OF THE OFFICERS OF THE CITY AND COUNTY, AND RULES AND ORDERS OF THE COMMON COUNCIL.

Published by Authority.

SAN FRANCISCO:
MONSON & VALENTINE, BOOK AND JOB PRINTERS,
124 SACRAMENTO STREET.
1854.

Google

## ORDINANCE NO. 497.

*To Grade Bush Street from First to Montgomery.*

*The People of the City of San Francisco, do ordain as follows:*

SECTION 1. That Henry W. Scale be, and he is hereby authorized, to remove the sand from and grade Bush street, from First street to Montgomery street, under the supervision and direction of the Street Commissioner; *provided*, that said removal of sand and grading be done at the expense of him, the said Seale, and without cost or charge to the City of San Francisco. To improve Bush street.

FRANK TURK,
President of Board of Assistant Aldermen.

JOSEPH F. ATWILL,
President of Board of Aldermen.

APPROVED, December 24, 1853.

C. K. GARRISON, MAYOR.

---

I hereby certify the foregoing to be a true copy of an original ordinance, returned by the Mayor to the Common Council with his approval.

ROBERT C. PAGE,
Clerk of Common Council.

---

## ORDINANCE NO. 498.

*Authorizing and Regulating the Issue of Licenses.*

*The People of the City of San Francisco, do ordain as follows:*

SECTION 1. It shall not be lawful for any person or persons within the corporate limits of the City of San Francisco Licenses authorized.

28

Google

to pursue any calling, or transact any business hereinafter mentioned, until he, she, or they, have taken out a license therefore, and paid for the same as is hereinafter provided; and for every violation of this ordinance, the party so offending shall be subject to a penalty of not more than one hundred dollars, nor less than ten dollars, at the discretion of the Recorder; one-fourth of which penalty shall be paid to the informer.

Violation of.

SEC. 2. All licenses shall be paid, quarterly, in advance; and all persons having taken out a license under this ordinance, are required to exhibit the same in some conspicuous part of their place of business, and to produce the same when applying to the Tax Collector for its renewal; and in case any person, or persons, fail to take out a license for the current quarter, as is hereinafter provided, prior to the fifteenth days of January, of April, of July, and of October, they shall be subject to pay an addition of ten per cent. over and above the amounts prescribed herein for such license.

How issued.

Renewals.

SEC. 3. Every person, house or firm, engaged in keeping a bar-room or public saloon, where wines, malt or spiritous liquors are sold by the glass, or bottle, to be drank on the premises, shall pay, quarterly, for a license to keep each of the same, according to their average monthly receipts, or sales, as in the following schedule:

Retail saloons.

Averaging receipts.

1. Monthly receipts or sales, six thousand dollars and upwards, quarterly license, one hundred and seventy-five dollars.

2. Monthly receipts or sales, five thousand dollars and under six thousand dollars, quarterly license, one hundred and fifty dollars.

3. Monthly receipts or sales, four thousand dollars and under five thousand dollars, quarterly license, one hundred and twenty-five dollars.

4. Monthly receipts or sales, three thousand dollars and under four thousand dollars, quarterly license, one hundred dollars.

5. Monthly receipts or sales, two thousand dollars and under three thousand dollars, quarterly license, seventy-five dollars.

6. Monthly receipts or sales, one thousand dollars and under two thousand dollars, quarterly license, fifty dollars.

7. Monthly receipts or sales, five hundred dollars and under one thousand dollars, quarterly license, twenty-five dollars.

8. Monthly receipts or sales, under five hundred dollars quarterly license, twelve dollars and fifty cents.

Such receipts or sales, shall be averaged over the three

Digitized by Google

months prior to the current quarter, and an abstract of the same shall be left under oath with the Tax Collector.

Hotels, etc. SEC. 4. Every person, house or firm engaged in keeping a hotel, boarding or lodging house, where wines, malt or spritous liquors, are consumed or sold, by the glass or bottle, shall pay for a license to keep each of the same, the sum of fifty dollars per quarter.

Balls, etc. SEC. 5. Every person, house or firm, engaged in keeping a house where balls, dances or fandangos are held, in connection with a public saloon or bar-room, shall pay for a license to carry on each of said houses, the sum of one hundred dollars per quarter.

Restaurants, etc. SEC. 6. Every person, house or firm engaged in keeping a restaurant, eating-house, coffee, oyster, or other refreshment saloon, booth, shed or stand, where wines, malt or spiritous liquors are consumed or sold, by the glass or bottle, shall pay, quarterly, for a license to keep the same according to their average monthly receipts or sales, as in the following schedule:

1. Monthly receipts or sales, seven thousand dollars and upwards, quarterly license, one hundred and seventy-five dollars.

2. Monthly receipts or sales, six thousand dollars and under seven thousand dollars, quarterly license, one hundred and fifty dollars.

3. Monthly receipts or sales, five thousand dollars and under six thousand dollars, quarterly license, one hundred and twenty-five dollars.

4. Monthly receipts or sales, four thousand dollars and under five thousand dollars, quarterly license, one hundred dollars.

5. Monthly receipts or sales, three thousand dollars and under four thousand dollars, quarterly license, seventy-five dollars.

6. Monthly receipts or sales, two thousand dollars and under three thousand dollars, quarterly license, fifty dollars.

7. Monthly receipts or sales, under two thousand dollars, quarterly license, twenty-five dollars.

Such receipts or sales shall be averaged over the three months prior to the current quarter, and an abstract of the same shall be left under oath with the Collector.

Faro games, etc. SEC. 7. The proprietor, owner or keeper of every monte bank, faro bank, roulette, or other gaming table, or game of chance, shall pay for a license to carry on such bank, game or table, the sum of one hundred dollars per quarter for each and every table or bank.

Billiards, etc. SEC. 8. The proprietor, owner, or occupant of every house in which a billiard table or ten-pin bowling alley is

Google

kept, shall pay for a license to keep the same, the sum of ten dollars per quarter for each table or alley.

Bagatelle, etc.

SEC. 9. The proprietor, owner, or occupant of every house in which a bagatelle table, or shuffle board is kept, shall pay for a license to keep the same, the sum of ten dollars per quarter for each table or board.

Raffles, etc.

SEC. 10. Every person, house, or firm engaged in raffling goods, wares, merchandise, real estate, or property of any other kind, by the sale of tickets, or otherwise, shall pay for a license to do the same, the sum of three hundred dollars per quarter, and a license shall not be granted for a less period than one quarter.

Bazaars, etc.

SEC. 11. Every person, house, or firm engaged in keeping a bazaar, or other place where property of any kind is disposed of by tickets, dice, or games of chance, shall pay for a license to carry on the same, the sum of two hundred dollars per quarter.

Powder.

SEC. 12. Every person, house, or firm engaged in selling powder, pyrotechnics, or any other similar combustibles, shall pay for a license to do the same, the sum of twenty dollars per quarter.

Shooting galleries.

SEC. 13. Every person, house, or firm engaged in keeping a pistol or rifle shooting gallery, shall pay for a license to carry on the same, the sum of ten dollars per quarter, in addition to the amount of the powder license.

Fruit stands.

SEC. 14. Every person engaged in the business of selling confectionary, candies, fruit, cutlery, cigars, or any other wares, merchandise, or commodities from a stand in the streets, or on the public side-walks, shall pay for a license to do the same, the sum of twenty-five dollars per quarter.

Hawkers, etc.

SEC. 15. Every person engaged in the business of hawking or peddling, or in the itinerant vending of dry-goods, jewelry, or any other wares, or commodities, shall pay for a license to do the same, the sum of one hundred dollars a quarter. All persons taking out license under this and the preceding section, are required to carry the same on their persons, and to produce them when required. This section shall not apply to any person engaged in furnishing to customers water, milk, newspapers, or fruits and vegetables raised within the corporate limits.

Markets.

SEC. 16. The proprietor or owner of every public market, where stalls are rented, and where butchers' meat, vegetables and other provisions are exposed for sale, shall pay for a license to carry on the same, the sum of two hundred and fifty dollars per quarter.

Butchers.

SEC. 17. Every person, house, or firm engaged in the sale of butcher's meat, (except those in licensed public markets), shall pay for a license to do the same, the sum of twenty-five dollars per quarter.

Digitized by Google

SEC. 18. Every person engaged in the business of selling butcher's meat from a wagon, or other vehicle, shall pay for a license to do the same, the sum of twenty-five dollars per quarter, in addition to the amount of their store or market license. All persons taking out licenses under this section, are required to have their names and residences conspicuously painted on the vehicle, and to carry their licenses on their persons, and to produce the same when required. *The same.*

SEC. 19. The proprietors, or owners of every slaughter house within the corporate limits, shall pay for a license to carry on the same, the sum of one hundred dollars per quarter; and a slaughter house shall not be located east of the line of Larkin street, or north of the line of Harrison street. *Slaughter houses.*

SEC. 20. Every person, house, or firm, proprietors of any store or place, where watches, jewelry, or any other wares, merchandise, or commodities, are disposed of by public outcry, whether to the highest or lowest bidders, shall pay for a license to carry on the same, the sum of one hundred dollars per month. *Auctioneers.*

SEC. 21. Every person engaged in the business of soliciting passengers for steamboats, passenger-boats, sailing vessels, (except the advertised agents or owners), or boarders for hotels, restaurants and boarding houses, or soliciting persons to attend theaters, theatrical shows, circuses, exhibitions, or following any similar business, shall pay for a license to do the same, the sum of fifty dollars per quarter. Every person taking out a license under this section, shall carry such license on his person, and produce the same when required by the Collector, Inspector or Policeman. *Agents, etc.*

SEC. 22. Every person, house, or firm engaged in keeping a shipping office, where seamen are provided for the owners, agents, or masters of steamboats or sailing vessels, shall pay for a license to carry on the same, the sum of twenty-five dollars per quarter. *Shipping offices.*

SEC. 23. Every person or firm engaged as a pawn-broker, shall pay for a license to do the same, the sum of two hundred and fifty dollars per quarter. *Pawn-brokers.*

SEC. 24. The manager or lessee of every theater, shall pay for a license to keep open the same, the sum of one hundred dollars per quarter. *Theaters.*

SEC. 25. The manager or lesseee of each company of concert singers or serenaders, the proprietors of each panorama, menagerie, circus, or other exhibition, shall pay for a license the sum of one hundred dollars per quarter, or ten dollars per day for each concert or exhibition. *Concerts, etc.*

SEC. 26. The owner or owners of every stage coach, omnibus, hack, carriage, cab, buggy, dray, cart, car, wagon, or other vehicle, used within the corporate limits, (for the *Coaches, etc.*

Digitized by Google

first and each subsequent quarter), shall pay for a license to use the same, as in the following schedule:

For each omnibus or stage coach, drawn by two or more horses, or other animals, for first quarter, ten dollars; for each subsequent quarter, six dollars.

For each carriage or hack, drawn by two horses, or other animals, for first quarter, eight dollars; for each subsequent quarter, five dollars.

For each carriage, hack, cab, or buggy, drawn by one horse, or other animal, for first quarter, five dollars; for each subsequent quarter, three dollars.

For each wagon, dray, or cart, drawn by two horses, or other animals, for first quarter, five dollars; for each subsequent quarter, two dollars and fifty cents.

For each wagon, dray, or cart, drawn by one horse, or other animal, for first quarter, three dollars; for each subsequent quarter, two dollars.

For each dirt cart drawn by animal or other power, for first quarter, three dollars; for each subsequent quarter, two dollars.

For each hand cart, for first quarter, one dollar and fifty cents; for each subsequent quarter, one dollar.

Miscellaneous.

The owners or drivers of vehicles must produce their previous license, or give satisfactory proof of their payment, otherwise they must be charged for their licenses as for the first quarter. All vehicles conveying passengers or merchandise for hire, shall place the numbers used by the Tax Collector, upon the outside of the square of the after part of the shaft, on each side, or in some more conspicuous place; and if any person shall drive, or permit any vehicle to be driven, without being duly licensed, and having the numbers affixed as herein directed, he shall forfeit and pay ten dollars for every such offense. The owner or owners of every dray, cart, wagon, or other vehicle used within the corporate limits, for the conveyance of goods, chattels, merchandise, or property of any nature or description, for hire, shall, in addition to the usual numbers used by the Tax Collector, be branded in a conspicuous place by that officer, with a corresponding number. The Tax Collector shall be allowed, for each set of numbers branded, the sum of one dollar; and all branded numbers shall be renewed, annually, and painted numbers, quarterly. It shall be the joint duty of the Street Commissioner and the Marshal, with the approval of the Mayor, to assign stands, in convenient places throughout the city, for drays, carriages, and other public vehicles; and it shall be the duty of each driver, or owner, to keep his vehicle on such stand (provided he be disengaged) under a penalty of ten dollars for each offense.

Google

SEC. 27. In case any person changes his residence, or in case he conveys his business to another, the party so purchasing or removing, shall immediately call on the Tax Collector and have the registry changed; and where there is no registry, or a license has not been paid for the then current quarter, he, or they, shall be responsible for the same. A neglect or refusal to comply with this section, shall be punishable by a fine double the amount of such license for the current quarter. In case any person shall have obtained a license through false representations, or otherwise, at an amount under that which he is legally bound to pay, the Tax Collector is hereby empowered to recover the amount of such deficiency; and where a person has failed to take out a license for any previous quarter, to recover the same. The same.

SEC. 28. When the Tax Collector, Inspector of Licenses, or a Policeman, shall have reason to believe that any person or firm are transacting their business without a proper license, he shall call upon the party, and if he or they cannot, or shall refuse to exhibit his license, he or they, shall be fined as provided in section first. The Tax Collector's office shall be open, daily, from ten, A. M. to three, P. M.; and it shall be the duty of the Collector to enter in a book to be kept at his office, the names, places of business, and callings of all persons to whom licenses have been issued, arranged alphabetically; and it shall be the duty of the Collector to make a report to the Common Council at the expiration of each quarter, showing the amount received for licenses, and on what account such moneys were collected; to furnish numbers to all vehicles provided to be numbered by this ordinance, quarterly. And the Tax Collector is hereby authorized to have printed, in form of handbills, one thousand copies of this ordinance.

SEC. 29. It shall be the duty of the Inspector of Licenses to make out a Street Directory, arranging the houses in numerical order, with the names and business of such occupants, as may come within the provisions of this ordinance, together with the number and amount of each license. It shall also be his duty to visit, at least once in each month, every place of business within the corporate limits, to see that each place is duly licensed, and that no other business than that for which such license is obtained is carried on, and cite delinquents before the Recorder. License Inspector.

SEC. 30. Chapter one, title eleven, of the Codified Ordinances on Licenses, and all other ordinances, or sections of ordinances conflicting herewith, are hereby repealed. Repealing clause.

SEC. 31. This Ordinance shall be in full force and take effect on the first day of January, 1854, and a license shall Takes effect.

Digitized by Google

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 165 of 214

" />

DUKE CENTER FOR FIREARMS LAW

(https://firearmslaw.duke.edu)

(https://law.duke.edu/)

Search this website

# Henry Jefferson Leovy, The Laws and General Ordinances of the City of New Orleans, Together with the Acts of the Legislature, Decisions of the Supreme Court. And Constitutional Provisions Relating to the City Government. Revised and Digested, Pursuant to an Order of the Common Council. New Edition Page 257, Image 257 (1870) available at The Making of Modern Law: Primary Sources.

Subject(s):

- Sensitive Places and Times (https://firearmslaw.duke.edu/subjects/sensitive-times-and-places/)

Jurisdiction(s):

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 166 of 214

- Louisiana (https://firearmslaw.duke.edu/jurisdictions/louisiana/)

## Year(s):

1870

Ordinances of the City of New Orleans. Offences and Nuisances. § 636. It shall not be lawful for any person or persons to erect, or in any manner establish or continue any pistol or shooting gallery within the limits of the city of New Orleans, without having first obtained the consent of two-thirds of the persons residing within one square of the place where any pistol of shooting gallery is intended to be established, and permission of the common council; and it shall be the duty of any person or persons so establishing such shooting gallery, to have the same so enclosed as to prevent the report of fire-arms being heard in the street or streets on which the same may be located.

-  (https://twitter.com/dukefirearmslaw)
- 

(https://www.youtube.com/playlist?list=PLPlIY2puNnqYUNnmXwbGnQFKMSaLSVDoq)

- Home (https://firearmslaw.duke.edu/)
- About (https://firearmslaw.duke.edu/about/)
- Blog (https://firearmslaw.duke.edu/secondthoughts/)
- Videos (https://firearmslaw.duke.edu/videos/)
- Events (https://firearmslaw.duke.edu/events/)
- Repository of Historical Gun Laws (https://firearmslaw.duke.edu/repository/)
- Teaching Resources (https://firearmslaw.duke.edu/teaching-resources/)
- Conferences (https://firearmslaw.duke.edu/conferences/)

Duke Center for Firearms Law | 210 Science Drive, Durham, NC 27708 | firearmslaw@law.duke.edu (mailto:firearmslaw@law.duke.edu)
Questions or comments about the Repository of Historical Gun Laws can be sent to gunlaws@law.duke.edu (mailto:gunlaws@law.duke.edu).

Copyright © 2023. All rights reserved. Website designed by Addicott Web (https://www.wordpress-web-designer-raleigh.com/).



MAY 3 1906

# GENERAL DIGEST

OF THE

# ORDINANCES AND RESOLUTIONS

OF THE

# Corporation of New-Orleans.

MADE BY ORDER OF THE CITY COUNCIL,
BY THEIR SECRETARY,
D. AUGUSTIN, ESQ. COUNSELLOR AT LAW.

PRINTED BY JEROME BAYON,
CORNER OF CHARTRES AND ST. LOUIS STREETS.
1831.

Generated on 2022-11-04 21:32 GMT / https://hdl.handle.net/2027/nyp.33433014832483
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 168 of 214

trate invited by the Mayor to replace him thereto in case of his absence. Provided that the place so reserved for the Mayor or other persons sent in his place shall be furnished without said managers being entitled to any compensation, and they shall adhere to this condition before obtaining a license to open their theatres.

ART. 14. The Mayor, as often as he may deem it necessary, shall examine whether the theatres, places of public resort be constructed with the requisite solidity, and carefully kept in repair, so that the public may assemble there without danger; and he shall take suitable measures to prevent the accidents that might result from any negligence in that respect on the part of the proprietors, tenants or other persons having the management or direction of the said theatres, places of public spectacles, or other places of public resort.

ART. 15. The manager, acting manager or other person having the management or direction of a theatre, shall place and constantly keep, within the play-house, several large tubs, and at least one fire-engine in good repair, which must be filled on days of performance; and on failure of complying with this requisite, and until the manager shall have complied with it, the Mayor shall order the theatre to be and remain shut up.

ART. 16. By virtue of the powers granted by law to the Mayor and City Council, the Mayor shall cause to be shut up any place of public resort, whenever the maintenance of order, the public safety or tranquillity may require it.

*Approved, June* 8, 1816.

### *An Ordinance respecting public Balls.*

THE CITY COUNCIL ORDAINS AS FOLLOWS:

ART. 1. It shall not be lawful for any person to enter into a public ball-room with any cane, stick, sword or any other weapon, and every person having either a cane, stick, sword or any other weapon, shall, before he enter the ball-room, deposite the same at the office which shall be at the door of the entrance of said ball-room, where there will be a person appointed to receive and take care of such articles which he shall carefully keep, affixing to each article a number, a check of which he shall give to the owner; and said articles shall not be returned to the persons respectively depositing them, until said persons are quitting the balls and produce their checks.

ART. 2. Every person entering in any public ball-room, in contravention to the above provision, shall pay a fine of five dollars; and every person giving a public ball without having previously established an office at the door of the entrance of said ball-room, and without appointing a person to receive and take care, in the manner aforesaid, of the articles before mentioned shall pay a fine of twenty-five dollars, and if the offence is repeated, the offender shall forfeit the right to hold any further permission to give such public balls.

Generated on 2022-11-04 21:31 GMT / https://hdl.handle.net/2027/nyp.33433014832483
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from NEW YORK PUBLIC LIBRARY

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 169 of 214

ART. 3. Every person who shall commit any disorder, tumult, violence, insult, indecency, or shall commit an assault or battery in a public ball-room shall be taken before the Mayor, or any other justice of the peace, to be dealt with according to law.

ART. 4. Any person giving a public ball, who shall prolong the duration of the same beyond the hour fixed by the license or permit which he must obtain, for this purpose, of the Mayor of this city, shall pay a fine of twenty-five dollars, for each and every offence.

*Approved October* 27, 1817.

*An Ordinance to authorize the Mayor to appoint constables for the police of the theatres, public exhibitions and balls.*

THE CITY COUNCIL ORDAINS AS FOLLWS:

ART. 1. The Mayor shall nominate and appoint a sufficient number of men to be constables, and to form, under that denomination, a guard for the theatres, public exhibitions and balls, in order there to receive and execute the orders and directions of the Mayor, or of the commissaries of police, as to what concerns the maintenance of good order in the aforesaid premises: provided always, that the said constables shall be employed as a guard only at authorised theatres, spectacles and balls, and that their number shall not exceed five men for each of said theatres, exhibitions and balls.

ART. 2. The constables on guard at said theatres or exhibitions, shall be paid by the managers, acting-managers or other persons having the direction of the exhibition, at the rate of one dollar for each constable, every time of performance; and every constable on duty at a ball, shall be entitled to require from the person keeping such balls, the said compensation of one dollar, when the ball ends at midnight, and that of two dollars in case of any ball authorised for a later hour of the night.

ART. 3. In no case shall the above mentioned service be at the expense of the city, nor shall any of the men composing the city guard, be employed on that duty, unless in case of any disturbance breaking out in any of the aforesaid places, and then only till tranquillity be restored.

ART. 4. All persons are forbidden to oppose or obstruct any of the aforesaid constables in the legal execution of his office, or to utter against them invectives or opprobrious language in the discharge of their duty; and every person herein offending, shall pay a fine of from ten to fifty dollars for every such offence.

*Approved, November* 5, 1817.

*An Ordinance laying a tax on public balls and public exhibitions.*

THE CITY COUNCIL ORDAINS AS FOLLOWS:

ART. 1. It shall not be lawful for any person to give any public ball, either to white persons or free persons of colour, at any place within the extent of the city, or to exhibit any inferior spectacle where the public are admitted for money, such as a circus, for equestrian exhibitions, panoramas,

Generated on 2022-11-04 21:32 GMT / https://hdl.handle.net/2027/nyp.33433014832483
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from NEW YORK PUBLIC LIBRARY

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:09:00 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1852 8 .

ALWD 7th ed.
, , 1852 8 .

Chicago 17th ed.
"," New Mexico - 2nd Legislative Assembly, December Session : 8-141

AGLC 4th ed.
'' New Mexico - 2nd Legislative Assembly, December Session 8

OSCOLA 4th ed.
'' 1852 8 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# LAWS

OF THE

## THIRD SESSION OF THE LEGISLATIVE ASSEMBLY.

---

### AN ACT

*To regulate the pay of the third and fourth clerks of both Houses of the Legislature.*

Sec. 1. Auditor to approve, and Treasurer to pay clerks of both Houses.
Sec. 2. Certificate to be signed by President and Secretary of both Houses.

*Be it enacted by the Legislative Assembly of the Territory of New Mexico:*

SEC. 1. That the Auditor of public accounts is authorized and required to approve, and the treasurer to pay the third and fourth clerks of both Houses of the Legislature, their salaries of three dollars per diem, out of any money that may be in the Territorial Treasury.

SEC. 2. That said clerks shall be paid by the Treasurer when they present a certificate of their services signed by the President and Secretary of their respective Houses.

SEC. 3. That this act shall take effect from and after its passage.

Approved December 18, 1853.

Digitized from Best Copy Available

the Justices of the Peace or Court in which the suit may be brought, with imprisonment for a time demanded by the gravity of the offence.

SEC. 4. All acts and parts of acts repugnant to this act shall be and are by these presents repealed.

SEC. 5. This act shall take effect, from and after its approval.

Translation.

## AN ACT

*Prohibiting the carrying a certain class of Arms, within the Settlements and in Balls.*

Sec. 1. Kind of arms prohibited.
Sec. 2. Duties of sheriffs and constables.
Sec. 3. Licenses for dances, obligations required from judge of probate.
Sec. 4. Punishment for violation of this law.
Sec. 5. Disposition of fines.

*Be it enacted by the Legislative Assembly of the Territory of New Mexico:*

SEC. 1. That each and every person is prohibited from carrying short arms, such as pistols, daggers, knives, and other deadly weapons, about their persons concealed, within the settlements, and any person who violates the provisions of this act, shall be fined in a sum not exceeding ten dollars, nor less than two dollars, or shall be imprisoned for a term not exceeding fifteen days nor less than five days.

SEC. 2. That the Sheriffs of the different counties, and Constables of the different precincts, are hereby required to enforce the observance and compliance of the provisions of the preceding section, having power to take with them, two or more armed persons, when they are on patrol at night, in order to make themselves respected while on such duty, and it is hereby made the duty of the Probate Judges and Justices of the Peace to aid and assist said officers in the prompt discharge of their duties.

SEC. 3. Any person desiring to give a Ball or Fandango, they shall apply to the Probate Judge or a Justice of the Peace

Digitized from Best Copy Available

for a License for the same—who, after having granted such license, shall inform the applicant, that he must maintain good order, and for this purpose he shall swear him to faithfully discharge his duties as police officer and perform said duties during such Ball or Fandango, possessing the powers of a Sheriff. and that he will not permit any person to enter said Ball or room adjoining said ball where Liquors are sold, or to remain in said balls or Fandangos with fire arms or other deadly weapons, whether they be shown or concealed upon their persons and if any person or persons shall enter said Balls or Fandangos or ante-chamber, with deadly weapons upon their person, upon conviction for such offence before any Probate Judge or Justice of the Peace, they shall suffer the punishment prescribed in the first section of this Law.

*Provided*, that, in case any person desires a license for a ball or fandango, who shall not be competent, the Probate Judge or Justice of the Peace as the case may be, shall require him to present a competent person, who shall discharge the duties of a Police Officer, and shall swear him as prescribed in the foregoing section.

SEC. 4. That any person or persons giving Balls or Fandangos shall be liable to the punishments prescribed in the foregoing sections of this Law—if they permit any person or persons armed to remain in said Balls or Fandangos, they shall also be subject to the same penalties of the Police Officers who fail to discharge their duties or violate the provisions of this Law.

SEC. 5. That all fines collected by the provisions of this Law shall be applied to the use of the respective counties.

Translation.

## AN ACT

*Providing for the payment of the Salaries of Territorial Officers, not otherwise provided for by Law.*

Sec. 1. Payment of officers under the Kearney code.
Sec. 2. How audited and paid.

Digitized from Best Copy Available

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:14:16 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
James Horton Shankland. Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code (2).

ALWD 7th ed.
Shankland, James Horton. Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code (2).

APA 7th ed.
Shankland, J. (2). Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of Supplement to the Code. Nashville, Paul & Tavel.

Chicago 17th ed.
Shankland James Horton. Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code. Nashville, Paul & Tavel.

McGill Guide 9th ed.
James Horton Shankland, Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code (Nashville: Paul & Tavel., 2)

AGLC 4th ed.
James Horton Shankland, Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code (Paul & Tavel., 2

MLA 9th ed.
Shankland, James Horton. Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code. Nashville, Paul & Tavel. HeinOnline.

OSCOLA 4th ed.
Shankland, James Horton. Public Statutes of the State of Tennessee, since the Year 1858, Being in the Nature of a Supplement to the Code. Nashville, Paul & Tavel. Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

Election polls.

SEC. 2. That said election shall be held at the different places in the cities and counties, as now provided by law, in this State, and according to the Constitution and existing laws governing elections in this State, so far as applicable, and the returning officers shall make their returns in the manner, and to the persons, as now provided by law.

## 1869-70—CHAPTER XXII.

[Enacted Dec. 1, 1869.]

Voters to ballot in their own districts.

SECTION 1. That all voters in this State shall be required to vote in the civil district or ward in which they may reside. Any person violating this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall not be fined less than twenty nor more than fifty dollars: *Provided*, that Sheriffs and other officers holding elections shall be permitted to vote at any ward or precinct in which they may hold an election.

Sheriffs excepted.

Deadly or dangerous weapons.

SEC. 2. That it shall not be lawful for any qualified voter or other person attending any election in this State, or for any person attending any fair, race course, or other public assembly of the people, to carry about his person, concealed or otherwise, any pistol, dirk, Bowie-knife, Arkansas tooth-pick, or weapon in form, shape, or size resembling a Bowie-knife or Arkansas tooth-pick, or other deadly or dangerous weapon.

Penalty.

SEC. 3. That all persons convicted under the second section of this act shall be punished by fine of not less than fifty dollars, and by imprisonment, or both, at the discretion of the court.

Saloons to be closed.

SEC. 4. That no liquor shop in this State shall be kept open on election days, nor shall any person, on said days, give or sell intoxicating liquors to any person for any purpose at or near an election ground.[1]

Powers of grand jury.

SEC. 5. That the grand juries of this State shall have inquisitorial powers concerning the commission of the offenses created by these acts, and may send for witnesses, as in cases of gaming, illegal voting, tippling, and offenses now prescribed by law.

Duty of the judges.

SEC. 6. That it shall be the duty of the Circuit and Criminal Judges of this State to give the above in special charge to the several grand juries of the courts.

No exemption from execution.

Failure to open poll.

SEC. 7. That there shall be no property exempt from execution for fines and costs for this offense: *Provided*, that if from any cause, there should be a failure to hold an election in any civil district or ward, then nothing in this act shall be so construed as to prevent any voter from voting in

[1] See the act next following.

any other civil district or ward in his county or town, for State or county officers, at the time prescribed by law.

## 1869–70.—CHAPTER LIII.

[Enacted January 29, 1870.]

SECTION 3. That all persons convicted under the fourth section of the act [1869–70, ch. xxii, passed December 1, 1869] of which this is amendatory, shall be punished by fine of not less than twenty-five dollars, nor more than one hundred or by imprisonment in the county jail, at the discretion of the court.

Venders of liquor at elections.

SEC. 4. That the word "day" in the act which this one is intended to amend shall mean the time from sunrise to sunset.

The word "day" construed.

## 1870.—CHAPTER XV.

[Approved June 17, 1870.]

SECTION 1. That it shall be the duty of the several Sheriffs of the different counties in this State, or the Coroner, where there is no Sheriff, or if he be a candidate, to open and hold an election at the different voting places in each county, on the second Tuesday in November, eighteen hundred and seventy, and forever thereafter on the first Tuesday after the first Monday in November, every two years, and at the same places, to elect a Governor for the State of Tennessee and members of the General Assembly thereof.

State election to be in November.

SEC. 2. That said elections shall be held, the votes compared, due and correct returns thereof made out and transmitted, and certificates of election given to members elect of the General Assembly, in accordance with the laws now in force, or hereafter passed by the Legislature of this State, regulating the election of Governor and members of the General Assembly.

Election returns.

SEC. 3. That the public welfare requires that this act take effect from and after its passage, and that all laws fixing any other time for holding the election for Governor and members of the General Assembly of this State are hereby repealed.

Former laws repealed.

## 1870.—CHAPTER XXIII.

[Approved June 16, 1870.]

SECTION 3. That on the first Thursday in August, eighteen hundred and seventy-eight, and forever thereafter every eight years, there shall be elected in this State, by the qualified voters, five Judges of the Supreme Court of the State of Tennessee, and Judges of such Circuit, and Chancery, and other Courts as are or may be established by law; and an Attorney for the State for each county or district, for which

August elections.

Election of Supreme judges.

Circuit and chancery judges.

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:20:07 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
George Paschal, Annotator. Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875 (4).

ALWD 7th ed.
Paschal, George, Annotator. Digest of the Ls of Texas Containing the Ls in Force, & the Repealed Ls on Which Rights Rest, from 1754 to 1875 (4).

APA 7th ed.
Paschal, G. (4). Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875. Houston, TX, E.H. Cushing.

Chicago 17th ed.
Paschal George, Annotator. Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875. Houston, TX, E.H. Cushing.

McGill Guide 9th ed.
George Paschal, Annotator, Digest of the Ls of Texas Containing the Ls in Force, & the Repealed Ls on Which Rights Rest, from 1754 to 1875 (Houston, TX: E.H. Cushing., 4)

AGLC 4th ed.
George Paschal, Annotator, Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875 (E.H. Cushing., 4

MLA 9th ed.
Paschal, George, Annotator. Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875. Houston, TX, E.H. Cushing. HeinOnline.

OSCOLA 4th ed.
Paschal, George, Annotator. Digest of the Laws of Texas Containing the Laws in Force, and the Repealed Laws on Which Rights Rest, from 1754 to 1875. Houston, TX, E.H. Cushing. Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

days' imprisonment.

jail nor less than one day nor more than ten days, or both, in the discretion of the court or jury before whom the trial is had.

12 Aug., 1870; took effect 12 Oct., 1870. Vol. 21, part 1, p. 63. Persons not to bear arms at public assemblies. Social intercourse and elections not to be made dangerous.

AN ACT REGULATING THE RIGHT TO KEEP AND BEAR ARMS.

Art. 6512.

Kinds of weapons prohibited.

Fine $50 to $500. Notes, 111, 167.

Scalp-lifting country excepted.

Armed officials.

ART. 6511. [1] If any person shall go into any church or religious assembly, any school-room or other place where persons are assembled for educational, literary, or scientific purposes, or into a ball-room, social party, or other social gathering, composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk, or butcher-knife, or fire-arms, whether known as a six-shooter, gun, or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars, at the discretion of the court or jury trying the same: *Provided*, That nothing contained in this section shall apply to locations subject to Indian depredations: *And provided further*, That this act shall not apply to any person or persons whose duty it is to bear arms on such occasions in discharge of duties imposed by law.

12 April, 1871; took effect 12 June, 1871. Vol. 21, part 2, p. 25. Carrying arms a misdemeanor, punishable by fine and forfeiture, unless, &c. Patriots and militiamen excepted. Art. 6511. [This section is constitutional. *English* v. *The State*, 35 Tex., 474.]

AN ACT TO REGULATE THE KEEPING AND BEARING OF DEADLY WEAPONS.

Fine $25 to $100 for first offense.

Imprisonment for second offense. Notes 111, 167.

People at home and officials excepted. [Carrying weapons to and from market is within the proviso. *Waddell* v. *The State*, 37 Tex., 356. But carrying a pistol hog hunting in the woods is not within the exception. *Baird* v. *The State*, 39 Tex., 609.]

Art. 6512. Justification must be immedi-

ART. 6512. [1] Any person carrying on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purpose of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense the state, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by fine of not less than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed: *Provided*, That this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the state from keeping or carrying arms with their baggage: *Provided further*, That members of the legislature shall not be included under the term "civil officers" as used in this act.

ART. 6513. [2] Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 179 of 214

in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

ate and pressing danger;

and weapon not concealed.

Impending danger.

ART. 6514. [3] If any person shall go into any church or religious assembly, any school-room, or other place where persons are assembled for amusement, or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball-room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, (except as may be required or permitted by law,) or to any other public assembly, and shall have or carry about his person a pistol, or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured and sold for the purposes of offense and defense, unless an officer of the peace, he shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by a fine of not less than fifty, nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term of not more than ninety days.

Attending public meetings armed an offense to be punished in like manner. Society protected and attempted civilization.

Character of arms prohibited.

Fine $50 to $100 for first offense, and imprisonment for perseverance.

ART. 6515. [4] This act shall not apply to nor be enforced in any county of the state which may be designated in a proclamation of the governor as a frontier county, and liable to incursions of hostile Indians.

Governor may exempt frontier counties by proclamation.

ART. 6516. [5] All fines collected under the provisions of this act shall be paid into the treasury of the county, and appropriated exclusively to the keeping in repair and maintenance of public roads, and all weapons forfeited to the county under the provisions of this act shall be sold as may be prescribed by the county court, and the proceeds appropriated to the same purpose.

Art. 6517. All fines under this act must be paid into county treasury.

ART. 6517. [6] It shall be the duty of all sheriffs, constables, marshals, and their deputies, and all policemen and other peace officers, to arrest any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county where the offense is committed, or before a mayor or recorder of the town or city in which the offense is committed, who shall investigate and try the case without delay. On all such trials the accused shall have the right of a trial by jury, and of appeal to the district court; but, in case of appeal, the accused shall be required to give bond, with two or more good and sufficient sureties, in a sum of not less than one hundred, nor more than two hundred dollars, if convicted under the first section, and in a sum of not less than two hundred, nor more than one thousand dollars, if convicted under the third section of this act; said bond to be payable to the state of Texas, and approved by the magistrate, and conditioned that the defendant will abide the judgment of the district court that may be rendered

Peace officers to arrest offenders, &c.

1330a. Justices have jurisdiction of this offense. *Hilliard v. The State*, 37 Tex., 359.

Jury trial and appeal allowed. Appeal bond.

Payable to State.



DATE DOWNLOADED: Mon Oct 2 10:23:35 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1889 7 .

ALWD 7th ed.
, , 1889 7 .

Chicago 17th ed.
"," Arizona - 15th Legislative Assembly : 7-74

AGLC 4th ed.
'' Arizona - 15th Legislative Assembly 7

OSCOLA 4th ed.
'' 1889 7 Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

SEC. 3. This Act shall take effect from and after its passage.

Approved March 18, 1889.

---

No. 12. AN ACT

Concerning the Transaction of Judicial Business on Legal Holidays.

*Be it enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1. No Court of Justice shall be open, nor shall any Judicial business be transacted on any Legal Holiday, except for the following purposes:

1. To give, upon their request, instructions to a Jury when deliberating on their verdict.

2. To receive a verdict or discharge a Jury.

3. For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature; provided, that the Supreme Court shall always be open for the transaction of business; and provided further, that injunctions, attachments, claim and delivery and writs of prohibition may be issued and served on any day.

SEC. 2. All Acts and parts of Acts in conflict with this Act are hereby repealed.

SEC. 3. This Act shall be in force and effect from and after its passage.

Approved March 18, 1889.

---

No. 13. AN ACT

Defining and Punishing Certain Offenses Against the Public Peace.

*Be it Enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1. If any person within any settlement, town, village or city within this Territory shall carry on or about his person, saddle, or in his saddlebags, any pistol, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition thereto, shall forfeit to the County in which he is convicted, the weapon or weapons so carried.

SEC. 2. The preceding article shall not apply to a person in actual service as a militiaman, nor as a peace officer

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 182 of 214

or policeman, or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack upon legal process.

SEC. 3. If any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this Territory are collected to vote at any election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of a knife manufactured and sold for the purposes of offense or defense, he shall be punished by a fine not less than fifty nor more than five hundred dollars, and shall forfeit to the County the weapon or weapons so found on his person.

SEC. 4. The preceding article shall not apply to peace officers, or other persons authorized or permitted by law to carry arms at the places therein designated.

SEC. 5. Any person violating any of the provisions of Articles 1 and 3, may be arrested without warrant by any peace officer and carried before the nearest Justice of the Peace for trial; and any peace officer who shall fail or refuse to arrest such person on his own knowledge, or upon information from some credible person, shall be punished by a fine not exceeding three hundred dollars.

SEC. 6. Persons traveling may be permitted to carry arms within settlements or towns of the Territory for one-half hour after arriving in such settlements or town, and while going out of such towns or settlements; and Sheriffs and Constables of the various Counties of this Territory and their lawfully appointed deputies may carry weapons in the legal discharge of the duties of their respective offices.

SEC. 7. It shall be the duty of the keeper of each and every hotel, boarding house and drinking saloon, to keep posted up in a conspicuous place in his bar room, or reception room if there be no bar in the house, a plain notice to travelers to divest themselves of their weapons in accordance with Section 9 of this Act, and the Sheriffs of the various Counties

shall notify the keepers of hotels, boarding houses and drinking saloons in their respective Counties of their duties under this law, and if after such notification any keeper of a hotel, boarding house or drinking saloon, shall fail to keep notices posted as required by this Act, he shall, on conviction thereof before a Justice of the Peace, be fined in the sum of five dollars to go to the County Treasury.

SEC. 8. All Acts or parts of Acts in conflict with this Act are hereby repealed.

SEC. 9. This Act shall take effect upon the first day of Apr l, 1889.

Approved March 18, 1889.

---

No. 14. AN ACT

To Amend Paragraph 492, Revised Statutes.

*Be it Enacted by the Legislative Assembly of the Terrritory of Arizona:*

SECTION 1. That Paragraph 492, Chapter 5, Title 13, of the R vised Statutes, be amended so as to read as follows: "If he fail to attend in person or by deputy any term of the District Court, the Court may designate some other person to perform the duties of District Attorney during his absence from Court, who shall receive a reasonable compensation to be certified by the Court, and paid out of the County Treasury, which the Court shall by order direct to be deducted from the salary of the District Attorney, if the absence of such Attorney is not excused by such Court."

SEC. 2. That all Acts and parts of Acts in conflict with this Act be, and the same are, hereby repealed.

SEC. 3. That this Act shall take effect and be in force from and after its passage.

Approved March 19, 1889.

---

No. 15. AN ACT

To Provide for the Payment of Boards of Supervisors of the Counties within the Territory of Arizona.

*Be it Enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1. Each member of the Board of Supervisors within this Territory shall be allowed as compensation for their services Five Dollars per day for each day's actual attendance at the sitting of said Board, at which sitting any County business is transacted; and twenty cents per mile actually traveled

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:26:21 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
Will T. Little, et al., Compilers. Statues of Oklahoma, 1890 (1891).

ALWD 7th ed.
Little, Will T., et al., Compilers. Statues of Oklahoma, 1890 (1891).

APA 7th ed.
Little, W. (1891). Statues of Oklahoma, 1890. Guthrie, Okla, State Capital Print. Co.

Chicago 17th ed.
Little Will T., et al., Compilers. Statues of Oklahoma, 1890. Guthrie, Okla, State Capital Print. Co.

McGill Guide 9th ed.
Will T. Little, et al., Compilers, Statues of Oklahoma, 1890 (Guthrie, Okla: State Capital Print. Co., 1891)

AGLC 4th ed.
Will T. Little, et al., Compilers, Statues of Oklahoma, 1890 (State Capital Print. Co., 1891

MLA 9th ed.
Little, Will T., et al., Compilers. Statues of Oklahoma, 1890. Guthrie, Okla, State Capital Print. Co. HeinOnline.

OSCOLA 4th ed.
Little, Will T., et al., Compilers. Statues of Oklahoma, 1890. Guthrie, Okla, State Capital Print. Co. Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# CHAPTER XXV.—CRIMES AND PUNISHMENT.

ARTICLE.
1. Preliminary provisions.
2. Persons liable to punishment for crimes.
3. Parties to crimes.
4. Crimes against religion and conscience.
5. Crimes against the elective franchise.
6. Crimes by and against the executive power of the territory.
7. Crimes against the legislative power;
8. Crimes against public justice, bribery and corruption.
9. Rescues.
10. Escapes and aiding therein.
11. Forgings stealing, multilating and falsifying judicial and public records and documents.
12. Perjury and subornation of perjury.
13. Falsifying evidence.
14. Other offenses against public justice.
15. Conspiracy.
16. Suicide.
17. Homicide.
18. Maiming.
19. Kidnapping.
20. Attempt to kill.
21. Robbery.
22. Felonious assault.
23. Duels and challenges,
24. Assault and battery.
25. Libel and slander.
26. Rape, seduction, carnal abuse of children and abduction.
27. Adultery.
28. Abandonment and neglect of children.
29. Abortion and concealing death of infant.
30. Child stealing.
31. Bigamy, incest, and sodomy.
32. Violating sepulture and the remains of the dead.
33. Indecent exposure, obscene exhibitions, books and prints, and bawdy and other disorderly houses.
34. Lotteries.
35. Gaming.
36. Pawnbroking.
37. Of other injuries to persons.
38. Crimes against the public health and safety.
39. Crimes against the public peace.
40. Crimes against the revenues and property of the territory.
41. Arson.
42. Burglary and house breaking.
43. Forgery and counterfeiting.
44. Larceny
45. Embezzlement.
46. Extortion.
47. Concealed weapons.
48. False personation and cheats.
49. Fraudulently destroying property insured.
50. False weights and measures.
51. Fraudulent insolvencies by individuals.
52. Deleterious food.
53. Fraudulent insolvencies by corporations and other frauds in their management.
54. Fraudulent issue of documents of titles to merchandise.
55. Malicious injuries to railroads, highways, bridges, telegraphs, and ditches.
56. Malicious mischief.
57. Offenses pertaining to the sale of intoxicating liquors.
58. Miscellaneous crimes.
59. General provisions.

## ARTICLE 1.—PRELIMINARY PROVISIONS.

SECTION.
1. Title of code.
2. What acts are criminal.
3. Crime defined.
4. Crimes divided.
5. Felony defined.
6. Misdemeanor defined.
7. Objects of penal code.
8. Conviction must precede punishment.
9. Jury must find degree of crime.
10. Rules of construction.
11. Punishment determined by the court.
12. Punishments.
13. Punishment of felony.
14. Punishment of misdemeanor.

Title of code. (1848) § **1**. This act shall be known as the penal code of the Territory of Oklahoma.

What acts are criminal. (1849) § **2**. No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this code. The words "This Code" as used in the "Penal Code" shall be construed to mean "Statutes of this Territory.

Crime defined. (1850) § **3**. A crime or public offense is an act or omission

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 186 of 214

forbidden by law, and to which is annexed, upon conviction, either of the following punishments: Chap. 25.

First. Death.

Second. Imprisonment.

Third. Fine.

Fourth. Removal from office; or,

Fifth. Disqualification to hold and enjoy any office of honor, trust, or profit, under this Territory.

Crimes divided.

(1851) § **4**. Crimes are divided into:

First. Felonies.

Second. Misdemeanors.

Felony defined.

(1852) § **5.** A felony is a crime which is, or may be, punishable with death, or by imprisonment in the Territorial prison.

Misdemeanor defined.

(1853) § **6.** Every other crime is a misdemeanor.

Objects of penal code.

(1854) § **7**. This code specifies the classes of persons who are deemed capable of crimes, and liable to punishment therefor; and defines the nature of the various crimes; and prescribes the kind and measure of punishment to be inflicted for each. The manner of prosecuting and convicting criminals is regulated by the code of criminal procedure.

Conviction must precede punishment.

(1855) § **8**. The punishments prescribed by this code can be inflicted only upon a legal conviction in a court having jurisdiction.

Jury must find degree of crime.

(1856) § **9**. Whenever a crime is distinguished into degrees, the jury, if they convict the prisoner, shall find the degree of the crime of which he is guilty.

Rule of construction.

(1857) § **10**. The rule of the common law that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.

Punishment determined by the court.

(1858) § **11.** The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed.

Punishments.

(1859) § **12**. Whenever in this code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case shall be determined by the court authorized to pass sentence, within such limits as may be prescribed by this code.

Punishment of felonies.

(1860) § **13.** Except in cases where a different punishment is prescribed by this code, or by some existing provision of law, every offense declared to be felony is punishable by a fine not exceeding one thousand dollars, or by imprisonment in the Territorial prison not exceeding two years, or by both such fine and imprisonment.

Punishment of misdemeanor.

(1861) § **14**. Except in cases where a different punishment is prescribed by this code or by some existing provisions of law, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding five hundred dollars, or both such fine and imprisonment: *Provided, however,* That if there be in any act, chapter

or section of the laws of this Territory a provision making any specific act criminal and providing the punishment therefor, and there be in this Penal Code any provision or sectlon making the same act a criminal offense or prescribing the punishment therefor, that offense and the punishment thereof, shall be governed by the special provisions made in relation thereto, and not by the provisions of this Penal Code: *Provided, further*, In all cases wherein the offering, giving or receiving bribes are made criminal by the provisions of the Penal Code, the party to such crime who shall first furnish information in relation thereto, as against the other parties and in any prosecution therefor, shall testify to the same truthfully and fully, shall not thereafter be criminally liable therefor, but in such case no conviction shall be had on the uncorroborated testimony of one such witness.

## ARTICLE 2.—OF PERSONS LIABLE TO PUNISHMENT FOR CRIME.

SECTION.
1. Who are liable to punishment.
2. Who are capable of committing crime.
3. Intoxication as an element of crime.
4. Morbid propensity no defense.
5. Insanity; court may commit for.
6. Involuntary acts.

SECTION.
7. Duress excuses what.
8. Subjection when inferred from coverture.
9. Subjection not inferred.
10. Inference of subjection may be rebutted.
11. Public foreign ministers exempt.

Who are liable to punishment.

(1862) § 1. The following persons are liable to punishment under the laws of this Territory:

First. All persons who commit, in whole or in part, any crime within this Territory.

Second. All who commit theft out of this Territory, and bring, or are found with the property stolen, in this Territory.

Third. All who, being out of this Territory, abduct or kidnap, by force or fraud, any person contrary to the laws of the place where such act is committed, and bring, send, or convey such person within the limits of this Territory, and are afterward found therein.

Fourth. And all who, being out of this Territory. cause or aid, advise or encourage, another person, causing an injury to any person or property within this Territory by means of any act or neglect which is declared criminal by this code, and who are afterward found within this Territory.

Who are capable of committing crimes.

(1863) § 2. All persons are capable of committing crimes, except those belonging to the following classes:

First. Children under the age of seven years.

Second. Children of the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew it wrongfulness.

Third. Idiots.

Fourth. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness,

(2430) § 6. Every person who, with intent to extort any money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

Sending threatening letter.

(2431) § 7. Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor.

Attempting to export money.

## ARTICLE 47.—CONCEALED WEAPONS.

SECTION.
1. Prohibited weapons enumerated.
2. Same.
3. Minors.
4. Public officials, when privileged.
5. Arms, when lawful to carry.

SECTION.
6. Degree of punishment.
7. Public buildings and gatherings.
8. Intent of persons carrying weapons.
9. Pointing weapon at another.
10. Violation of certain sections.

(2432) § 1. It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

Prohibited weapons enumerated.

(2433) § 2. It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

Same.

(2434) § 3. It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

Minors.

(2435) § 4. Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: *Provided, however,* That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

Public officials, when privleged.

(2436) § 5. Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

Arms, when lawful to carry.

(2437) § 6. Any person violating the provisions of any one of the foregoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court. On the second and every subsequent con-

Degree of punishment.

Chap. 25.

viction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

Public buildings and gatherings.

(2438) § 7. It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

Intent of persons carrying weapons.

(2439) § 8. It shall be unlawful for any person in this Territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

Pointing weapons at another.

(2440) § 9. It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

Violation of section seven.

(2441) § 10. Any person violating the provisions of section seven, eight or nine of this article; shall on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three not more than twelve months.

## ARTICLE 48.—FALSE PERSONATION AND CHEATS.

SECTION.
1. False impersonation, punishment for.
2. False impersonation and receiving money.
3. Personating officers and others.
4. Unlawful wearing of grand army badge.
5. Fines, how paid.
6. Obtaining property under false pretenses.

SECTION.
7. False representation of charitable purposes.
8. Falsely representing banking corporations.
9. Using false check.
10. Holding mock auction.

Punishment for false impersonation.

(2442) § 1. Every person who falsely personates another, and in such assumed character, either:

First. Marries or pretends to marry, or to sustain the marriage relation toward another, with or without the connivance of such other person; or,

Second. Becomes bail or surety for any party, in any proceeding whatever, before any court or officer authorized to take such bail or surety; or,

Third. Subscribes, verifies, publishes, acknowledges or proves, in the name of another person, any written instrument, with intent that the same may be delivered or used as true; or,

Fourth. Does any other act whereby, if it were done by the person falsely personated, he might in any event become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture or penalty, or whereby any benefit might accrue to the party personating, or to any other person.

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:29:10 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
R.H.; Cobb T.R.R.; Irwin Clark, D. Code of the State of Georgia (2).

ALWD 7th ed.
Clark, R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia (2).

APA 7th ed.
Clark, R. (2). Code of the State of Georgia. Macon, Ga, J.W. Burke.

Chicago 17th ed.
Clark R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia. Macon, Ga, J.W. Burke.

McGill Guide 9th ed.
R.H.; Cobb T.R.R.; Irwin Clark, D., Code of the State of Georgia (Macon, Ga: J.W. Burke., 2)

AGLC 4th ed.
R.H.; Cobb T.R.R.; Irwin Clark, D., Code of the State of Georgia (J.W. Burke., 2

MLA 9th ed.
Clark, R.H., et al. Code of the State of Georgia. Macon, Ga, J.W. Burke. HeinOnline.

OSCOLA 4th ed.
Clark, R.H.; Cobb T.R.R.; Irwin, D. Code of the State of Georgia. Macon, Ga, J.W. Burke. Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# PART IV.

## PENAL LAWS.

# TITLE I.

## PENAL CODE.

DIVISION 1.—*Persons Capable of Committing Crimes.*
DIVISION 2.—*Principals and Accessories.*
DIVISION 3.—*Crimes against the State and People.*
DIVISION 4.—*Crimes against the person.*
DIVISION 5.—*Crimes against the Habitation.*
DIVISION 6.—*Crimes Relative to Property.*
DIVISION 7.—*Forging, Counterfeiting, and Unlawful Currency.*
DIVISION 8.—*Crimes Against Public Justice.*
DIVISION 9.—*Against Public Peace and Tranquillity.*
DIVISION 10.—*Against Public Morality, Health, Police, etc.*
DIVISION 11.—*Cheats and Swindles.*
DIVISION 12.—*Fraudulent or Malicious Mischief.*
DIVISION 13.—*Indictments and Proceedings to Execution.*
DIVISION 14.—*Contempts, etc., and Attempts to Commit Crimes.*
DIVISION 15.—*Proceedings in Preliminary Courts.*

## FIRST DIVISION.

### PERSONS CAPABLE OF COMMITTING CRIMES.

SECTION.
4292. Crime—definition.
4293. Intention.
4294. Infants of fourteen years—capable.
4295. Under ten—incapable.
4296. Lunatics.
4297. Idiots.
4298. Aiders and abettors instead.
4299. If insanity is pleaded.
4300. Married women.
4301. Drunkenness—when excuse.
4302. Misfortune or accident.
4303. Persons under fear.
4304. Felony—what is.

§4292. (4227.) *Definition of Crime.* A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence.

§4293. (4228.) *Intention.* Intention will be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused.

tentiary shall assail, oppose, or resist any officer of the penitentiary, or any member of the guard, with any weapon, or implement calculated to cause death or serious bodily injury, such prisoner so offending, shall be deemed guilty of mutiny, and on conviction thereof, shall be punished by an additional term of imprisonment and labor in the penitentiary, not less than two years nor longer than five years, at the discretion of the Court, to be computed from the expiration of the term of imprisonment and labor to which such prisoner shall have been previously sentenced.

§4511. (4438.) *Instigating mutiny.* If any person shall persuade, entice, or instigate any prisoner to mutiny, such person so offending shall be guilty of a misdemeanor, and on conviction, shall be punished by confinement and labor in the penitentiary for any time not less than two years nor longer than five years, at the discretion of the Court, to be computed, if a prisoner in the penitentiary, from the expiration of the term of imprisonment and labor for which he shall have been previously sentenced.

§4512. (4439.) *Receiving stolen goods from a negro.* If any free white person shall buy or receive any money, goods, chattels, or other effects, from any negro or free person of color, that has or have been stolen, or feloniously taken, knowing the same to have been so stolen or feloniously taken, such person so offending shall be deemed and taken to be an accessory after the fact, and being convicted thereof, shall be punished by imprisonment and labor in the penitentiary for any time not less than one year nor more than four years.

---

## NINTH DIVISION.

### OFFENSES AGAINST THE PUBLIC PEACE AND TRANQUILLITY.

SECTION.
4513. Unlawful assemblies.
4514. Riot.
4515. Affrays.
4516. Dueling, challenging.
4517. Seconds.
4518. Dueling, fighting.
4519. Officers not preventing.
4520. Charging the "coward."
4521. Libel.

SECTION.
4522. Printer, witness.
4523. Truth proved.
4524. Forcible entry.
4525. Forcible detainer.
4526. Punishment.
4527. Carrying deadly weapons.
4528. Prohibited at public places.
4529. Other offenses.

§4513. (4440.) *Unlawful assemblies.* If two or more persons assemble for the purpose of disturbing the public peace, or committing any unlawful act, and do not disperse upon being commanded to do so by a Judge, Justice, sheriff, constable, coroner, or other peace officer, such person so offending shall be guilty of a misdemeanor, and on conviction, shall be punished as prescribed in section 4310 of this Code.

§4514. (4441.) *Riot.* If any two or more persons, either with or without a common cause of quarrel, do an unlawful act of violence, or any other act in a violent and tumultuous manner, such persons so offending shall be guilty of a riot, and on conviction, shall be punished [as prescribed in section 4310 of this Code.] (a.)

(a) Acts of 1865-'66, p. 233.

Demand for trial of one of several defendants who continue their case: 17 Ga., 618. This section construed: 20 Ga., 839. A riot cannot be committed without as many as two persons acting in execution of a common intent: 30 Ga., 27. Severance demanded by co-defendants: 34 Ga., 10. Misnomer immaterial, there being no doubt about the identity of the defendant: 38 Ga., 184. Motion to arrest judgment: 42 Ga., 203.

§4515. (4442.) *Affrays.* An affray is the fighting of two or more persons in some public place, to the terror of the citizens and disturbance of the public tranquillity. Persons so offending shall be indicted, and on conviction, shall be punished [as prescribed in section 4310 of this Code;] (a) and it shall be considered a great aggravation of this offense if any contempt or disobedience of the magistrate, or other peace officer commanding the peace, shall be proved.

(a) Acts of 1865-'66, p. 233.

Where two persons are indicted for an affray—both must be convicted or neither: 13 Ga., 322 What constitutes this offense: *Ib.* One who aids, assists and abets an affray is guilty as principal: *Ib.*

§4516. (4443.) *Dueling.* If any person shall deliberately challenge, by word or writing, the person of another, to fight with sword, pistol, or other deadly weapon, or if any person so challenged shall accept the said challenge, in either case, such person so giving, or sending, or accepting any such challenge, shall, on conviction, be punished by a fine not less than five hundred dollars, and be imprisoned in the common jail of the county for any time not exceeding six months. Or, if the jury should so recommend, such person shall, in addition to the fine herein imposed, be punished by imprisonment and labor in the penitentiary for any time not less than one year nor longer than two years.

§4517. (4444.) *Seconds, same punishment.* If any person shall knowingly and willfully carry and deliver any written or printed challenge, or verbally deliver any message or challenge to another, to fight with sword, pistol, or other deadly weapon, or shall consent to be a second in any such duel or combat, such person so offending shall, on conviction, be punished in the same manner as prescribed in the preceding section.

§4518. (4445.) *Act of fighting a misdemeanor.* If any person shall be engaged in the act of fighting a duel, with sword, pistol, or other deadly weapon, either as principal or second, such person shall be guilty of a high misdemeanor, and, on conviction, shall be punished by imprisonment and labor in the penitentiary for any time not less than four years, nor longer than eight years: *Provided, nevertheless,* that if death should ensue from such duel, then all the parties, both principals and seconds, shall be guilty of murder, and suffer the punishment of death, but the punishment may be commuted in conformity with the provisions of section 4310 of this Code.

§4519. (4446.) *Officers knowing and not preventing.* If any Justice, or other public officer bound to preserve the public peace, shall have knowledge of an intention in any person or persons to fight with any deadly weapon, and shall not use and exert his official authority to arrest the parties and prevent the duel, by binding over the parties concerned to keep the peace toward each other, such Judge, Justice, or other peace officer so offending, shall, on conviction, be dismissed from office.

§4520. 4447.) *Proclaiming as "coward," etc., in print.* If any person or persons shall, in any newspaper, or handbill, written or printed, publish or proclaim any other person or persons as a coward or cowards, or use any other opprobrious and abusive language for not accepting a challenge or fighting a duel, such person or persons so offending shall, on conviction, be punished [as prescribed in section 4310 of this Code.] (a.)

(a) Acts of 1865-'66, p. 233.

§4521. (4448.) *Libel defined.* A libel is a malicious defamation, expressed either by printing or writing, or signs, pictures or the like, tending to blacken the memory of one who is dead, or the honesty, virtue, integrity, or reputation of one who is alive, and thereby expose him or her to public hatred, contempt, or ridicule. Every person convicted

§2974.

of this offense, shall be punished as prescribed in section 4310 of this Code.

What indictment sufficient: 4 Ga., 14. When "malicious:" *Ib.*, 24. If the libel was placed where it might have been seen and read, unnecessary to aver or prove that it was seen and read; if it import defamation upon its face of a particular person, unnecessary to insert inuendoes in the indictment: the libel should not be read to the jury until defendant has cross-examined the witness proving the publication; libellous to charge a person with being a cuckold, a drunkard and a tory; when a man is presumed to be the maker of a libel: 6 Ga., 276.

§4522. (4449.) *Printer, a witness.* In all prosecutions under the two preceding sections of this division, the printer or publisher of a newspaper, handbill, or other publication containing the offensive or criminal matter, shall be a competent witness; and if such printer or publisher shall refuse to testify in the cause, or to give up the real name of the author or person authorizing and causing the publication, so that he may be indicted, then such printer or publisher shall be deemed and considered the author himself, and be indicted and punished as such; and may, moreover, be punished for a contempt of the Court, as any other witness refusing to testify.

§4523. (4450.) *The truth is evidence.* In all cases of indictment for a libel, or for slander, the person prosecuted shall be allowed to give the truth in evidence. §2979.

§4524. (4451.) *Forcible entry.* Forcible entry is the violently taking possession of lands and tenements with menaces, force and arms, and without authority of law. §4085, *et seq.*

The prosecutor who was dispossessed or from whom possession is detained is a competent witness: 24 Ga., 191.

§4525. (4452.) *Forcible detainer.* Forcible detainer is the violently keeping possession of lands and tenements with menaces, force and arms, and without authority of law. §4085, *et seq.*

§4526. (4453.) *Punishment for forcible entry or detainer.* Any person who shall be guilty of a forcible entry, or a forcible detainer, or both, may be indicted, and, on conviction, shall be punished by fine or imprisonment in the common jail of the county, or both, at the discretion of the Court; and the Court before whom the conviction takes place shall cause restitution of possession of the premises to be made to the party aggrieved: *Provided, always,* that if the party forcibly detaining lands and tenements, or those under whom he claims, shall have been in peaceable possession of the same for the space of three years or more, immediately preceding the filing of the complaint, such person or party shall not be subject to the penalties of this section, nor shall restitution of possession be made; *and provided, also,* that the only questions to be submitted to and determined by the jury in trials for forcible entry, or forcible detainer, shall be the possession and the force, without regard to the merits of the title on either side.

§4527. (4454.) *Carrying concealed weapons.* Any person having or carrying about his person, unless in an open manner and fully exposed to view, any pistol (except horseman's pistols,) dirk, sword in a cane, spear, bowie knife, or any other kind of knives manufactured and sold for the purpose of offense and defense, shall be guilty of a misdemeanor, and, on conviction, shall be punished as prescribed in section 4310 of this Code. Act of 1837, C. p. 848. Act of 1851-'52, p. 269. (a) Acts of 1865-'66, p. 233.

Constitutionality of the Act of 1837: 1 Kelly, 243. Act of 1851-2 did not repeal §4570: 12 Ga., 1. If the weapon be carried so that others can see and know that it is a pistol or other weapon, it is no violation of the Act of 1851-2, though some part of the weapon be concealed from view: 32 Ga., 225; otherwise, if so far concealed, though partially exposed to view, that it could not be readily seen and recognized as a pistol: 32 Ga., 292. The law does not necessarily and under all circumstances attach malice to the secretly carrying concealed weapons: 33 Ga., 303. In indictment for carrying concealed weapons at a particular time and place, defendant cannot prove that it was his general custom to carry his weapon fully exposed to view: 36 Ga., 242. The offense consists not in *having* the pistol at a particular place and time but, in having it concealed: 36 Ga., 245. "Horseman's pistol:" 44 Ga., 221.

52

§4528. *Deadly weapons not to be carried to public places.* [No person in this State is permitted or allowed to carry about his or her person, any dirk, bowie knife, pistol or revolver, or any kind of deadly weapon, to any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State, except militia muster grounds; and if any person or persons shall violate any portion of this section, he, she or they shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the Court.] (a.)

(a) Acts of 1870, p. 421.

§4529. (4455.) *Other offenses against public peace.* All other offenses against the public peace, not provided for in this Code, shall be prosecuted and indicted as heretofore, and the punishment in every such case, shall be [as prescribed in section 4310 of this Code.] (a.)

(a) Acts of 1865-'66, p. 233.

## TENTH DIVISION.

### OFFENSES AGAINST THE PUBLIC MORALITY, HEALTH, POLICE, ETC.

SECTION.
4530. Bigamy.
4531. Punishment on married person.
4532. On unmarried person.
4533. Incest.
4534. Adultery.
4535. Lewdness.
4536. Lewd houses.
4537. Disorderly houses.
4538. Gaming houses.
4539. Gaming in liquor shops.
4540. Gaming tables.
4541. Gambling.
4542. Gaming with minors.
4543. Minors not to play billiards.
4544. Gaming with clerks and bank officers.
4545. Players—witnesses.
4546. Judge's charge.
4547. Suspected houses.
4548. Sale of lottery tickets forbidden.
4549. Tickets in gift enterprises.
4550. Unwholesome provisions.
4551. Unwholesome bread, etc.
4552. Unlawful sale of kerosene.
4453. Test of kerosene.
4554. Other illegal oils.
4555. Sale of naptha.
4556. Sale of uninspected oils.
4557. Kerosene defined.
4558. Spreading small pox.

SECTION.
4559. Violating quarantine.
4560. Vagrants.
4561. Common rogues.
4562. Nuisances.
4563. Disinterring bodies.
4564. Bastardy.
4565. Retailing without license.
4566. Illegal marrying.
4567. Marrying white and colored.
4568. Illegal voting.
4569. Buying or selling votes.
4570. Sale of liquor on election days.
4571. Minors voting.
4572. Adultery with negroes.
4573. Whipping wife.
4574. Interferring with religious worship.
4575. Retailing near church.
4576. Vending near camp grounds.
4577. Police at places of worship.
4578. Running freight trains on Sunday.
4579. Violating Sabbath.
4580. Hunting on Sunday.
4581. Illegal bathing.
4582. Fines from Sabbath-breakers.
4583. Bonds in case of vagrancy.
4584. Attorney or Solicitor—duty in such case.
4585. Water and light on railroads.
4586. Equal accommodation of races.

4530. (4456.) *Polygamy and bigamy.* Polygamy, or bigamy, shall consist in knowingly having a plurality of husbands or wives at the same time.

Indictment for bigamy must set forth what—admissions of defendant as to marriage: 11 Ga., 53. Definition of bigamy: 20 Ga., 703. Principal in first and second degree: 34 Ga., 275. Bigamy under §1667: 40 Ga., 244. "Legitimate:" 20 Ga., 702; 34 Ga., 407.

4531. (4457.) *Punishment—if before marriage.* If any person or persons within this State, being married, do or shall at any time hereafter marry any person or persons, the lawful husband or wife being alive, and knowing that such lawful husband or wife is living, such person or persons so offending shall, on conviction, be punished by confinement at labor in the penitentiary, for any time not less than two years nor longer than four years, and the second marriage shall be void; but five years' absence of the husband or wife, and no information of the fate of such husband or wife, shall be sufficient cause of acquittal of the person indicted;

HEINONLINE

DATE DOWNLOADED: Mon Oct 2 10:31:01 2023
SOURCE: Content Downloaded from HeinOnline

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
John A.; et al. Hockaday, Compilers %26 Annotators. Revised Statutes of the State of Missouri 1879 (1879).

ALWD 7th ed.
Hockaday, John A.; et al., Compilers & Annotators. Revised Statutes of the State of Missouri 1879 (1879).

APA 7th ed.
Hockaday, J. (1879). Revised Statutes of the State of Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.

Chicago 17th ed.
Hockaday John A.; et al., Compilers %26 Annotators. Revised Statutes of the State of Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.

McGill Guide 9th ed.
John A.; et al. Hockaday, Compilers %26 Annotators, Revised Statutes of the State of Missouri 1879 (Jefferson City: Carter & Regan, State printers and binders., 1879)

AGLC 4th ed.
John A.; et al. Hockaday, Compilers %26 Annotators, Revised Statutes of the State of Missouri 1879 (Carter & Regan, State printers and binders., 1879

MLA 9th ed.
Hockaday, John A., and Compilers & Annotators et al. Revised Statutes of the State of Missouri 1879. Jefferson City, Carter & Regan, State printers and binders. HeinOnline.

OSCOLA 4th ed.
Hockaday, John A.; et al., Compilers & Annotators. Revised Statutes of the State of Missouri 1879. Jefferson City, Carter & Regan, State printers and binders.
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at https://heinonline.org/HOL/License
-- The search text of this PDF is generated from uncorrected OCR text.

# CHAPTER 24.

## OF CRIMES AND CRIMINAL PROCEDURE.

ARTICLE I—Offenses against the government and the supremacy of the law.
II—Offenses against the lives and persons of individuals.
III—Offenses against public and private property.
IV—Offenses affecting records, currency, instruments or securities.
V—Offenses affecting the administration of justice.
VI—Offenses by persons in office or affecting public trusts and rights.
VII—Offenses against public order and public peace.
VIII—Offenses against public morals and decency or the public police, and miscellaneous offenses.
IX—Miscellaneous provisions and matters of practice.
X—Local jurisdiction of public offenses.
XI—Limitations of criminal actions and prosecutions.
XII—Surety to keep the peace.
XIII—Arrest and preliminary examination.
XIV—Jurisdiction and mode of procedure.
XV—Of grand juries and their proceedings.
XVI—Indictments and process thereon.
XVII—Proceedings before trial.
XVIII—Trials and incidental proceedings.
XIX—Verdict and judgment and proceedings thereon.
XX—New trial and arrest of judgment.
XXI—Appeals and writs of error.
XXII—Miscellaneous proceedings.
XXIII—Procedure before justices in misdemeanors.
XXIV—Relief of insolvents confined on criminal process.
XXV—Costs in criminal cases.

## ARTICLE I.

### OFFENSES AGAINST THE GOVERNMENT AND THE SUPREMACY OF THE LAW.

SECTION
1227. Treason, punishment of.
1228. Misprision of treason, how punished.
1229. Giving aid to enemies of state—punishment.
1230. Combinations to overturn state government.
1231. Levying war against people of state.

SEC. 1227. *Treason, punishment of.*—Every person who shall commit treason against the state, by levying war against the same, or by adhering to the enemies thereof, by giving them aid and comfort, shall, upon conviction, suffer death, or be sentenced to imprisonment in the penitentiary for a period of not less than ten years. (G. S. 776, § 1.)

SEC. 1228. *Misprision of treason, how punished.*—Every person who shall have knowledge that any other person has committed, or is about to commit, treason against this state, and who shall conceal the same, shall be deemed guilty of misprision of treason, and, on conviction, shall be punished by imprisonment in the penitentiary for a period not exceeding seven years, or by imprisonment in the county jail not less than four months, and by fine not less than one thousand dollars. (G. S. 776, § 2.)

SEC. 1229. *Giving aid to enemies of state—punishment.*—Any person who, while this state shall be engaged in war, in cases authorized by the constitution of the United States, shall attempt or endeavor to join, or give aid or comfort to, the enemies of the state, or shall counsel, advise, persuade or induce any other person to join, give aid or comfort to them, in this state or elsewhere, shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding ten years, or by fine not less than one thousand nor exceeding five thousand dollars. (G. S. 777, § 3.)

Case: 23-55431, 10/11/2023, ID: 12808307, DktEntry: 19, Page 198 of 214

SEC. 1230. *Combinations to overturn state government.*—If two or more persons shall combine, by force, to usurp the government of this state, or overturn the same, interfere forcibly in the administration of the government, or any department thereof, evidenced by forcible attempt within the state to accomplish such purpose, the person so offending shall be punished by imprisonment in the penitentiary for a period not exceeding five years, or by fine not less than five hundred nor exceeding five thousand dollars, and imprisonment in a county jail not less than four months. (G. S. 777, § 4.)

SEC. 1231. *Levying war against people of state.*—If twelve or more persons shall combine to levy war against any part of the people of this state, or to remove them forcibly out of the state, or from their habitations, evidenced by taking arms and assembling to accomplish such purpose, every person so offending shall be punished as provided in the preceding section. (G. S. 777, § 5.)

---

## ARTICLE II.

### OFFENSES AGAINST THE LIVES AND PERSONS OF INDIVIDUALS.

SECTION
1232. Murder in the first degree.
1233. Murder in the second degree.
1234. Trials for murder—verdict and punishment.
1235. Justifiable homicide.
1236. Excusable homicide.
1237. Verdict of not guilty, when returned.
1238. Manslaughter in first degree.
1239. Manslaughter in first degree.
1240. Manslaughter in first degree.
1241. Manslaughter in second degree.
1242. Manslaughter in second degree.
1243. Manslaughter in second degree.
1244. Manslaughter in third degree.
1245. Manslaughter in third degree.
1246. Mischievous animal running at large.
1247. Intoxicated physician.
1248. Railroad conductors and others punished, when.
1249. Manslaughter in the fourth degree.
1250. Manslaughter in fourth degree, continued.
1251. Punishment for manslaughter.
1252. Infanticide, how punished.
1253. Rape, punishment.
1254. Carnally knowing woman above twelve years.
1255. Forcing woman to marry.
1256. Taking away woman with intent to defile.
1257. Taking female away under eighteen years old.

SECTION
1258. Enticing female to house of ill-fame.
1259. Seducing female under promise of marriage.
1260. Guardian defiling ward.
1261. Mayhem.
1262. Assault with intent to kill.
1263. Punishments for assaults.
1264. Maiming by procurement of another.
1265. Common assault.
1266. Poisoning.
1267. Mingling poison with food or drink.
1268. Abortion.
1269. Kidnapping.
1270. Enticing away child.
1271. Abandonment of children.
1272. Mistreatment of apprentices.
1273. Abandonment of wife or child.
1274. Carrying deadly weapons.
1275. Above section not to apply to certain officers.
1276. Fire arms not to be discharged near court house.
1277. Punishment.
1278. Immediate vicinity, defined.
1279. Intoxicated stage driver.
1280. Intoxicated pilot or engineer.
1281. Drunken conductor, whilst in charge of train.
1282. Punishment for certain offenses.

SEC. 1232. *Murder in the first degree.*—Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree. (G. S. 778, § 1, amended—*a.*)

---

(*a*) Murder in the first degree, defined. 5 Mo. 364; 18 Mo. 419. Id. 435; 24 Mo. 475; 25 Mo. 128; 38 Mo. 270; 23 Mo. 287; 54 Mo. 153; 57 Mo 40; 59 Mo. 135; 61 Mo. 549; 64 Mo. 191, 319; 65 Mo. 530; 66 Mo. 13, 632. Deliberation and premeditation, defined. 18 Mo. 419; 25 Mo. 128; 23 Mo. 287; 54 Mo. 153; 66 Mo. 13. Held not necessary to constitute murder in first degree when the homicide is committed in the perpetration, or attempt to perpetrate a felony. 18 Mo. 435; 66 Mo. 632. But see 68 Mo. 552. Will not be presumed, but may be inferred, from the circumstances connected with the killing. 23 Mo. 287; 54 Mo. 153; 64 Mo. 191, 319; 66 Mo. 632. Malice, defined. 66 Mo. 13; 25 Mo. 128. Presumed, when. 64 Mo. 191, 319; 54 Mo. 153; 57 Mo. 40. Indictment must set forth with accuracy the manner in which the murder was committed. 5 Mo. 364; 20 Mo 58; 62 Mo. 40. The words, "did kill and murder," cannot be dispensed with. 30 Mo. 376. Must allege the time and place of the death. 9 Mo. 666; 64 Mo. 383; 65 Mo. 217; 66 Mo. 125; 68 Mo. 408. Need not allege on what part of the body the wound was inflicted. 64 Mo. 398. Will support a judgment in

SEC. 1271. *Abandonment of children.*—If any father or mother of any child under the age of six years, or any other person to whom such child shall have been confided, shall expose such child in a street, field or other place, with intent wholly to abandon it, he or she shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months. (G. S. 781, § 39.)

SEC. 1272. *Mistreatment of apprentices.*—If any master or mistress of an apprentice or other person having the legal care and control of any infant, shall, without lawful excuse, refuse or neglect to provide for such apprentice or infant, necessary food, clothing or lodging, or shall unlawfully and purposely assault such apprentice or infant, whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. (New section.)

SEC. 1273. *Abandonment of wife or child.*—If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of twelve years born in lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty, nor more than one thousand dollars, or by both such fine and imprisonment. No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children, than would be necessary to prove such fact or facts in a civil action. (Laws 1867, p. 112, amended—*m.*)

SEC. 1274. *Carrying deadly weapons, etc.*—If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct, on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall, directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment. (Laws 1874, p. 43; laws 1875, p. 50, and laws 1877, p. 240, amended.)

SEC. 1275. *Above section not to apply to certain officers.*—The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or make arrests, nor to persons moving or traveling peaceably through this state, and it shall a good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home or property. (New section.)

SEC. 1276. *Fire arms not to be discharged near court house.*—Hereafter it shall be unlawful for any person in this state, except he be a sheriff or other officer in the discharge of official duty, to discharge or fire off any

(*m*) Wife held to be a competent witness to prove fact of abandonment. 43 Mo. 429. The fact that the defendant has brought suit for divorce is no defense. 52 Mo. 172.

gun, pistol or fire arms of any description, in the immediate vicinity of any court house, church or building used for school or college purposes. (Laws 1879, p. 90, § 1.)

SEC. 1277. *Punishment.*—Any person, guilty of a violation of the preceding section, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than five dollars nor more than twenty dollars, or by imprisonment in the county jail not exceeding twenty days. (Laws 1879, p. 91, § 2.)

SEC. 1278. *Immediate vicinity defined.*—The term immediate vicinity, as used in this article, shall be construed and held to mean a distance not exceeding two hundred yards. (Laws 1879, p. 91, § 3.)

SEC. 1279. *Intoxicated stage driver.*—Every person who, whilst actually employed in driving any stage, coach, wagon, omnibus, hack or other vehicle, shall be intoxicated to such a degree as to endanger the safety of any person therein, shall be deemed guilty of a misdemeanor, and shall, upon conviction, be punished by fine not less than twenty nor more than one hundred dollars. (G. S. 814, § 31.)

SEC. 1280. *Intoxicated pilot or engineer.*—Every person who, whilst actually employed in discharging the duties of a pilot or engineer on any steamboat, or of a conductor or engineer on railroad cars, shall be intoxicated to such a degree as to endanger the safety of such steamboat or cars, or of any person or passenger therein, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, or by fine not exceeding one thousand dollars. (G. S. 814, § 32.)

SEC. 1281. *Drunken conductor, whilst in charge of train.*—If any person shall, while in charge of a locomotive engine running upon the railroad of any such corporation, or while acting as the conductor of a car, or train of cars, on any such railroad, be intoxicated, he shall be deemed guilty of a misdemeanor. (G. S. p. 342, § 40.)

SEC. 1282. *Punishment for certain offenses.*—Every person who shall be convicted of murder in either degree, or manslaughter in the first degree, or who shall be convicted and sentenced to the penitentiary for any of the offenses specified in sections twelve hundred and fifty-three, twelve hundred and fifty-four, twelve hundred and fifty-five, twelve hundred and fifty-six, twelve hundred and fifty-seven, twelve hundred and fifty-eight, twelve hundred and fifty-nine, twelve hundred and sixty, twelve hundred and sixty-one, twelve hundred and sixty-two and twelve hundred and sixty-six, shall be forever disqualified from voting at any election, or holding any office of honor, trust or profit under the laws of this state, or of any city, or town thereof, or sitting as a juror in any case. (G. S. 782, § 40, am'd.)

---

## ARTICLE III.

### OFFENSES AGAINST PUBLIC AND PRIVATE PROPERTY.

SECTION
1283. Arson in first degree.
1284. Dwelling house, defined.
1285. Arson in second degree.
1286. Building containing public records.
1287. Arson in third degree.
1288. Burning brewery, etc.
1289. Burning boat or vessel.
1290. Arson in fourth degree.
1291. Punishment for arson.
1292. Burglary in first degree.
1293. Burglary in second degree.
1294. Burglary, second degree, continued.
1295. Burglary, second degree, continued.

SECTION
1296. Burglary, second degree, continued.
1297. Burglary, second degree, continued.
1298. Burglary, second degree, continued.
1299. What breaking not burglary.
1300. Burglary in first and second degrees, how punished.
1301. Burglary and larceny.
1302. Robbery in first degree.
1303. Robbery in second degree.
1304. Robbery in third degree.
1305. Robbery, how punished.
1306. Attempt to blackmail, how punished.
1307. Grand larceny defined.

# MINUTES OF PROCEEDINGS

OF THE

# BOARD OF COMMISSIONERS

OF THE

# CENTRAL PARK,

FOR THE

## YEAR ENDING APRIL 30, 1858.

NEW YORK:
WM. C. BRYANT & CO., PRINTERS, 41 NASSAU ST., COR. LIBERTY.

1858.

Digitized by Google

711
C33m
1857/58

**State of New York:**

I, the subscriber, one of the Commissioners of the Central Park, named in and by an Act of the Legislature of the State of New York, entitled "An Act for the Regulation and Government of the Central Park in the City of New York," passed April 17th, 1857, do solemnly swear that I will support the Constitution of the United States and the Constitution of the State of New York, and that I will faithfully discharge the duties of the office of a Commissioner of the Central Park, according to the best of my ability.

Sworn and subscribed, this 28th day of April, A. D., 1857, before me.

TH. W. CLERKE,
A Justice of the Supreme Court of the State of New York.

ANDW. H. GREEN,
J. F. BUTTERWORTH,
JAMES HOGG,
THOS. C. FIELDS,
CHARLES W. ELLIOTT,
JNO. A. C. GRAY,
WM. K. STRONG,
ROBT. J. DILLON,
J. E. COOLEY.

Sworn and subscribed, this 29th day of April, 1857, before me by Waldo Hutchins. — WALDO HUTCHINS.

TH. W. CLERKE.

Sworn and subscribed this 30th day of April, 1857, before me, by Charles H. Russell. — CHS. H. RUSSELL.

TH. W. CLERKE.

CLERK'S OFFICE,
CITY AND COUNTY OF NEW YORK. } ss.

I certify that the preceding is a true copy of the original thereof, which was this day filed in my office, and of the whole of such original.

[SEAL.]

In testimony whereof, I have hereunto set my hand and affixed my official seal, this 30th day of April, A. D., 1857.

RICHD. B. CONNOLLY,
Clerk.

374188

Digitized by Google

## TUESDAY, MARCH 16, 1858.

REGULAR MEETING—3 P. M.

PRESENT:

| | | | |
|---|---|---|---|
| Commissioner | Gray, | Commissioner | Fields, |
| " | Dillon, | " | Green, |
| " | Russell, | " | Strong, |
| " | Butterworth, | " | Hogg. |
| " | Hutchins, | | |

On motion, the reading of the minutes of the previous meeting was dispensed with.

On motion of Mr. BUTTERWORTH, it was

*Resolved*, That the Annual Report of this Board to the Common Council, dated January 30, 1858, be printed as one of the documents of this Board.

As follows:

*Ayes*—Messrs Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

On motion of Mr. DILLON, the ordinances recommended by the Superintendent were adopted, as follows:

"Be it ordained by the Commissioners of the Central Park:

All persons are forbidden

To enter or leave the Park except by the gateways.

To climb or walk upon the wall.

To turn cattle, horses, goats or swine into the Park.

To carry fire-arms or to throw stones or other missiles within it.

To cut, break, or in any way injure or deface the trees, shrubs, plants, turf, or any of the buildings, fences, bridges, or other constructions upon the Park;

Or to converse with, or in any way hinder those engaged in its construction.

Google

All persons offending against these ordinances shall be deemed guilty of misdemeanor, and be punished, on conviction before the Mayor, Recorder, or any magistrate of the city of New York. by a fine not exceeding fifty dollars; and, in default of payment, by imprisonment not exceeding thirty days."

Visitors may obtain all necessary information and directions from the police.

The business offices and the police station of the Park are on Fifth avenue at Seventy-ninth street."

Mr. Dillon also moved the adoption of the following:

*Ordered*, That the Superintendent cause these ordinances to be posted on the Park, in such number and manner as he may deem advisable.

*Ordered*, That it be published for ten days in the Daily Times, Tribune, Sun, and Staats Zeitung.

Which was carried, as follows:

*Ayes*—Messrs. Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

A communication from the Chief Engineer, submitting a report on " A Comprehensive Plan of Drainage " of the Park, accompanied by a map of the same, was received.

Mr. Dillon moved that the report be printed and referred to the Committee on Draining and Sewerage.

Which was carried, as follows:

*Ayes*—Messrs. Dillon, Butterworth, Gray, Fields, Green, Strong, Hogg—7.

A report from the Chief Engineer, announcing the completion of the sectional and drainage maps of the Park, and the discharge of all persons directly employed by him, was referred to the Executive Committee.

A communication from the same, as to a plan for receiving within the limits of the Park the waste water from the present and new reservoirs, was also referred to the Executive Committee.

A communication from Thomas F. Webb, as to furnishing blasting powder for the Park, was also referred to the same committee.

Digitized by Google

The following communication was received from A. W. Craven, Esq., of the Croton Aqueduct Board, and on motion of Mr. Dillon ordered to be engrossed in the minutes of the Board:

CROTON AQUEDUCT DEPARTMENT,
Engineer's Office, March 2d, 1858.

Gentlemen,—I beg leave to acknowledge the receipt of a note from your Board, through Mr. Hart, dated February 16th, and to apologise for not replying to it more promptly.

The questions asked, and the answers thereto, are as follows:

"1st. What is the height of the Reservoir on the line of Fifth avenue at 41st street, excluding the railing?"

The top of the wall, exclusive of the railing, and also exclusive of the projections at the corners and over the gateway, is 119 feet above mean tide and 39 feet above the curb of Forty-first street. The height of water when the Reservoir is full is four feet below this level, or 115 feet above mean tide.

"2d. Will the top of the wall of the new Reservoir be on a level with the top of that now built in Seventy-ninth street?"

These heights are intended to be precisely the same.

"3d. Could not the height of the wall be reduced in the Reservoir now built and in the new one, and if so, how much, and yet answer all the purposes of the Reservoir?"

The height of water in these Reservoirs could not be reduced without greatly impairing the efficiency of our water distribution throughout the city, and the height of the wall could not be reduced with safety without a corresponding reduction in the high-water level.

I have the honor to be, very respectfully,
Your obedient servant,
A. W. CRAVEN,
Chief Engineer.

To the Commissioners of the Central Park, New York.

The monthly report of the Superintendent was read and ordered on file.

A petition of Norman Ewen, late Surveyor and Engineer of the third division Central Park Survey, to be allowed his pay,

Digitized by Google

at the rate of $1500 per annum, from May 1st to November 13th, 1857, was read and referred to the Auditing Committee.

Mr. FIELDS moved to take up the special order, being the election to fill the vacancy caused by the resignation of Mr. Cooley, in pursuance of the notice given by Mr. Strong, at the meeting of February 16, 1858.

The ayes and nays being called for upon the motion, it was carried, as follows:

*Ayes*—Messrs. Dillon, Russell, Gray, Hutchins, Fields, Green, Strong, Hogg—8.

*Nay*—Mr. Butterworth—1.

Mr. RUSSELL offered the following:

*Resolved*, That it is inexpedient at the present meeting to go into an election, to fill the vacancy in the Board occasioned by the resignation of Mr. Cooley.

Lost.

Mr. FIELDS moved that the Board now go into ballot.

Carried, as follows:

*Ayes*—Messrs. Dillon, Gray, Hutchins, Fields, Green, Strong, Hogg—7.

*Nays*—Messrs. Russell, Butterworth—2.

The Chair appointed as tellers Messrs. Green and Butterworth.

The Board then proceeded to ballot, with the following result:

For August Belmont.................. 7
" George Bancroft..... ............ 1
Blank ........................... 1

On motion of Mr. RUSSELL, the election of Mr. Belmont was declared unanimous.

On motion of Mr. HUTCHINS, the Vice-President was requested to communicate to Mr. Belmont his election to the Board.

Mr. STRONG moved that when the Board adjourn it be to Tuesday next at 1 o'clock.—Carried.

On motion of Mr. RUSSELL, the Clerk was directed to prepare a calendar of unfinished business for the use of the Board, at each stated meeting.

The Board then adjourned.

Digitized by Google

# LAWS

AND

# ORDINANCES

GOVERNING THE

# CITY OF CHICAGO.

[PUBLISHED BY AUTHORITY OF THE COMMON COUNCIL OF THE CITY.]

COMPILED AND ARRANGED BY
MURRAY F. TULEY.
Counsel to the Corporation

CHICAGO.
PUBLISHED BY THE BULLETIN PRINTING COMPANY.
132, 134 & 136 MONROE STREET.
1873.

Digitized by Google

# CHAPTER 31.

## PARKS AND PUBLIC GROUNDS.

SECTION.
1. Names established.
2. What games are prohibited in—Penalty.
3. Duty of board of public works to superintend
4. Ingress and egress regulated.
5. Animals to be excluded.
6. Firearms, etc., prohibited in - Injury to shrubbery.
7. Hindering employes prohibited.
8. Speed in driving regulated.
9. Animals, etc., to keep on drives.
10. Obstruction of ways prohibited.
11. Hacks, etc., not to ply for hire.
12. Peddling in, prohibited.
13. Certain vehicles prohibited.
14. Fortune telling, gaming, indecency, etc., prohibited.
15. Power to close part of parks.

SECTION.
16. When parks to be open.
17. Right to open and close parks.
18. Conduct of visitors regulated.
19. Bathing, fishing, etc. in forbidden.
20. Fireworks prohibited.
21. Perambulators on walks.
22. Posting bills forbidden.
23. Processions, fire apparatus, etc. prohibited when.
24. Funeral processions prohibited.
25. Fires prohibited.
26. To keep off grass, except when.
27. Power of police in.
28. Chapter applies to public squares.
29. Penal clause.
30. Use of grass grown.

**1.** NAMES ESTABLISHED.] *Rev. Ord.* 1866. The several public parks, squares and grounds in the city of Chicago, shall be known and designated by the names applied thereto respectively on the map of the city of Chicago published by Mr. J. Van Vechten in the year 1872.

**2.** GAMES IN PROHIBITED—PENALTY.] No person shall play at ball, cricket, or at any other game or play whatever, in any of the inclosed public parks or grounds in this city, under the penalty of five dollars for every offense.

**3.** BOARD OF PUBLIC WORKS—DUTY OF.] It shall be the duty of the board of public works to superintend all inclosed public grounds and keep the fences thereof in repair, the walks in order and the trees properly trimmed, and improve the same according to plans approved by the common council. They shall likewise cause printed or written copies of the prohibitions of this chapter to be posted in the said grounds or parks.

**4.** WALLS AND FENCES.] *Ord. Jan.* 11, 1869. No person shall enter or leave any of the public parks of the city of Chicago, except by their gateways; no person shall climb or walk upon their walls or fences.

**5.** ANIMALS TO BE EXCLUDED.] Neither cattle, horses, goats, swine or other animals, except as herein provided, shall be turned into any one of the said parks by any person.

**6.** FIREARMS AND MISSILES PROHIBITED—PROTECTION OF SHRUBBERY.] All persons are forbidden to carry firearms or to throw stones or other missiles within any one of the public parks. All persons are forbidden to cut, break or in any way injure or deface the trees, shrubs, plants, turf or any of

Google

the buildings, fences, bridges, or other construction or property, within or upon any of the said parks.

7. HINDERING EMPLOYES.] No person shall converse with, or in any way hinder those engaged in their construction.

8. SPEED OF DRIVING.] No animal shall travel on any part of either of the said parks at a rate exceeding six miles per hour.

9. VEHICLES AND ANIMALS ON DRIVES.] No vehicle, or horse, or other animal shall be permitted on the foot walks, the same being devoted exclusively to pedestrians; nor shall any vehicle, horse or animal of burden go upon any part of either of the parks, except upon the carriage drives and upon such places as are appropriated for carriages at rest.

10. OBSTRUCTION OF WAYS.] No animal or vehicle shall be permitted to stand upon the drives or carriage roads of any of the public parks of the city, or any part thereof, to the obstruction of the way, or to the inconvenience of travel, nor shall any person solicit passengers within either of said parks.

11. HACKS, ETC., NOT TO PLY FOR HIRE.] No hackney coach, carriage, or other vehicle for hire, shall stand upon either of the parks of the city of Chicago for the purpose of taking in any other passengers, or persons, than those carried to the park by said coach, carriage or vehicle.

12. PEDDLING IS NOT ALLOWED.] No person shall expose any article or thing for sale upon any of said parks, except such person shall have been previously licensed by the board of public works, nor shall any hawking or peddling be allowed therein.

13. PROHIBITED VEHICLES.] No omnibus or wagon with or without passengers, nor any cart, dray, wagon, truck or other vehicle carrying goods, merchandise, manure, soil or other article, or solely used for the carriage of goods, merchandise, manure or other articles, shall be allowed to enter any part of either of the said parks. This, however, does not apply to vehicles engaged in the construction of such parks, nor private family wagons.

14. BOISTEROUS LANGUAGE—FORTUNE TELLING—GAMING—INDECENCY.] No threatening, abusive, insulting or indecent language shall be allowed therein whereby a breach of the peace may be occasioned. No person shall be allowed to tell fortunes or play at any game of chance at or with any table or instrument of gaming, nor to do therein any obscene or indecent act.

15. POWER TO CLOSE PART OF PARKS.] In case of any emergency, where life or property is endangered, all persons, if required so to do by the superintendent or any of his assistants, shall remove from the portion of either of said parks specified by the superintendent or his assistants, and remain off the same until permission is given to return.

16. PARKS—WHEN OPEN.] Lincoln park and Union park shall be open daily to the public during the months of December, January and February from seven o'clock in the morning until eleven o'clock in the evening; during the months of March, April, May, October and November from six o'clock in the morning until ten o'clock in the evening, and during the months of June, July, August and September, from five o'clock in the morning until eleven o'clock in the evening.

17. POWER TO OPEN AND CLOSE PARKS.] The superintendent may, for

Google

cause, direct that any of the entrances to either of the said parks be closed at any time, and may, on special occasions, also direct that any of the said parks or any portion thereof, remain open at other times than those above specified.

**18.** DUTY OF VISITORS.] No person other than employes in the park shall enter or remain in it except when it is open as above specified. No person other than employes shall bring upon any of the public parks any tree, shrub or plant, nor any newly plucked branch or portion of a tree, shrub or plant.

**19.** BATHING, FISHING, ETC.] No person shall bathe or fish in, or go, or send, or ride any animal in any of the waters of either of the said public parks, or waters of Lake Michigan in front of any of said parks, nor disturb any of the fish, water fowl or other birds in any of said parks, or any deer, sheep or other animal belonging to and preserved therein, nor throw, or place any article or thing in the waters within either of said parks.

**20.** FIREWORKS PROHIBITED.] No person shall fire, discharge or set off in any of said public parks any rocket, cracker, torpedo, squib, balloon, snake, chaser or double-header, nor any fireworks or thing under any other name, composed of the same or similar material, or of the same or similar character as the fireworks above specified.

**21.** PERAMBULATORS.] No person shall place or propel any invalid's chairs or perambulators upon any portion of said parks except upon the walks.

**22.** POSTING BILLS.] No person shall post or otherwise affix any bills, notice or other paper, upon any structure or thing within either of said parks, nor upon any of the gates or inclosures thereof.

**23.** MUSIC—FLAGS, ETC.—PROCESSIONS—FIRE APPARATUS.] No person shall, without the consent of the board of public works, play upon any musical instrument, nor shall any person take into, or carry or display in the said public parks, any flag, banner, target or transparency. No military or target company, civic or other, shall be permitted to parade, drill or perform therein any military or other evolutions or movements. No fire engine. hook and ladder truck, hose cart or other machine on wheels commonly used for the extinguishing of fires, shall be allowed on any part of said parks, without the previous consent of the board of public works.

**24.** FUNERAL PROCESSIONS PROHIBITED.] No funeral procession or hearse or other vehicle carrying the body of a deceased person shall be allowed upon any part of a public park.

**25.** FIRES PROHIBITED.] No person other than employes shall light, make or use any fire thereon.

**26.** TO KEEP OFF GRASS.] No person on foot shall go upon the grass, lawn or turf of the parks, except when and where the word "common" is posted, by order of the board of public works, indicating that persons are at liberty at that time and place to go on the grass.

**27.** POLICE, POWER OF.] *Rev. Ord.* 1866. Any member of the city police shall have power to arrest any person who shall not desist from any violation hereof, when directed, and cause him to be committed for examination.

Google

**28.** APPLICATION TO SQUARES.] *Ord. Jan.* 11, 1869. The foregoing sections of this chapter, so far as applicable, shall apply to all the public squares of the city of Chicago.

**29.** PENALTY.] Any person who shall violate any or either of the provisions of this chapter, or any section, or clause, or any provision of any section thereof, or who shall neglect, or fail, or refuse to comply with any, or either of the requirements thereof, shall, on conviction, pay a fine of not less than five dollars, nor more than one hundred dollars.

**30.** USE OF GRASS.] *Rev. Ord.* 1866. The fire marshal may cause any grass fit for hay, growing or grown upon any of the public parks or grounds, to be cut and cured, under the direction of the board of public works and appropriated for the use of the teams used by the fire department.

# CHAPTER 32.

## PAWNBROKERS.

SECTION.
1. To be licensed—Penalty.
2. Definition of the word pawnbroker.
3. How license obtained—Fee—Bond.
4. When license to expire.

SECTION.
5. Registration of licenses.
6. Pawnbroker's record—Penalty for not keeping.
7. Inspection of record—Penalty for refusing.
8. Dealing with minors prohibited—Penalty.

**1.** TO BE LICENSED—PENALTY.] *Rev. Ord.* 1866. No person or persons shall carry on or conduct the business or calling of a pawnbroker, within the city of Chicago, without having first obtained a license so to do, under a penalty of not less than twenty dollars nor more than one hundred dollars for each offense.

**2.** PAWNBROKER DEFINED.] Any person who loans money on deposit, or pledge of personal property, bonds, notes or other securities, or who deals in the purchasing of personal property or choses in action, on condition of selling the same back again at a stipulated price, is hereby defined and declared to be a pawnbroker.

**3.** LICENSE—HOW OBTAINED—FEE—BOND.] The mayor is hereby authorized to grant a pawnbroker's license to any person of good character who may apply therefor, on the following conditions: The person so applying shall first pay to the collector a sum of money in proportion to the sum of one hundred dollars per annum for the time such license shall be granted, and shall execute a bond to the city of Chicago in the sum of five hundred dollars conditioned that the said applicant will in every particular conform to the requirements of this chapter, and with the requirements or provisions of any ordinance hereafter to be passed concerning pawnbrokers, and thereupon the clerk shall issue a license in due form, under the corporate seal,

Google

City of Boston.

DEPARTMENT OF PARKS.

---

# TWELFTH ANNUAL REPORT

OF THE

# BOARD OF COMMISSIONERS

FOR THE

# YEAR 1886.

PRINTED FOR THE DEPARTMENT.
1887.

Digitized by Google

## PARK ORDINANCES.

In Board of Park Commissioners, Aug. 20, 1886.

*Voted*, That the following rules, under the title of Ordinances, be adopted for the use and government of the Public Parks. *Provided*, *however*, that said rules shall not invalidate any pending prosecution or procedure, or any liability of any person for breach of any previous rule.

The Board of Park Commissioners of the City of Boston, by virtue of its authority to make rules for the use and government of the Public Parks of said city, and for breaches of such rules to affix penalties, hereby ordains that within the Public Parks, except with the prior consent of the Board, it is forbidden: —

1. To cut, break, injure, deface, defile or ill use any building, fence, or other construction, or any tree, bush, plant or turf, or any other thing or property.

2. To have possession of any freshly-plucked tree, bush or plant, or portion thereof.

3. To throw stones or other missiles; to discharge or carry fire-arms, except by members of the Police Force in the discharge of their duties; to discharge or carry fire-crackers, torpedoes, or fire-works; to make fires; to play musical instruments; to have any intoxicating beverages; to sell, offer or expose for sale, any goods or wares; to post or display signs, placards, flags, or advertising devices; to solicit subscriptions or contributions; to play games of chance, or have possession of instruments of gambling; to make orations, harangues or loud outcries; to enter into political canvassing of any kind; to utter profane, threatening, abusive, or indecent language, or to do any obscene or indecent act; to bathe or fish; to solicit the acquaintance of, or follow, or otherwise annoy other visitors.

4. To allow cattle, horses, or other animals, to pass over or stray upon the Park lands; provided that this shall not apply to

Digitized by Google

those used for pleasure travel when on the ways or places provided and open for the purpose, or to dogs when closely led by a cord or chain not more than six feet long.

5. To drive any wagon, cart, dray, truck or other vehicle for carrying merchandise or other articles, or any hearse or funeral procession.

6. To move in military or civic parades, drills or processions.

7. To play ball or other games or sports, except on grounds provided therefor.

8. To engage in conversation with men at work, or to obstruct, hinder, or embarrass their movements.

9. To refuse to obey the orders or requests of either of the Commissioners, or of the Park Police, or other agents of the Commissioners, and to refuse to assist them when required.

Any person wilfully doing either of the things above forbidden shall be punished by fine not exceeding twenty dollars.

*Voted*, That compliance with the foregoing regulations is a condition of the use of these premises.

*Voted*, That notices in the following form be posted on the Public Parks in addition to the foregoing ordinances and vote.

Pending operations for forming a Public Park on this property, it is open to be used by all persons, in an orderly way, but with due regard to the Ordinances and Regulations hereinafter recited.

All persons entering upon the Park property are hereby warned to avoid newly prepared ground and localities where works are in progress, and to promptly regard all warnings and directions of officers or other agents of the Commissioners.

Digitized by Google