Case No. 23-55431

In the United States Court of Appeals
for the Ninth Circuit

_____

B & L Productions, Inc., et al.,
*Plaintiffs-Appellants,*

v.

Gavin Newsom,
in his official capacity as Governor of the State of California and in his personal
capacity, et al.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:21-cv-01718-AJB-DDL
Honorable Anthony J. Battaglia

_____

**APPELLANTS' REPLY BRIEF**

_____

C.D. Michel
Anna M. Barvir
Tiffany D. Cheuvront
Michel & Associates, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

December 1, 2023

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................. i

Table of Authorities .............................................................................. ii

Introduction ......................................................................................... 1

Argument ............................................................................................. 2

I. The District Court's Rule 12 Dismissal of Appellants' Well-pled Second Amendment Claim Is Reversible Error ................................. 2

    A. The District Court Improperly Relied on *Texeira* to Short-circuit the Text-and-History Based Analysis Required Under *Bruen* .......................... 2

    B. Dismissing the Second Amendment Claim Was Wrong Because It Likely Raises a Factual Dispute ................................................................. 7

II. The District Court's Rule 12 Dismissal of Appellants' First Amendment Claims Was Plain Error ................................................. 10

    A. AB 893 Restricts Protected Speech ........................................... 11

    B. The District Court's Dismissal of Appellants' First Amendment Claims Conflicts With the Decisions of Its Sister Districts and This Circuit ..... 16

    C. AB 893 Cannot Survive Any Form of Heightened Scrutiny; It Fails Even the *Central Hudson* Test for Restrictions on Commercial Speech .......... 19

III. If the Court Finds That AB 893 Restricts Protected Speech, It Should Reverse the Dismissal of Appellants' Equal Protection Claim ......................................... 23

Conclusion ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aaron v. Cooper*,
   358 U.S. 1 (1958) ........................................................................... 17

*Anderson v. Bessemer City*,
   470 U.S. 564 (1985) ......................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 9

*B&L Prods., Inc. v. Newsom*,
   No. 8:22-cv-01518, 2023 WL 7132054 (C.D. Cal. Oct. 30, 2023) ....................passim

*B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n* ("*B&L 2019*"),
   394 F. Supp. 3d 1226 (S.D. Cal. 2019) ................................................ 17, 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 9

*Boland v. Bonta*,
   No. 22-01421, 2023 WL 2588565 (C.D. Cal. Mar. 20, 2023) ....................................... 3

*Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n*,
   447 U.S. 557 (1980) ....................................................................passim

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................. 21

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................3, 4, 17, 18

*Doe v. United States*,
   419 F.3d 1058 (9th Cir. 2005) ............................................................. 7

*Friedman v. City of Highland Park, Illinois*,
   784 F.3d 406 (7th Cir. 2015) ............................................................. 20

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ................................................................... 23

*Hibbs v. Winn,*
    542 U.S. 88 (2004) ..................................................................... 14

*Jackson v. City & Cnty. of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) ....................................................... 3

*Jr. Sports Magazines, Inc. v. Bonta,*
    80 F.4th 1109 (9th Cir. 2023) ............................................... 18, 19

*Maine v. Taylor,*
    477 U.S. 131 (1986) ..................................................................... 9

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) .............................................................. 17, 18

*New York State Rifle & Pistol Ass'n v. Bruen,*
    __ U.S. __, 142 S. Ct. 2111 (2022) ..................................... passim

*Nordyke v. King,*
    681 F.3d 1041 (9th Cir. 2012) .............................................. 17, 18

*Nordyke v. Santa Clara Cnty.* ("*Nordyke 1997*"),
    110 F.3d 707 (9th Cir. 1997) .............................................. passim

*Nordyke v. Santa Clara Cnty.,*
    933 F. Supp. 903 (N.D. Cal. 1996) ............................................. 18

*Norfolk & W. R. Co. v. Sims,*
    191 U.S. 441 (1903) ................................................................... 12

*OSU Student All. v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) .................................................... 23

*People v. Haney,*
    100 Cal. App. 295 (1929) ........................................................... 12

*Pullman-Standard v. Swint,*
    456 U.S. 273 (1982) ..................................................................... 9

*Renna v. Bonta*,
No. 20-2190, 2023 WL 2846937 (S.D. Cal. April 3, 2023) ........................................ 3

*Silvester v. Becerra*,
138 S. Ct. 945 (2018) ................................................................................ 9

*Teixeira v. Cnty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) ................................................................ 3, 4, 6, 7

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ................................................................ 4

*W. F. Boardman Co. v. Petch*,
186 Cal. 476 (1921) ................................................................................ 12

**Statutes**

Assembly Bill 893 ................................................................................ passim

Cal. Penal Code § 26805 ................................................................ 13, 23

Cal. Penal Code § 26815 ................................................................ 13

Cal. Penal Code § 27310 ................................................................ 13

Cal. Penal Code § 27540 ................................................................ 13

Cal. Penal Code § 27545 ................................................................ 13

**Rules**

Fed. R. Civ. Proc. 12 ................................................................ 7, 8, 21, 24

**Other Authorities**

David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*,
127 Harv. L. Rev. F. 230 (2014) ........................................................ 4

U.S. Const., Amend. I ................................................................ passim

U.S. Const., Amend. II ................................................................ 7, 8, 10

Yogi Berra, *The Yogi Book* 45 (2010 ed.)............................................................................ 11

# INTRODUCTION

As Appellants have shown, the district court evaded its duty to fully analyze whether AB 893 comports with the text and history of the Second Amendment as it was required to do under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022). Instead, the court casually dismissed Appellants' claims offhand because they had not alleged the total destruction of their right to acquire arms. As for the court's treatment of Appellants' First Amendment claims, and even setting aside (but not waiving) their pure speech claims, the district court failed to fully apply the commercial speech doctrine to Appellants' claims as required by *Central Hudson Gas & Electric Commission v. Public Services Commission*, 447 U.S. 557 (1980). Both are plain errors that call for summary reversal.

Appellant's equal protection claims are, at a minimum, cross-relevant to their First Amendment claims on a theory of animus. The differential treatment by state actors on a matter of fundamental rights is actionable under the Equal Protection clause. Because unequal treatment is a question of fact, and because this claim was dismissed on a Rule 12 motion, the trial court committed reversible error.

Aside from introducing argument and evidence that was not considered by the district court below and improperly injecting factual disputes into this appeal of Rule 12 dismissal of Appellants' claims, the State's responsive brief does little to rebut

## ARGUMENT

### I. THE DISTRICT COURT'S RULE 12 DISMISSAL OF APPELLANTS' WELL-PLED SECOND AMENDMENT CLAIM IS REVERSIBLE ERROR

#### A. The District Court Improperly Relied on *Texeira* to Short-circuit the Text-and-History Based Analysis Required Under *Bruen*

As Appellants' Opening Brief explains, under the Supreme Court's recent decision in *Bruen*, it is no longer appropriate for courts to subject Second Amendment claims to multi-step, interest-balancing tests, like intermediate scrutiny. A.O.B.16 (citing *Bruen*, 142 S. Ct. at 2117-18). Of course, the right to keep and bear arms must be implicated. *Bruen*, 142 S. Ct. at 2129. But, in most cases, this requires no in-depth analysis. The "plain text" of the Amendment controls. If the restricted conduct is covered by the Second Amendment's "plain text," the conduct is presumptively protected, *id.* at 2126, 2129-30, and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127.

It can hardly be disputed that the conduct Appellants seek to engage in at gun shows, including sales, is within the Second Amendment's "plain text." A.O.B.17-21. The operative complaint alleges that Appellants, as gun show attendees, vendors, and promoters, seek to engage in otherwise lawful activities related to commerce in firearms, ammunition, and firearm parts. 2-ER-135-41. "Because the Second Amendment protects the individual's right to keep and bear arms in self-defense, it also must protect the attendant rights of gun ownership that make keeping and bearing arms meaningful." *B&L Prods., Inc. v. Newsom*, No. 8:22-cv-01518, 2023 WL

7132054 *13 (C.D. Cal. Oct. 30, 2023).[1] This includes the right to acquire lawful firearms and ammunition, as this circuit's precedents have established. *See, e.g.*, *Teixeira*, 873 F.3d at 677-78 (discussing authorities acknowledging the right to acquire arms); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014) (hollow-point ammunition). At a minimum, California's gun show ban *implicates* the right of acquisition.

The district court failed to hold the State to its burden under *Bruen* and refused to perform the required historical analysis, holding instead that Appellants' Second Amendment claim necessarily fails because they did not allege that AB 893 "amount[s] to a prohibition of" the right to acquire guns or ammunition. 1-ER-11. The State, arguing that this Court's en banc decision in *Teixeira* is still good law because its analysis was rooted in text, history, and tradition, argues that the district court got this right. Appellees' Br. ("A.B") 16-17 (discussing *Teixeira v. County of Alameda*, 873 F.3d 670). The State is wrong.

First, *Teixeira*'s textual and history analysis was limited to its analysis of whether there is an independent right to *sell* firearms, not to whether there is a right to *acquire*

---

[1] Citing *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 697 (9th Cir. 2014) (extending Second Amendment to the ammunition purchases because "without bullets, the right to bear arms would be meaningless"); *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms.") (citing *Heller*, 554 U.S. at 617-18); *Boland v. Bonta*, No. 22-01421, 2023 WL 2588565, at *4 (C.D. Cal. Mar. 20, 2023) (preliminary enjoining a California law preventing the "purchase [of] state-of-the-art handguns for self-defense" on Second Amendment grounds); *Renna v. Bonta*, No. 20-2190, 2023 WL 2846937 (S.D. Cal. April 3, 2023) (similar).

them. 873 F.3d at 682-90.[2] The Court summarily rejected Teixeira's attempt to assert a "right to acquire arms on behalf of his potential customers," not because there was no textual or historical basis for claiming such a right exists, but because he had not shown that his customers' ability to acquire arms in the county had been completely snuffed out. *Id.* at 678-81. But tests requiring plaintiffs to prove that a challenged law imposes some arbitrarily severe burden or "meaningful" restriction, *Teixeira*, 873 F.3d at 680, on their Second Amendment rights have no place in a post-*Bruen* landscape— if they were *ever* appropriate. Insisting on such a showing deceptively smuggles burden and interest balancing into the analysis in direct conflict with *Bruen*'s (and *Heller*'s) clear commands. *See Bruen*, 142 S. Ct. at 2129-30 (discussing *Heller*, 554 U.S. at 634). The district court's rejection of *Bruen*'s text-and-history analysis in favor of *Teixeira*'s abrogated "meaningful[] restrict[ion]" test is reversible error.

What's more, in *Teixeira*, this Court held that "gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained." 873 F.3d at 680. *Bruen*'s "plain text" analysis does not support

---

[2] To the extent that *Teixeira* relied on "history and tradition" to hold that there is no right to sell arms, it was simply wrong. "The right to commerce in firearms was one of the rights at issue during the American Revolution, and it is a right guaranteed by the Second Amendment…." David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*, 127 Harv. L. Rev. F. 230, 234-35 (2014). That is not to say that no regulation on such conduct can survive judicial scrutiny. To be sure, *Heller* acknowledged the presumptive validity of at least some "laws imposing conditions and qualifications on the commercial sale of firearms." 554 U.S. at 626-27. But, "to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition." *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). If the sale of firearms fell outside the scope of the Second Amendment, "it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*." *Id.*

4

construing the right so narrowly. But even if it did, *Teixeira*'s straw-man description of a gun buyer's purported "right to have a gun store in a particular location" conflates the restricted conduct with the restriction itself. This is a critical error. The *restricted conduct* is not the sale and purchase of firearms at a gun store (or gun show) in a preferred place, but the sale and purchase of firearms, full stop. The *restriction* is a ban on that conduct in certain places. Because the "plain text" protects the individual right to acquire firearms, ammunition, and firearm parts, the government must prove that its "place" restriction is "consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. 2126. If it can, the restriction would be constitutional— not because there is no "right to have a gun store in a particular location," but because the government had some historical justification for restrictions on sales in certain spaces.

Finally, even if one accepts that Teixeira were correct when it was decided and is still good law after *Bruen*, it is not helpful to the resolution of Appellants' Second Amendment claims, as the Central District of California recently observed in the nearly identical *B&L Orange County* case. *See B&L Orange Cnty.*, 2023 WL 7132054, *14-15. The *Teixeira* en banc panel dismissed the plaintiffs' Second Amendment claim because they had not alleged that the restriction prevented them from acquiring firearms anywhere in the county. 873 F.3d at 678. "The Ninth Circuit reached that conclusion because there were several other gun stores within the county at which residents could purchase firearms and ammunition, including one gun store that was '600 feet away from the proposed site of Teixeira's planned store.'" *B&L Orange Cnty.*, 2023 WL 7132054, *14 (quoting *Teixeira*, 873 F.3d at 679).

But here, as in *B&L Orange County*, Appellants allege several facts that distinguish this case from *Teixeira*. *See* 2-ER-135, 156-59; *see also B&L Orange Cnty.*, 2023 WL 7132054, *14-15. For instance, they allege that gun shows are different from gun stores because they are "cultural marketplaces," 2-ER-157, where participants "exchange … products and ideas, knowledge, services, education, entertainment, and recreation," 2-ER-156-57. In short, a gun show is a "celebration of America's 'gun culture' that is a natural and essential outgrowth of the constitutional rights that flow from the Second Amendment." 2-ER-156. Participating in that culture, not *just* exchanging guns for money, "is an important reason people attend B&L gun shows." 2-ER-158. Appellants also allege that they and many others attend gun shows "to exchange knowledge with experienced dealers and firearm enthusiasts that they *cannot get anywhere else.*" 2-ER-158 (emphasis added).

And, Appellants claim, that "[b]ecause of its large size and unique urban location, the Fairgrounds is a unique, publicly owned venue. There is no other public or private venue of similar size in the area." 2-ER-159. Similarly:

> Because California prohibits the building of similar venues within their districts as a way to prevent competition for available space, there are no venues in the area that offer comparable space and parking needed for gun show events. Plaintiff Crossroads has thus been unable to find a suitable alternate location to the Fairgrounds.

2-ER-175.

Taking these factual allegations as true—as the Court must on a motion to dismiss—it is clear that *Teixeira* is not on point. Indeed, to paraphrase *B&L Orange County*, "the instant action is distinct because there is no alternative gun show in [the district], let alone within '600 feet' of the [Del Mar] Fairgrounds." 2023 WL 7132054,

6

*15 (citing *Teixeira*, 873 F.3d at 679). The existence of brick-and-mortar gun stores within San Diego county makes no difference because California "fail[s] to identify how the general experience of [Appellants'] gun shows can be replicated by alternative forums in the area." *Id.* at *14 (footnote omitted).

Because Appellants have alleged that AB 893 restricts conduct protected by the "plain text" of the Second Amendment, *Bruen* demands that California prove that the ban is part of the history and tradition of firearm regulation in this country dating back to the Founding. As explained below, and admitted by the government, A.B.29, n.9, this raises a factual question that the district court cannot decide on a motion to dismiss. Nor can this Court decide the issue, in the first instance, on appeal. *See* A.B.29, n.9.

### B. Dismissing the Second Amendment Claim Was Wrong Because It Likely Raises a Factual Dispute

Motions to dismiss under Federal Rule of Civil Procedure 12 test the legal sufficiency of the plaintiffs' claims; they are *not* the appropriate avenue for resolving factual controversies. That is because, on a motion to dismiss, courts must construe the complaint "in the light most favorable to the plaintiffs, taking all allegations as true, and drawing all reasonable inferences from the complaint in [their] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In short, a defendant cannot prevail on a Rule 12(b)(6) motion to dismiss by raising a factual dispute with the well-plead allegations of the operative complaint.

Yet California tacitly admits that Appellants' Second Amendment claim might raise a factual controversy over whether its gun show ban is part of this country's

history and tradition. A.B.29, n.9. The district court could have ordered the parties to file supplemental briefs on the issue, as the court in *B&L Orange County* did, or it could have simply denied the motion because it called for the court to resolve a factual dispute. Instead, it waived the hearing and dismissed the Second Amendment claim without even considering the historical record. 1-ER-9-11; 4-ER-890. Now, California presents evidence that was not part of the record below and essentially asks this Court to step into the trial court's role and decide the factual dispute in its favor. A.B.29-39. This Court should reject the invitation.

As explained above and in Appellants' Opening Brief, whether there is a Second Amendment right to acquire firearms, and whether there were relevant historical laws that banned the sale of firearms on public property are not even close calls. The *B&L Orange County* court answered those questions without difficulty and issued a preliminary injunction halting enforcement of a nearly identical ban. 2023 WL 7132054, at *13-17, 19.[3] That another judge arrived at a different conclusion during pretrial litigation drives the point home: Rule 12 is not an appropriate vehicle for substantive resolution of this controversy, where there are good faith differences of opinion over both the facts and the law.

The issue here is not which judge is ultimately correct; both cases will no doubt pass through this Court at some point. This appeal is more pedestrian than that. It

---

[3] The district court knew about the proceedings in the Central District. Before the court issued its final order of dismissal, Appellants filed two notices that the trial judge in *B&L Orange County* had called for supplemental briefing on the *Bruen* analysis, ordering the State to submit evidence of relevant historical laws, and ordering Appellants file a rebuttal in accordance with the shifting burden protocol outlined in *Bruen*. 2-ER-42-57.

boils down to whether the district court can dismiss constitutional claims under Rule 12 where even the government defendant proffers plausible (*Twombly/Iqbal*) evidence of a potential factual controversy (or, at least, a mixed question of fact and law). Such questions are best resolved in a motion for preliminary injunction, motion for summary judgment, or at trial. And it is the trial court, not the appellate court, that has the duty to first conduct the historical analysis required by *Bruen*.

Indeed, as Justice Thomas, criticizing the Ninth Circuit's departure from ordinary principles of appellate review when it rejected a district court's findings of "historical" facts, explained: "[T]he Federal Rules do not 'exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous.'" *Silvester v. Becerra*, 138 S. Ct. 945, 950 (2018) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982) (Thomas, J., dissenting from denial of certiorari). He continued:

> A court of appeals must defer to a district court's factual findings, even when the findings "do not rest on credibility determinations but are based instead on physical or documentary evidence." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). … And "no broader review is authorized here simply because this is a constitutional case, or because the factual findings at issue may determine the outcome of the case." *Maine v. Taylor*, 477 U.S. 131, 145 (1986).

*Id.*

In in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007), the Supreme Court retired the "no-set-of-facts" test in favor of a "plausibility" test. *See Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009). But the gap between California's admission that there

is plausible evidence by proffering their own set of facts on appeal,[4] and the "no-set-of-facts" test that was apparently employed by the district court, is reason enough for reversal.

By short-circuiting its analysis of Appellants' Second Amendment claim, the district court plainly erred. The dismissal can—and should—be reversed in a memorandum decision without the time and expense of oral argument. California acknowledges that the district court denied it the "opportunity to compile the relevant historical record to supplement the historical evidence." A.B.29, n.9. This implicit concession by the State that the district court sidestepped the *Bruen* analysis in resolving Appellants' Second Amendment claim is grounds for summary reversal.

## II.  THE DISTRICT COURT'S RULE 12 DISMISSAL OF APPELLANTS' FIRST AMENDMENT CLAIMS WAS PLAIN ERROR

In its first order dismissing this case, the district court disposed of Appellants' First Amendment claims in just three paragraphs. 1-ER-26-27. In its final order dismissing the First Amended Complaint, the district court's First Amendment analysis spanned just five paragraphs. 1-ER-7-8. In both orders, the district court summarily waives away Appellants' speech claims by citing cherry-picked dicta from *Nordyke v. Santa Clara Cnty.* ("*Nordyke 1997*"), 110 F.3d 707, 710 (9th Cir. 1997), that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." 1-ER-8, 27. But the *Nordyke 1997* Court was merely observing that the

---

[4] Appellants would not presume to offer "evidence" on appeal without an order from this Court. Appellants did, however, submit an analysis of historically relevant laws in *B&L Orange County*, which was considered by the Central District in issuing the preliminary injunction in that case. *See B&L Orange Cnty.*, 2023 WL 7132054, *15-17; *see also* Appellants' Mot. Req. Jud. Ntc., Ex. A.

conduct of physically exchanging a gun for money alone is not necessarily protected speech. And we know this was dicta because the Court actually held that Santa Clara County's ban on the "sale" of firearms at a public fairground was unconstitutionally overbroad because it restricted commercial speech associated with the sale of lawful products. *Nordyke 1997*, 110 F.3d at 713.

This is precisely what AB 893 does today. It bans the sale of lawful firearms, ammunition, and firearm parts at the Fairgrounds, during otherwise lawful gun shows, where there is not even a simultaneous exchange of guns for money. In the immortal words of Yogi Berra, "It's déjà vu all over again." Yogi Berra, *The Yogi Book* 45 (2010 ed.). Indeed, so close is this case to the facts and law adjudicated in *Nordyke 1997*, that the legislature could justifiably be accused of vexatious and frivolous legislation. It is thus astonishing that the district court could so effortlessly reject Appellants' First Amendment claims.

Indeed, as Appellants' Opening Brief explains, AB 893 directly restricts protected speech related to lawful commerce in arms, but also indirectly restricts all manner of educational, political, and ideological expression that takes place at gun shows by effectively banning such events. A.O.B.23-27. The district court's summary rejection of Appellants' well-plead speech claims, without even undertaking a serious analysis of AB 893's restriction on commercial speech under *Central Hudson*, is an extreme outlier among the decisions of this Circuit and other district courts.

## A.     AB 893 Restricts Protected Speech

The district court rejected Appellants' First Amendment claims because "the act of exchanging money for a gun" is not protected speech. 1-ER-8 (quoting *Nordyke*

*1997*, 110 F.3d at 710). Relying on that dicta, the district court's First Amendment analysis trips at the starting line because it fails to identify the gravamen of Appellants' claim and artificially narrows (and unfairly minimalizes the importance of) the conduct AB 893 restricts. Based on several concessions and contradictions made in the State's brief, it is clear that the State has fallen into the same trap (or perhaps it set that trap). Appellants must thus clarify how AB 893 operates to both directly and indirectly restrict all manner of protected speech.

Recall, AB 893 bars any "officer, employee, operator, lessee, or licensee of the 22nd District Agricultural Association" from "contract[ing] for, authoriz[ing], or allow[ing] the *sale* of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds." 2-ER-252 (emphasis added). The law does not define what constitutes a "sale" for purposes of the law. *See* 2-ER-251-53. And the bill's legislative history provides little guidance about what precise conduct is forbidden—except to candidly state that the purpose of AB 893 is to "terminate the possibility for future gun shows at the Del Mar Fairgrounds," 2-ER-173, 258. But case law is enlightening.

In *People v. Haney*, 100 Cal. App. 295 (1929), the California Court of Appeal upheld a defendant's conviction for selling intoxicating liquor to minors. On appeal, the court had to resolve whether a "sale" included "delivery" of the liquor. The court observed that "[t]he word 'sale' is not of 'fixed and invariable meaning.' *W. F. Boardman Co. v. Petch*, 186 Cal. 476, 482. It is sometimes so used as to include delivery. *Norfolk & W. R. Co. v. Sims*, 191 U.S. 441 (1903). In common parlance, a retail sale of

intoxicating liquor includes the delivery thereof to the buyer." *Id.* at 297-98. The

Supreme Court case quoted in *Haney* provides greater context:

> A sale really consists of two separate and distinct elements: first, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price, as may have been agreed upon between the parties. **The substance of the sale is the agreement to sell and its acceptance.** That possession shall be retained until payment of the price may or may not have been a part of the original bargain, but in substance it is a mere method of collection, and we have never understood that a license could be imposed upon this transaction, except in connection with the prior agreement to sell, ***although in certain cases arising under the police power it has been held that the sale is not complete until delivery, and sometimes not until payment.***

*Norfolk & W. R. Co. v. Sims*, 191 U.S. 441, 447 (double emphasis added).

Using its police power, California bifurcates the "sale" of firearms. It is

impossible to simultaneously exchange money for a firearm without a 10-day waiting

period and a background check. 2-ER-154; Cal. Penal Code §§ 26815, 27540. This is

true no matter where the transaction is initiated, and it applies to sales between private

individuals, as well as to retail sales by licensed dealers. In short, there is no "gun

show loophole" in California. Even before the adoption of AB 893, it was illegal to

simultaneously exchange a gun for money at *any* gun show in the state. Cal. Penal

Code § 27310 (requiring all firearm transfers at gun shows to comply with state and

federal law); *id.* § 26805 (prohibiting the sale and transfer of a firearm by a licensed

dealer at any location except the dealer's licensed premises but allowing dealer to

prepare documents at a gun show); *id.* § 27545 (requiring all transactions—even

private party transactions—to be processed through a licensed dealer). Appellants do not challenge these laws.

And California has not contradicted these well-plead facts. Nor did the district court take them into account. Yet both keep repeating the mantra that "AB 893 covers no more than the simple exchange of money for a gun or ammunition." A.B.2; 1-ER-8, 1-ER-27. California concedes that "'AB 893 does not prohibit offers for sale,' and '[a]t most,' 'restricts the exchanging of money for guns or ammunition.'" A.B.2, 12 (quoting 1-ER-8). The State even claims that "gun shows" without gun sales do not violate AB 893. A.B.1, 7.[5]

But if the law does not bar *offers* for sale, A.B.2, 12, and it is already illegal to complete an "exchange of money for a gun" at a gun show, what exactly does AB 893 restrict? The law must do something, of course, or else it is mere surplusage. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). Nor would it have had the effect of "terminat[ing] the possibility for future gun shows" that the legislators intended. 2-ER-173, 258 (Senate Committee on Public Safety analysis explaining the effect of AB 893). Is California really just banning acceptance and consideration, the remaining elements of a contract for sale? If so, the

---

[5] Appellants do not concede that "gun shows without gun sales" are gun shows at all. The gun show business model relies on vendors paying for space to sell firearms, ammunition, and firearm parts. 2-ER-158. Indeed, "[t]he sale of firearms and ammunition is an essential function of gun shows, and it is one of the main reasons people attend these events; if gun shows are not economically viable because they have been stripped of an essential function, they will cease to exist." 2-ER-172-73.

State has made the same mistake Santa Clara County did in *Nordyke 1997*—banning the commercial speech associated with the sale of an otherwise lawful product.

But the law "does not merely regulate the sale of firearms; [it] also prohibit[s] state officers, employees, operators, lessees, or licensees from '*contract[ing] for, authoriz[ing], or allow[ing]*' sale of firearms at the" Fairgrounds." *B&L Orange Cnty.*, 2023 WL 7132054, *8 (emphasis added). As the Central District recently held, "[t]he common thread behind these three words is that they require actions beyond 'the act of exchanging money for a gun,' [citation], and implicate commercial speech when they prohibit the sale of all firearm-related goods on state property." *Id.* (quoting *Nordyke 1997*, 110 F.3d at 710).

Finally, Appellants contend that something even more sinister is afoot. Under AB 893 not only are those who lease the Fairgrounds for their events criminally liable for sales of firearms, ammunition, or firearm parts, so too are District employees who "contract for, authorize, or allow" events where firearms are sold.[6] The threat of criminal penalties applies significant pressure to these state employees, discouraging them from taking any action that might result in a prohibited "sale" at the Fairgrounds. Likely because the law fails to define what constitutes a forbidden "sale," *see supra*, Part II.A, and because the publicly stated intent of the law was to ban gun shows, 2-ER-172-74, District employees have not contracted with Crossroads to host a gun show since the law took effect, 2-ER-174-75. AB 893 has thus had the same effect as the DAA's unconstitutional gun show moratorium: "By permanently

---

[6] "By default, any violation of any provision of the Food and Agricultural code is a misdemeanor, unless otherwise specified" in California. 2-ER-258 (Assembly Committee on Public Safety bill analysis of AB 893).

banning the commercial sale of firearms and ammunition at the Fairgrounds, it has the effect of banning gun shows at the Fairgrounds *and all the educational, ideological, and commercial speech that takes place at such events*." 2-ER-173.

In short, the district court's superficially reasoned dismissal of Appellants' First Amendment claims because "the act of exchanging money for a gun is not 'speech'" ignores the many ways that AB 893 both directly and indirectly restricts protected speech. And it belittles the vital liberties at stake in this case. This Court should reverse.

## B. The District Court's Dismissal of Appellants' First Amendment Claims Conflicts With the Decisions of Its Sister Districts and This Circuit

AB 893's restriction on lawful commercial (and non-commercial) speech about constitutionally protected firearms, ammunition, and firearm parts is just one of the latest attempts in a long history of unconstitutional government actions to banish gun shows from California. Indeed, as explained in Appellants' Opening Brief, we've been here before. A.O.B.13-15. The district court's treatment of this particular restriction, however, is unprecedented. It is at odds with the decisions of this Court and at least three other district court orders.

Recall, Santa Clara County tried to ban gun shows at its fairgrounds in 1995, when it banned the *sale* of firearms at that facility through a lease provision. The Ninth Circuit held that the county's ban on firearm sales at the public fairground was overbroad because it abridged commercial speech associated with the sale of lawful products. *Nordyke 1997*, 110 F.3d at 713. In 1999, Alameda County tried banning the *possession* of guns at gun shows. But after defending its possession ban in court for

more than a decade, the county reversed course and reinterpreted its law to allow the possession of secured guns as commercial products at gun shows. *Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012).

Around this time, the Supreme Court issued its first authoritative treatment of the Second Amendment as a fundamental right deserving of the same demanding judicial oversight as the rest of the Bill of Rights. *Heller* confirmed the rather ordinary proposition "that the Second Amendment conferred an individual right to keep and bear arms." 554 U.S. at 595. And *McDonald v. City of Chicago*, 561 U.S. 742 (2010), confirmed that the Second Amendment was enforceable against state and local actors.

Yet anti-gun politicians in California persisted in the same manner, and with the scheming intensity of politicians that resisted school desegregation in Arkansas in 1958. *See Aaron v. Cooper*, 358 U.S. 1 (1958). Indeed, they resumed their crusade against gun shows in 2018, when the DAA, at the urging of Governor Newsom and Assemblymember (and AB 893 sponsor) Todd Gloria, imposed a moratorium on gun shows at the Fairgrounds. 2-ER-161-66. The Southern District soundly rejected that ban on both First Amendment and equal protection grounds, enjoining the law sua sponte. *B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n* ("*B&L 2019*"), 394 F. Supp. 3d 1226 (S.D. Cal. 2019).

Just three years later, the Supreme Court confirmed another rather common sense reading from the Constitution's text—that "the right to keep and bear arms" includes the right to possess them in public for lawful purposes. *Bruen*, 142 S. Ct. at 2156. *Bruen* also made it clear that the government cannot ban the possession of firearms in public unless its restriction is "part of the historical tradition that delimits

the outer bounds of the right to keep and bear arms." *Id.* at 2127. A new Ninth Circuit case, mentioned only in passing by the State in a footnote, confirms that there is no Second Amendment exception to the commercial speech doctrine. *Jr. Sports Mags, Inc. v. Bonta*, 80 F.4th 1109 (9th Cir. 2023) (cited in A.B.48, n.16). And more recently, the Central District issued a preliminary injunction, barring the enforcement of a nearly identical law on both First Amendment and Second Amendment grounds. *B&L Orange Cnty.*, 2023 WL 7132054.

If you are running a tally, the district court's order conflicts with at least three district court cases in this circuit: (1) *Nordyke v. Santa Clara County,* 933 F. Supp. 903 (N.D. Cal. 1996), the district court decision this Court affirmed in *Nordyke 1997*; (2) *B&L 2019*, 394 F. Supp. 3d 1226, the B&L gun show moratorium case from the Southern District; (3) and most recently *B&L Orange County*, 2023 WL 7132054, the 2023 B&L case in the Central District. Add the two *Nordyke* Ninth Circuit cases that appear to exhaust the permutations of regulating gun shows on public land by either banning sales (*Nordyke 1997*) or banning possession during sales (*Nordyke v. King*), both of which resulted in gun shows continuing to take place at public fairgrounds; sprinkle in the commercial speech treatment of firearm marketing in *Junior Sports Magazines*; and finally throw in the doctrinal analysis of *Heller*, *McDonald*, and *Bruen*; and it is starting to look like the district court's approach here was not just an outlier, but reversible error. And there were no arguments presented in California's brief that can salvage this error.

### C. AB 893 Cannot Survive Any Form of Heightened Scrutiny; It Fails Even the *Central Hudson* Test for Restrictions on Commercial Speech

AB 893 cannot meet *any* level of heightened scrutiny because it is *far* broader than necessary to serve any legitimate government interest. California's ban on the commercial speech necessary to the sale of all firearms and ammunition (offer and acceptance) at the Fairgrounds—instead of simply enforcing the many laws that already regulate the sales of such products—defies common sense and circuit precedent. *Nordyke 1997*, 110 F.3d 707. For that reason, this Court can simply resolve Appellants' First Amendment claims under the commercial speech doctrine, just like the three-judge panel did in *Junior Sports Magazines. See Jr. Sports Mags.*, 80 F.4th at 1115-16. The rest of Appellants' First Amendment analysis will thus focus on how California's two-paragraph analysis of the *Central Hudson* factors, A.B.47-48, fails to adequately support the district court's misapplication of the commercial speech doctrine.[7]

1. Because commercial speech only receives First Amendment protection if it is not misleading and concerns a lawful activity, *Cent. Hudson*, 447 U.S. at 563-64, the State argues that "AB 893 prohibits the sale of firearms and ammunition at the Fairgrounds," so "an offer to make such sales, assuming that it does not concern a

---

[7] By conceding that this Court can resolve this matter on commercial speech grounds and focusing this Reply on that analysis, Appellants are not abandoning their pure speech claims. Nor are they backing away from their position that commercial speech should receive strict scrutiny because "there is no principled distinction between commercial and non-commercial speech." *See* A.O.B.31-37 & n.9; *see also B&L Orange Cnty.*, 2023 WL 7132054, *10-13. Appellants preserved these arguments in their Opening Brief, and nothing in the State's Answering Brief refutes these arguments beyond merely disagreeing with them.

lawful activity, is not protected commercial speech." A.B.48.[8] But citing AB 893 to prove the constitutionality of AB 893 is a self-licking ice cream cone.

The State attempted the same gambit in *B&L Orange County*. There, the district court disposed of that sophistry noting that "[t]his circular reasoning is illogical and disingenuous, however, because a law's existence cannot be the only source of its constitutional validity." *B&L Orange County*, 2023 WL 7132054, *7 (citing *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 409 (7th Cir. 2015) ("[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it.")).

2. In its second and final paragraph applying the *Central Hudson* test, the State argues that AB 893 "serves the substantial interest of preventing and mitigating gun violence" and that it "is no more restrictive than necessary because it 'is a straightforward response' to the danger of illegal transactions occurring at the Fairgrounds." A.B.54. The State claims that its "existing regulations of gun shows (2-ER-151-56) are not a sufficient alternative [to its gun show ban] because, as AB 893's legislative record shows, illegal transactions still occur at gun shows." A.B.54.[9]

---

[8] There are glaring inconsistencies in the State's Brief on this issue. California argued in the district court that AB 893 does not prohibit "offers for sale," a concession the court accepted. 1-ER-8. The State referenced the court's conclusion on this point early in its brief. A.B.2, 12(citing 1-ER-8). Later, California contradicts itself when it claims that an offer for the sale of firearms and ammunition at the Fairgrounds is not protected speech. A.B.48. Which is it? Are offers for the sale of firearms legal or illegal under AB 893?

[9] The State improperly introduces and relies on two reports about the California Department of Justice's Armed and Prohibited Persons System ("APPS") to support this claim. A.B.54, n.19. The contents of these reports are not judicially noticeable. They lack foundation, authentication, and relevance, and they are hearsay.

To begin with, as with its Second Amendment argument, the State is again relying on contested facts—including allegations that do not even apply to Crossroads gun shows or to any gun show in California—in an attempt to reinforce the lower court's decision. What's more, AB 893's claim that illegal transactions take place at gun shows is nothing but rank hearsay that the State provided no evidence to corroborate below. Because this appeal is about a Rule 12 motion to dismiss, the State cannot rely on these hotly disputed allegations to prevail. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted.").

In any event, AB 893's legislative history reveals only the most general concerns about gun violence around the country and legislators' beliefs that the State should not profit from gun sales. A.O.B.34-35 (citing 2-ER-167-69, 255-29, 284-85). To again paraphrase the district court in *B&L Orange County*, "[t]he legislative findings of [AB 893] do not identify any specific harms at the [Del Mar] Fairgrounds, *nor do they indicate that gun shows present any particular risk that exceeds those of lawful gun sales accomplished at brick-and-mortar stores*." 2023 WL 7132054, *9 (emphasis added). To the contrary, "in California, where both gun shows themselves and gun commerce generally are regulated, **sales at gun shows are not a risk factor** among licensed retailers for disproportionate sales of crime guns." *Id.* (double emphasis added) (internal quotation omitted).

---

In any event, relying on this extrinsic evidence to decide an appeal of a Rule 12 dismissal would be improper.

While AB 893 does allege that a handful of crimes have occurred at Crossroads gun shows, 2-ER-251-52 (claiming that 14 crimes were recorded during Crossroads events at the Fairgrounds between 2013 and 2017), the State provided *no* proof of those crimes below. It did not establish that they involved firearms or were otherwise of the type that AB 893 purports to target. A.O.B.33 (citing 2-ER-167, 252). Nor did the State show that such crimes are any more likely to occur at gun shows on public property than other large-scale events where thousands of people gather or at brick-and-mortar gun stores or gun shows held on private property (which are still completely lawful). Yet the State seeks only to ban sales (and effectively gun shows) at state-owned venues. The distinction is not even rational.

The legislative history proves, at most, that California's existing gun-show-regulation regime has helped law enforcement develop probable cause to pursue prosecutions with facts gathered at gun shows. It does not prove that banning *lawful* firearm sales would directly prevent *illegal* sales. Indeed, because AB 893 bans the *lawful* sales of firearms, ammunition, and firearm parts at the Fairgrounds, it "do[es] not 'directly advance[] the governmental interest asserted.'" *Id.* (quoting *Cent. Hudson*, 447 U.S. at 556). On the contrary, "'[b]y banning gun sales only at the Fairgrounds,' California 'achieves nothing in the way of curtailing the overall possession of guns in the County,' let alone **illegal** firearms." *Id.* (quoting *Nordyke 1997*, 110 F.3d at 713). Even if it did, AB 893 is not narrowly tailored to that end.[10] The State's "interest in

_____

[10] The State claims that Appellants "contend that AB 893 'must target the exact wrong it seeks to remedy' *by identifying a public safety concern specific to B&L gun shows held at the Fairgrounds*." A.B.54 (citing A.O.B.35-36) (emphasis added). Appellants make no such claim. Rather, they argue that a speech restriction "must target the exact wrong it seeks to remedy, and no more," and under that guiding principle, "a ban is necessarily

stopping crimes committed with illegal weapons, 'as important as it is, cannot justify' prohibiting the complete sale of lawful firearms at gun shows," *Id.* (quoting *Cent. Hudson*, 447 U.S. at 566), "especially when those same firearms are available for purchase at regular gun stores," *id.* (citing Cal. Penal Code § 26805).

For these reasons, "under intermediate scrutiny and the *Central Hudson* test," AB 893 "act[s] an as unconstitutional infringement on commercial speech." *Id.*

## III. IF THE COURT FINDS THAT AB 893 RESTRICTS PROTECTED SPEECH, IT SHOULD REVERSE THE DISMISSAL OF APPELLANTS' EQUAL PROTECTION CLAIM

The State argues that Appellants' equal protection claim is linked to their First Amendment claim. A.B.2. On that point, it is not wrong. Indeed, the "'Equal Protection claim 'rise[s] and fall[s] with the First Amendment claims.'" *B&L Orange Cnty.*, 2023 WL 7132054, *17 (quoting *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012)). But because the State wrongly asserts that Appellants cannot state a First Amendment claim because AB 893 does not restrict speech, it also wrongly claims that the equal protection claim must likewise fall.

If this Court finds that AB 893 does restrict protected expression (or at least that Appellants adequately allege that it does), however, the Court should reverse. And because the district court failed to give proper weight to Appellants' allegations that, because of AB 893, the DAA refuses to contract for gun shows at the

---

overbroad." A.O.B.36 (citing *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)). They reference the lawfulness of Crossroads events at the Fairgrounds only to illustrate that the specific ban at issue is "especially egregious." A.O.B.36.

Fairgrounds, discriminatorily excluding Appellants from that public forum, this Court should do just that.

Turning once more to the serious treatment afforded to this significant constitutional issue by the *B&L Orange County* court: "[B]ecause the Court concludes that Plaintiffs are likely to prevail on their First Amendment claims that Defendants are 'engaging in viewpoint discrimination,' it concludes that Plaintiffs are also likely to prevail on their Equal Protection claim 'for differential treatment that trenched upon a fundamental right.'" *Id.* (quoting *OSU*, 699 F.3d at 1067). This Court should afford similar treatment to Appellants' claim.

## CONCLUSION

For these reasons, the district court committed reversible error by dismissing the case under Rule 12. The Court should reverse that order and remanded for further proceedings.

Dated: December 1, 2023       Respectfully submitted,

                                     **MICHEL & ASSOCIATES, P.C.**

                                     s/ Anna M. Barvir
                                     Anna M. Barvir
                                     *Attorneys for Plaintiffs-Appellants B&L*
                                     *Productions, Inc., dba Crossroads of the West;*
                                     *Barry Bardack; Ronald J. Diaz, Sr.; John Dupree;*
                                     *Christopher Irick; Robert Solis; Lawrence Michael*
                                     *Walsh; Captain Jon's Lockers, LLC; L.A.X.*
                                     *Firing Range, Inc., dba LAX Ammo; California*
                                     *Rifle & Pistol Association, Inc.; South Bay Rod*
                                     *and Gun Club, Inc.*

Date: December 1, 2023          **LAW OFFICES OF DONALD KILMER, APC.**

s/ Donald Kilmer
_____
Donald Kilmer
*Attorney for Plaintiff-Appellant Second*
*Amendment Foundation*

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  No. 23-55431

The undersigned attorney or self-represented party states the following:

[ ]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the

case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case

number and name of each related case and its relationship to this case are:

1. ***B&L Productions, Inc., et al., v. Newsom, et al.,*** 9th Cir. Case No. 23-
3793. This related case, filed on November 27, 2023, is an interlocutory appeal
of an order granting plaintiffs' motion for preliminary injunction and enjoining
the enforcement of Senate Bill 264 (applicable to the Orange County Fair &
Event Center) and Senate Bill 915 (applicable to all state-owned property), two
state laws that are nearly identical to the law challenged in this case. After
extensive briefing, including two rounds of supplemental briefing, and a two-
hour hearing, the Central District held that the plaintiffs (including several
appellants in this case) were likely to prevail on the merits of their First and
Second Amendment claims. Pursuant to this Court's earlier direction,
Appellants intend to renew their request to have these cases heard together.

**Signature**   s/ Anna M. Barvir                              **Date** December 1, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55431

I am the attorney or self-represented party.

**This brief contains** | 6,996 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Anna M. Barvir | **Date** | December 1, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, an electronic PDF of APPELLANTS' REPLY BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: December 1, 2023        Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants*