Consolidated Case Nos. 23-55431 & 23-3793

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

B&L PRODUCTIONS, D/B/A CROSSROADS OF THE WEST, ET AL.,
*Plaintiffs-Appellants*,

v.

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF
CALIFORNIA AND IN HIS PERSONAL CAPACITY, ET AL.,
*Defendants-Appellees*.

———————————

## On Appeal from the United States District Court
## for the Southern District of California
No. 3:21-cv-01718-AJB-DDL
The Honorable Anthony J. Battaglia, Judge

———————————

B&L PRODUCTIONS, D/B/A CROSSROADS OF THE WEST, ET AL.,
*Plaintiffs-Appellees*,

V.

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF
CALIFORNIA AND IN HIS PERSONAL CAPACITY, ET AL,
*Defendants-Appellants*.

———————————

## On Appeal from the United States District Court
## for the Central District of California
Case No. 8:22-cv-01518 JWH (JDEx)
The Honorable John W. Holcomb, Judge

———————————

## RESPONSE OF STATE RESPONDENTS TO PETITION FOR
## REHEARING EN BANC

———————————

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General
PAUL E. STEIN
Supervising Deputy Attorney General

NICOLE J. KAU
Deputy Attorney General
CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6356
 Fax: (916) 731-2119
 Email: Charles.Sarosy@doj.ca.gov
*Attorneys for State Respondents*

August 7, 2024

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................... 1

Brief Statement of the Case .......................................................... 3

Reasons To Deny The Petition for Rehearing En Banc ............................... 4

    I.     The Panel Opinion Is Consistent with Existing Precedent ....... 4

          A.    The Panel Opinion Does Not Conflict with *Bruen* or *Rahimi* ........................................................................ 4

          B.    The Panel Opinion's First Amendment Analysis Follows Precedent ........................................................ 10

          C.    The Panel Opinion Correctly Rejected Petitioners' Equal Protection Claims ................................................ 14

Conclusion ................................................................................... 15

Certificate of Compliance ........................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*
15 F.4th 954 (9th Cir. 2021) ................................................................... 13

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..................................................................................8

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)..................................................................................8

*District of Columbia v. Heller*
554 U.S. 570 (2008)..................................................................................8

*Doe v. Bonta*
101 F.4th 633 (9th Cir. 2024) ...................................................................9

*Gazzola v. Hochul*
88 F.4th 186 (2d Cir. 2023) .......................................................................9

*HomeAway.com, Inc. v. City of Santa Monica*
918 F.3d 676 (9th Cir. 2019) ................................................................. 13

*Int'l Franchise Ass'n v. City of Seattle*
803 F.3d 389 (9th Cir. 2015) ................................................................. 13

*Interpipe Contracting, Inc. v. Becerra*
898 F.3d 879 (9th Cir. 2018) ................................................................. 14

*McDonald v. City of Chicago*
561 U.S. 742 (2010)............................................................................... 10

*Mobilize the Message, LLC v. Bonta*
50 F.4th 928 (9th Cir. 2022) ................................................................. 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

*New York State Rifle & Pistol Association, Inc. v. Bruen*
    597 U.S. 1 (2022)................................................................ 4, 8, 9

*Nordyke v. King*
    319 F.3d 1185 (9th Cir. 2003) .................................................. 12

*Nordyke v. Santa Clara Cnty.*
    110 F.3d 707 (9th Cir. 1997) .............................................. 10, 11

*Oakland Tactical Supply, LLC v. Howell Twp.*
    103 F.4th 1186 (6th Cir. 2024) ...................................................9

*Teixeira v. Cnty. of Alameda*
    873 F.3d 670 (9th Cir. 2017) (en banc) ........................... 5, 8, 9

*United States v. Rahimi*
    144 S. Ct. 1889 (2024)................................................... 4, 8, 10

## STATUTES

Cal. Food & Agric. Code § 4158(a) ................................................3

Cal. Pen. Code
    § 27573(a) ................................................................................3
    § 27575(a) ................................................................................3

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amendment I...................................................... *passim*

U.S. Const. Amendment II..................................................... *passim*

## COURT RULES

Fed. R. App. P. 35(b)(1)(B) ...........................................................1

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

OTHER AUTHORITIES

Assembly Bill 893 ...................................................................................3

Oral Argument, *B&L Productions, Inc., et al. v. Newsom, et al.*
(No. 23-3793) (March 6, 2024), https://tinyurl.com/mpetrafx ..................5

Senate Bill 264 ........................................................................................3

Senate Bill 915 ........................................................................................3

iv

**INTRODUCTION**

Petitioners challenge three California laws that prohibit the sale of firearms and ammunition at any event at the Del Mar Fairgrounds in San Diego County, at the Orange County Fair and Events Center (Orange County Fairgrounds), and on state property. The scope of these laws (the "Challenged Statutes") stops there. Petitioners disagree with the panel opinion's recognition as much, but they fail to satisfy the standard for en banc rehearing. The petition reflects mere disagreement with the panel opinion rather than any conflict with Supreme Court or Ninth Circuit precedent. But as Petitioners acknowledge (Pet. 12 n.3), disagreement is not a basis for further review. The panel opinion correctly applies precedent. Additionally, beyond a broad assertion about questions of exceptional importance being at stake, the petition fails to identify any such questions that merit further review by this Court, nor does the petition try to demonstrate that the panel opinion conflicts with "authoritative decisions of other United States Courts of Appeals." Fed. R. App. P. 35(b)(1)(B).

The panel opinion correctly recognized the "Challenged Statutes' limited scope" and properly held they did not violate the First or Second Amendments. Opn. 13. The Challenged Statutes do not prohibit offers for sale or advertising, and they do not prohibit gun shows. They also do not impede firearms and ammunition sales at brick-and-mortar locations open regularly during the year, nor

do they impede sales at other venues where gun shows occur intermittently on weekends, such as convention centers, sports and events centers, hotel ballrooms, and masonic halls, to name a few.  In other words, a resident can still attend a gun show on state property, see products being advertised, and go to a vendor's brick-and-mortar location to consummate a purchase.

The panel opinion accordingly concluded that Petitioners failed to plausibly allege that the Second Amendment's plain text confers a right to contract for firearms and ammunition sales on state property.  Opn. 20–25.  The panel acknowledged that the Second Amendment protects a right to acquire arms, but Petitioners "essentially concede[d]" that no individual's access to firearms had been impaired by being unable to purchase those items at temporary marketplaces on state property.  Opn. 24.  As to the First Amendment challenge, the panel opinion followed this Court's longstanding precedent that a prohibition on firearm sales does not regulate speech.  Opn. 11–20.

There is nothing compelling about the petition's sweeping assertions regarding the panel opinion's real-world impact on gun buyers.  The petition for rehearing en banc should be denied.

**BRIEF STATEMENT OF THE CASE**

The three Challenged Statutes were enacted by Assembly Bill 893, Senate Bill 264, and Senate Bill 915.[1] Each law prohibits "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm [or] ammunition" on the property specified in each respective statute, that is, the Del Mar Fairgrounds in San Diego County (Cal. Food & Agric. Code § 4158(a)), the Orange County Fairgrounds (Cal. Pen. Code § 27575(a)), and state property (Cal. Pen. Code § 27573(a)). The Challenged Statutes prohibit only sales, not offers for sale or advertising. Consistent with that statutory text, the legislative findings and history highlight the Legislature's concern with illicit firearm and ammunition sales at gun shows on state properties like fairgrounds. *See, e.g.*, S.D. Cal. 2-ER-251–52; C.D. Cal. 1-SER-116–17; C.D. Cal. 2-ER-237–41.[2]

Petitioners challenged the constitutionality of Assembly Bill 893 in the Southern District of California, and similarly challenged Senate Bills 264 and 915 in the Central District of California. In the Southern District case, the district court dismissed the claims after Petitioners had amended their First Amendment claims

---

[1] Assembly Bill 893 added section 4158 to the Food and Agricultural Code. Senate Bill 264 added section 27575 to the Penal Code. And, Senate Bill 915 added section 27573 to the Penal Code.

[2] Record citations preceded by "S.D. Cal." are to the Excerpts of Record in Case No. 23-55431, and record citations preceded by "C.D. Cal." are to the Excerpts of Record in Case No. 23-3793.

and declined the court's invitation to amend their Second Amendment claim. S.D.

Cal. 1-ER-2; S.D. Cal. 1-ER-7–11. In the Central District case, the district court

granted Petitioners' motion for a preliminary injunction after concluding that they

were likely to succeed on the merits of their constitutional claims. C.D. Cal. 1-ER-

12–31. The two cases were consolidated on appeal, and Petitioners represented at

oral argument that both cases present only a facial challenge. Opn. 10, 15 n.12; *see*

*United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (a facial challenge "is the

'most difficult challenge to mount successfully.'" (quoting *United States v.*

*Salerno*, 481 U.S. 739, 745 (1987))).

## REASONS TO DENY THE PETITION FOR REHEARING EN BANC

### I. THE PANEL OPINION IS CONSISTENT WITH EXISTING PRECEDENT

#### A. The Panel Opinion Does Not Conflict with *Bruen* or *Rahimi*

As set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597

U.S. 1, 24 (2022), the threshold question for any Second Amendment challenge is

whether the Amendment's plain text covers the regulated conduct at issue. *See*

*also Rahimi*, 144 S. Ct. at 1897; *id.* at 1907 (Gorsuch, J., concurring); *id.* at 1928

(Jackson, J., concurring). If the answer is "no," then the inquiry ends and the

challenge fails. The panel opinion faithfully applied this framework and held that

the "plain text of the Second Amendment does not cover [Petitioners'] proposed

conduct—namely, contracting for the sale of firearms and ammunition on state

property." Opn. 20.

4

The Second Amendment's plain text secures a right to "keep and bear arms." U.S. Const. amend. II. While the text does not include any right to sell or purchase arms, this Court has construed the text to protect an "ancillary" right to acquire firearms, to avoid rendering the right to bear arms "meaningless." *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc), *cert. denied* 138 S. Ct. 1988 (2018). Petitioners have never alleged that the Challenged Statutes "impair a single individual" from acquiring firearms. Opn. 24. In the Southern District case, Petitioners declined the court's invitation to amend their complaint to address whether the Challenged Statutes had impeded any individual's ability to acquire firearms. S.D. Cal. 1-ER-11; S.D. Cal. 1-ER-2. Similarly, in the Central District case, the district court did not identify any allegations or make any findings that individuals had been unable to acquire firearms. C.D. Cal. 1-ER-26–27. At oral argument, Petitioners' counsel for both appeals argued that their failure to allege any impediment to acquiring firearms "doesn't matter," because the inhibition of a single sale is sufficient to meet their burden at the plain text inquiry. Oral Argument at 17:43, 19:00, 25:21, & 26:06, *B&L Productions, Inc., et al. v. Newsom, et al.* (No. 23-3793) (March 6, 2024), https://tinyurl.com/mpetrafx. The panel correctly rejected that argument—which would require searching judicial review of any number of taxing, zoning, or other commercial regulations that may bear on an individual's ability to purchase firearms. *Id.*

5

Petitioners agree that *Bruen* requires a threshold determination that the restricted conduct is within the Second Amendment's plain text (Pet. 6), but argue that the opinion adds a new burden that "defies *Bruen*." Pet. 7. That contention misreads the panel opinion. The panel held that Petitioners had not plausibly alleged that being unable to contract for the sale of firearms and ammunition on state property impaired their ability to "keep and bear" firearms for lawful purposes. Opn. 20–25 (quoting U.S. Const. amend. II). That analysis does not contravene *Bruen*.

The record reflects that firearms and ammunition are broadly available for purchase at 162 licensed firearms dealers and ammunition vendors in Orange County—including six in the same zip code as the Orange County Fairgrounds—and at 93 dealers and vendors in San Diego County.[3] C.D. Cal. 2-ER-197; Opn. 24.[4] These entities, which are brick-and-mortar locations open regularly throughout the year, are often the vendors at a gun show at their local fairgrounds that occur approximately five weekends per year. Opn. 24; S.D. Cal. 2-ER-251.

---

[3] In addition to such access for acquiring new firearms, the individual Petitioners—by their own allegations and declarations—all appear to already possess firearms and ammunition. S.D. Cal. 2-ER-138–41; C.D. Cal. 2-ER-247–49; C.D. Cal. 2-SER-346–47, 351–52, 356–57, 361–62.

[4] As of January 11, 2023, there were 1,610 licensed firearms dealers statewide across 456 cities, 680 zip codes, and 56 counties that can sell firearms and ammunition, as well as 165 licensed ammunition vendors across 129 cities, 148 zip codes, and 41 counties that can sell ammunition. C.D. Cal. 2-ER-197.

As the panel opinion recognized, an attendee of a gun show at the Orange County Fairgrounds can see products being advertised, leave the gun show, and go to a vendor's local brick-and-mortar location—including one of the six in the same zip code as the Fairgrounds—to "agree to purchase firearms and immediately begin the background check process," without violating the Challenged Statutes. Opn. 8, 24. Or a person could go directly to any open brick-and-mortar location throughout the year to view and purchase firearms and ammunition, without attending a gun show at all. Petitioners have not pointed to any allegation explaining how complying with the Challenged Statutes limits any individual's ability to keep and bear firearms.

Nevertheless, Petitioners assert that the panel opinion contravened *Bruen* by applying a "thinly veiled judicial balancing test" (Pet. 7) when the panel observed that "eliminating one environment where individuals may purchase guns does not constitute a *meaningful constraint* on Second Amendment rights when they can acquire the same firearms down the street." Opn. 24 (italics added). Petitioners interpret that language to embrace a means-end analysis that is inconsistent with *Bruen*'s text-and-history framework, and request that this Court grant rehearing to determine whether "[t]he 'meaningful constraint' test" remains good law. Pet. 7, 6–8. But Petitioners misunderstand this Court's prior precedents and fundamentally misapprehend the panel's decision.

7

This Court first used the "meaningful constraint" phrase when it rejected a Second Amendment challenge to a county zoning ordinance that restricted the location of gun stores relative to certain other properties (e.g., schools, residential zones). *Teixeira*, 873 F.3d at 673–74, 680. The Court found that the plaintiffs had failed to state a claim that the ordinance impeded residents from acquiring firearms. *See id.* at 678–79. Like here, there were no plausible allegations in that case that county residents were impeded from purchasing firearms when there were already ten firearms dealers in the county, and no allegations about how a new gun store would shorten travel distances (if at all) for potential customers. *Id.* at 673, 678–80. This Court accordingly explained that gun buyers' access to firearms was not "meaningfully constrained" by the ordinance. *Id.* at 680.

*Teixeira*'s holding rested on the complaint's failure to allege that the "ordinance actually or really," as a practical matter, impaired anyone who wanted a firearm from buying one. 873 F.3d at 678–680, 680 n.14. In other words, this Court held the plaintiffs to their burden of pleading a plausible claim for relief, as the Supreme Court set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), consistent with the Supreme Court's acknowledgement in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) that "the right secured by the Second Amendment is not unlimited." *See also Bruen*, 597 U.S. at 21; *Rahimi*, 144 S. Ct. at 1897; *id.* at 1924

8

("Despite its unqualified text, the Second Amendment is not absolute.") (Barrett, J., concurring). That analysis did not constitute means-end scrutiny; both the majority and dissenting opinions agreed as much. *See Teixeira*, 873 F.3d at 680 n.14; *id.* at 695 (Bea, J. dissenting).

The panel opinion likewise does not apply means-end scrutiny, but rather held Petitioners to their burden to allege their proposed conduct is covered by the Second Amendment's plain text. This is consistent with how the Supreme Court, this Court, and other circuit courts of appeals have applied the plain text analysis in other Second Amendment challenges. *See Bruen*, 597 U.S. at 32; *Doe v. Bonta*, 101 F.4th 633, 639–40 (9th Cir. 2024) (plaintiffs did not "plausibly allege[] . . . any cognizable Second Amendment injury" because the challenged law did "not regulate conduct protected by the plain text of the Second Amendment or impede plaintiffs' ability to purchase, keep, carry, or utilize firearms"); *Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1197–99 (6th Cir. 2024) (the plain text covered neither proposed courses of conduct—commercial firearms training in a particular location, or long-distance firearms training—because the plaintiffs failed to show such conduct was "necessary to effectuate their Second Amendment rights"), *reh'g denied*, 2024 WL 3434464 (July 8, 2024); *Gazzola v. Hochul*, 88 F.4th 186, 196–98 (2d Cir. 2023) (relying on *Teixeira* to reject a challenge to various state security and personnel requirements for New York firearms dealers

because other than plaintiffs' "say-so," there was "no evidence" that state residents would lack "relatively easy access to sellers of firearms"), *cert. denied*, 2024 WL 3014531 (June 17, 2024). Consistent with such precedent, the panel opinion "turns on" the plain text analysis commanded by *Bruen*, and not means-end scrutiny as Petitioners contend.[5] Pet. 7.

**B. The Panel Opinion's First Amendment Analysis Follows Precedent**

The panel opinion rejected Petitioners' commercial speech and pure speech claims, and did "not address the distinction" between the two, because Petitioners had "fail[ed] to establish that the Challenged Statutes regulate any speech cognizable under the First Amendment." Opn. 11.[6] Petitioners focus on the panel opinion's conclusion that the Challenged Statutes do not "directly . . . restrict any expressive activity" (Opn. 11), contending that this holding creates an intra-circuit conflict. Pet. 12–15. But this argument misreads this Court's decision in *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707 (9th Cir. 1997) (*Nordyke 1997*). Petitioners

_____

[5] The panel opinion's holding also follows *Heller*'s guidance that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." 554 U.S. at 626–27 & n.26; Opn. 23. The Supreme Court has reaffirmed this principle in its three Second Amendment decisions since *Heller*. *McDonald v. City of Chicago*, 561 U.S. 742, 787 (2010); *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring); *Rahimi*, 144 S. Ct. at 1902; *id.* at 1923 (Kavanaugh, J., concurring).

[6] Petitioners note that their request for en banc review is limited to the panel opinion's commercial speech analysis and that they reserve their pure speech arguments for "another day." Pet. 12 n. 3.

assert that this appeal "is a clone of *Nordyke 1997*" (Pet. 13) and that the panel opinion "flouts" that case's holding. Pet. 15. They are wrong on both counts.

At issue in *Nordyke 1997* was an addendum to a lease contract between Santa Clara County and a fairgrounds management corporation. 110 F.3d at 708. The addendum prohibited "selling" and "offering for sale" firearms or ammunition, including "any act initiating" such a transaction. *Id.* at 708–09. Petitioners mistakenly read *Nordyke 1997* as holding that the prohibition on firearm sales "abridged commercial speech associated with the sale of lawful products" (Pet. 12), and that *Nordyke 1997* "protects the 'sale' of lawful firearms at gun shows." Pet. 14. This characterization overlooks that *Nordyke 1997* separately analyzed the prohibition on *sales* and the prohibition on *offers for sale*. As to the *sales* prohibition, *Nordyke 1997* held that it did not implicate the First Amendment because a sale, which it described as "the act of exchanging money for a gun," "is not 'speech' within the meaning of the First Amendment." 110 F.3d at 710. Rather, it was the prohibition on *offers for sale* that implicated the First Amendment because an "offer to sell firearms or ammunition is . . . commercial speech within the meaning of the First Amendment." *Id. Nordyke 1997* went on to reason that the lease contract addendum, prohibiting offers for sale, did not pass constitutional muster. *Id.* at 710–13.

As the panel opinion correctly observed, the Challenged Statutes do not prohibit offers for sale. Opn. 12. Because the Challenged Statutes prohibit only *sales*, which do not implicate the First Amendment, the panel opinion's conclusion that the Challenged Statutes "solely restrict nonexpressive conduct" (Opn. 6), is fully consistent with circuit precedent. Petitioners acknowledge that there have been no "new wrinkle[s]" since *Nordyke 1997*. Pet. 13. And, this Court subsequently reaffirmed that "the sale itself [of firearms or ammunition] is not commercial speech." *Nordyke v. King*, 319 F.3d 1185, 1191 (9th Cir. 2003). The panel correctly applied those precedents in concluding that Petitioners had not established that the "First Amendment even applies" to the Challenged Statutes. Opn. 11.

Petitioners call the panel opinion's conclusion "breathtaking" and "unprecedented." Pet. 13. Such hyperbole is misplaced. As the panel opinion emphasized, gun shows—and the attendant speech that they facilitate—"can still take place on state property, as long as that celebration [of gun culture] does not involve contracts for the sale of guns." Opn. 15. If Petitioners decide to no longer hold gun shows on state property, "doing so would be [their] own decision, not the 'inevitable effect' of the Challenged Statutes." Opn. 16.

Petitioners disagree with the Supreme Court's recognized distinction between "restrictions on protected expression" and "restrictions on economic activity,"

because it undermines their theory that a regulation of sales must necessarily regulate commercial speech. Opn. 13 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)); Pet. 14. But this Court has repeatedly rejected the assertion that a regulation directed at commercial conduct (here, consummating a transaction) without an expressive element implicates the First Amendment.[7] The panel opinion correctly followed that precedent. Opn. 13–14, 16–17; *see also Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408–09 (9th Cir. 2015) ("[S]ubjecting every incidental impact on speech to First Amendment scrutiny 'would lead to the absurd result that any government action that had some conceivable speech inhibiting consequences . . . would require analysis under the First Amendment.'" (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986) (O'Connor, J., concurring))). Cases not cited by the panel opinion offer additional support. *See, e.g.*, *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 961–64 (9th Cir. 2021) (worker classification statute "regulate[d]

---

[7] *See, e.g.*, *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 935–37 (9th Cir. 2022) (no First Amendment infringement when a worker classification statute indirectly increased the costs of the employer's speech by classifying doorknockers and signature gatherers as employees), *cert. denied* 143 S. Ct. 2639 (2023)); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (ordinance regulating short-term vacation rentals "regulate[d] nonexpressive conduct—namely, booking transactions—not speech"), *reh'g denied*, Aug. 16, 2019; *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408–09 (9th Cir. 2015) (ordinance subjecting certain franchisees to wage increases was "plainly an economic regulation" applying to "a particular business model, not to any message the businesses express"), *cert. denied* 136 S. Ct. 1838 (2016).

economic activity rather than speech" even if costs increased for journalist organizations to hire journalists), *cert. denied* 142 S. Ct. 2870 (2022); *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 892 (9th Cir. 2018) ("[T]here exists no standalone right to receive the funds necessary to finance one's own speech."), *cert. denied* 139 S. Ct. 2744 (2019).

Consistent with Supreme Court and Ninth Circuit precedent, the panel opinion correctly held that the Challenged Statutes "do not implicate the First Amendment." Opn. 11. Petitioners' disagreement with the panel opinion's application of that precedent does not warrant en banc review.

### C. The Panel Opinion Correctly Rejected Petitioners' Equal Protection Claims

The petition argues that the panel opinion failed to address the equal protection claims alleging "disfavored treatment out of animus." Pet. 15. The panel did not err. Petitioners "concede[d] that [those] claims essentially duplicate [the] First Amendment claims," because the animus theory depends on their "assertion that the Challenged Statutes target pro-gun speech." Opn. 10 n.6. The panel rejected that assertion when it held that the Challenged Statutes did not directly or inevitably restrict any speech, and therefore declined to separately address the equal protection arguments. *See id.* Petitioners have thus waived any argument that their equal protection claims present any independent basis for rehearing.

14

## CONCLUSION

The State Respondents respectfully request that this Court deny the petition for rehearing en banc.

Dated: August 7, 2024

Respectfully submitted,

_s/ Charles J. Sarosy_

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General
PAUL STEIN
Supervising Deputy Attorney General
NICOLE J. KAU
Deputy Attorney General
CHARLES J. SAROSY
Deputy Attorney General

_Attorneys for State Respondents_

15

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)**  | 23-55431; 23-3793 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,413 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Charles J. Sarosy |  **Date** | Aug 7, 2024 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                         *Rev. 12/01/2021*

# CERTIFICATE OF SERVICE

Case Name:   **B&L Productions, et al. v.**          No.   **23-55431**
           **Gavin Newsom, et al.**

I hereby certify that on August 7, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### *RESPONSE OF STATE RESPONDENTS TO PETITION FOR REHEARING EN BANC*

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 7, 2024 at Los Angeles, California.

G. Agcaoili                                   */s/ G. Agcaoili*
Declarant                                      Signature